IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MAWUYRAYRASSUNA EMMANUEL NOVIHO, | : |
| | : |
| | : |
| Plaintiff, | : NO.: 16-3047 |
| | : |
| V. | : |
| | : |
| LANCASTER COUNTY, et al., | : |
| | : |
| Defendants. | : |

---

**APPELLANT MAWUYRAYRASSUNA EMMANUEL NOVIHO
APPENDIX OF EXHIBITS**

**VOLUME II**

---

George A. Reihner
Frank J. Tunis, Jr.
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, PA 18503
(570) 961-1166
(570) 961-1199 – fax

*Attorneys for Appellant
Mawuyrayrassuna Emmanuel Noviho*

# **TABLE OF CONTENTS**

## **VOLUME I**

June 2, 2016 Memorandum Opinion and Order of Court ...................................1

Notice of Appeal..............................................................................................3

## **VOLUME II**

U.S. Eastern District Docket Sheet.......................................................14

Complaint.............................................................................................20

Defendant Christopher Dissinger's Motion to Dismiss Plaintiff's
Complaint Pursuant to Rule 12(b)(6)....................................................65

Brief of Defendant Christopher Dissinger In Support of Motion
To Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)........................82

Exhibit A to Christopher Dissinger's Motion
To Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)...........................102

Plaintiff Mawuyrayrassuna Emmanuel Noviho's Brief in Opposition
to Defendant Christopher Dissinger's Motion to Dismiss..............................112

Defendants Lancaster County, Scott F. Martin, and
Todd E. Brown's Motion To Dismiss Plaintiff's Complaint
Pursuant to Federal Rule of Civil Procedure 12(b)(6) .................................151

Reply Brief of Defendant Christopher Dissinger.....................................230

Plaintiff Mawuyrayrassuna Emmanuel Noviho's Brief in
Opposition to Motion to Dismiss Filed by Defendants
Lancaster County, Scott F. Martin, and Todd E. Brown.............................248

Defendant Christopher Dissinger's Motion for Leave to Attach
Supplemental Exhibit to Motion to Dismiss Plaintiff's
Complaint Pursuant to Rule 12(b)(6)......................................................275

February 25, 2016 Order of Court.......................................................351

May 5, 2016 Order of Court.............................................................352

CLOSED,APPEAL,A/R,SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Allentown)
### CIVIL DOCKET FOR CASE #: 5:15-cv-03151-JLS

NOVIHO v. LANCASTER COUNTY PENNSYLVANIA et al
Assigned to: HONORABLE JEFFREY L. SCHMEHL
Case in other court: 16-03047
Cause: 42:1983 Civil Rights Act

Date Filed: 06/05/2015
Date Terminated: 06/03/2016
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**MAWUYRAYRASSUNA EMMANUEL NOVIHO**

represented by **GEORGE A. REIHNER**
WRIGHT & REIHNER P.C.
148 ADAMS AVENUE
SCRANTON, PA 18503
570-961-1166
Email: gareihner@wrightreihner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**FRANK J. TUNIS , JR.**
WRIGHT & REIHNER PC
148 ADAMS AVENUE
SCRANTON, PA 18503
570-961-1166
Email: fjtunis@wrightreihner.com
*ATTORNEY TO BE NOTICED*

**ROBERT J. DANIELS**
KILLIAN & GEPHART LLP
218 PINE ST
HARRISBURG, PA 17101
717-232-1851
Email: rdaniels@killiangephart.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LANCASTER COUNTY PENNSYLVANIA**

represented by **DAVID J. MACMAIN**
THE MACMAIN LAW GROUP LLC
101 LINDENWOOD DR SUITE 160
MALVERN, PA 19355
484-318-7704
Fax: 484-328-3996
Email: dmacmain@macmainlaw.com
*ATTORNEY TO BE NOTICED*

**MEGAN K. KAMPF**

> MACMAIN LAW GROUP
> 101 LINDENWOOD DR.
> SUITE 160
> MALVERN, PA 19355
> 484-328-1010
> Email: mkampf@macmainlaw.com
> *ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT F. MARTIN**          represented by **DAVID J. MACMAIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MEGAN K. KAMPF**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TODD E. BROWN**          represented by **DAVID J. MACMAIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MEGAN K. KAMPF**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTOPHER DISSINGER**          represented by **ROLF E. KROLL**
MARGOLIS EDELSTEIN
3510 TRINDLE ROAD
CAMP HILL, PA 17011
717-760-7502
Email: rkroll@margolisedelstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/05/2015 | 1 | COMPLAINT against TODD E. BROWN, CHRISTOPHER DISSINGER, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN ( Filing fee $ 400 receipt number APE003147), filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO. (Attachments: # 1 Civil Cover Sheet, # 2 Designation Form, # 3 Case Management Track Form)(er, ) Modified on 6/9/2015 (er, ). (Entered: 06/08/2015) |
| 06/05/2015 | | Summons Issued as to TODD E. BROWN, CHRISTOPHER DISSINGER, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN. 5 Originals Forwarded To: Counsel on 6/5/15 (er, ) Modified on 6/8/2015 (er, ). (Entered: 06/08/2015) |
| 06/05/2015 | | DEMAND for Trial by Jury by MAWUYRAYRASSUNA EMMANUEL NOVIHO. (er, ) Modified on 6/9/2015 (er, ). (Entered: 06/08/2015) |
| 06/19/2015 | 2 | ORDER THAT THIS CASE IS REASSIGNED FROM HONORABLE LAWRENCE F. STENGEL TO HONORABLE JEFFREY L. SCHMEHL FOR ALL FURTHER PROCEEDINGS. SIGNED BY MICHAEL E. KUNZ, CLERK OF COURT ON 6/19/15. |

15

| | | |
|---|---|---|
| | | 6/22/15 ENTERED AND COPIES E-MAILED TO COUNSEL.(pr, ) (Entered: 06/22/2015) |
| 06/25/2015 | 3 | NOTICE of Appearance by ROLF E. KROLL on behalf of CHRISTOPHER DISSINGER with Jury Demand and Certificate of Service(KROLL, ROLF) (Entered: 06/25/2015) |
| 07/02/2015 | 4 | NOTICE of Appearance by DAVID J. MACMAIN on behalf of TODD E. BROWN, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN with Certificate of Service(MACMAIN, DAVID) (Entered: 07/02/2015) |
| 07/02/2015 | 5 | NOTICE of Appearance by DAVID J. MACMAIN on behalf of TODD E. BROWN, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN with Certificate of Service(MACMAIN, DAVID) (Entered: 07/02/2015) |
| 07/02/2015 | 6 | NOTICE of Appearance by MEGAN K. KAMPF on behalf of TODD E. BROWN, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN with Certificate of Service(KAMPF, MEGAN) (Entered: 07/02/2015) |
| 07/02/2015 | 7 | WAIVER OF SERVICE Returned Executed by LANCASTER COUNTY PENNSYLVANIA. LANCASTER COUNTY PENNSYLVANIA waiver sent on 7/2/2015, answer due 8/31/2015. (MACMAIN, DAVID) (Entered: 07/02/2015) |
| 07/02/2015 | 8 | WAIVER OF SERVICE Returned Executed by SCOTT F. MARTIN. SCOTT F. MARTIN waiver sent on 7/2/2015, answer due 8/31/2015. (MACMAIN, DAVID) (Entered: 07/02/2015) |
| 07/02/2015 | 9 | WAIVER OF SERVICE Returned Executed by TODD E. BROWN. TODD E. BROWN waiver sent on 7/2/2015, answer due 8/31/2015. (MACMAIN, DAVID) (Entered: 07/02/2015) |
| 07/06/2015 | 10 | MOTION for Extension of Time to File Response/Reply as to 1 Complaint, filed by CHRISTOPHER DISSINGER.Certificate of Concurrence, Certificate of Service, Proposed Order. (Attachments: # 1 Exhibit Certificate of Concurrence, # 2 Text of Proposed Order)(KROLL, ROLF) (Entered: 07/06/2015) |
| 07/07/2015 | 11 | ORDER THAT DEFENDANT DISSINGER'S MOTION IS GRANTED. THE RESPONSIVE PLEADING OF DEFENDANT DISSINGER IS DUE ON OR BEFORE JULY 21, 2015. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 7/7/15.7/7/15 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 07/07/2015) |
| 07/17/2015 | 12 | First MOTION to Dismiss *Plaintiff's Complaint* filed by CHRISTOPHER DISSINGER.Motion to Dismiss, Brief, Certificate of Nonconcurrence, Proof of Service. (Attachments: # 1 Certificate of Nonconcurrence, # 2 Proposed Order, # 3 Brief)(KROLL, ROLF) (Additional attachment(s) added on 3/3/2016: # 4 exhibit B) (er, ). (Entered: 07/17/2015) |
| 07/20/2015 | 13 | EXHIBIT A to 12 First MOTION to Dismiss Plaintiff's Complaint by CHRISTOPHER DISSINGER. (KROLL, ROLF) Modified on 7/20/2015 (md). (Entered: 07/20/2015) |
| 07/29/2015 | 14 | MOTION for Extension of Time to File Response/Reply as to 12 First MOTION to Dismiss *Plaintiff's Complaint* filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(TUNIS, FRANK) (Entered: 07/29/2015) |
| 07/31/2015 | 15 | ORDER THAT PLAINTIFF'S MOTION BE AND THE SAME IS HEREBY GRANTED. ACCORDINGLY, PLAINTIFF SHALL RESPOND TO DEFENDANT CHRISTOPHER DISSINGER'S MOTION TO DISMISS ON OR BEFORE AUGUST 17, 2015. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 7/30/15. 7/31/15 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 07/31/2015) |

| 08/17/2015 | 16 | RESPONSE in Opposition re 12 First MOTION to Dismiss *Plaintiff's Complaint* filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(REIHNER, GEORGE) (Entered: 08/17/2015) |
|---|---|---|
| 08/31/2015 | 17 | MOTION to Dismiss *Plaintiff's Complaint* filed by TODD E. BROWN, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN.Brief, Certificate of Service. (MACMAIN, DAVID) (Entered: 08/31/2015) |
| 09/04/2015 | 18 | RESPONSE in Support re 12 First MOTION to Dismiss *Plaintiff's Complaint Reply Brief of Defendant Dissinger in Support of Motion to Dismiss* filed by CHRISTOPHER DISSINGER. (KROLL, ROLF) (Entered: 09/04/2015) |
| 09/08/2015 | 19 | STIPULATION AND ORDER THAT EXTENSION OF TIME UNTIL THE CLOSE OF BUSINESS 9/4/15 DURING, WHICH DEFT. DISSINGER WILL FILE HIS REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 9/3/15. 9/8/15 ENTERED AND COPIES E-MAILED.(er, ) Modified on 9/11/2015 (md). (Entered: 09/08/2015) |
| 09/08/2015 | | Set/Reset Deadlines as to 12 First MOTION to Dismiss Plaintiff's Complaint. REPLIES DUE BY 9/4/2015. (md) (Entered: 09/11/2015) |
| 09/14/2015 | 20 | RESPONSE in Opposition re 17 MOTION to Dismiss *Plaintiff's Complaint* filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO. (Attachments: # 1 Exhibit 1) (REIHNER, GEORGE) (Entered: 09/14/2015) |
| 09/24/2015 | 21 | ORDER THAT A PRETRIAL CONFERENCE (RULE 16) SHALL BE HELD ON WEDNESDAY, OCTOBER 28, 2015 AT 11:00 A.M., IN THE CHAMBERS OF JUDGE JEFFREY L. SCHMEHL, ROOM 401, THE MADISON BUILDING, 400 WASHINGTON STREET, READING, BERKS COUNTY, PENNSYLVANIA, ETC. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 9/23/15. 9/24/15 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 09/24/2015) |
| 10/12/2015 | 22 | MOTION to Continue *Pretrial Conference* filed by CHRISTOPHER DISSINGER.Certificate of Service.(KROLL, ROLF) (Entered: 10/12/2015) |
| 11/02/2015 | 23 | ORDER THAT THE MOTION TO CONTINUE (DOC 22) IS GRANTED AND THE PRETRIAL CONFERENCE (RULE 16) PREVIOUSLY SCHEDULED FOR OCTOBER 28, 2015 IS RESCHEDULED FOR TUESDAY, DECEMBER 1, 2015 AT 3:30 P.M. IN THE CHAMBER OF JUDGE JEFFREY L. SCHMEHL, ROOM 401, THE MADISON BUILDING, 400 WASHINGTON STREET, READING, BERKS COUNTY, PENNSYLVANIA, ETC. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 10/30/2015.11/2/2015 ENTERED AND COPIES E-MAILED.(lbs, ) (Entered: 11/02/2015) |
| 11/02/2015 | | Set/Reset Hearings: PRETRIAL CONFERENCE (RULE 16) SET FOR 12/1/2015 03:30 PM IN Reading BEFORE HONORABLE JEFFREY L. SCHMEHL. (lbs, ) (Entered: 11/02/2015) |
| 11/30/2015 | 24 | ORDER THAT THE PRETRIAL CONFERENCE (RULE 16) SCHEDULED FOR DECEMBER 1, 2015 AT 3:30 P.M. IS CHANGED TO A TELEPHONE CONFERENCE, ETC. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 11/30/2015. 11/30/2015 ENTERED AND COPIES E-MAILED.(lbs, ) (Entered: 11/30/2015) |
| 12/03/2015 | 25 | Minute Entry for proceedings held before HONORABLE JEFFREY L. SCHMEHL: Telephone Rule 16 Conference held on 12/1/15 Court Reporter: none. (er, ) (Entered: 12/03/2015) |
| 12/07/2015 | 26 | ORDER THAT ALL NAMED PARTIES SHALL BE DEPOSED BY NO LATER THAN |

| | | |
|---|---|---|
| | | 2/15/16. STATUS CONFERENCE SET FOR 2/16/2016 11:00 AM. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 12/7/15. 12/7/15 ENTERED AND COPIES EMAILED.(rf, ) (Entered: 12/07/2015) |
| 02/03/2016 | 27 | MOTION to Stay Deposition/Emergency Petition to Intervene filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO, Brief, Certificate of Service. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(DANIELS, ROBERT) Modified on 2/4/2016 (md). (Entered: 02/03/2016) |
| 02/17/2016 | 28 | ORDER THAT ALL DISCOVERY SHALL BE COMPLETED BY NO LATER THAN MAY 1, 2016. THAT A STATUS/SETTLEMENT CONFERENCE SHALL BE HELD ON THURSDAY, MAY 5, 2016 AT 10:00 A.M. IN THE CHAMBERS OF JUDGE JEFFREY L. SCHMEHL, ROOM 401, THE MADISON BUILDING, 400 WASHINGTON STREET, READING, BERKS COUNTY, PENNSYLVANIA. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 2/16/16. 2/17/16 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 02/17/2016) |
| 02/17/2016 | 29 | Minute Entry for proceedings held before HONORABLE JEFFREY L. SCHMEHL: Status Conference held on 2/16/16. Court Reporter: None. (er, ) (Entered: 02/17/2016) |
| 02/19/2016 | 30 | First MOTION for Order *to Attach Supplementla Exhibit to Motioin to Dismiss Plaintiff's Complaint* filed by CHRISTOPHER DISSINGER.. (Attachments: # 1 Concurrence, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Text of Proposed Order)(KROLL, ROLF) (Entered: 02/19/2016) |
| 02/29/2016 | 31 | ORDER THAT DEFENDANT'S MOTION IS GRANTED AND THE SUPERIOR COURT ORDER OF FEBRUARY 17, 2016, WITH CORRESPONDING OPINION OF THE TRIAL COURT, SHALL BE ATTACHED AS EXHIBIT "B" TO DEFENDANT DISSINGER'S MOTION TO DISMISS FOR CONSIDERATION BY THE COURT. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 2/25/16.2/29/16 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 02/29/2016) |
| 05/02/2016 | 32 | Consent MOTION for Extension of Time to Complete Discovery filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO.Certificate of Concurrence, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order)(REIHNER, GEORGE) (Entered: 05/02/2016) |
| 05/06/2016 | 33 | ORDER THAT DISCOVERY SHALL BE STAYED PENDING RULINGS ON DEFENDANTS' OUTSTANDING MOTIONS TO DISMISS. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 5/5/16. 5/6/16 ENTERED AND COPIES E-MAILED. (mas, ) (Entered: 05/06/2016) |
| 05/06/2016 | 34 | Minute Entry for proceedings held before HONORABLE JEFFREY L. SCHMEHL. Status/Settlement Conference held on 5/5/16. A Status/Settlement conference was held and not placed on the record. (mas, ) (Entered: 05/09/2016) |
| 06/03/2016 | 35 | MEMORANDUM OPINION. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 6/2/16. 6/06/16 ENTERED AND COPIES E-MAILED.(er, ) Modified on 6/6/2016 (er, ). (Entered: 06/06/2016) |
| 06/03/2016 | 36 | ORDER THAT THE MOTION OF DEFENDANT CHRISTOPHER DISSINGER TO DISMISS (DOC. 12) IS GRANTED. THE MOTION OF DEFENDANTS LANCASTER COUNTY, SCOTT F. MARTIN AND TODD E. BROWN TO DISMISS (DOC. 17) IS GRANTED. THE COMPLAINT IS DISMISSED WITH PREJUDICE. SIGNED BY HONORABLE JEFFREY L. SCHMEHL ON 6/2/16. 6/6/16 ENTERED AND COPIES E-MAILED.(er, ) (Entered: 06/06/2016) |

**18**

| 06/15/2016 | 37 | BILL OF COSTS by TODD E. BROWN, LANCASTER COUNTY PENNSYLVANIA, SCOTT F. MARTIN. (MACMAIN, DAVID) (Entered: 06/15/2016) |
| 06/15/2016 | 38 | BILL OF COSTS by CHRISTOPHER DISSINGER. (Attachments: # 1 Exhibit Documentation of Costs)(KROLL, ROLF) (Entered: 06/15/2016) |
| 07/01/2016 | 39 | NOTICE OF APPEAL as to 36 Order (Memorandum and/or Opinion), by MAWUYRAYRASSUNA EMMANUEL NOVIHO, Certificate of Service. Copies to Judge, Clerk USCA, Appeals Clerk. (REIHNER, GEORGE) Modified on 7/5/2016 (md). ( Filing Fee $505.00 Paid - Receipt # PPE143200 )Modified on 7/7/2016 (gs, ). (Entered: 07/01/2016) |
| 07/05/2016 | 40 | Clerk's Notice to USCA re 39 Notice of Appeal. (gs) (Entered: 07/05/2016) |
| 07/05/2016 |    | NOTICE of Docketing Record on Appeal from USCA re 39 Notice of Appeal filed by MAWUYRAYRASSUNA EMMANUEL NOVIHO. USCA Case Number 16-3047. (gs, ) (Entered: 07/06/2016) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/28/2016 11:32:04 | | |
| **PACER Login:** | wr0156:2663910:0 | **Client Code:** | Noviho |
| **Description:** | Docket Report | **Search Criteria:** | 5:15-cv-03151-JLS |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAWUYRAYRASSUNA<br>EMMANUEL NOVIHO, | : |
| | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO.: _____ |
| | : |
| LANCASTER COUNTY | : |
| PENNSYLVANIA, SCOTT F. | : |
| MARTIN, TODD E. BROWN, and | : |
| CHRISTOPHER DISSINGER, | : JURY TRIAL DEMANDED |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Mawuyrayrassuna Emmanuel Noviho, by his undersigned counsel, hereby complains of the above-named Defendants, as follows:

## I.    INTRODUCTION AND SUMMARY OF THE ACTION

1.    This is a civil rights action for damages brought by a young black male who lawfully emigrated from Togo, Africa to the United States approximately eight (8) years ago.  However, to further the personal, political and financial goals of a powerful Republican County Commissioner in Lancaster County, Defendant Scott Martin ("Martin"), Plaintiff Mawuyrayrassuna Emmanuel Noviho ("Noviho") was unlawfully charged with vehicular homicide and multiple related felonies concerning an automobile/tractor trailer crash that was, in fact,

caused by Martin's sister, Katie West ("West"). Tragically, West's husband and infant son were killed in the crash.

2.    At the time West rear-ended the tractor which Noviho was driving on State Route 222 in Lancaster County, Pennsylvania she was speeding and under the influence of heroin and other prescription medication. Also, none of the four (4) occupants in her vehicle were properly belted or restrained as required by law, including West's two (2) minor children. At no point in time before the crash did West attempt to brake or initiate any evasive action to avoid a collision. Quite simply, she drove her car straight into the rear of Noviho's truck at approximately 70 miles per hour while under the influence of an illicit drug and another prescription medication.

3.    Rather than having his sister held accountable for her acts, Martin, and those acting in concert with him, caused criminal prosecutors and detectives under his direct political influence and control to bring felony charges against Noviho, not West, for, inter alia, homicide by vehicle and aggravated assault by vehicle. Those charges, however, were based on knowingly false and irreconcilably conflicting statements of purported witnesses. As set forth more fully below, Defendant Christopher Dissinger ("Dissinger), a long-time friend of Defendant Martin, was the lead detective on the seven (7) month "investigation" into the crash. He was also a social media "friend" of West. When Defendant

2

Dissinger appeared before a magisterial district judge, the Honorable David P. Miller, to obtain a warrant for Noviho's arrest, Defendant Dissinger intentionally concealed the highly relevant facts regarding West's role and culpability in the crash. Defendant Dissinger also failed to disclose any of the material exculpatory and/or contradictory evidence that was uncovered during the seven (7) month "investigation" that he conducted with and under the direction and supervision of Defendant Assistant District Attorney Todd E. Brown ("Brown").

4.    Despite the serious nature of the charges being "investigated" by Defendants Brown and Dissinger, as well as other local law enforcement officers, West did not engage criminal defense counsel like she did for her many prior drug-related arrests. Rather, within days of the crash, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prepare and prosecute civil actions on behalf of West, her husband and her two (2) minor children. Upon information and belief, West did not engage defense counsel because Defendant Martin knew that Lancaster County's District Attorney, Craig W. Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes. He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate. Their relationship today remains cordial and they follow each other on social media. Further, upon information and belief, Defendant Martin exercised his personal and

3

political influence over the District Attorney, Defendant Brown and/or Defendant Dissinger to charge Noviho in order to materially enhance the value of the above-referenced civil actions. Noviho -- an emigrant from Togo, Africa with no similar political ties and/or high-profile friendships in the community -- was the unfortunate victim of this political conspiracy.

## II.    PARTIES

5.    Plaintiff Noviho is a competent adult individual residing at 388 Willow Bend Court, Newport News, Virginia 23608.

6.    Defendant Lancaster County, Pennsylvania ("Lancaster County") is a municipal corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a business address of 150 N. Queen Street, Lancaster, Pennsylvania 17603. At all times relevant hereto, the Lancaster County Commissioners, including Defendant Martin, established policies for and directed the affairs of Defendant Lancaster County.

7.    Defendant Martin is a competent adult individual residing in Lancaster County, Pennsylvania. At all times relevant hereto, Defendant Martin served as an elected Lancaster County Commissioner and, in that capacity, is a duly authorized policymaker of Lancaster County. Defendant Martin maintains a business address at 150 N. Queen Street, Seventh Floor, Suite 715, Lancaster, Pennsylvania 17603.

8.    Defendant Brown is a competent adult individual residing in Lancaster County, Pennsylvania.  At all times relevant hereto, Defendant Brown served as an Assistant District Attorney in Lancaster County, Pennsylvania. Defendant Brown maintains a business address at 50 North Duke Street, Fifth Floor, Lancaster, Pennsylvania 17608.

9.    Defendant Dissinger is a competent adult individual residing in Lancaster County, Pennsylvania.  At all times relevant hereto, Defendant Dissinger served as a Detective with the Manheim Township Police Department.  Defendant Dissinger maintains a business address at 1825 Municipal Drive, Lancaster, Pennsylvania 17601.

**III.    JURISDICTION AND VENUE**

10.    This Court possesses jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331 and 1343.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims set forth herein occurred in this district.

**IV.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.    The Crash**

12.    On November 12, 2012, Noviho was a truck driver for CR England, Inc.  On that date, Noviho was driving with another operator, Gregory Guerrier.

5

24

13.    At approximately 6:50 p.m. on Monday, November 12, 2012, Noviho was driving a 2012 Freightliner Cascadia northbound on Pennsylvania State Route 222 in Lancaster County, Pennsylvania.  Guerrier, his trainer, was in the passenger seat.  The conditions that evening were clear and dry.  The vehicle was not hauling a trailer.  Noviho and Geurrier were on their way to pick up a load for delivery.

14.    As Noviho was operating the vehicle, Guerrier noticed two switches on the tractor's dashboard in the off position; specifically, the airbag and axle differential switches.   Guerrier directed Noviho to pull over to the right hand shoulder of State Route 222 in order to flip the switches.  The tractor needed to come to a complete stop before that could be done.  The entire stop took less than thirty (30) seconds.  The headlights and taillights on the tractor remained on throughout the entire stop.

15.    After Noviho flipped the aforementioned switches, he turned on the vehicle's four way flashers and began to drive up the shoulder of the road in order to build speed to access the driving lane of State Route 222.  He did so and approximately 16 seconds after the tractor started moving, Noviho had accessed the right lane of State Route 222 traveling at approximately 17.5 miles per hour.

16.    At that same time, West, a known drug addict, was operating a 1996 Volkswagon Passat northbound on State Route 222 behind Noviho.  There were three (3) passengers in the Passat, Joshua West, West's husband who was also a

6

drug addict, Jocelyn West, West's daughter, and Joshua Charles West, West's infant son.  None of the passengers were belted or properly restrained as required by law.  Jocelyn West was on a booster seat that was not secured to the Passat, and Joshua Charles West was buckled into a car seat but the car seat was not secured to anything.

17.    As mentioned above, West was operating her vehicle at a rate of speed in excess of the posted limit.  She was also driving under the influence of heroin and methadone.  Her husband was also under the influence of morphine, if not heroin.

18.    As a result of the foregoing, West did not or could not pay proper attention to the roadway ahead and she drove her vehicle at 70 miles per hour straight into the rear of Noviho's tractor without attempting to brake or initiate any evasive maneuver.  Noviho and Guerrier felt the violent impact after which Noviho slowly pulled over on the right shoulder of Route 222 and turned off the vehicle's lights and engine and waited for first responders to arrive.

19.    The violent collision was catastrophic to the Passat.  After impact, the car flipped in the air and came to rest on its roof facing southbound in the northbound lane.  Joshua West died at the scene from multiple traumatic injuries.  The impact also violently propelled Joshua Charles West's unsecured car seat into the rear of the front right passenger seat causing depressed skull fractures and other

catastrophic injuries.    Although Joshua Charles West was removed from the vehicle and rushed to Lancaster General Hospital and then Penn State Hershey Medical Center, he died on November 12, 2012.    West suffered multiple injuries for which she has received treatment.    Jocelyn West, miraculously, was uninjured.

**B.    Crash Scene Activity and Initial Investigation**

20.    Noviho was stunned and shaken by the crash.    He stayed in the tractor resting his head in his hands on the steering wheel.    Shortly after the tractor pulled off the road, a woman and her husband (unknown to Noviho) arrived at the tractor to check on Noviho and Guerrier.    She told Noviho to remain in the tractor until medical personnel arrived.    She also told him that the vehicle that hit them was speeding and driving erratically.

21.    Manheim Township Police Officer David Onda next approached the tractor speaking first to Guerrier who advised the officer that they were struck from behind.    Guerrier indicated that he was not injured and Officer Onda then proceeded to check on Noviho.    When Noviho did not respond regarding his injuries, Officer Onda directed Noviho to remain in the tractor and then he would have an ambulance dispatched for him.

22.    Medical personnel quickly arrived at the crash scene.    Both Noviho and Guerrier were examined at the scene and transported to Lancaster General

8

Hospital for further evaluation and treatment.   West and her children were also transported to the same hospital.

23.   At approximately 8:20 p.m. on November 12, 2012, Defendant Dissinger approached Noviho at the hospital and asked Noviho if he could speak with him about the crash.  Noviho agreed and he briefly described the accident and gave Defendant Dissinger some information regarding the events of the day.  After Defendant Dissinger spoke with Noviho, Defendant Dissinger contacted Defendant Brown who directed him to get a blood sample from Noviho.  Dissinger requested Noviho's consent for the blood sample and Noviho agreed.   When the test results were obtained, they confirmed Noviho's statement to Defendant Dissinger that he was not under the influence of alcohol or any drug at the time of the crash.

24.   While Defendant Dissinger was interviewing Noviho, another Manheim Township Police Officer, Detective Robert Beck, requested permission to interview Guerrier.  Based on Defendant Dissinger's and Beck's interviews at the hospital, they were advised of and aware of, inter alia, the following:

   a. a woman told Noviho that the car that hit him was speeding and driving erratically;

   b. that there was a car proceeding northbound on State Route 222 about three (3) to four (4) car lengths ahead of them which was illuminating the road;

   c. that it was very dark outside and that Noviho was driving the tractor with the headlights and taillights activated;

9

28

> otherwise they could not have seen where they were going; and
>
> d. Noviho had pulled off State Route 222 in order to flip the above-referenced switches and that he was struck from the rear very shortly after accessing the driving lane of State Route 222.

These material facts, and many others, were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and charges were filed against Noviho. In fact, during this extended "investigation", Defendant Martin and West's high-profile civil attorney met with various representatives of the District Attorney's office, including Stedman and Defendant Brown. Again, upon information and belief, during this time, Defendant Martin and those acting in concert with him, lobbied for criminal charges to be filed against Noviho, not West and, in doing so, wrongfully abused their personal and political influence with Dissinger, Brown and Stedman. The last meeting with Stedman and Brown was shortly before charges were filed against Noviho. Again, those charges were filed for the purpose of enhancing the value of West's and the Martin family's now pending civil actions.

25.    On June 7, 2013, Defendant Dissinger presented an arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Judge Miller for approval. Both of those documents were prepared with the aid and assistance of Defendant Brown who lead, directed and/or supervised the seven (7) month

"investigation". Judge Miller approved the request and Noviho was charged, as follows:

> Offense 1 – Homicide by Vehicle (2 counts)
>
> Offense 2 – Aggravated Assault by Vehicle (1 count)
>
> Offense 3 – Periods for requiring lighted lamps (1 count)
>
> Offense 4 – Minimum Speed Regulation (1 count)
>
> Offense 5 – Vehicular hazard signal lamps (1 count)
>
> Offense 6 – Moving stopped or parked vehicle (1 count)

26.     Unfortunately, Judge Miller made his decision based on a knowingly false and materially misleading affidavit of probable cause. As set forth more fully below, had a truthful account of the crash been presented to Judge Miller, West, not Noviho, would have and should have been charged, and the value of the West-Martin family civil actions would have plummeted, perhaps to zero.

### C.     What a Fair and Impartial Judge Would Have Wanted to Know About the Crash Before Issuing an Arrest Warrant

27.     First, West was not travelling sixty-five (65) miles per hour at the time of the crash as represented by Defendant Dissinger. James Schlinkman ("Schlinkman"), a purported witness to the accident, admitted to police on November 12, 2012, that he was travelling seventy (70) miles per hour behind West's vehicle and that he was not gaining ground on her Passat. Dissinger's

11

affidavit of probable cause was knowingly contrived to create the false impression for Judge Miller that West was operating her Passat within the posted speed limit.

28.    Second, West was operating her vehicle under the influence of heroin and other prescription medication, and that a burnt spoon used for heating heroin was found in her purse at the crash site. West's front seat passenger, Joshua West, was also under the influence of morphine, if not heroin, at the time of the crash.

29.    Defendant Dissinger and Defendant Brown's decision to conceal, withhold and/or omit the foregoing from Judge Miller was made to prevent him from considering West's unlawful conduct and culpability in rendering his decision relating to probable cause to charge Noviho. Had Judge Miller known the truth about the crash, he may have determined that West's speed and drug-impaired state prevented her from perceiving and avoiding the collision with Noviho's vehicle.

30.    Third, that West made no effort to brake or take any evasive action before the crash. Rather, she drove her Passat straight into the rear of Noviho's tractor at seventy (70) miles per hour. Defendants Dissinger and Brown elected to tell Judge Miller only that West did not have time to appropriately perceive and react to Noviho's tractor. There is a huge difference between telling Judge Miller that West did not have time to appropriately perceive and react to Noviho's tractor and telling him that West failed to do anything to avoid the crash. Judge Miller

may well have determined that West's total failure to brake or attempt to initiate any evasive maneuver was caused by West's excessive speed and illegal drug use. After all, without regard to whatever lights may or may not have been illuminated on Noviho's tractor, West was operating her Passat with her headlights on and Noviho's tractor had reflectors and red and white reflective tape as required by federal regulation. Defendants Dissinger and Brown knew, based on prior experience, that the federally mandated reflectors and red and white reflective tape can be perceived at distances in excess of one thousand (1000) feet, more than three (3) football fields, by an unimpaired and alert driver.

31. Fourth, that West's children were not properly restrained and/or secured in safety or booster seats as mandated by Pennsylvania law. Despite the foregoing, Defendants Dissinger and Brown contrived their affidavit of probable cause to create the knowingly false impression that West's children were properly restrained. They did so to prevent Judge Miller from considering West's culpability for the crash. Specifically, they represented to Judge Miller that Joshua Charles West "was in a child safety seat in the right rear passenger seat" and Jocelyn Marie West "was in a booster seat in the left rear passenger's seat" at the time of the crash. While literally true, Defendants Dissinger and Brown intentionally failed to advise Judge Miller of the material fact that neither child's seat was secured in any way to the Passat and that Joshua Charles West suffered

depressed skull fractures and other fatal injuries when the force of the crash propelled his unsecured car seat into the rear of Joshua West's front passenger seat. Had Judge Miller been advised of the truth regarding the car seats and the cause of Joshua Charles West's death, he may have determined that West, not Noviho, was legally culpable for the deaths of her two (2) family members.

32.    Fifth, that three (3) witnesses (Schlinkman, Guerrier and Noviho) advised police on November 12, 2012 that a woman at the crash scene reported that West's Passat was travelling erratically and at an excessive rate of speed prior to the crash. Defendants Dissinger and Brown decided to conceal, withhold and/or omit that fact from Judge Miller to shield West's culpability from judicial scrutiny in this matter.

33.    Sixth, that Defendant Dissinger presented as unchallenged the averment to Judge Miller that Noviho's vehicle was travelling in total darkness on State Route 222 without any headlights, taillights or other illumination. In contrast, both Noviho and Guerrier represented to the police on November 12, 2012 -- the only time law enforcement spoke to either of them before the June 7, 2013 charges were filed -- that the tractor's headlights and taillights were illuminated at all times with respect to the crash and that the tractor's four-way flashers were engaged while Noviho was driving on the right-hand shoulder of State Route 222. Defendant Dissinger did so by accepting as true the statements of

14

three (3) purported witnesses, West, Schlinkman and Schlinkman's sister, Michelle Levitsky, and rejecting as false the statements of Noviho and Guerrier. However, Defendants Dissinger and Brown knew by June 7, 2013 that neither West, Schlinkman nor Levitsky were credible, consistent or otherwise worthy of belief. Moreover, on significant issues, their statements were inherently irreconcilable.

34.    Although law enforcement only spoke to Noviho at Lancaster General Hospital on the evening of November 12, 2012 before charging him on June 7, 2013, law enforcement met with West, Schlinkman and Levitsky multiple times during the "investigation" and subsequent criminal prosecution. During those meetings, the statements of the witnesses changed on material issues but Defendants Dissinger and Brown elected to ignore same, just as they elected to conceal from Judge Miller the statements of Noviho and Guerrier. Additionally, Defendant Brown and West's and the Martin family's civil lawyer communicated regularly throughout the investigation and Noviho's criminal proceedings.

D.    **As of June 7, 2013, Defendants Dissinger and Brown knew that West, Schlinkman and Levitsky were not credible or worthy of Belief**

1.    **West**

35.    Starting with her initial interview with law enforcement on November 12, 2012, West began telling a series of lies that by June 7, 2013, Defendants Dissinger and Brown knew were false. For example, on November 16, 2012, she

told Detective Berntheizel that she never took her children with her to pick-up her husband -- except on November 12, 2012. However, Joshua West's boss, Donald Gochenaur, confirmed for law enforcement that West regularly picked up Joshua West after work and their children were always in the car with her. West was never confronted with the foregoing inconsistency. More significantly, West told law enforcement that she recalled getting on State Route 222 and the next thing she recalled was being upside down and she did not know how that happened. The foregoing was the only interview conducted of West without West's and the Martin family's personal injury lawyer being present. Significantly, after her civil attorney appears, West's story materially changed but law enforcement never confronted West about her new-found recollection.

36.    On December 20, 2012 and December 21, 2012, law enforcement interviewed West. West's father, a retired law enforcement officer, and West's civil attorney were present for the interviews. At that time, West suddenly recalled "something hit her or she hit something that was like black out of nowhere."

37.    West also advised Detectives Schultz and Berntheizel that all four (4) occupants of the Passat were properly belted and restrained. In that regard, West indicated that the car/safety seats were properly secured to the car and her children were always buckled in. Based on law enforcement's physical inspection of the Passat, Defendants Dissinger and Brown knew that West's statements were false

16

but she was never confronted with same. Finally, West advised the detectives that she had not used heroin since early 2012.

38.    On May 10, 2013, Defendant Dissinger and Detective Schultz re-interviewed West with the Martin family's civil attorney. At that time, West maintained her position that she had not used heroin on the day of the crash. She did, however, change her initial story by acknowledging that she had last used heroin on September 6, 2012, during a one week relapse in her recovery. At the time West changed her story, Defendants Dissinger and Brown knew that West's statement was false because blood tests confirmed that West used heroin shortly before the crash. Significantly, at this interview, West could no longer recall the crash. She only remembered that it was raining (which it was not) and that when she woke up she was upside down.

39.    During her May 10, 2013 re-interview, West advised Defendant Dissinger and Detective Schultz that shortly before the crash she recalled a car passing her on the left. However, despite her headlights and the headlights from that passing car, West continued to maintain that she did not see any lights or reflectors to her front as she continued northbound.

40.    In further support of Noviho's belief that West used heroin on the day of the crash, Defendants Dissinger and Brown knew that Donald Gochenaur paid Joshua West $100.00 in cash for his work on November 12, 2012. They also knew

17

36

that Gochenaur gave Joshua West $40.00-$50.00 to pick up some things for the following day. Although Joshua West was in possession of at least $140.00 when they left the job site in the Passat, only $21.00 was recovered from his wallet when his personal effects were inventoried. Based on West's interview of December 20, 2012, Defendants Dissinger and Brown were told that the Wests went from the job site to a local Turkey Hill for gas and coffee before they all went to eat at McDonalds. As per West, they made no other stops. At her May 10, 2013 interview, West's story somewhat changed. Now, West's first stop was a local Gulf station, not Turkey Hill, for gas and cigarettes, not coffee and gas. Additionally, West stated that only the two (2) children ate at the McDonalds. Whichever account is correct, West and her husband did not spend more than $120.00 at those two stops. Although West denied making any other stops prior to the crash, upon information and belief, West and Joshua West made another stop where they purchased and used heroin. That additional stop explains the missing money in Joshua West's wallet and the presence of heroin in West's blood at the time of the crash.

### 2.    Schlinkman and Levitsky

41.    As previously stated, Schlinkman purports to have witnessed the crash between West and Noviho. In that regard, Schlinkman indicated to law enforcement that he witnessed the crash, checked on the condition of the Passat

occupants before deferring to an EMT who arrived on scene, and directed a woman to tell the operator of the truck to remain at the crash site. He also claimed to have heard a woman at the crash scene say that the Passat was speeding and being operated in an erratic manner prior to the crash. Schlickman left the crash site as first responders were arriving because he was concerned that his black vehicle, which was parked in the grass median, could be hit.

42.    When Schlickman arrived at his destination -- his mother's home -- he called the Manheim Township Police Department to report that he witnessed the crash. He reported to Sargent Melhorn that Noviho's truck had been on the shoulder of State Route 222 and was in the process of re-entering the road shortly before the crash. He also reported that the truck did not have any lights on and was travelling very slowly. Sargent Melhorn promptly dispatched Detective Brian Freysz to interview Schlinkman. Sargent Melhorn also contacted Detectives Dissinger and Beck at Lancaster General Hospital to advise them about his discussion with Schlinkman. Based on Saregnt Melhorn's update, the detectives re-interviewed Noviho and Guerrier. During the re-interview, Guerrier acknowledged that they had pulled off the road to flip the above-referenced switches but they had re-entered the right lane of State Route 222 prior to the crash. He also re-confirmed that the truck's headlights and taillights were illuminated at all times related to their re-entry onto State Route 222.

19

43.    At approximately 10:30 p.m. on November 12, 2012, Detective Freysz interviewed Schlinkman.    At that time, Schlinkman advised the detective that he was travelling seventy (70) miles per hour in the left-hand lane about one hundred (100) yards behind West's Passat at the time of the crash.   He also stated that he was not gaining any ground on the Passat so he was in the process of moving to the right lane when the crash occurred.

44.    While Schlinkman, at all times, reported that he did not see any lights, red and white reflective tape or other reflectors on the tractor prior to the crash, his recall of the crash has varied considerably through the investigation and criminal trial of Noviho.

45.    Schlinkman's first material shift of position occurred between the time he first spoke to Sargent Melhorn and his interview shortly thereafter with Detective Freysz.    At that interview, rather than maintaining his position that Noviho's tractor was slowly re-entering the roadway from the right shoulder of State Route 222, Schlinkman told Detective Freysz that the first time he saw the truck it was squarely in the right-hand lane and he believed the truck was standing still.  Schlinkman disavowed any knowledge of seeing the truck on the shoulder or as it re-entered State Route 222.   But for Schlinkman's initial report, Detectives Dissinger and Beck would have had no reason to re-interview Noviho and Guerrier.  Upon information and belief, Schlinkman's story changed to shorten the

20

period of time that he -- and West -- had to perceive Noviho's tractor and react accordingly.

46.    Over time, Schlinkman's representations regarding his distance from the Passat at the time of the crash also materially changed.  From his initial one hundred (100) yard estimate, Schlinkman went to fifty (50) yards, to no more than forty (40) yards to ultimately being nearly side by side the Passat at the time of the crash.    Because he was giving law enforcement what Defendants wanted, Schlinkman was never challenged regarding his inconsistencies and Judge Miller was never advised of same.

47.    On another material issue, Schlinkman rejected the suggestion that there were other northbound cars ahead of him, West and Noviho's tractor.  By doing so, Schlinkman portrayed the scene as very, very dark and the only lights able to illuminate the area were West's and his.  Schlinkman's recollection is at odds with Noviho, Guerrier and, more importantly, West, all of whom place another northbound vehicle ahead of Schlinkman and West.  Upon information and belief, the headlights of that passing vehicle illuminated Noviho's tractor on the shoulder of State Route 222 as Schlinkman initially reported to law enforcement.

48.    Schlinkman's recollection that he did not see the truck until he was immediately upon it and West's Passat was flipping in the air as he passed it in the left lane cannot be reconciled with the facts.  Schlinkman indicated that he came to

21

a controlled stop and pulled into a grass median approximately forty (40) to fifty (50) yards beyond the crash site. Schlinkman could not have done so within that forty (40) to fifty (50) yard distance given his seventy (70) mile per hour speed at the time of the crash.

49.    Schlinkman was also insistent that Noviho's truck did not have working headlights, taillights, red and white reflective tape or other reflectors. Again, Schlinkman's recollection is inconsistent with the facts.    Law enforcement's inspection of the truck revealed both reflectors and red and white reflective tape on the truck. On the tractor that Noviho was driving, the red and white reflective tape is on the top and entire perimeter of the tractor but the reflectors and taillights are low and centered between the tires. As such, if Schlinkman was travelling one hundred (100) yards behind West in the left lane -- or even fifty (50) yards --- it is more probable than not that West's Passat would have blocked any view by Schlinkman of the truck's reflectors or taillights. As to the reflective tape, despite Schlinkman's claim that the tractor had none, Defendants Dissinger and Brown knew that the tractor had more red and white reflective tape than was required by federal regulation. Schlinkman was either too far behind the Passat to view the tape, he was not paying attention to the roadway ahead, or, for reasons unknown to Noviho, his oft-changing account of the crash was false, intentionally or otherwise.

50.    Finally, Schlinkman's flip-flopping regarding his sister's knowledge of the crash further undermines his credibility.    Specifically, like her brother, Michelle Levitsky ("Levitsky") was travelling home on State Route 222 after having had dinner at a local restaurant with her husband, mother and Schlinkman on November 12, 2012.    She was behind her brother.    Levitsky also stopped at the crash site.    At all times prior to Noviho's arrest, Schlinkman told law enforcement that his sister and brother-in-law were too far behind him on State Route 222 to have witnessed the crash.    However, when Levitsky was finally interviewed by law enforcement months after the crash, she indicated that she was two (2) to three (3) car lengths behind the Passat when she saw and heard the crash.    She even told law enforcement that she had to take evasive action to avoid a collision.    She then told law enforcement that her brother was ahead of her on State Route 222 but she did not know how far ahead.    Defendants Dissinger and Brown never confronted Schlinkman or Levitsky with their inconsistent and irreconcilable accounts. Similarly, they concealed the same from Judge Miller.

51.    Schlinkman's response to Levitsky's account was to, once again, change his story.    At the preliminary hearing, Schlinkman testified that Levitsky was behind him but he did not know how far behind she was.    Then, when Levitsky finally testified in this matter, she abandoned her earlier position that she

23

both saw and heard the crash from a distance of two (2) to three (3) car lengths and testified that she was too far behind her brother to see the crash.

## COUNT I
### 42 U.S.C. § 1983
### Unlawful Seizure/Wrongful Arrest - False Imprisonment
### Plaintiff v. Defendant Dissinger

52.    The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

53.    As set forth more fully above, Noviho was arrested and detained by Defendant Dissinger after being charged with the serious criminal offenses identified above.   Noviho's arrest and detainment constitute a seizure and/or deprivation of liberty within the meaning of the Fourth Amendment to the United States Constitution.

54.    At all times relevant to conduct complained of herein, Defendant Dissinger acted in his individual capacity and under color of state law.   Moreover, Defendant Dissinger personally directed, participated, assisted, knew of, ratified and/or acquiesced in said conduct.

55.    As further set forth more fully above, Noviho's arrest and detainment were initiated without probable cause in that the facts and circumstances available to Defendant Dissinger were clearly insufficient to warrant a reasonably prudent officer to believe that Noviho committed the serious and stigmatizing criminal offenses for which he was so charged.   In fact, Defendant Dissinger was supposed

to be specially trained in criminal investigations, interview and interrogation techniques, and statement analysis and, pursuant to that training, should have known that there was no basis to arrest and detain Noviho under said facts and circumstances.

56.    Because he was aware that he had no basis in law or fact to initiate criminal proceedings against Noviho, Defendant Dissinger crafted an affidavit of probable cause wherein he knowingly and/or deliberately, or with a reckless disregard for the truth, concealed/omitted/ignored/withheld material facts and/or exculpatory/contradictory evidence while, at the same time, including statements that he knew or should have known were false and/or not credible or trustworthy, for the sole purpose of procuring the unlawful arrest of Noviho for which he otherwise lacked probable cause. The manner in which he did so is set forth in greater and specific detail above.

57.    In fact, the evidence of record demonstrates that Defendant Dissinger inserted into the affidavit of probable cause only those facts which were allegedly incriminating to Noviho, and then concealed, ignored, withheld and/or omitted all of the inconsistencies, material facts and/or exculpatory/contradictory evidence which tended to prove Noviho's innocence.

58.    Defendant Dissinger did so for the purpose of convincing a magistrate judge to issue a warrant for Noviho's arrest.

59.    Indeed, any reasonable person would know that a judge would want to know and/or be made aware of said inconsistencies, material facts and/or exculpatory/contradictory evidence in making a probable cause determination for Noviho's arrest.

60.    To protect against the danger of unlawful arrest, it is well-established that investigative officers cannot make unilateral decisions about the materiality of information or, after satisfying himself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

61.    Likewise, an investigative officer contemplating an arrest is not free to disregard plainly exculpatory and contradictory evidence, even if substantial inculpatory evidence, standing by itself, suggests that probable cause exists.

62.    Defendant Dissinger's conduct as aforesaid constitutes an unlawful seizure and/or false imprisonment in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

63.    Noviho's constitutional right not to be arrested and/or detained without probable cause was clearly established and known by Defendant Dissinger at all times relevant to the conduct giving rise this action.

64.    The Approved box for the Office of the Attorney for the Commonwealth was checked solely to satisfy department and/or county policy.

65.    Moreover, Defendant Dissinger's unlawful arrest and/or detainment was willful, wanton, malicious and taken with a reckless or callous disregard for Noviho's clearly established constitutional rights as aforesaid.

66.    As a direct and proximate result of Defendant Dissinger's violations as aforesaid, Noviho has suffered -- and continues to suffer -- substantial damages and life-altering effects.

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendant Dissinger, together with compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

### COUNT II
### 42 U.S.C. § 1983
### Unlawful Seizure/Wrongful Arrest – False Imprisonment
### Plaintiff v. Defendant Brown (Investigative Capacity Only)

67.    The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

68.    As set forth more fully above, Noviho was arrested and detained after being charged with the serious criminal offenses identified above. Noviho's arrest and detainment constitute a seizure and/or deprivation of liberty within the meaning of the Fourth Amendment to the United States Constitution.

69.    The claim advanced against Defendant Brown in this Count is not based on any acts and/or missions of Defendant Brown during the post-arrest

27

prosecution of Noviho. Rather, said claim is based on the acts and/or omissions of Defendant Brown during his pre-arrest investigation into the criminal offenses eventually filed against Noviho.

70.    As set forth more fully above, Defendant Brown served as an Assistant District Attorney of Lancaster County assigned to handle all aspects of the investigation into the events in question, including the preliminary investigation prior to the initiation of any criminal charges against Noviho.

71.    At all times during his preliminary investigation, Defendant Brown acted in his individual capacity, under color of state law and within the course and scope of his investigatory duties as an Assistant District Attorney of Lancaster County.

72.    Defendant Brown was directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation.

73.    In fact, because of the high-profile nature of the case, Defendant Brown played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information, statements and/or other evidence obtained by law enforcement personnel.

74. More importantly, Defendant Brown actively participated, collaborated and/or assisted other law enforcement personnel in discussing and reviewing the evidence and, together, made a collective decision about whether there was probable cause to make an arrest and what information should be included in the Affidavit of Probable Cause prior to the initiation of any criminal proceedings against Noviho.

75. In his capacity as an investigator, Defendant Brown likewise knowingly and/or deliberately, or with a reckless disregard for the truth, concealed/ignored/withheld/omitted material facts and/or exculpatory and/or contradictory evidence from the Affidavit of Probable Cause, while at the same time, including statements that he knew or should have known were false or not credible or trustworthy, for the sole purpose of procuring the unlawful arrest of Noviho for which he otherwise lacked probable cause. The manner in which he did so is set forth in greater and specific detail above.

76. In fact, the evidence of record demonstrates that Defendant Brown knew that the affidavit of probable cause contained only those facts which were allegedly incriminating to Noviho, but concealed, ignored, withheld and/or omitted all of the inconsistencies, material facts and/or exculpatory/contradictory evidence which tended to prove Noviho's innocence.

77.    Defendant Brown knew that this would convince a magistrate judge to issue a warrant for Noviho's arrest.

78.    Indeed, any reasonable person would know that a judge would want to know and/or be made aware of said inconsistencies, material facts and/or exculpatory/contradictory evidence in making a probable cause determination for Noviho's arrest.

79.    To protect against the danger of unlawful arrest, it is well-established that investigative officers cannot make unilateral decisions about the materiality of information or, after satisfying himself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

80.    Likewise, an investigative officer contemplating an arrest is not free to disregard plainly exculpatory and contradictory evidence, even if substantial inculpatory evidence, standing by itself, suggests that probable cause exists.

81.    Defendant Brown's conduct as aforesaid constitutes an unlawful seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

82.    Noviho's constitutional rights as aforesaid were clearly established and known by Defendant Brown at all times relevant to the conduct giving rise this action.

83.    Moreover, Defendant Brown's conduct as aforesaid was willful, wanton, malicious and taken with a reckless or callous disregard for Noviho's clearly established constitutional rights.

84.    As a direct and proximate result of Defendant Brown's violations as aforesaid, Noviho has suffered -- and continues to suffer -- substantial damages and life-altering effects.

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendant Brown, together with compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

## COUNT III
## 42 U.S.C. § 1983
## Malicious Prosecution
## Plaintiff v. Defendant Dissinger

85.    The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

86.    As set forth more fully above, Defendant Dissinger initiated criminal proceedings against Noviho by preparing, filing and/or presenting a sworn and signed criminal complaint and affidavit of probable cause against Noviho charging him with the criminal offenses identified above.

31

87.   As a consequence of the criminal proceedings initiated by Defendant Dissinger, Noviho suffered a seizure and/or deprivation of his liberty within the meaning of the Fourth Amendment to the United States Constitution.

88.   At all times relevant to conduct complained of herein, Defendant Dissinger acted in his individual capacity and under color of state law.  Moreover, Defendant Dissinger personally directed, participated, assisted, knew of, ratified and/or acquiesced in the criminal proceedings initiated against Noviho.

89.   As further set forth more fully above, Defendant Dissinger initiated the criminal proceedings against Noviho without probable cause in that the facts and circumstances available to Defendant Dissinger were clearly insufficient to warrant a reasonably prudent officer in believing that Noviho committed the serious and stigmatizing criminal offenses for which he was so charged.  In fact, Defendant Dissinger was supposed to be specially trained in criminal investigations, interview and interrogation techniques, and statement analysis and, pursuant to that training, should have known that there was no basis to initiate criminal proceedings against Noviho under said facts and circumstances.

90.   Because he was aware that he had no basis in law or fact to initiate criminal proceedings against Noviho, Defendant Dissinger crafted an affidavit of probable cause wherein he knowingly and/or deliberately, or with a reckless disregard for the truth, concealed/ignored/withheld/omitted material facts and/or

exculpatory/contradictory evidence while, at the same time, including statements that he knew or should have known were false or not credible or trustworthy, for the sole purpose of procuring the unlawful arrest and prosecution of Noviho for which he otherwise lacked probable cause. The manner in which he did so is set forth in greater and specific detail above.

91.    In fact, the evidence of record demonstrates that Defendant Dissinger inserted into the affidavit of probable cause only those facts which were allegedly incriminating to Noviho, and then concealed, ignored, withheld and/or omitted all of the inconsistencies, material facts and/or exculpatory/contradictory evidence which tended to prove Noviho's innocence.

92.    Defendant Dissinger did so for the purpose of convincing a magistrate judge to issue a warrant for Noviho's arrest.

93.    Indeed, any reasonable person would know that a judge would want to know and/or be made aware of said inconsistencies, material facts and/or exculpatory/contradictory evidence in making a probable cause determination for Noviho's arrest.

94.    To protect against the danger of unlawful arrest, it is well-established that investigative officers cannot make unilateral decisions about the materiality of information or, after satisfying himself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

95.    Likewise, an investigative officer contemplating an arrest is not free to disregard plainly exculpatory and contradictory evidence, even if substantial inculpatory evidence, standing by itself, suggests that probable cause exists.

96.    By initiating said criminal proceedings against Noviho without probable cause under the aforesaid circumstances and in the aforesaid manner, Defendant Dissinger acted maliciously towards Noviho or, for the reasons stated above, for a purpose other than bringing Noviho to justice.

97.    Indeed, it is well-established that malice may be inferred from the absence of probable cause.

98.    Moreover, as referenced above, the criminal proceedings initiated against Noviho by Defendant Dissinger ultimately terminated in Noviho's favor.

99.    Defendant Dissinger's conduct as aforesaid constitutes a malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

100.    Noviho's constitutional right to be free from malicious prosecution was clearly established and known by Defendant Dissinger at all times relevant to the conduct giving rise this action.

101.    The Approved box for the Office of the Attorney for the Commonwealth was checked solely to satisfy department and/or county policy.

34

102.   Moreover, Defendant Dissinger's unlawful conduct was willful, wanton, malicious and taken with a reckless or callous disregard for Noviho's clearly established constitutional rights as aforesaid.

103.   As a direct and proximate result of Defendant Dissinger's violations as aforesaid, Noviho has suffered -- and continues to suffer -- substantial damages and life-altering effects.

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendant Dissinger, together with compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

**COUNT IV**
**42 U.S.C. § 1983**
**Conspiracy to Violate Civil Rights**
**Unlawful Seizure/Wrongful Arrest – False Imprisonment**
**Plaintiff v. Defendants Dissinger, Brown (Investigative Capacity Only) &**
**Martin**

104.   The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

105.   In the manners set forth more fully above, Defendants Dissinger, Brown and Martin conspired to violate Noviho's constitutional rights under the Fourth Amendment to be free from unlawful seizure.

106.   During the seven (7) month investigation starting in November 2012 and prior to the filing of charges against Noviho in June 2013, Defendant Martin

35

exerted his political influence and control over Defendants Brown and Dissinger and, in doing so, each conspired, plotted, agreed and/or understood that no criminal charges would be filed against Defendant Martin's sister, West. Instead, they each plotted, planned, agreed and/or understood that criminal charges would be filed against Noviho despite the lack of probable cause to do so.

107. This agreement, plot, plan and/or understanding would insulate Defendant Martin's sister from judicial and public scrutiny, while at the same time enhancing the value of her civil action as stated move fully above, all at the unfortunate expense of Noviho.

108. At all times relevant to the aforesaid conspiracy, Defendants Dissinger, Brown and Martin acted in concert/nexus with one another and/or jointly participated in, directed, assisted, knew of, ratified or acquiesced in all acts committed in furtherance of said conspiracy.

109. More specifically, Defendants Dissinger, Brown and Martin were each voluntary participants in the conspiracy, understood the general objectives of the plan, and then agreed, either explicitly or implicitly, to do their part and take acts to further those objectives. Where there was a duty to act, Defendants Dissinger, Brown and Martin refrained from acting in a manner intended to facilitate the plan/conspiracy.

110.   The acts and/or omissions of Defendants Dissinger, Brown and Martin as aforesaid constitute a wrongful combination or agreement to deprive Noviho of his clearly established constitutional rights as aforesaid.

111.   Moreover, at all times relevant hereto, the conspiratorial conduct engaged in by Defendants Dissinger, Brown and Martin was willful, wanton, malicious and taken with a reckless or callous disregard for Noviho's constitutional rights as aforesaid.

112.   As a direct and proximate result of the conspiratorial acts of the Defendants Dissinger, Brown and Martin as aforesaid, Noviho has suffered -- and continues to suffer -- substantial damages and life-altering effects.

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendants Dissinger, Brown and Martin, jointly and/or severally, together with compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

### COUNT V
### 42 U.S.C. § 1983
### Conspiracy to Violate Civil Rights
### Malicious Prosecution
### Plaintiff v. Defendants Dissinger & Martin

113.   The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

37

114.  In the manners set forth more fully above, Defendants Dissinger and Martin conspired to violate Noviho's constitutional rights under the Fourth Amendment to be free from malicious prosecution.

115.  During the seven (7) month investigation starting in November and prior to the filing of charges against Noviho in June, Defendant Martin exerted his political influence and control over Defendant Dissinger and, in doing so, they conspired, plotted, agreed and/or understood that no criminal charges would be filed against Defendant Martin's sister, West.  Instead, they plotted, planned, agreed and/or understood that criminal charges would be filed against Noviho despite the lack of probable cause to do so.

116.  This agreement, plot, plan and/or understanding would insulate Defendant Martin's sister from judicial and public scrutiny, while at the same time enhancing the value of her civil action as stated move fully above, all at the unfortunate expense of Noviho.

117.  At all times relevant to the aforesaid conspiracy, Defendants Dissinger and Martin acted in concert/nexus with one another and/or jointly participated in, directed, assisted, knew of, ratified or acquiesced in all acts committed in furtherance of said conspiracy.

118.  More specifically, Defendants Dissinger and Martin were each voluntary participants in the conspiracy, understood the general objectives of the

38

plan, and then agreed, either explicitly or implicitly, to do their part and take acts to further those objectives. Where there was a duty to act, Defendants Dissinger, and Martin refrained from acting in a manner intended to facilitate the plan/conspiracy.

119. The acts and/or omissions of Defendants Dissinger and Martin as aforesaid constitute a wrongful combination or agreement to deprive Noviho of his clearly established constitutional rights as aforesaid.

120. Moreover, at all times relevant hereto, the conspiratorial conduct engaged in by Defendants Dissinger and Martin was willful, wanton, malicious and taken with a reckless or callous disregard for Noviho's constitutional rights as aforesaid.

121. As a direct and proximate result of the conspiratorial acts of the Defendants Dissinger and Martin as aforesaid, Noviho has suffered -- and continues to suffer -- substantial damages and life-altering effects.

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendants Dissinger and Martin, jointly and/or severally, together with compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

### COUNT VI
### 42 U.S.C. § 1983
#### *Monell* Liability Based on Act Policymaker
#### Plaintiff v. Defendant Lancaster County

122.  The preceding paragraphs of this Complaint are incorporated herein by reference as though fully set forth.

123.  As referenced above, Defendant Martin at all times served as an elected Commissioner of Lancaster County and, in that capacity, at all times acted as a duly authorized policymaker of Lancaster County for purposes of municipal liability.  At all times relevant hereto, Defendant Martin personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

124.  It is well-established that municipal liability exists when a claim is predicated upon the actions or inactions of a municipality's duly authorized policymakers.

125.  To this end, the claim advanced against Lancaster County in this Count is not based on a theory of Respondeat Superior.  Rather, said claim is based on the acts and/or omissions of Defendant Martin in his capacity as a policymaker for Lancaster County as set forth in detail above.

126.  Accordingly, Lancaster County is subject to liability for the aforesaid acts or omissions of Defendant Martin in his capacity as a duly authorized policymaker of Lancaster County.

40

WHEREFORE, Plaintiff Mawuyrayrassuna Emmanuel Noviho demands judgment on this Count in his favor and against Defendant Lancaster County, together with compensatory damages, interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

Respectfully submitted,

WRIGHT & REIHNER, P.C.

By: George A. Reihner
Frank J. Tunis, Jr.
148 Adams Avenue
Scranton, PA 18503
(570) 961-1166
(570) 961-1199 — fax

Dated: June 5, 2015                          Attorneys for Plaintiff

41

Case 5:15-cv-03151-LS   Document 1-1   Filed 06/05/15   Page 1 of 1

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Mawuyrayrassuna Emmanuel Novlho | Lancaster County Pennsylvania, Scott F. Martin, Todd E. Brown and Christopher Dissinger |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
George A. Reihner, Esquire
Wright & Reihner, P.C., 148 Adams Avenue, Scranton, PA 18503
(570) 961-1166

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability / Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine / ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product / Injury Product | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability / Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 190 Other Contract | Product Liability / ☐ 371 Truth in Lending | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury / Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - / ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | Medical Malpractice / Product Liability | ☐ 790 Other Labor Litigation | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Unlawful Seizure/Wrongful Arrest - False Imprisonment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
06/05/2015

SIGNATURE OF ATTORNEY OF RECORD
*George A. Reihner*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

61

Case 5:15-cv-03151-LS    Document 1-2    Filed 06/05/15    Page 1 of 2

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 388 Willow Bend Court, Newport News, Virginia 23608

Address of Defendant: 150 N. Queen Street, Lancaster, Pennsylvania 17603 (See Reverse )

Place of Accident, Incident or Transaction: 150 N. Queen Street, Lancaster, Pennsylvania 17603
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                        Yes☐  No☐

Does this case involve multidistrict litigation possibilities?                                                    Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Civil Rights

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, George A. Reihner, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 06/05/2015        *(signature)* George A. Reihner        48419
                         Attorney-at-Law                        Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/05/2015        *(signature)* George A. Reihner        48419
                         Attorney-at-Law                        Attorney I.D.#

CIV. 609 (5/2012)

Address of Defendant:
1825 Municipal Drive, Lancaster, Pennsylvania 17601

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Mawuyrayrassuna Emmanuel Noviho | : | CIVIL ACTION |
| v. | : | |
| Lancaster County Pennsylvania, | : | |
| Scott F. Martin, Todd E. Brown, | : | NO. |
| and Christopher Dissinger | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| 06/05/2015 | *George A. Reihner* | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (570) 961-1166 | (570) 961-1199 | gareihner@wrightreihner.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA | : | |
| EMMANUEL NOVIHO, | : | Civil Action No. 15-cv-03151 |
| Plaintiff | : | |
| | : | Jury Trial Demanded |
| v. | : | |
| | : | Honorable Jeffrey Schmehl |
| LANCASTER COUNTY PENNSYLVANIA: | | |
| SCOTT F. MARTIN, | : | |
| TODD E. BROWN, and | : | |
| CHRISTOPHER DISSINGER, | : | |
| Defendants | : | |

## DEFENDANT, CHRISTOPHER DISSINGER'S, MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1.     Plaintiff commenced this action by filing a Complaint with this Honorable Court on or about June 5, 2015.

2.     The core of Plaintiff's Complaint arises from a motor vehicle accident that occurred at 6:50 p.m. on November 12, 2012. *See*, Plaintiff's Complaint at Paragraph 13.

3.     Plaintiff admits that this tragic accident took the lives of Joshua West and Joshua Charles West. *See*, Plaintiff's Complaint at Paragraph 19.

4.     Plaintiff admits at the time of the accident, he was traveling 17.5 miles per hour where the speed limit was 65 mph. *See*, Plaintiff's Complaint at Paragraphs 15-16 & 27.

65

5.      Plaintiff admits that Katie West, the wife of Joshua West and the

mother of Joshua Charles West, was the operator of a 1996 Volkswagen Passat that

was traveling northbound on State Route 222 directly behind Plaintiff at 6:50 p.m.

on Monday, November 12, 2012. *See*, Plaintiff's Complaint at Paragraph 16.

6.      Furthermore, Plaintiff admits that a mere sixteen (16) seconds before

the accident, he was at a complete stop on the right hand shoulder of State Route

222 and was in the process of re-entering the travel lanes, reaching his approximate

speed of 17.5 miles an hour when the accident occurred. *See,* Plaintiff's Complaint

at Paragraphs 14-15.

7.      Plaintiff spends much time and energy in a vitriolic character

assassination of Katie West and her husband, and suggests in numerous paragraphs

of the Complaint that Katie West's heroin use caused this tragic accident.

8.      However, none of the allegations regarding Katie West have anything

to do with Plaintiff's responsibilities regarding other motorists on the highway.

9.      In this regard, Plaintiff is constrained to admit that after the tragic

accident, Katie West was interviewed and recalled that "something hit her or she

hit something that was like black out of nowhere." *See,* Plaintiff's Complaint at

Paragraph 36.

10.    More importantly, Plaintiff admits that there was a witness named Donald Schlinkman who was a motorist traveling somewhere between 40 and 100 yards from the impact in the left passing lane. *See,* Paragraphs 43-46.

11.    Nowhere in Plaintiff's Complaint does Plaintiff suggest that Mr. Schlinkman was involved in the alleged conspiracy to wrongfully arrest and prosecute him. Nor does Plaintiff suggest that there was any third party witness in a better position to describe how the accident occurred. In other words, Mr. Schlinkman, who had a vantage very similar to Katie West, had no motive to lie, and gave a detailed account of the accident, supported the charges against Plaintiff.

12.    Specifically, Mr. Schlinkman reported to the police that Plaintiff was "in the process of reentering the road shortly before the crash." *See,* Plaintiff's Complaint at Paragraph 42.

13.    Mr. Schlinkman also reported to the police that the "truck did not have any lights on and was traveling very slowly." *See,* Plaintiff's Complaint at Paragraph 42. Obviously, both of these observations are admitted as true and corroborated by Plaintiff himself in his own Complaint. *See,* Plaintiff's Complaint at Paragraphs 14 and 15. The only disputed fact is whether Plaintiff's lights were on. Plaintiff, with a vested interest in the outcome, claims his lights were activated. Mr. Schlinkman, who has no interest in the outcome, asserts they were not.

-3-

14.     Importantly, Mr. Schlinkman was interviewed mere hours after the accident took place. *See,* Plaintiff's Complaint at Paragraph 43. While Plaintiff spends considerable effort attempting to attack the credibility of this unbiased third-party witness, Plaintiff admits that Mr. Schlinkman's recollection was that "he did not see the truck until he was immediately upon it and West's Passat was flipping in the air as he passed it in the left lane ... ." *See,* Plaintiff's Complaint at Paragraph 48.

15.     Nor can Plaintiff avoid the reality that Mr. Schlinkman "portrayed the scene as very, very dark and the only lights able to illuminate the area were West's and his." *See,* Plaintiff's Complaint at Paragraph 47.

16.     Thus, Plaintiff admits, by the very terms of his Complaint, that Defendant Dissinger's investigation revealed the following facts: that the accident occurred on November 12, 2012 at 6:50 p.m., at which time, it was "very dark"; *See,* Plaintiff's Complaint at Paragraph 24(c) and Paragraph 13; that Plaintiff started his tractor from a dead stop along the side of the highway a mere 16 seconds before the Accident occurred; *See,* Paragraph 14; that Plaintiff had accessed the right travel late of a 65 mph highway at a mere 17.5 miles per hour in a 65 mile an hour zone; *See,* Paragraphs 14 and 15; and that unbiased eyewitness testimony confirms Plaintiff's re-entry maneuver, his slow speed, and asserts that his lights were not activated. These facts are admitted in Plaintiff's Complaint and

-4-

were derived, in large part, from a disinterested third-party witness with a vantage very similar to that of Plaintiff or from uncontroverted forensic analysis. *See,* Plaintiff's Complaint at Paragraphs 43-49.

17.    Plaintiff admits that a 7-month investigation took place. *See,* Plaintiff's Complaint at Paragraph 24.

18.    Plaintiff admits that the case was prosecuted by the Lancaster County District Attorney's Office in general and by Defendant Brown in particular. *See,* Plaintiff's Complaint at Paragraphs 70-74. Defendant Brown is identified as an Assistant District Attorney of Lancaster County who was assigned to "handle all aspects of the investigation into the events in question including the preliminary investigation prior to the initiation of any criminal charges against Noviho." *See,* Plaintiff's complaint at Paragraph 70.

19.    Plaintiff alleges that Defendant Brown was "directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation."

20.    Finally, Plaintiff alleges that Defendant Brown "played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information,

statements and/or other evidence obtained by law enforcement personnel." *See*,

Plaintiff's Complaint at Paragraph 73.

21.    Plaintiff further alleges that Defendant Brown was involved in "a

collective decision about whether there was probable cause to make an arrest and

what information should be included in the affidavit of probable cause prior to the

initiation of any criminal proceedings against Noviho."

22.    After the 7-month investigation, Plaintiff admits that the following

charges were filed against him:

> Offense No. 1 – Homicide by Vehicle (2 counts)
> Offense No. 2 – Aggravated Assault by Vehicle (1 count)
> Offense No. 3 – Periods for requiring lighted lamps (1 count)
> Offense No. 4 – Minimum Speed Regulation (1 count)
> Offense No. 5 – Vehicular Hazard Signal Lamps (1 count)
> Offense No. 6 – Moving stopped or parked vehicle (1 count)
> *See*, Plaintiff's Complaint at Paragraph 25.

23.    Unquestionably, all of these Counts address the tragic accident that

occurred on November 12, 2012.  Additionally, Plaintiff neglected to mention that

he was cited for moving vehicle unsafely.  A true and correct copy of the criminal

docket for which the Court can take judicial notice is attached hereto as Exhibit

"A."

24.    Conspicuously absent from Plaintiff's Complaint is the fact that, while

Plaintiff was adjudged not guilty in the homicide by vehicle and the aggravated

-6-

70

assault charges, as well as the charge for a period requiring lighted lamps, he was found guilty for traveling too slow for conditions, traveling below the minimum speed limit and for moving his vehicle unsafely. *See,* Exhibit "A."

25.     Defendant Dissinger respectfully submits that the foregoing admissions contained in Plaintiff's Complaint and the record from the criminal proceeding constitute overwhelming evidence that crimes had been committed and that Plaintiff committed those crimes.

26.     Despite the foregoing, Plaintiff has filed a Complaint with this Honorable Court alleging that Defendant Dissinger was involved in unlawful seizure, wrongful arrest and false imprisonment (Count 1).

27.     Plaintiff also asserts that Defendant Dissinger commenced a malicious prosecution (Count 3).

28.     Plaintiff further alleges that Defendant Dissinger engaged in a conspiracy with regard to the unconstitutional conduct alleged in Counts 1 and 3. (Count 4 and 5).

29.     Defendant Dissinger asserts that the Plaintiff's arrest was made with probable cause, thereby defeating Plaintiff's claims to false arrest, false imprisonment and unlawful seizure.  Moreover, Plaintiff's claims for malicious prosecution must fail as the underlying criminal prosecution did not terminate favorably to Plaintiff.  Moreover, Plaintiff's admission that the Lancaster District

-7-

Attorney's Office was fully apprised of the events in question and singed off on the charges, coupled with the probable cause for the charges, precludes any claim for malicious prosecution against Defendant Dissinger as a matter of law.

## I.  MOTION TO DISMISS CLAIMS FOR UNLAWFUL SEIZURE, WRONGFUL ARREST AND FALSE IMPRISONMENT

30.    In Count I, Plaintiff attempts to assert claims for unlawful seizure, wrongful arrest, and false imprisonment. Plaintiff's claims for unlawful seizure, wrongful arrest and false imprisonment are all grounded in the Fourth Amendment which provide guarantees against unreasonable seizure. *See, Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (*citing, Gorman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

31.    Plaintiff's claim for "unlawful seizure" is merely a "seizure" without probable cause. *See, Palma v. Atlantic County*, 53 F. Supp. 2d 743 (D. NJ. 1999).

32.    To maintain a false arrest, false imprisonment or unlawful seizure claim, a plaintiff must plead facts to establish first that a seizure existed, and second that the arresting officer lacked probable cause to make the arrest. *See, Garcia,* 155 F. Supp. at 265.

33.    Probable cause exists when the totality of the facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense. *Id.*

-8-

34.    A false arrest, false imprisonment or unlawful seizure claim will fail if there was probable cause to arrest for *at least one* of the offenses involved. *See, Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007); *See also, Barna v. City of Perth Amboy*, 42 F.3d 809, 818 (3d Cir. 1994) (For an arrest to be justified "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

35.    Here, Plaintiff was convicted of three of the crimes for which he was charged. Accordingly, not only did Defendant Dissinger have probable cause to arrest, but there was sufficient evidence to convict Plaintiff, beyond a reasonable doubt, that "at least one," and indeed, three crimes were committed, and that Plaintiff committed those crimes. Accordingly, Plaintiff's claims for unlawful seizure, wrongful arrest, and false imprisonment must all fail as a matter of law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully request that this Honorable Court enter an order dismissing Count I of Plaintiff's Complaint as a matter of law with prejudice.

## II.  MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION

36.    In Count III of Plaintiff's Complaint, Plaintiff attempts to assert a claim for malicious prosecution. As noted above, Plaintiff was convicted of several of the offenses inextricably intertwined in the tragic accident at issue and accordingly, there was probable cause to prosecute those claims.

37.    Plaintiff's claims for malicious prosecution must fail as Defendant Dissinger had probable cause to charge Plaintiff with the crimes at issue.

38.    As the Third Circuit noted in *Wright v. City of Philadelphia*, 409 F.3d 593 (3d Cir. 2005), probable cause for at least one of the charges involved in the underlying criminal proceeding disposes of a subsequent malicious prosecution claim with respect to all the charges.

39.    In *Wright*, the plaintiff faced charges of burglary, theft, criminal trespass and criminal mischief for breaking into a house where she was allegedly sexually assaulted.  The city police officers conducted two separate investigations regarding the break in and the sexual assault.  All of the charges brought against the plaintiff were eventually dismissed.  However, the court concluded that there was probable cause to arrest and prosecute the plaintiff on the criminal trespass charge based upon the information available to the officers at the time of the arrest. With regard to the subsequent claim for malicious prosecution, the *Wright* court held:

> "Even though our discussion of probable cause was
> limited to the criminal trespass claim, it disposes of her
> malicious prosecution claims with respect to all of the
> charges brought against her, including the burglary."
> Id. 409 F.3d at 604.

40.    Thus, the Third Circuit has determined that the existence of probable cause for an arrest, stemming from the existence of probable cause for at least one

charge, precludes a plaintiff from proceeding with a malicious prosecution claim with respect to any of the charges brought against him. *Id.*

41.    Additionally, Plaintiff's claims for malicious prosecution must be dismissed because Plaintiff has failed to plead, much less state, any facts in support of a contention that Plaintiff received a "favorable termination" in the underlying criminal prosecution.

42.    In order to plead a Section 1983 malicious prosecution claim, a plaintiff must "show" with facts, that:

> "(1) The defendants initiated a criminal proceeding;
> (2) *The criminal proceeding ended in plaintiff's favor;*
> (3) The proceeding was initiated without probable cause;
> (4) The defendants acted maliciously and for a purpose other than bringing the plaintiff to justice; and
> (5) The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding."

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

43.    The purpose of the "favorable termination" requirement is to avoid the possibility that a claimant may file a successful tort action having been convicted in the underlying criminal prosecution thereby contravening the strong judicial policy against the creation of two conflicting resolutions out of the same or identical transaction. *See, Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

-11-

75

44.    It has long been the law of this Circuit that a prior criminal case must

have been disposed of in a way that indicates the innocence of the accused in order

to satisfy the "favorable termination" element. *See, Donahue v. Gavin*, 280 F.3d

371, 383 (3d Cir. 2002); *see also, Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005)

(Expungement under the ARD program was not a favorable termination because

the program imposes burdens upon the criminal defendant not consistent with

innocence).   Thus, the law in this Circuit is clear that when the underlying criminal

judgment, when taken as a whole, does not reflect the plaintiff's innocence, then

the plaintiff has failed to establish the "favorable termination" element. *See,*

*Kossler v. Crisanti*, 564 F.3d 181(3d Cir. 2009).

45.    In *Kossler*, the Third Circuit was confronted with a bar fight in which

an intoxicated citizen injured an off-duty police officer albeit, in the course and

performance of his duties.   Mr. Kossler was charged with aggravated assault in the

first and second degree as well as with the summary offense of disorderly conduct.

Although the trial court declined to find any misdemeanors or felonies, Mr.

Kossler was convicted and found guilty of disorderly conduct and fined $100.00.

When Mr. Kossler subsequently filed a malicious prosecution claim, the Third

Circuit was faced with the prospect of determining whether the conviction on the

disorderly conduct charge barred the malicious prosecution claim.

-12-

46.    In finding that the disorderly conduct conviction barred the malicious prosecution claim, the Third Circuit concluded that Mr. Kossler's acquittal on the aggravated assault and public intoxication charges could not be divorced from his simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct, and thus barred his malicious prosecution claim for failure to establish the favorable termination element of the claim.  Id. 189.

47.    In this case, Plaintiff's acquittal for the vehicular homicide and aggravated assault charges all arise from the same tragic accident that gave rise to Plaintiff's conviction  for driving too slow for conditions and moving his vehicle unsafely.  Thus, the acquittal cannot be separated from the finding of guilt and under such circumstances, Plaintiff cannot establish the requisite favorable termination element of his malicious prosecution claim. Accordingly, this claim must likewise fail as a matter of law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully request that this Honorable Court enter an order dismissing Plaintiff's Complaint with prejudice.

### III.   MOTION TO DISMISS CONSPIRACY CLAIM

48.    In Counts IV and V, Plaintiff attempts to assert claims of conspiracy with regard to the underlying allegations set forth in Counts I and III respectively. Plaintiff's claims for conspiracy must fail as Plaintiff has failed to state claims for

the underlying objects of the conspiracy, i.e. the unlawful seizure, wrongful arrest, false imprisonment and malicious prosecution claims.  Moreover, Plaintiff has insufficiently pled any overt act in furtherance of the particular objects of the conspiracy, and have only stated same in conclusory fashion in violation of the Federal Rules of Civil Procedure.  Therefore, conspiracy must fail as a matter of law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully requests that this Honorable Court enter an order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: July 17, 2015            By:   /s/ Rolf E. Kroll
                              ROLF E. KROLL, ESQUIRE
                              PA. Attorney I.D. No. 47243
                              Attorney for Defendant Dissinger
                              3510 Trindle Road
                              Camp Hill, PA  17011
                              (717) 975-8114  Direct:  (717) 760-7502
                              Fax:  (717) 975-8124

## PROOF OF SERVICE

I hereby certify that I served a copy of the foregoing on the following, via the US District Court ECF filing system at the address listed below:

George A. Reihner, Esquire
Wright & Reihner, P.C.
Gareihner@wrightreihner.com
*Attorney for Plaintiff*

MARGOLIS EDELSTEIN

Date: July 17, 2015                    By:    */s/ Rolf E. Kroll*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA                    :
EMMANUEL NOVIHO,                   :
        Plaintiff      :
                       :
    v.                     :     Civil Action No. 15-cv-03151
                       :
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                   :     Jury Trial Demanded
TODD E. BROWN, and                 :
CHRISTOPHER DISSINGER,             :
        Defendants     :

### CERTIFICATE OF NON-CONCURRENCE

I, Rolf E. Kroll, of the law firm of Margolis Edelstein, hereby certify that

the concurrence of counsel in Defendant Dissinger's Motion to Dismiss Plaintiff's

Complaint has been sought and counsel for Plaintiff does not concur.

                Respectfully submitted,

                MARGOLIS EDELSTEIN

Date: July 17, 2015        By:   */s/ Rolf E. Kroll*
                ROLF E. KROLL, ESQUIRE
                PA. Attorney I.D. No. 47243
                Attorney for Defendant Dissinger
                3510 Trindle Road
                Camp Hill, PA  17011
                (717) 975-8114  Direct:  (717) 760-7502
                Fax:  (717) 975-8124

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA | : | |
| EMMANUEL NOVIHO, | : | Civil Action No. 15-cv-03151 |
| Plaintiff | : | |
| | : | Jury Trial Demanded |
| v. | : | |
| | : | Honorable Jeffrey Schmehl |
| LANCASTER COUNTY PENNSYLVANIA: | | |
| SCOTT F. MARTIN, | : | |
| TODD E. BROWN, and | : | |
| CHRISTOPHER DISSINGER, | : | |
| Defendants | : | |

## ORDER

AND NOW, this _____ day of _____, 2015, upon

consideration of the Motion to Dismiss filed by Defendant Christopher Dissinger,

it is NOW AND HEREBY ORDERED that Defendant's Motion is GRANTED

and Plaintiff's Complaint if hereby DISMISSED WITH PREJUDICE.

**BY THE COURT**

_____
J.

81

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA | : | |
| EMMANUEL NOVIHO, | : | Civil Action No. 15-cv-03151 |
| Plaintiff | : | |
| | : | Jury Trial Demanded |
| v. | : | |
| | : | Honorable Jeffrey Schmehl |
| LANCASTER COUNTY PENNSYLVANIA: | | |
| SCOTT F. MARTIN, | : | |
| TODD E. BROWN, and | : | |
| CHRISTOPHER DISSINGER, | : | |
| Defendants | : | |

### BRIEF OF DEFENDANT CHRISTOPHER DISSINGER'S IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff commenced this action by filing a Complaint with this Honorable Court on or about June 5, 2015.  The core of Plaintiff's Complaint arises from a motor vehicle accident that occurred at 6:50 p.m. on November 12, 2012 ("Accident").  *See*, Plaintiff's Complaint at Paragraph 13.  Plaintiff admits that this tragic Accident took the lives of Joshua West and Joshua Charles West.  *See*, Plaintiff's Complaint at Paragraph 19.  Plaintiff admits at the time of the Accident, he was traveling 17.5 miles per hour where the speed limit was 65 mph.  *See*, Plaintiff's Complaint at Paragraphs 15-16 & 27.

In his Complaint, Plaintiff admits that Katie West, the wife of Joshua West and the mother of Joshua Charles West was the operator of a 1996 Volkswagen

Passat that was traveling northbound on State Route 222 directly behind Plaintiff at 6:50 p.m. on Monday, November 12, 2012. *See,* Plaintiff's Complaint at Paragraph 16. Furthermore, Plaintiff admits that a mere 16 seconds before the Accident, Plaintiff had been at a complete stop on the right hand shoulder of State Route 222 and was in the process of re-entering the travel lanes, reaching his approximate speed of 17.5 miles per hour when the accident occurred. *See,* Plaintiff's Complaint at Paragraphs 14-15.

Plaintiff devotes significant space in his Complaint to a vitriolic character assassination of Katie West and her husband, and suggests in numerous paragraphs of the Complaint that Katie West's heroin use caused the Accident. However, aside from the lack of any allegation that the level of heroin in her system was demonstrably sufficient to render her unfit to drive, none of these allegations have anything to do with Plaintiff's responsibilities regarding other motorists on the highway. In this regard, Plaintiff is constrained to admit that shortly after the Accident, Katie West was interviewed and recalled that "something hit her or she hit something that was like black out of nowhere." *See,* Plaintiff's Complaint at Paragraph 36.

More importantly, Plaintiff admits that Defendants discovered a witness named Donald Schlinkman, a motorist who was traveling somewhere between 40 and 100 yards from the impact in the left passing lane at the time of the Accident.

-2-

*See,* Paragraphs 43-46. Nowhere in Plaintiff's Complaint does Plaintiff suggest that Mr. Schlinkman was involved in the alleged conspiracy to wrongfully arrest and prosecute him. Nowhere in the Complaint does Plaintiff suggest that there was any third party witness in a better position to describe how the accident occurred. In other words, even when the Complaint is viewed in a light most favorable to Plaintiff, Plaintiff must concede that Mr. Schlinkman was present on the night of the Accident, at the time of the Accident, had a vantage very similar to that of Katie West, had no motive to lie, and gave a detailed account of the accident that supported the charges against Plaintiff.

Specifically, Mr. Schlinkman reported to the police that Plaintiff was "in the process of reentering the road shortly before the crash." *See,* Plaintiff's Complaint at Paragraph 42. Mr. Schlinkman also reported to the police that the "truck did not have any lights on and was traveling very slowly." *See,* Plaintiff's Complaint at Paragraph 42. Obviously, at least one of these observations is admitted as true and corroborated by Plaintiff himself in his own Complaint. *See,* Plaintiff's Complaint at Paragraphs 14 and 15. The only disputed material fact is whether Plaintiff's lights were on. Plaintiff, with a vested interest in the outcome, claims his lights were activated. Mr. Schlinkman, who has no interest in the outcome, asserts they were not. Importantly, Mr. Schlinkman was interviewed mere hours after the accident took place. *See,* Plaintiff's Complaint at Paragraph 43. Furthermore, as

noted above, his recollection of the absence of illumination of Plaintiff's vehicle mirrors that of Ms. West.

While Plaintiff attacks the credibility of this unbiased third-party witness, Plaintiff is constrained to admit that Schlinkman's recollection was that "he did not see the truck until he was immediately upon it and West's Passat was flipping in the air as he passed it in the left lane ... ." *See*, Plaintiff's Complaint at Paragraph 48. Plaintiff cannot avoid the reality that Mr. Schlinkman "portrayed the scene as very, very dark and the only lights able to illuminate the area were West's and his." *See*, Plaintiff's Complaint at Paragraph 47.

Thus, Plaintiff admits, by the very terms of his Complaint, Defendant Dissinger's investigation revealed the following facts: that the Accident occurred on November 12, 2012 at 6:50 p.m., at which time, it was "very dark;" *See*, Plaintiff's Complaint at Paragraph 24(c) and Paragraph 13; that a mere 16 seconds prior to impact, the tractor Plaintiff operated was stopped on the side of the road; *See*, Paragraph 14; that Plaintiff had accessed the right travel lane of a 65 mph highway at a mere 17.5 mph; *See*, Paragraphs 14 and 15; and that unbiased eyewitness testimony in the best position to see the Accident from Ms. West's perspective (other than Ms. West) confirms Plaintiff's re-entry maneuver, his dangerously slow speed, and asserts that his lights were not activated. It is significant given the conspiracy and malicious prosecution claims that lay at the

heart of this case, that the foregoing facts, as set forth in Plaintiff's Complaint, were derived, in large part, from a disinterested third-party witness with a vantage very similar to that of Plaintiff and from uncontradicted forensic expert testimony. *See*, Plaintiff's Complaint at Paragraphs 43-49.

Plaintiff admits that a 7-month investigation took place. *See,* Plaintiff's Complaint at Paragraph 24. Plaintiff admits that the case was prosecuted by the Lancaster County District Attorney's Office in general and by Defendant Brown in particular. *See*, Plaintiff's Complaint at Paragraphs 70-74. Defendant Brown is identified as an Assistant District Attorney of Lancaster County who was assigned to "handle all aspects of the investigation into the events in question including the preliminary investigation prior to the initiation of any criminal charges against Noviho." *See*, Plaintiff's Complaint at Paragraph 70.

Plaintiff alleges that Defendant Brown was "directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation." Finally, Plaintiff alleges that Defendant Brown "played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information, statements and/or other evidence obtained by law enforcement personnel." *See*, Plaintiff's Complaint at Paragraph 73. Plaintiff

further alleges that Defendant Brown was involved in "a collective decision about whether there was probable cause to make an arrest and what information should be included in the affidavit of probable cause prior to the initiation of any criminal proceedings against Noviho."

After the 7-month investigation, Plaintiff admits that the following charges were filed against him and that Brown signed off on those charges. *See,* Complaint at Paragraph 64:

> Offense No. 1 – Homicide by Vehicle (2 counts)
> Offense No. 2 – Aggravated Assault by Vehicle (1 count)
> Offense No. 3 – Periods for requiring lighted lamps (1 count)
> Offense No. 4 – Minimum Speed Regulation (1 count)
> Offense No. 5 – Vehicular Hazard Signal Lamps (1 count)
> Offense No. 6 – Moving stopped or parked vehicle (1 count)
> *See,* Plaintiff's Complaint at Paragraph 25.

In addition to the foregoing charges, Plaintiff neglected to mention that he was cited for moving vehicle unsafely. A true and correct copy of the underlying criminal docket for which the Court can take judicial notice is attached to Defendant's Motion to Dismiss as Exhibit "A."[1] Unquestionably, all of these charges arise from the Accident.

---

[1] Although the focus in assessing a motion to dismiss is on the allegation set forth in the pleadings, matters of public record, orders and exhibits attached to the complaint may also be considered. *See, Oshiver, v. Levin, Fishbein Sedran & Berman,* 38 F. 3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Wright and Miller, Federal Practice and Procedure:2D § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F. 2d 808, 812 (3d Cir. 1990).

Conspicuously absent from Plaintiff's Complaint, but readily apparent from a brief review of the underlying criminal Docket, is the fact that while Plaintiff was adjudged not guilty in the two homicide by vehicle charges, the aggravated assault charge, as well as the charge for a period requiring lighted lamps, he was found *guilty* for traveling too slow for conditions, traveling below the minimum speed limit and for moving his vehicle unsafely. *See,* Exhibit "A" attached to Defendant's Motion to Dismiss.

Defendant Dissinger respectfully submits that the foregoing admissions contained in Plaintiff's Complaint and the record from the criminal proceeding constitute overwhelming evidence that crimes had been committed and that Plaintiff committed those crimes. Despite the foregoing, Plaintiff has filed a Complaint with this Honorable Court alleging that Defendant Dissinger was involved in unlawful seizure, wrongful arrest and false imprisonment (Count I). Plaintiff also asserts that Defendant Dissinger engaged in malicious prosecution (Count III). Plaintiff further alleges that Defendant Dissinger engaged in a conspiracy with regard to the unconstitutional conduct alleged in Counts I and III. (Count IV and V).

Defendant Dissinger asserts that the arrest at issue was made with probable cause thereby defeating Plaintiff's claims to false arrest, false imprisonment and unlawful seizure. Moreover, Plaintiff's claims for malicious prosecution must fail

-7-

as the objective evidence, as admitted in Plaintiff's Complaint, demonstrates that underlying criminal prosecution was made with probable cause. Moreover, the criminal prosecution did not terminate favorably to Plaintiff. Finally, Plaintiff's admission that the Lancaster District Attorney's Office took an active role in the investigation, was fully apprised of the events in question, and approved the charges filed, precludes any claim for malicious prosecution against Defendant Dissinger as a matter of law.

## II.    STATEMENT OF QUESTIONS PRESENTED

**A.    WHETHER PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNLAWFUL SEIZURE, WRONGFUL ARREST AND FALSE IMPRISONMENT UPON WHICH RELIEF CAN BE GRANTED?**

*Suggested Answer: In the Affirmative.*

**B.    WHETHER PLAINTIFF FAILED TO STATE A CLAIM FOR MALICIOUS PROSECUTION UPON WHICH RELIEF CAN BE GRANTED?**

*Suggested Answer: In the Affirmative.*

**C.    WHETHER PLAINTIFF FAILED TO STATE A CLAIM FOR CONSPIRACY UPON WHICH RELIEF CAN BE GRANTED?**

*Suggested Answer: In the Affirmative.*

## III.    ARGUMENT

1.    **Standard of Review.**

A motion to dismiss pursuant to the Federal Rules of Civil Procedure addresses the legal sufficiency of the Complaint.  In *Reisinger v. Luzerne County*, 712 F. Supp. 2d 332, 343-344 (M.D. Pa. 2010), this Honorable Court restated the appropriate standard of review for assessing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Specifically, the *Reisinger* court acknowledged the analysis established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  In accordance with the Supreme Court precedent, in order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim that relief is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  In *Twombly*, the court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.

Moreover, the *Twombly* court noted that "[d]etermining whether a complaint states a plausible claim for relief … will be a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense."  *Id.* (citations omitted).  In *McTernan v. City of York*, 577 F.3d 521, 530, (3d Cir. 2009), the Third Circuit noted that it has repeatedly discussed the importance of *Twombly* and *Iqbal,* and that these decisions provide a "roadmap" for district courts presented with motions to dismiss for failure to state a claim.  As articulated by the

court in *Reisinger*, the roadmap may be properly described as follows:  district

courts should conduct a two part analysis.  First, the factual and legal elements of

the claim should be separated.  The district court must accept all of the complaint's

well-pled facts as true, but may disregard any legal conclusions.  *See, Iqbal*, 129 S.

Ct. at 1949.  Second, the district court must then determine whether facts alleged in

the complaint are sufficient to show that the plaintiff has a "plausible claim for

relief."  *Id.* at 1950.  In other words, a complaint must do more than allege a

plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement

with facts.  *See, Phillips v. Co. of Allegheny*, 515 F. 3d 224, 234-35 (3d Cir. 2008).

As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief.'"

*Iqbal*, 129 S. Ct. at 1949.  This plausibility determination involves a

"context-specific task that requires the reviewing court to draw upon its judicial

experience and common sense." *Id., See also, Fowler v. UMPC Shady Side* , 578

F.3d 203, 210-11( 3d. Cir 2009).  Based upon the foregoing, the Third Circuit has

made it clear that conclusory allegations  are not entitled to the same deference as

well-pled facts.  In other words, this Honorable Court is not "bound to accept as

true a legal conclusion couched as a factual allegation." *Guirguis v. Movers*

*Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at p. 2 (3d Cir. Sept. 24,

2009) (quoting *Twombly*, 550 U.S. at 555 (not precedential)).  Given the absence

of factual support pled in Plaintiff's Complaint regarding any claim asserted

against the Springettsbury Defendants, it is submitted that the established standard

set forth above mandates dismissal of these claims.

### A.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNLAWFUL SEIZURE, WRONGFUL ARREST AND FALSE IMPRISONMENT.

In Count I, Plaintiff attempts to assert claims for unlawful seizure, wrongful

arrest, and false imprisonment. Each of these claims are grounded in the Fourth

Amendment which provides guarantees against unreasonable seizure.  *See, Garcia*

*v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (*citing,  Gorman v.*

*Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).  Plaintiff's claim for

"unlawful seizure" is merely an action asserting a "seizure" without probable

cause.  *See, Palma v. Atlantic County*, 53 F. Supp. 2d 743 (D. NJ. 1999).  To

maintain a false arrest, false imprisonment or unlawful seizure claim, a plaintiff

must plead facts to establish first that a seizure existed, and second that the

arresting officer lacked probable cause to effect that seizure.  *See, Garcia,* 155 F.

Supp. at 265.  Probable cause exists when the totality of the facts and

circumstances are sufficient to warrant an ordinary prudent officer to believe that

the party charged has committed an offense.  Id.

-11-

92

A false arrest, false imprisonment or unlawful seizure claim will fail if there was probable cause to arrest for *at least one* of the offenses involved. *See, Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007); *See also, Barna v. City of Perth Amboy*, 42 F.3d 809, 818 (3d Cir. 1994) (For an arrest to be justified "[p]robable cause need only exist as to any offense that could be charged under the circumstances"). Here, Plaintiff was convicted of three of the crimes for which he was charged. Accordingly, not only did Defendant Dissinger have probable cause to arrest, but there was sufficient evidence to convict Plaintiff, beyond a reasonable doubt for three of the charges filed. Thus, reasonable minds cannot differ that "at least one," and indeed, three crimes were committed, and that Plaintiff committed those crimes. Accordingly, Plaintiff's claims for unlawful seizure, wrongful arrest, and false imprisonment must fail as a matter of law.

### B.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR MALICIOUS PROSECUTION.

In Count III of Plaintiff's Complaint, Plaintiff attempts to assert a claim for malicious prosecution. In order to state a claim for malicious prosecution under Section 1983, a plaintiff must show the following:

(1) the defendant initiated a criminal proceeding;
(2) the criminal proceeding ended in plaintiff's favor;
(3) *the proceeding was initiated without probable cause*;
(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

-12-

(5)  the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco,* 318 F. 3d 497, 521 (3d Cir. 2003).

As noted above, Plaintiff's claims for malicious prosecution must fail as Defendant Dissinger had probable cause to charge Plaintiff with the crimes at issue. *Wright v. City of Philadelphia,* 409 F.3d 595, 604 (3d Cir. 2005).

As the Third Circuit noted in *Wright,* probable cause for at least one of the charges involved in the underlying criminal proceeding disposes of a subsequent malicious prosecution claim with respect to all the charges. In *Wright,* the plaintiff faced charges of burglary, theft, criminal trespass and criminal mischief for breaking into a house where she was allegedly sexually assaulted. The city police officers conducted two separate investigations regarding the break in and the sexual assault. All of the charges brought against the plaintiff were eventually dismissed. However, the court concluded that there was probable cause to arrest and prosecute the plaintiff on the criminal trespass charge based upon the information available to the officers at the time of the arrest. With regard to the subsequent claim for malicious prosecution, the *Wright* court held:

> "Even though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary."
> Id. 409 F.3d at 604.

Thus, the Third Circuit has determined that the existence of probable cause for an arrest, stemming from the existence of probable cause for at least one charge, precludes a plaintiff from proceeding with a malicious prosecution claim with respect to any of the charges brought against him. Id. Thus, probable cause for at least one of the offenses charged, conclusively resolves the third prong of a plaintiff's burden (that the charges were brought without probable cause) and thwarts Plaintiff's malicious prosecution claim as a matter of law.

Plaintiff's claims for malicious prosecution must be dismissed for an additional and independent basis as well. In this case, Plaintiff has failed to plead, much less state, any facts in support of a contention that Plaintiff received a "favorable termination" in the underlying criminal prosecution. Such a contention is an essential prerequisite to a viable malicious prosecution claim. *Estate of Smith v. Marasco,* 318 F. 3d 497, 521 (3d Cir. 2003). As noted above, in order to plead a Section 1983 malicious prosecution claim, a plaintiff must "show" with facts, that:

> "(1) The defendants initiated a criminal proceeding;
> (2) ***The criminal proceeding ended in plaintiff's favor;***
> (3) The proceeding was initiated without probable cause;
> (4) The defendants acted maliciously and for a purpose other than bringing the plaintiff to justice; and
> (5) The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding."

*Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003).

-14-

95

The purpose of the "favorable termination" requirement is to avoid the possibility that a claimant may file a successful tort action having been convicted in the underlying criminal prosecution thereby contravening the strong judicial policy against the creation of two conflicting resolutions out of the same or identical transaction. *See, Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). It has long been the law of this Circuit that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the "favorable termination" element. *See, Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *see also, Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (Expungement under the ARD program was not a "favorable termination" because the program imposes burdens upon the criminal defendant not consistent with innocence).

Thus, this Circuit has set forth clear precedent that if the underlying criminal judgment, when taken as a whole, does not reflect the plaintiff's innocence, then plaintiff has failed to establish the "favorable termination" element. *See, Kossler v. Crisanti*, 564 F.3d 181. In *Kossler*, the Third Circuit was confronted with a bar fight in which an intoxicated citizen injured an off-duty police officer albeit, in the course and performance of his duties. Mr. Kossler was charged with aggravated assault in the first and second degree as well as with the summary offense of disorderly conduct. Although the trial court declined to find any misdemeanors or

felonies, Mr. Kossler was convicted and found guilty of disorderly conduct and fined $100.00.  When Mr. Kossler subsequently filed a malicious prosecution claim, the Third Circuit was faced with the prospect of determining whether the conviction on the disorderly conduct charge barred the malicious prosecution claim on the basis that the plaintiff could not establish that there was a "favorable termination" of the underlying criminal prosecution.

In finding that the disorderly conduct conviction barred the malicious prosecution claim, the Third Circuit concluded that Mr. Kossler's acquittal on the aggravated assault and public intoxication charges could not be divorced from his simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct.  Accordingly, the Third Circuit upheld the dismissal of the malicious prosecution claim for failure to establish the favorable resolution element of the claim.  Id. 189.

In this case, Plaintiff's acquittal for the vehicular homicide and aggravated assault charges cannot be separated from his conviction for driving too slow for conditions and moving his vehicle unsafely.  As Plaintiff was convicted of several of the inextricably intertwined offenses that gave rise to this tragic Accident, his malicious prosecution claims must fail as a matter of law.  Like the charges that stemmed from the bar fight in *Kossler*, the charges for which he was found not guilty arise from the same common nucleus of operative fact as those for which he

was found guilty.  As the Third Circuit noted in Kossler: " As a result, [Noviho's]

acquittal on the aggravated assault [and other] charges cannot be divorced from his

simultaneous conviction for [the unsafe and slow driving charges] when all...

charges arose from the same course of conduct." *Id.* at 188.  Thus, as Kossler's

malicious prosecution charges were dismissed as a matter of law, Plaintiff's

malicious prosecution claims must likewise fail as a matter of law as Plaintiff has

not and cannot establish the requisite favorable termination element of this claim.

### C.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR CONSPIRACY UPON WHICH RELIEF CAN BE GRANTED.

In Counts IV and V, Plaintiff attempts to assert claims of conspiracy with

regard to the underlying allegations set forth in Counts I and III respectively.

Plaintiff's claims for conspiracy must fail as Plaintiff has failed to state claims for

the underlying objects of the conspiracy, i.e. the unlawful seizure, wrongful arrest,

false imprisonment and malicious prosecution claims.  Moreover, Plaintiff has

insufficiently pled any overt act in furtherance of the particular objects of the

conspiracy, and has only stated same in conclusory fashion in violation of the

Federal Rules of Civil Procedure.  Therefore, conspiracy must fail as a matter of

law.

## IV.   CONCLUSION

In light of the arguments and authorities set forth above, Defendant Dissinger respectfully requests this Honorable Court enter an order dismissing Plaintiff's claims against him with prejudice.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: July 17, 2015

By: _/s/ Rolf E. Kroll_
ROLF E. KROLL, ESQUIRE
P.A. Attorney I.D. No. 47243
Attorney for Defendant Dissinger
3510 Trindle Road
Camp Hill, PA  17011
(717) 975-8114  Direct:  (717) 760-7502
Fax:  (717) 975-8124

## CERTIFICATE OF CONCURRENCE

I, Rolf E. Kroll, of the law firm of Margolis Edelstein, hereby certify that my office has contacted Plaintiff's counsel regarding the Defendants' Motion to Dismiss Plaintiff's Complaint. Counsel for Plaintiff does concur with the request.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: _____        By: __*/s/ Rolf E. Kroll*_____
                                  ROLF E. KROLL, ESQUIRE
                                  PA. Attorney I.D. No. 47243
                                  Attorney for Defendant Dissinger
                                  3510 Trindle Road
                                  Camp Hill, PA  17011
                                  (717) 975-8114  Direct:  (717) 760-7502
                                  Fax:  (717) 975-8124

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on the following, via the US District Court ECF filing system at the address listed below:

George A. Reihner, Esquire
Wright & Reihner, P.C.
Gareihner@wrightreihner.com
*Attorney for Plaintiff*

MARGOLIS EDELSTEIN

Date: July 7, 2015              By:    /s/ Rolf E. Kroll

# EXHIBIT "A"

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 1 of 9

Cross Court Docket Nos: 394 MDA 2015

| | | |
|---|---|---|
| Judge Assigned: Ashworth, David L. | Date Filed: 09/11/2013 | Initiation Date: 06/07/2013 |
| OTN: T 336034-6 LOTN: | Originating Docket No: MJ-02102-CR-0000227-2013 | |
| Initial Issuing Authority: David P. Miller | Final Issuing Authority: | |
| Arresting Agency: Manheim Twp Police Dept | Arresting Officer: Dissinger, Christopher M. | |
| Complaint/Incident #: 2012MT10942 | | |
| Case Local Number Type(s) | Case Local Number(s) | |

| Case Status: | Closed | Status Date | Processing Status | Complaint Date: | 06/07/2013 |
|---|---|---|---|---|---|
| | | 02/26/2015 | Awaiting Appellate Court Decision | | |
| | | 01/27/2015 | Sentenced/Penalty Imposed | | |
| | | 01/27/2015 | Awaiting Sentencing | | |
| | | 10/01/2014 | Awaiting Trial | | |
| | | 11/13/2013 | Awaiting Pre-Trial Conference | | |
| | | 09/27/2013 | Awaiting Formal Arraignment | | |
| | | 09/11/2013 | Awaiting Filing of Information | | |

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 09/27/2013 | 9:00 am | Courtroom A | | Cancelled |
| Status Conference | 11/12/2013 | 9:00 am | Courtroom TBD | | Cancelled |
| Pretrial Conference | 12/23/2013 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 02/10/2014 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 05/12/2014 | 9:30 am | Courtroom 2 | Judge Joseph C. Madenspacher | Cancelled |
| Criminal Trial | 11/03/2014 | 9:00 am | Courtroom 12 | Judge David L. Ashworth | Scheduled |

| Date Of Birth: | 12/20/1990 | City/State/Zip: Newport News, VA  23608 |
|---|---|---|

Alias Name

Noviho, Johnspider

| Participant Type | Name |
|---|---|
| Defendant | Noviho, Mawuyrayrassuna Emmanuel Yaogan |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 2 of 9

Noviho, Mawuyrayrassuna Emmanuel Yaogan

**Nebbia Status:** None

| Bail Action | Date | Bail Type | Percentage | Amount | Bail Posting Status | Posting Date |
|---|---|---|---|---|---|---|
| Set | 06/28/2013 | Unsecured | | $20,000.00 | | |

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 2 | 2 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 3 | 3 | F3 | 75 § 3732.1 §§A | Aggravated assault by vehicle | 11/12/2012 | T 336034-6 |
| 4 | 4 | S | 75 § 4302 §§A1 | Period For Requiring Lighted Lamps | 11/12/2012 | T 336034-6 |
| 5 | 5 | S | 75 § 3364 §§A | Too Slow For Conditions | 11/12/2012 | T 336034-6 |
| 6 | 6 | S | 75 § 3364 §§B1 | Slow moving vehicle to drive off roadway | 11/12/2012 | T 336034-6 |
| 7 | 7 | S | 75 § 4305 §§C | Use Below Minimum Speed Limit | 11/12/2012 | T 336034-6 |
| 8 | 8 | S | 75 § 3333 | Move Vehicle Unsafely | 11/12/2012 | T 336034-6 |

**Disposition**

| Case Event | Disposition Date | | Final Disposition | |
|---|---|---|---|---|
| Sequence/Description | Offense Disposition | | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served | |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date | |
| Sentence Conditions | | | | |
| **Held for Court (Lower Court)**    Defendant Was Present | | | | |
| Lower Court Disposition | 09/05/2013 | | Not Final | |
| 1 / Homicide By Vehicle | Held for Court (Lower Court) | | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | Held for Court (Lower Court) | | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | Held for Court (Lower Court) | | F3 | 75 § 3732.1 §§ A |
| 4 / Period For Requiring Lighted Lamps | Held for Court (Lower Court) | | S | 75 § 4302 §§ A1 |
| 5 / Too Slow For Conditions | Held for Court (Lower Court) | | S | 75 § 3364 §§ A |
| 6 / Slow moving vehicle to drive off roadway | Held for Court (Lower Court) | | S | 75 § 3364 §§ B1 |
| 7 / Use Below Minimum Speed Limit | Held for Court (Lower Court) | | S | 75 § 4305 §§ C |
| 8 / Move Vehicle Unsafely | Held for Court (Lower Court) | | S | 75 § 3333 |
| **Proceed to Court**    Defendant Was Not Present | | | | |
| Information Filed | 09/27/2013 | | Not Final | |
| 1 / Homicide By Vehicle | Held for Court | | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | Held for Court | | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | Held for Court | | F3 | 75 § 3732.1 §§ A |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 3 of 9

## Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |
| 4 / Period For Requiring Lighted Lamps | Held for Court | S | 75 § 4302 §§ A1 |
| 5 / Too Slow For Conditions | Held for Court | S | 75 § 3364 §§ A |
| 6 / Slow moving vehicle to drive off roadway | Held for Court | S | 75 § 3364 §§ B1 |
| 7 / Use Below Minimum Speed Limit | Held for Court | S | 75 § 4305 §§ C |
| 8 / Move Vehicle Unsafely | Held for Court | S | 75 § 3333 |
| **Guilty** | | | |
| Trial | 01/27/2015 | Final Disposition | |
| 1 / Homicide By Vehicle | Not Guilty | F3 | 75 § 3732 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 2 / Homicide By Vehicle | Not Guilty | F3 | 75 § 3732 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 3 / Aggravated assault by vehicle | Not Guilty | F3 | 75 § 3732.1 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 4 / Period For Requiring Lighted Lamps | Not Guilty | S | 75 § 4302 §§ A1 |
| Ashworth, David L. | 01/27/2015 | | |
| 5 / Too Slow For Conditions | Guilty | S | 75 § 3364 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |
| 6 / Slow moving vehicle to drive off roadway | Withdrawn | S | 75 § 3364 §§ B1 |
| Ashworth, David L. | 01/27/2015 | | |
| 7 / Use Below Minimum Speed Limit | Guilty | S | 75 § 4305 §§ C |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |
| 8 / Move Vehicle Unsafely | Guilty | S | 75 § 3333 |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |

CPCMS 9082    Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 4 of 9

| | | | | |
|---|---|---|---|---|
| Name: | Todd Everett Brown | | Name: | Richard Hristos Katsifis |
| | Assistant District Attorney | | | Private |
| Supreme Court No: | 083914 | | Supreme Court No: | 314858 |
| Phone Number(s): | | | Rep. Status: | Active |
| 717-299-8100 | (Phone) | | Phone Number(s): | |
| Address: | | | 717-232-1851 | (Phone) |
| Lancaster CO Da's Ofc | | | Address: | |
| 50 N Duke St | | | Killian & Gephart Llp | |
| Lancaster, PA  17602-2805 | | | PO Box 886 | |
| | | | Harrisburg, PA  17108-0886 | |
| | | | Representing: Noviho, Mawuyrayrassuna Emmanuel Yaogan | |

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 06/28/2013 | | Miller, David P. |
| Bail Set - Noviho, Mawuyrayrassuna Emmanuel Yaogan | | | |
| 1 | 09/11/2013 | | Court of Common Pleas - Lancaster County |
| Original Papers Received from Lower Court | | | |
| 1 | 09/27/2013 | | Commonwealth of Pennsylvania |
| Information Filed | | | |
| 1 | 11/12/2013 | | Miller, Margaret C. |
| Order – Status, Relist for Pretrial Conference | | | |
| 2 | 11/12/2013 | | Daniels, Robert James Jr. |
| Entry of Appearance | | | |
| 1 | 12/23/2013 | | Madenspacher, Joseph C. |
| Status Order Filed | | | |
| 1 | 12/24/2013 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 12/24/2013 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013
### CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 5 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 02/10/2014 | | Knisely, Howard F. |
| Order - Status, Continued on Defendant | | | |
| 2 | 02/11/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 3 | 02/11/2014 | | Knisely, Howard F. |
| Order Granting Motion for Continuance | | | |
| 1 | 05/12/2014 | | Madenspacher, Joseph C. |
| List For Trial | | | |
| 3 | 05/14/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 4 | 05/14/2014 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |
| 1 | 09/29/2014 | | Ashworth, David L. |
| Order, Jury Trial Scheduled for week of 11/3/14 in CR12 | | | |
| 1 | 10/14/2014 | | Daniels, Robert James Jr. |
| Unopposed Motion For Continuance | | | |
| 1 | 10/31/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 10/31/2014 | | Ashworth, David L. |
| Order Granting Motion for Continuance | | | |
| 1 | 12/18/2014 | | Katsifis, Richard Hristos |
| Entry of Appearance | | | |
| 1 | 01/06/2015 | | Katsifis, Richard Hristos |
| Motion To Release Criminal History Records | | | |
| 1 | 01/07/2015 | | Ashworth, David L. |
| Order Granting Motion for Release of Criminal History recordes to Defense counsel | | | |

CPCMS 9082                                                                 Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 6 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 01/21/2015 | | Brown, Todd Everett |
| Commonwealth's Motion in Limine | | | |
| 1 | 01/27/2015 | | Ashworth, David L. |
| Guilty | | | |
| Defendant is to pay all financial obligations | | | |
| 2 | 01/27/2015 | | Ashworth, David L. |
| Order - Sentence/Penalty Imposed | | | |
| 3 | 01/27/2015 | | Daniels, Robert James Jr. |
| Defendant's Proposed Jury Instructions | | | |
| 1 | 01/29/2015 | | Parsons, Joshua G. |
| DL-21 to be Prepared | | | |
| 1 | 02/03/2015 | | Court of Common Pleas - Lancaster County |
| Penalty Assessed | | | |
| 1 | 02/06/2015 | | Parsons, Joshua G. |
| DL-21 was prepared | | | |
| 1 | 02/09/2015 | | Unknown Filer |
| DL-21 Sent to PennDOT | | | |
| 1 | 02/26/2015 | | Daniels, Robert James Jr. |
| Notice of Appeal to the Superior Court | | | |
| 1 | 03/02/2015 | | Ashworth, David L. |
| Concise Statement Order | | | |
| 1 | 03/10/2015 | | Superior Court of Pennsylvania - Middle District |
| Docketing Statement from Superior Court | | | |
| 1 | 03/15/2015 | | Ashworth, David L. |
| Transcript of Jury Trial Vol. 1-6 | | | |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 7 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 03/23/2015 | | Ashworth, David L. |
| Concise Statement of Errors Complained on Appeal | | | |
| 1 | 04/07/2015 | | Ashworth, David L. |
| Opinion | | | |
| 1 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Index of Record | | | |
| 2 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Original Record Sent | | | |

CPCMS 9082                                                                 Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 8 of 9

Last Payment Date: 02/26/2015                                         Total of Last Payment: -$70.50

Noviho, Mawuyrayrassuna Emmanuel Yaogan
Defendant

| Costs/Fees | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| Miscellaneous Issuances | $16.50 | $0.00 | $0.00 | $0.00 | $16.50 |
| ATJ | $3.00 | $0.00 | $0.00 | $0.00 | $3.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CJES | $2.25 | $0.00 | $0.00 | $0.00 | $2.25 |
| Clerk Cost (Non-Jury/Guilty Plea) -6411AB1211 (Lan) | $132.00 | $0.00 | $0.00 | $0.00 | $132.00 |
| Clerk of Court Auto Fee-Costs 6593AAB1211 (Lan) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Commonwealth Cost - HB627 (Act 167 of 1992) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| County Court Cost (Act 204 of 1976) | $20.50 | $0.00 | $0.00 | $0.00 | $20.50 |
| DA Administration Fee - 6421AB130019021 (Lan) | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 |
| DA Cost - Summary - 6411AB1211 (Lancaster) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| JCPS | $10.25 | $0.00 | $0.00 | $0.00 | $10.25 |
| Judicial Computer Project | $8.00 | $0.00 | $0.00 | $0.00 | $8.00 |
| Sheriff Cost - Summary - 6411AB1211 (Lancaster) | $2.00 | $0.00 | $0.00 | $0.00 | $2.00 |
| State Court Costs (Act 204 of 1976) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| Prosecution Cost - 6411AB1211 (Lancaster) | $5.70 | $0.00 | $0.00 | $0.00 | $5.70 |
| Sealed Entry on Public Docket | $4.65 | $0.00 | $0.00 | $0.00 | $4.65 |
| Sealed Entry on Public Docket | $10.85 | $0.00 | $0.00 | $0.00 | $10.85 |
| Witness - 6411AB1211 (Lancaster) | $7.52 | $0.00 | $0.00 | $0.00 | $7.52 |
| Clerk of Court Auto Fee-Filing-6593AAB1211 (Lan) | $5.00 | -$5.00 | $0.00 | $0.00 | $0.00 |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 9 of 9

| Noviho, Mawuyrayrassuna Emmanuel Yaogan | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| Superior Court Filing Fee - 6444AB1211 (Lan) | $65.50 | -$65.50 | $0.00 | $0.00 | $0.00 |
| Postage | $7.40 | $0.00 | $0.00 | $0.00 | $7.40 |
| Postage | $16.95 | $0.00 | $0.00 | $0.00 | $16.95 |
| Costs/Fees Totals: | $494.57 | -$70.50 | $0.00 | $0.00 | $424.07 |
| **Fines** | | | | | |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Fines Totals: | $75.00 | $0.00 | $0.00 | $0.00 | $75.00 |
| Grand Totals: | $569.57 | -$70.50 | $0.00 | $0.00 | $499.07 |

** - Indicates assessment is subrogated

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Wright & Reihner, P.C.
By: George A. Reihner
    Pa. I.D. No. 48419
    Frank J. Tunis, Jr.
    Pa. I.D. No. 84264                          Attorneys for Plaintiff
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166 – Telephone
(570) 961-1199 – Facsimile

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAWUYRAYRASSUNA | : |
| EMMANUEL NOVIHO, | : |
| | : |
|           Plaintiff, | : CIVIL ACTION NO.: 15-CV-03151 |
| | : |
| V. | : |
| | : |
| LANCASTER COUNTY | : |
| PENNSYLVANIA, SCOTT F. | : |
| MARTIN, TODD E. BROWN, and | : |
| CHRISTOPHER DISSINGER, | : JURY TRIAL DEMANDED |
| | : |
|           Defendants. | : |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT CHRISTOPHER DISSINGER'S MOTION TO DISMISS

      Plaintiff Mawuyrayrassuna Emmanuel Noviho ("Noviho"), by his undersigned counsel,

hereby submits this Brief in Opposition to the Motion to Dismiss filed in the above-captioned

action by Defendant Christopher Dissinger ("Defendant Dissinger").

### I.       FACTUAL BACKGROUND

      Noviho commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint

against multiple defendants, including Defendant Dissinger, on June 5, 2015.  Noviho's

Complaint contains a very detailed and specific account of the egregious facts giving rise to

Noviho's claims against Defendant Dissinger and the other defendants.

At approximately 6:50 p.m. on Monday, November 12, 2012, Noviho, a licensed commercial truck driver for CR England, Inc., was driving a 2012 Freightliner Cascadia northbound on Pennsylvania State Route 222 in Lancaster County, Pennsylvania. (Complaint, ¶¶ 12-13). Gregory Guerrier ("Guerrier"), an experienced operator, was in the passenger seat. (Id.). Further, the conditions that evening were clear and dry, and the vehicle was not hauling a trailer. (Id., at ¶ 13). As Noviho was operating the tractor, Guerrier noticed two switches on the tractor's dashboard in the off position; specifically, the airbag and axle differential switches. (Id., at ¶ 14). Guerrier directed Noviho to pull over to the right hand shoulder of State Route 222 in order to activate the switches. (Id.). The tractor needed to come to a complete stop in order to do so. (Id.). According to both Noviho and Geurrier, the entire stop took less than thirty (30) seconds, during which time the headlights and taillights on the tractor remained on. (Id.).

After Noviho activated the aforementioned switches, he turned on the vehicle's four-way flashers and began to drive up the shoulder of the road in order to build speed to access the driving lane of State Route 222. (Complaint, ¶ 15). He did so and approximately sixteen (16) seconds after the tractor started moving, Noviho accessed the right lane of State Route 222 traveling at approximately seventeen and a half (17½) miles per hour. (Id.).

At that same time, Katie West ("West"), a known drug addict, was operating a 1996 Volkswagon Passat northbound on State Route 222 behind Noviho. (Complaint, ¶ 16). There were three (3) passengers in the Passat: Joshua West, West's husband who was also a drug addict, Jocelyn West, West's daughter, and Joshua Charles West, West's infant son. (Id.). None of the passengers were belted or properly restrained as required by law. (Id.). Jocelyn West was on a booster seat that was not secured in any way to the Passat, and Joshua Charles West was buckled into a car seat that was just resting on the rear seat of West's vehicle. (Id.). West was

2

113

operating her vehicle at a rate of speed in excess of the posted limit. (Id., at ¶ 17). She was also driving under the influence of heroin and methadone. Her husband was also under the influence of morphine, if not heroin. (Id.).

As a result of the foregoing, West did not or could not pay proper attention to the roadway ahead and she drove her vehicle at seventy (70) miles per hour straight into the rear of Noviho's tractor without attempting to brake or initiate any evasive maneuver. (Complaint, ¶ 18). Noviho and Guerrier felt the violent impact after which Noviho slowly pulled over on the right shoulder of Route 222 and turned off the vehicle's lights and engine and waited for first responders to arrive. (Id.). The violent collision was catastrophic: Joshua West died at the scene from multiple traumatic injuries; Joshua Charlie West died at the hospital; and West suffered multiple injuries for which she has received treatment. (Id., at ¶ 19). Jocelyn West, miraculously, was uninjured. (Id.).

Shortly after the tractor pulled off the road, a woman and her husband (unknown to Noviho) arrived at the tractor to check on Noviho and Guerrier. (Complaint, ¶ 20). She told Noviho to remain in the tractor until medical personnel arrived. (Id.). She also told him that the vehicle that hit them was speeding and driving erratically. (Id.). Manheim Township Police Officer David Onda ("Officer Onda") next approached the tractor speaking first to Guerrier who advised the officer that they were struck from behind. (Id., at ¶ 21). Guerrier indicated that he was not injured and Officer Onda then proceeded to check on Noviho. (Id.). When Noviho did not respond regarding his injuries, Officer Onda directed Noviho to remain in the tractor and that he would have an ambulance dispatched for him. (Id.). Noviho complied with that direction and, shortly thereafter, Noviho and Guerrier were transported by ambulance to a local hospital. (Id.).

3

At approximately 8:20 p.m. on November 12, 2012, Defendant Dissinger, another Manheim Township Police Officer, approached Noviho at the hospital and asked Noviho if he could speak with him about the crash. (Complaint, ¶ 23). Noviho briefly described the accident and gave Defendant Dissinger information regarding the events of the day. (Id.). After Defendant Dissinger spoke with Noviho, Defendant Dissinger contacted Defendant Assistant District Attorney Todd E. Brown ("Brown") who directed him to get a blood sample from Noviho. (Id.). Dissinger requested Noviho's consent for the blood sample and Noviho agreed. (Id.). The test results confirmed that Noviho was not under the influence of alcohol or any drug at the time of the crash. (Id.).

While Defendant Dissinger was interviewing Noviho, another Manheim Township Police Officer, Detective Robert Beck ("Beck"), was interviewing Guerrier. (Complaint, ¶ 24). Based on Defendant Dissinger's and Beck's interviews at the hospital, they were aware of, inter alia, the following:

- a woman told Noviho that the car that hit him was speeding and driving erratically;

- that there was a car proceeding northbound on State Route 222 about three (3) to four (4) car lengths ahead of them which was illuminating the road;

- that it was very dark outside and that Noviho was driving the tractor with the headlights and taillights activated, otherwise they could not have seen where they were going; and

- Noviho had pulled off State Route 222 in order to activate the above-referenced switches and that he was struck from the rear very shortly after accessing the driving lane of State Route 222.

(Id.).

The above-mentioned material facts, and many others, were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and

4

charges were filed against Noviho. (Complaint, ¶ 24). In fact, during this extended "investigation", a high-profile civil attorney for West and her powerful brother, Defendant Lancaster County Commissioner Scott F. Martin ("Martin"), met with various representatives of the District Attorney's office, including Lancaster County District Attorney Craig W. Stedman ("Stedman") and Brown. (Id.). Again, upon information and belief, during this time, Martin and those acting in concert with him lobbied for criminal charges to be filed against Noviho, not West, and, in doing so, wrongfully abused their personal and political influence with Defendant Dissinger, Brown and Stedman. (Id.). The last meeting with Stedman and Brown was held shortly before charges were filed against Noviho. (Id.). Those charges were filed for the purpose of enhancing the value of West's and the Martin family's now pending civil actions. (Id.).

On June 7, 2013, Defendant Dissinger presented an arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Magisterial District Judge David P. Miller ("Judge Miller") for approval. (Complaint, ¶ 25). Both of those documents were prepared with the aid and assistance of Brown who lead, directed and/or supervised the purported seven (7) month "investigation". (Id.). Based on the incomplete, knowingly false and materially misleading affidavit of probable cause, Judge Miller approved the request and Noviho was charged, as follows:

- Offense 1 – Homicide by Vehicle (2 counts)

- Offense 2 – Aggravated Assault by Vehicle (1 count)

- Offense 3 – Periods for requiring lighted lamps (1 count)

- Offense 4 – Minimum Speed Regulation (1 count)

- Offense 5 – Vehicular hazard signal lamps (1 count)

5

- Offense 6 – Moving stopped or parked vehicle (1 count)

(Id.).

As summarized below and set forth more fully in the Complaint, had a truthful account of the crash been presented to Judge Miller, West, not Noviho, would have been charged, and the value of the West-Martin family civil actions would have plummeted, perhaps to zero (0). (Id.).

- First, West was not travelling sixty-five (65) miles per hour at the time of the crash as represented by Defendant Dissinger's affidavit of probable cause. James Schlinkman ("Schlinkman"), a purported witness to the accident, admitted to police on November 12, 2012, that he was travelling seventy (70) miles per hour behind West's vehicle and that he was not gaining ground on her Passat. (Id., at ¶ 27).

- Second, West was operating her vehicle under the influence of heroin and other prescription medication, and a burnt spoon used for heating heroin was found in her purse at the crash site. Defendant Dissinger concealed, withheld and/or omitted this information from his affidavit of probable cause. (Id., at ¶¶ 28-29).

- Third, West made no effort to brake or take any evasive action before the crash. Rather, she drove her Passat straight into the rear of Noviho's tractor at seventy (70) miles per hour. Defendant Dissinger and Brown elected to tell Judge Miller only that West did not have time to appropriately perceive and react to Noviho's tractor. (Id., at ¶ 30).

- Fourth, West's children were not properly restrained and/or secured in safety or booster seats as mandated by Pennsylvania law. Despite the foregoing, Defendant Dissinger and Brown contrived their affidavit of probable cause to create the knowingly false impression that West's children were properly restrained in order to prevent Judge Miller from considering West's culpability for the crash. (Id., at ¶ 31).

- Fifth, three (3) witnesses (Schlinkman, Guerrier and Noviho) advised police on November 12, 2012, that a woman at the crash scene reported that West's Passat was travelling erratically and at an excessive rate of speed prior to the crash. Defendant Dissinger and Brown concealed, withheld and/or omitted this fact from Judge Miller to shield West's culpability from judicial scrutiny in this matter. (Id., at ¶ 32).

- Sixth, Defendant Dissinger presented as unchallenged the averment to Judge Miller that Noviho's vehicle was travelling in total darkness on State Route 222 without any headlights, taillights or other illumination. In

6

> contrast, both Noviho and Guerrier represented to the police on November 12, 2012, that the tractor's headlights and taillights were illuminated at all times with respect to the crash and that the tractor's four-way flashers were engaged while Noviho was driving on the right-hand shoulder of State Route 222. (Id., at ¶¶ 33-34).

Of significant importance, Defendant Dissinger and Brown accepted as true the statements of three (3) purported witnesses, West, Schlinkman and Michelle Levitsky ("Levitsky"), and rejected as false the statements of Noviho and Guerrier. (Id.). However, Defendant Dissinger and Brown knew, as of June 7, 2013, that neither West, Schlinkman nor Levitsky were credible, consistent or otherwise worthy of belief. (Id.). Moreover, on significant issues, their statements were inherently irreconcilable. (Id.). The specific details by which these three (3) purported witnesses were not credible or worthy of belief are set forth more fully in the Complaint. (Id., at ¶¶ 35-51). In essence, Defendant Dissinger failed to disclose to Judge Miller any of the material exculpatory and/or contradictory evidence that was uncovered during the purported seven (7) month "investigation" that he conducted with and under the direction and supervision of Brown.

As previously stated, due to the knowingly false and materially misleading affidavit of probable cause, Noviho was unlawfully charged with vehicular homicide and multiple related felonies concerning the above-mentioned automobile/tractor-trailer crash that was, in fact, caused by Martin's sister, West. (Complaint, ¶ 1). Thus, rather than having his sister held accountable for her acts, Martin, and those acting in concert with him, caused criminal prosecutors and detectives under his direct political influence and control to bring felony charges against Noviho, not West. (Id., at ¶ 3).

Despite the serious nature of the charges being "investigated" by Defendant Dissinger and Brown, as well as other local law enforcement officers, West did not engage criminal defense counsel like she did for her prior, less significant drug-related arrests. (Complaint, ¶ 4).

Rather, as stated above, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prosecute civil actions on behalf of West, her husband and her two (2) minor children.  (Id.).  Upon information and belief, West did not engage defense counsel because Martin knew that Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes.  (Id.).  He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate.  (Id.). Their longtime relationship remains cordial to date and they follow each other on social media. (Id.).  Further, upon information and belief, Martin exercised his personal and political influence over Stedman, Brown and/or Defendant Dissinger to charge Noviho in order to materially enhance the value of the above-mentioned civil actions.  (Id.).

Ultimately, Noviho -- a young, black male who lawfully emigrated from Togo, Africa approximately eight (8) years ago with no similar political ties and/or high-profile friendships in the community -- was the unfortunate victim of the above-mentioned political conspiracy. (Complaint, ¶¶ 1, 4).

## II.   ARGUMENT

### a.   Legal Standard

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2).  The pleading standard announced in Rule 8 does not require "detailed factual allegations", but does require more than labels, conclusions, and "a formulaic recitation of a cause of action's elements".  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted).

When applying this Rule in the context of a motion to dismiss, it is well-settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  While courts must accept as true all factual allegations contained in the complaint, the same tenet is inapplicable to legal conclusions. Id. Thus, "[a] claim has facial plausibility when the Noviho pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).  Stated simply, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id., 556 U.S. at 679, 129 S. Ct. at 1950.

      **b.**    **Noviho sets forth plausible claims for unlawful seizure, wrongful arrest and false imprisonment against Defendant Dissinger in Count I of the Complaint**

Defendant Dissinger first contends that Noviho fails, as a matter of law, to assert viable claims for unlawful seizure, wrongful arrest and false imprisonment. (Motion, ¶ 35).  Contrary to his misapplication of relevant case and statutory law, Noviho's Complaint sufficiently sets forth plausible claims for unlawful seizure, wrongful arrest and false imprisonment against Defendant Dissinger.

The crux of Defendant Dissinger's argument rests on a misapplication of the Third Circuit's determination in Johnson v. Knorr, 477 F.3d 75 (3d Cir. Pa. 2007).  In Johnson, the Third Circuit stated that "in analyzing false arrest claims, a court to insulate a defendant from liability need find only that '[p]robable cause . . . . exist[ed] as to any offense that could be charged under the circumstances.'" Id., at 84-85 (citation omitted).  Utilizing this conclusion, Defendant Dissinger states that, because Noviho was convicted of three (3) "crimes", it is clear that he had probable cause to arrest for those three (3) "crimes". (Motion, ¶ 35).  Thus,

according to Defendant Dissinger, because probable cause to arrest existed for three (3) of the "crimes" for which Noviho was charged, Noviho's claims for unlawful seizure, wrongful arrest and false imprisonment must fail as a matter of law. (Id.). This is simply a misapplication of the determination in Johnson.

As a preliminary matter, it should be noted that Defendant Dissinger's characterization of Noviho's three (3) convictions as "crimes" is false and materially incorrect. Noviho was convicted of three (3) Motor Vehicle Code violations by the trial judge, not the jury, all of which were summary offenses. As stated by Section 6502 of the Motor Vehicle Code, "[i]t is a summary offense for any person to violate any of the provisions of this title unless the violation is by this title or other statute of this Commonwealth declared to be a misdemeanor or felony." 75 Pa. C.S. § 6502(a). Said Section further states that "Title 18 (relating to crimes and offenses), insofar as it relates to fines and imprisonment for convictions of summary offenses, is not applicable to this title." Id., at § 6502(c). Here, the three (3) provisions of the Motor Vehicle Code which Noviho purportedly violated were all summary offenses to which Title 18 (relating to crimes and offenses) is inapplicable. See id., at §§ 3333, 3364, 4305.[1]

Related to Defendant Dissinger's mischaracterization of the aforementioned three (3) summary offenses as "crimes" is his argument that, since there was probable cause to arrest Noviho on the three (3) charges for which he was convicted, any claims for unlawful seizure, wrongful arrest and false imprisonment must fail because Noviho was lawfully arrested as to, at the very least, one (1) charge. (Motion, ¶ 35). This argument fails at its inception because the

---

[1] Violations of Sections 3333, 3364 and 4305 are not declared to be misdemeanors or felonies by either the Motor Vehicle Code or any other statute of this Commonwealth. See 75 Pa. C.S. §§ 3333, 3364, 4305.

10

three (3) offenses for which Noviho was convicted of were not arrestable offenses under the circumstances.

First, under Section 6304, a member of the Pennsylvania State Police may arrest a person without a warrant for a violation of the Motor Vehicle Code only if (1) the officer is in uniform, and (2) any provision of the Motor Vehicle Code is violated "in the presence of the police officer making the arrest." 75 Pa. C.S. § 6304(a) (emphasis added). This Court, in Ankele v. Hambrick, 286 F. Supp. 2d 485 (E.D. Pa. 2003), analyzed whether the defendant, a state trooper, had probable cause to arrest the plaintiff, who was arrested for and charged with three (3) offenses: driving under the influence, leaving the scene of an accident, and driving at an unsafe speed. Id., at 491. With regard to leaving the scene of an accident, this Court reinforced Section 6304 by concluding that the defendant's arrest of the plaintiff was illegal because "there is no evidence in the record showing that [the plaintiff] left the scene of the accident while [the defendant] was present." Id., at 492. See also Jackson v. City of Pittsburgh, 688 F. Supp. 2d 379 (W.D. Pa. 2010) (the court denied summary judgment on the issue of whether the officer had probable cause to arrest the plaintiff for disorderly conduct, resisting arrest and driving without a license, even though plaintiff pled guilty to the charge of failing to use a turn signal, a summary offense under the Motor Vehicle Code).

Second, the fact that all three (3) Motor Vehicle Code violations are summary offenses means that any proceedings instituted for such offenses must follow summary procedure. See 234 Pa. Code Ch 4. Under Chapter 4 of the Pennsylvania Code, there are four (4) means by which proceedings in summary cases shall be instituted: (1) issuing a citation to the defendant; (2) filing a citation; (3) filing a complaint; or (4) arresting without a warrant when arrest is specifically authorized by law. Id., at Rule 400 (emphasis added). Further, there are only two

11

(2) situations in which an arrest warrant for the defendant will be issued: (1) the citations or summons is returned undelivered; or (2) the issuing authority has reasonable grounds to believe that the defendant will not obey the summons. Id., at Rule 430(A). In fact, the introductory note to Chapter 4 states the following:

> The general scheme laid out in these rules is that normally summary cases will be instituted not by arrest, but by a law enforcement officer (as defined in Rule 103) handing a citation to the defendant at the time the offense is committed. There may, however, be situations when it is not feasible to immediately issue a citation to the defendant; in these situations, the law enforcement officer would file a citation with the district justice. . . . When either a citation or a complaint is filed with the district justice, the district justice is expected thereafter to issue a summons to the defendant. Following issuance of process, the rules contemplate that the defendant will respond to the process by either pleading not guilty, after which a summary trial is conducted, or pleading guilty and paying the fine and costs.

Id., at Ch 4 Note. Thus, it is clear that summary offenses that follow summary procedure do not constitute arrestable offenses unless certain circumstances arise.

In the case at bar, it is undisputed that Noviho did not commit any of the three (3) purported Motor Vehicle Code violations in the presence of a uniformed police officer. Since an arrest without a warrant would not have been authorized by law, thereby making an arrest without a warrant illegal, law enforcement should have either filed a citation, filed a complaint, or issued a citation directly to Noviho. However, none of those three (3) options were taken, and Defendant Dissinger cannot argue that the issuance of an arrest warrant was proper because no citation or summons was ever issued to Noviho.[2] Thus, it is quite clear that Noviho's arrest for the three (3) Motor Vehicle Code violations was illegal and, consequently, does not comport

---

[2] As previously stated, there are only two (2) situations in which an arrest warrant for the defendant will be issued in summary cases: (1) the citations or summons is returned undelivered; or (2) the issuing authority has reasonable grounds to believe that the defendant will not obey the summons. 234 Pa. Code Ch 4, Rule 430(A). Since no citation or summons was issued as to Plaintiff's three (3) Motor Vehicle Code violations, neither above-mentioned circumstance would apply.

with the Third Circuit's determination in Johnson. Defendant Dissinger's argument simply ignores the fact that Noviho should never have been arrested for the three (3) Motor Vehicle Code violations he was convicted of because the circumstances in no way justified an arrest, with or without a warrant.

In sum, and significantly, a Fourth Amendment civil rights claim is predicated upon the existence of a "seizure". Here, it is undisputed that Noviho was "seized". Defendant Dissinger attempts to justify Noviho's "seizure" based on the fact that he was found guilty of three (3) summary Motor Vehicle Code violations. However, as argued at length above, the gravamen of Noviho's claim is that the three (3) Motor Vehicle Code violations that occurred do not constitute arrestable offenses under the circumstances, rendering any "seizure" unlawful. Thus, Defendant Dissinger's argument is incorrect and in no way demonstrates the existence of a lawful "seizure" for Fourth Amendment purposes.

Based on the foregoing, Noviho's Complaint sufficiently sets forth plausible claims for unlawful seizure, wrongful arrest and false imprisonment against Defendant Dissinger.

    c.    **Noviho sets forth a plausible claim for malicious prosecution against Defendant Dissinger in Count III of the Complaint**

Defendant Dissinger's second contention is that Noviho fails, as a matter of law, to assert a viable claim for malicious prosecution. (Motion, ¶¶ 37, 47). In boldly claiming as such, Defendant Dissinger addresses two (2) elements that a plaintiff must show to prove malicious prosecution: (1) the criminal proceeding ended in plaintiff's favor; and (2) the proceeding was initiated without probable cause.[3] (Id., at ¶¶ 37, 42 (citation omitted)). Once again, contrary to

---

[3] There are three (3) additional elements that a plaintiff must show to prove malicious prosecution. See Donahue v. Gavin, 280 F.3d 371 (3d Cir. Pa. 2002). However, Defendant Dissinger did not address these additional elements.

13

Defendant Dissinger's misapplication of relevant case law, Noviho's Complaint sufficiently sets forth a plausible claim for malicious prosecution.

<em>i.    Probable cause element</em>

Defendant Dissinger relies entirely on the Third Circuit's brief determination in <u>Wright v. City of Philadelphia</u>, 409 F.3d 595 (3d Cir. Pa. 2005).[4]  In <u>Wright</u>, the Third Circuit simply stated, without any additional analysis or explanation, as follows:

> Our decision also disposes of Wright's remaining [Section] 1983 claim - malicious prosecution.  Wright bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest and prosecution.  To prevail on this claim, she must show that the officers lacked probable cause to arrest her.  As already discussed, however, there was probable cause for Wright's arrest and prosecution for criminal trespass based on the information available to the officers at the time of her arrest.  Even though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary.  Because Wright failed to establish that a constitutional right was violated, the officers are entitled to qualified immunity with respect to the malicious prosecution claim as well.

<u>Id.</u>, at 604.  Utilizing this six (6) sentence, one (1) paragraph determination, Defendant Dissinger attempts to analogize the facts and circumstances of <u>Wright</u> with those of the case at bar.  However, this approach is incorrect in that it mischaracterizes the facts and circumstances of the case at bar, thereby ignoring more relevant Pennsylvania case law, specifically <u>Johnson v. Knorr</u>, 477 F.3d 75 (3d Cir. Pa. 2007).

In <u>Johnson</u>, which was decided subsequent to <u>Wright</u>, the Third Circuit engaged in a lengthy, well-reasoned analysis of whether the plaintiff's malicious prosecution claim was foreclosed by the fact that the arrest was supported by probable cause.  The case in <u>Johnson</u> arose from an altercation that occurred on September 6, 2000, in the waiting room at the office of the

---

[4] Defendant Dissinger cites <u>Wright</u> incorrectly in his Motion.  (<u>See</u> Motion, ¶ 38).  The correct citation is <u>Wright v. City of Philadelphia</u>, 409 F.3d 595 (3d Cir. Pa. 2005).

14

Board of Probation and Parole in Philadelphia. Johnson, 477 F.3d at 78. The plaintiff, who was a parolee at the time, observed another parolee having a seizure and immediately went to assist him. Id., at 79. The plaintiff implored the defendant, an agent at the time, to aid the fallen parolee. Id. The defendant refused and a verbal and physical altercation occurred, which resulted in the plaintiff being handcuffed and arrested in the office. Id. After approximately one (1) hour, the plaintiff was transported to the district police station, at which point a complaint was filed charging him with simple assault, aggravated assault, making terroristic threats, and reckless endangerment. Id. Following a preliminary hearing on October 18, 2000, a state court dismissed the charges against the plaintiff. Id.

Subsequent to a number of substantive determinations, appeals and procedural maneuvers, the plaintiff filed an amended complaint against the defendant in which he re-asserted claims from his original complaint but added a malicious prosecution claim. Johnson, 477 F.3d at 80-81. The plaintiff alleged that the defendant provided knowingly false information to the Philadelphia police, resulting in his malicious prosecution on several offenses, despite the fact that the defendant knew or should have known that the plaintiff did not commit these offenses. Id., at 81. In relying on Wright, the district court granted the defendant's motion for summary judgment with regard to the plaintiff's claim alleging malicious prosecution. Id.

After setting forth germane principles of law and restating its determination in Wright, the Third Circuit began its analysis by looking to a case from the Second Circuit that came to a different conclusion than that which the Third Circuit came to in Wright. Johnson, 477 F.3d at 81-83. In Posr v. Doherty, 944 F.2d 91 (2d Cir. N.Y. 1991), the Second Circuit held that probable cause on one (1) charge does not foreclose a claim for malicious prosecution against a

defendant for having brought criminal charges involving different elements.  See also Johnson,

477 F.3d at 83.  The Second Circuit explained as follows:

> If the rule were the one followed by the district court, an officer with probable
> cause as to a lesser offense could tack on more serious, unfounded charges which
> would support a high bail or a lengthy detention, knowing that the probable cause
> on the lesser offense would insulate him from liability for malicious prosecution
> on the other offenses.

Posr, 944 F.2d at 100.

The Third Circuit ultimately agreed with the plaintiff "to the extent that [it did] not

understand Wright to establish legal precedent of such broad application that it would 'insulate'

law enforcement officers from liability for malicious prosecution in all cases in which they had

probable cause for the arrest . . . on any one charge."  Johnson, 477 F.3d at 83.  In concluding as

such, the Third Circuit distinguished the facts of the case before it from those of Wright, and

stated that the plaintiff alleged that the defendant "intentionally misrepresented the events that

took place in the waiting room" and "intentionally and fraudulently fabricated the charges

against him".  Id., at 84.  Thus, the Third Circuit noted that, unlike the conduct of the defendants

in Wright, "[the defendant's] involvement in both the arrest and the initiation criminal

proceedings against [the plaintiff] was more extensive and lasted beyond the issuing of an

affidavit of probable cause for his arrest and the arrest itself."  Id.  The Court concluded that,

while there existed probable cause for the charge of terroristic threats, the district court "erred in

dismissing [the plaintiff's] claim of malicious prosecution inasmuch as the court did not consider

whether there was probable cause to initiate the criminal proceedings with respect to the

remaining offenses."  Id., at 85.

The facts and circumstances of the case at bar are far more akin to those of Johnson as

opposed to Wright.  Here, it is alleged that, on June 7, 2013, Defendant Dissinger presented an

arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Judge Miller for approval. (Complaint, ¶ 25). Both of those documents were prepared with the aid and assistance of Brown who lead, directed and/or supervised the seven (7) month "investigation". (Id.). Judge Miller approved the request based on a knowingly false and materially misleading affidavit of probable cause. (Id., at ¶¶ 25-26). As set forth more fully in the Complaint, had a truthful account of the crash been presented to Judge Miller, West, not Noviho, would have and should have been charged. (Id.). In fact, Noviho alleges that Defendant Dissinger accepted as true the statements of three (3) purported witnesses, while rejecting as false the statements of Noviho and Guerrier. (Id., at ¶¶ 33-34). However, Defendant Dissinger knew, as of June 7, 2013, that none of the three (3) purported witnesses were credible, consistent or otherwise worthy of belief. (Id., at ¶¶ 33-51). In essence, it is alleged that Defendant Dissinger failed to disclose any of the material exculpatory and/or contradictory evidence that was uncovered during the seven (7) month "investigation" that he conducted with and under the direction and supervision of Brown.

In addition to the foregoing, the Second Circuit's determination in Posr, along with the Third Circuit's agreement with that determination in Johnson, is fully applicable here. Defendant Dissinger argues that, because Noviho was convicted of three (3) Motor Vehicle Code violations, there was probable cause to prosecute those claims, thereby eliminating Noviho's malicious prosecution claim as to all of the charges. (Motion, ¶¶ 36-38). Stated differently, because there was probable cause to prosecute Noviho for driving at a slow speed, there was probable cause to prosecute Noviho for two (2) counts of vehicular homicide and one (1) count of aggravated assault by vehicle. Defendant Dissinger is asking this Court to insulate him from liability for malicious prosecution on very serious felony charges that were tacked on by way of

17

a knowingly false and materially misleading affidavit of probable cause, simply because Noviho was convicted of three (3) summary offense charges. Because of Defendant Dissinger's wrongful conduct throughout the entire ordeal, as stated above and detailed more fully in Noviho's Complaint, he should not be insulated from liability.

The case at bar is not one in which the police officers' involvement was limited to the immediate preparation of an affidavit with no subsequent false representations made to the charging authority. To the contrary, Noviho was unlawfully charged with vehicular homicide and multiple related felonies based on an affidavit of probable cause that was knowingly false and materially misleading. Defendant Dissinger's complete reliance on the Third Circuit's determination in Wright is incorrect, and to follow same would result in a miscarriage of justice. Even though Noviho was convicted of three (3) Motor Vehicle Code violations, a probable cause determination must be made as to all offenses charged based on the defendants' actions, including those of Defendant Dissinger.

ii.     *Favorable termination element*

With regard to favorable termination, Defendant Dissinger relies on the Third Circuit's determination in Kossler v. Crisanti, 564 F.3d 181 (3d Cir. Pa. 2009). The Court focused on the favorable termination of a "proceeding", as opposed to merely a "charge" or "offense". Id., at 188. As such, the Court stated that, in the context of a malicious prosecution action, "to determine whether a party has received a favorable termination in the underlying case, the court considers the judgment as a whole in the prior action" and that "the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the law suit". Id. (citation omitted) (emphasis not included). Utilizing this determination, Defendant Dissinger states that "[Noviho's] acquittal for vehicular homicide and aggravated assault charges all arise

18

from the same tragic accident that gave rise to [Noviho's] conviction for driving too slow for conditions and moving his vehicle unsafely." (Motion, ¶ 47). Further, "the acquittal cannot be separated from the finding of guilt", and, therefore, "[Noviho] cannot establish the requisite favorable termination element of his malicious prosecution claim." Id. This conclusion is misguided in that it ignores the fact that Noviho was convicted of the three (3) Motor Vehicle Code violations in a separate proceeding.

In the case at bar, the jury heard and rendered a verdict of not guilty as to two (2) Counts of homicide by vehicle and one (1) Count of aggravated assault by vehicle. (Exhibit A, p 1089). However, it was the trial judge that made a separate, independent determination as to Noviho's guilt with regard to the remaining summary offenses. (Id., at pp 1093-1094). In fact, the trial judge stated that "the jury is not to decide the summary offenses", (id., at p 1096), and even gave counsel the opportunity to prepare and present closing argument with regard to the summary offenses, (id., at p 1092), all of which occurred after the jury found Noviho not guilty of the serious felony charges. However, after surprisingly speaking to the jury, the trial judge concluded the summary offense trial without hearing oral argument from counsel. (Id., at pp 1092-1094). Rather, the trial judge found Noviho guilty of three (3) summary offenses and sentenced Noviho to pay fines and costs. (Id.). He also acquitted Noviho of the summary offense related to driving without lighting. (Id.). Subsequent to independently finding Noviho guilty of three (3) summary offenses, the trial judge filled out a separate Sentencing Order that listed all the charged summary offenses, along with their disposition and accompanying sentence. (Exhibit B).

Based on the foregoing, it is undisputed that the felony charges were determined by one (1) fact-finder (the jury) and the summary offense charges were determined by a separate fact-

finder (the trial judge). In addition, in both situations counsel was given an opportunity to be heard, essentially providing both fact-finders with closing arguments concerning the charges before them.[5] With this in mind, it is clear that the felony charges and summary offense charges were disposed of in two separate (2) proceedings. Thus, as far as Noviho's prosecution for the felony charges is concerned, he received a favorable termination because the jury found him not guilty as to all three (3) felony charges in a proceeding that was separate and apart from the proceeding before the trial judge concerning the summary offense charges.

Accordingly, Noviho's Complaint sufficiently sets forth a plausible claim for malicious prosecution against Defendant Dissinger. Contrary to Defendant Dissinger's position, a probable cause determination must be made as to each offense charged; offenses that were disposed of in two (2) separate proceedings.

> **d.     Noviho sets forth plausible claims for conspiracy against Defendant Dissinger in Counts IV and V of the Complaint**

Defendant Dissinger's final contention is that Noviho's claims of conspiracy must fail, as a matter of law, because "Noviho has failed to state claims for the underlying objects of the conspiracy, i.e.[,] the unlawful seizure, wrongful arrest, false imprisonment and malicious prosecution claims." (Motion, ¶ 48). In addition, Defendant Dissinger claims that "Noviho has insufficiently pled any overt act in furtherance of the particular objects of the conspiracy, and have only stated same in conclusory fashion in violation of the Federal Rules of Civil Procedure." (Id.). Defendant Dissinger's argument, or lack thereof, concerning Noviho's conspiracy claims is mistaken.

---

[5] As stated, the trial judge proceeded without allowing counsel to present their arguments to the court regarding the summary offense charges.

Defendant Dissinger's first argument is predicated upon a finding that his position concerning Counts I and III of Noviho's Complaint is correct. As argued at length above, Defendant Dissinger is incorrect as Noviho has sufficiently sets forth plausible claims for unlawful seizure, wrongful arrest, false imprisonment and malicious prosecution. See supra, pp 9-20.

Defendant Dissinger's second argument simply ignores the fact that the Complaint is riddled with allegations of overt acts taken by Defendant Dissinger to unlawfully charge Noviho with vehicular homicide and multiple related felonies. A plain reading of the Complaint demonstrates as such and any argument to the contrary is disingenuous.

Noviho's Complaint clearly states that Defendant Dissinger voluntarily ignored, concealed, omitted and/or withheld material facts during the seven (7) month "investigation", and that Martin and those acting in concert with him wrongfully abused their personal and political influences with Defendant Dissinger, Brown and Stedman in order to file criminal charges against Noviho. (Complaint, ¶ 24). Further, it is alleged that Defendant Dissinger presented an arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Judge Miller that he knew were knowingly false and materially misleading. (Id., at ¶¶ 25-26). The Complaint goes on to provide a litany of facts that a fair and impartial judge would have wanted to know about the crash before issuing an arrest warrant. (Id., at ¶¶ 27-34). These same Paragraphs allege that Defendant Dissinger, along with his cohorts, decided to intentionally ignore, conceal, withhold and/or omit these facts from Judge Miller in order to prevent him from considering West's unlawful conduct and culpability in rendering his decision relating to probable cause. (Id.). It is further alleged that Defendant Dissinger knew, as of June 7, 2013, that the three (3) purported witnesses were not credible or worthy of belief. (Id., at ¶¶ 35-51).

These numerous allegations of Defendant Dissinger's overt acts, among others, are not stated in conclusory fashion in violation of the Federal Rules of Civil Procedure. Noviho's Complaint provides a specific, detailed account of the conspiracy between Defendant Dissinger and the remaining defendants to unlawfully charge Noviho with vehicular homicide and aggravated assault by vehicle, and the personal and political reasons behind it.

Based on the foregoing, Noviho's Complaint sufficiently sets forth a plausible claim for conspiracy regarding Noviho's unlawful seizure, wrongful arrest and false imprisonment, and a plausible claim for conspiracy regarding Noviho's malicious prosecution.

     **e. Plaintiff Noviho requests, in the alternative, that this Court stay disposition of Defendant Dissinger's instant Motion to Dismiss pending resolution of Plaintiff Noviho's outstanding appeal of the three (3) summary offense convictions**

Noviho is currently in the process of appealing the guilty verdicts he received concerning the three (3) Motor Vehicle Code violations stemming from the underlying criminal case. Since Defendant Dissinger's Motion to Dismiss is entirely predicated upon Noviho being found guilty of the three (3) Motor Vehicle Code violations, said Motion would be rendered moot should Noviho prevail in his appeal. It is clear that the outcome of Noviho's appeal is integral to the disposition of the instant Motion to Dismiss.

As such, should this Court be inclined to rule in favor of Defendant Dissinger, Noviho requests, in the alternative, that this Court exercise its discretionary power to control its docket and stay disposition of the instant Motion to Dismiss pending resolution of Noviho's outstanding appeal. See Landis v. N. Am. Co., 299 U.S. 248 (1936) (stating that the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants).

22

**III.**        **CONCLUSION**

For any or all of the foregoing reasons, Plaintiff Mawuyrayrassuna Emmanuel Noviho respectfully requests that the Motion to Dismiss filed in the above-captioned action by Defendant Christopher Dissinger be DENIED, in its entirety.

Respectfully submitted,

**WRIGHT & REIHNER, P.C.**

By:    /s/ George A. Reihner
George A. Reihner
Pa. ID No. 48419
Frank J. Tunis, Jr.
Pa. ID No. 84264
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166
(570) 961-1199 — fax

Dated:  August 17, 2015              Attorneys for Plaintiff

23

134

## CERTIFICATE OF SERVICE

I, George A. Reihner, hereby certify that I have caused to be served this day a true and correct copy of this Brief in Opposition to Motion to Dismiss on all counsel and/or parties of record via the Electronic Filing system of this Court.

/s/ George A. Reihner
George A. Reihner

Dated: August 17, 2015

# EXHIBIT "A"

1070

```
 1          IN THE COURT OF COMMON PLEAS
            LANCASTER COUNTY, PENNSYLVANIA
 2                   CRIMINAL

 3   ----------------------------- :
                                   :
 4   COMMONWEALTH OF PENNSYLVANIA  :
                                   :
 5        vs.                      :    No. 4200-2013
                                   :
 6   MAWUYRAYRASSUNA EMMANUEL      :
     YAOGAN NOVIHO                 :
 7                                 :
     ----------------------------- :
 8

 9

10                   Jury Trial
                  Volume VI of VI
11

12    Before:   HONORABLE DAVID L. ASHWORTH, JUDGE

13
      Date  :   Tuesday, January 27, 2015
14

15    Place :   Courtroom No. 12
                50 North Duke Street
16              Lancaster, Pennsylvania

17

18   APPEARANCES:

19   TODD E. BROWN, ESQUIRE
     MARIA A. CUSICK, ESQUIRE
20   Assistant District Attorneys
          Representing the Commonwealth
21
     ROBERT J. DANIELS, ESQUIRE
22   RICHARD KATSIFIS, ESQUIRE
     Killian & Gephart, LLP
23   218 Pine Street
     Harrisburg, PA 17101
24        Representing the Defendant

25   ORDERED: 3/3/15   LODGED:_____   FILED:_____
```

Cathy Mertz, Official Court Reporter   (717)-299-8091

1071

1                    <u>INDEX TO WITNESSES</u>

2      <u>FOR THE COMMONWEALTH</u>:

3      Duane Oleszczuk
         Direct Examination by Mr. Brown.........114
4        Cross Examination by Mr. Daniels........131
         Redirect Examination by Mr. Brown.......141
5        Recross Examination by Mr. Daniels......146

6      David Onda
         Direct Examination by Mr. Brown.........156
7        Cross Examination by Mr. Daniels........179
         Redirect Examination by Mr. Brown.......186
8        Recross Examination by Mr. Daniels......187

9      Derrick Haugh
         Direct Examination by Mr. Brown.........188
10       Cross Examination by Mr. Daniels........210

11     Stephen Davey
         Direct Examination by Mr. Brown.........223
12       Cross Examination by Mr. Daniels........233
         Redirect Examination by Mr. Brown.......238
13
       Michele Levisky
14       Direct Examination by Mr. Brown.........239
         Cross Examination by Mr. Daniels........264
15       Redirect Examination by Mr. Brown.......272

16     Katie West
         Direct Examination by Mr. Brown.........274
17       Cross Examination by Mr. Daniels........307
         Redirect Examination by Mr. Brown.......337,361
18       Recross Examination by Mr. Daniels......352,363

19     James Schlinkman
         Direct Examination by Mr. Brown.........376
20       Cross Examination by Mr. Daniels........396
         Redirect Examination by Mr. Brown.......407,413
21       Recross Examination by Mr. Daniels......410,414

22     John Donnelly
         Direct Exam/Qualifications/Brown........415
23       Cross Exam/Qualifications/Daniels.......419
         Direct Examination by Mr. Brown.........420
24       Cross Examination by Mr. Daniels........471
         Redirect Examination by Mr. Brown.......514
25       Recross Examination by Mr. Daniels......525

1072

1    FOR THE COMMONWEALTH:
     Jeffrey Jones
2      Direct Exam/Qualifications/Brown.........531
       Direct Examination by Mr. Brown.........537
3      Cross Examination by Mr. Daniels........555
       Redirect Examination by Mr. Brown.......569,571
4      Recross Examination by Mr. Daniels......570

5      Bryan Kondras
       Direct Exam/Qualifications/Brown.........579
6      Cross Exam/Qualifications/Daniels.......584
       Direct Examination by Mr. Brown.........585
7      Cross Examination by Mr. Daniels........643
       Redirect Examination by Mr. Brown.......697
8      Recross Examination by Mr. Daniels......705

9      Christopher Dissinger
       Direct Examination by Mr. Brown.........717
10     Cross Examination by Mr. Daniels........767
       Redirect Examination by Mr. Brown.......795
11
       FOR THE DEFENDANT:
12     Ayako Chan-Hosokawa
       Direct Examination by Mr. Daniels.......798
13     Cross Examination by Mr. Brown..........821
       Redirect Examination by Mr. Daniels.....825,840
14     Recross Examination by Mr. Brown........828

15     Brian Pape
       Direct Exam/Qualifications/Daniels......843
16     Cross Exam/Qualifications/Brown.........853
       Direct Examination by Mr. Daniels.......857
17     Cross Examination by Mr. Brown..........876
       Redirect Examination by Mr. Daniels.....884
18
       Frank Ceresini
19     Direct Examination by Mr. Daniels.......903
       Cross Examination by Mr. Brown..........908
20     Redirect Examination by Mr. Daniels.....913

21     Jay Goretzke
       Direct Examination by Mr. Daniels.......914
22     Cross Examination by Mr. Brown..........919
       Redirect Examination by Mr. Daniels.....923
23
       Doris Rauch
24     Direct Examination by Mr. Daniels.......940
       Cross Examination by Mr. Brown..........944
25     Redirect Examination by Mr. Daniels.....947

1073

INDEX TO EXHIBITS

| FOR THE COMMONWEALTH: | MARKED | ADMITTED |
|---|---|---|
| No. 1  – Poster Board | 119 | 797 |
| No. 2  – West Plea Packet | 276 | 797 |
| No. 3  – Stipulation | 371 | 797 |
| No. 4  – Stipulation | 371 | 797 |
| No. 5  – Stipulation | 371 | 797 |
| No. 6  – Poster Board | 430 | 797 |
| No. 7  – Poster Board | 435 | 797 |
| No. 8  – Poster Board | 443 | 797 |
| No. 9  – Poster Board | 443 | 797 |
| No. 10 – Poster Board | 443 | 797 |
| No. 11 – Poster Board | 454 | 797 |
| No. 12 – Regulations | 466 | 797 |
| No. 13 – Photo | 528 | 797 |
| No. 14 – Photo | 528 | 797 |
| No. 15 – Stipulation | 530 | 797 |
| No. 16 – Stipulation | 530 | 797 |
| No. 17 – Poster Board | 548 | 797 |
| No. 18 – Poster Board | 578 | 797 |
| No. 19 – Poster Board | 578 | 797 |
| No. 20 – Stipulation | 578 | 797 |
| No. 21 – Defendant Q&A | 727 | 797 |
| No. 22 – Defendant Q&A | 741 | 797 |
| No. 23 – PA Bulletin | 797 | 797 |

1074

1
## INDEX TO EXHIBITS

2

| FOR THE DEFENDANT: | MARKED | ADMITTED |
|---|---|---|
| No. 1  - Police Report | 139 | 951 |
| No. 2  - Photo | 154 | 951 |
| No. 3  - Police Report | 402 | 951 |
| No. 4  - (Not Marked) | -- | -- |
| No. 5  - (Not Marked) | -- | -- |
| No. 6  - Photo | 404 | 951 |
| No. 7  - Photo | 476 | 951 |
| No. 8  - Photo | 477 | 951 |
| No. 9  - Photo | 491 | 951 |
| No. 10 - Photo | 491 | 951 |
| No. 11 - Photo | 501 | -- |
| No. 12 - Photo | 501 | -- |
| No. 13 - Photo | 501 | -- |
| No. 14 - Photo | 501 | 951 |
| No. 15 - Police Report | 528 | 951 |
| No. 16 - PA Bulletin | 682 | -- |
| No. 17 - Statute | 707 | 951 |
| No. 18 - Toxicology Report | 807 | 951 |
| No. 19 - Pape Report | 862 | 951 |
| No. 20 - Pape Report | 862 | 951 |
| No. 21 - Daycare record | 941 | 951 |
| No. 22 - Daycare record | 948 | 951 |

3
4
.5
6
7
8
9
10
11
.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1075

1           P R O C E E D I N G S
            (10:14 a.m.)

2

3       THE COURT: Good morning, ladies and

4 gentlemen. As I mentioned last night, it is obvious

5 that you are having some difficulty resolving the

6 issues in this case.

7       On the one hand, that difficulty is an

8 indication of your sincerity and your integrity and

9 the hard work that you are putting into your

10 deliberations.

11       On the other hand, it may be the result of

12 some confusion in your minds about my instructions

13 that I gave you about the law and its application to

14 the facts in this case.

15       Mr. Foreman, does the jury require any

16 additional or clarifying instructions on the law as

17 it applies in this case?

18       THE FOREPERSON: We do, Your Honor.

19       THE COURT: Anything specific that I can

20 make reference to or that I can read to you or

21 remind you of?

22       THE FOREPERSON: Yeah. A repeat of

23 Condition 4, which we have heard, I think, a couple

24 times already. And perhaps a particular explanation

25 of one point in that, which we could call to your

1076

1 attention when you read it, if that's okay.

2       THE COURT: All right. Thank you.

3       The fourth element of homicide by vehicle

4 and aggravated assault by vehicle reads as follows:

5       The fourth element is that the defendant's

6 violation of one of the six sections was the direct

7 cause of death.

8       Now, that deals with causation.

9       To find the defendant guilty of this

10 offense, you must find beyond a reasonable doubt

11 that the defendant's conduct was a direct cause of

12 the death of the two individuals in this case.

13       In order to be a direct cause of death, a

14 person's conduct must be a direct and substantial

15 factor in bringing about the death. There can be

16 more than one direct cause of death.

17       A defendant who is a direct cause of death

18 may be criminally liable even though there are other

19 direct causes.

20       A defendant is not a direct cause of death

21 if the actions of others, the occurrence of the

22 accident or other circumstances play such an

23 independent and important role and overriding role

24 in bringing about the death, compared to the role of

25 the defendant. The defendant's conduct does not

1077

1 amount to a direct and substantial factor in

2 bringing about the death in that circumstance.

3       A defendant's conduct may be a direct cause

4 of death, even though his conduct was not the last

5 or the immediate cause of the death.

6       Thus, a defendant's conduct may be a direct

7 cause of death if it initiates an unbroken chain of

8 events leading to the death of the victim or

9 victims.

10       Another person's contributory negligence, if

11 any, is not a defense to a charge of vehicular

12 homicide if the defendant's conduct was a direct and

13 substantial factor in causing the death.

14       Now, what further clarification can I

15 provide?

16       MR. BROWN: Your Honor, may we approach?

17       (A discussion was held off the record at

18 sidebar.)

19       THE COURT: I think at this point you should

20 go back to the jury room, and if you have another

21 question put it in writing and I will provide it to

22 you.

23       (The following discussion occurred at

24 sidebar:)

25       MR. BROWN: I was just going to suggest that

1078

1 you read the additional causation points that we had

2 included in the --

3       THE COURT: I think that would be

4 appropriate.

5       MR. DANIELS: If I could just lodge an

6 objection to that. If they have a specific question

7 about that --

8       MR. BROWN: And the opposition is suggesting

9 that it clarifies the standard.

10       THE COURT: I am going to read the matters

11 that deal with causation.

12       MR. BROWN: Thank you.

13       (The discussion at sidebar concluded.)

14       THE COURT: To follow up a little bit

15 further on the causation issue.

16       Criminal responsibility is properly assessed

17 against one whose conduct was a direct and

18 substantial factor in producing the death, even

19 though other factors may combine with that conduct

20 to achieve the result.

21       As long as the defendant started the chain

22 of causation which led to the victims' death,

23 criminal responsibility for the crime of homicide by

24 vehicle may properly be found.

25       Causation may be established through

1079

1  eyewitness testimony, road marks, or collision
2  reconstruction testimony.
3      All right. Please return to the jury room,
4  continue your deliberations. If you have a specific
5  question that I can answer with regard to these
6  instructions, please let the bailiff know and you
7  will be brought back in to continue.
8      Before you do so, it's important that I
9  remind you of your responsibility in this case. Of
10 course, this is a very important matter for both the
11 defendant and for the Commonwealth, and it is your
12 responsibility to work as hard as you can to reach a
13 unanimous verdict.
14      However, it's important that you understand
15 that while your verdict must be unanimous, each of
16 you has a duty to consult with one another and to
17 deliberate with a view towards reaching an
18 agreement, if it can be done without violence to
19 your individual judgment.
20      However, each of you must decide the case
21 for yourself, after an impartial consideration of
22 the evidence with your fellow jurors.
23      While you should not hesitate to re-examine
24 your views and change your opinion if you are
25 convinced that your opinion is erroneous, do not

1080

1  feel compelled to surrender your honest belief as to
2  the weight or the effect of the evidence solely
3  because of the opinion of your fellow jurors or for
4  the mere purpose of returning a verdict.
5      Again, I remind you that you have two
6  responsibilities in this case, and that's it. You
7  should not consider any consequences of your
8  verdict.
9      You have two responsibilities, and I
10 mentioned this at the very beginning during jury
11 selection:
12     One, was there a crime committed at all; and
13 number two, did the defendant commit the crime as
14 proven by the Commonwealth beyond a reasonable
15 doubt. That is the only thing. Those are the only
16 issues before you.
17     I read to you the elements of the crime, and
18 it is for you to apply the rules of law that I give
19 you to the facts as you find them. Anything else
20 that would come into your consideration or any other
21 concerns that you may have are not before you and
22 that is not your responsibility.
23     With all of that said, now please return to
24 the jury room and continue with your deliberations.
25     (The jury exited the courtroom at

1081

1  10:21 a.m.)
2      (The jury entered the courtroom at
3  11:43 a.m.)
4      THE COURT: Ladies and gentlemen, I have
5  received another question from you. It reads as
6  follows:
7      Reread last portion of Element 4,
8  particularly about causation and third parties.
9  Read back the Vehicle Code violation minimum speed,
10 3364 A. Is there a number for minimum speed?
11     Reread Element 2, gross negligence section.
12 Please elaborate and clarify.
13     You asked if you can take notes. Obviously,
14 I have not allowed you to come back in here and do
15 that.
16     It would be inappropriate for me to simply
17 start chopping this up into bits and pieces. I have
18 already done individual things.
19     What I'm going to do is reread the homicide
20 by vehicle, the four elements and the causation of
21 criminal homicide by vehicle.
22     Before I do so, I'm going to read the motor
23 vehicle section.
24     An underlying traffic regulation identified
25 by the Commonwealth in this case to have been

1082

1  violated by the defendant is the minimum speed
2  regulation. This section reads as follows:
3      Impeding movement of traffic prohibited.
4  Except when reduced speed is necessary for safe
5  operation or in compliance with law, no person shall
6  drive a motor vehicle at such a slow speed as to
7  impede the normal and reasonable movement of
8  traffic.
9      To answer your question, in that section
10 there is no minimum speed required. It is no person
11 shall drive a motor vehicle at such a slow speed as
12 to impede the normal and reasonable movement of
13 traffic.
14     The elements of homicide by vehicle:
15     The crime of homicide by vehicle requires
16 that the defendant be in violation of some section
17 of the Vehicle Code, a municipal ordinance or any
18 other law related to the operation of a motor
19 vehicle when the death of the victim occurs.
20     In this matter, the defendant is charged
21 with homicide by vehicle while engaged in the
22 violation of one of the six sections that I have
23 read a number of times.
24     In order to find the defendant guilty of
25 homicide by vehicle, you must be satisfied that the

1083

1 Commonwealth has proven each of the following
2 elements beyond a reasonable doubt:
3         First, that the defendant committed one or
4 more of the underlying violations of the six
5 sections I have read.
6         Second, that the defendant acted recklessly
7 or with gross negligence by driving in a manner or
8 engaging in conduct that violated one of those
9 sections.
10        Third, that Joshua A. West and Joshua C.
11 West are deceased.
12        Fourth, that the defendant's violation of
13 the section was a direct cause of the death.
14        The term reckless and grossly negligent mean
15 the same thing.
16        A defendant's conduct, including any failure
17 to perform a legal duty, is reckless or grossly
18 negligent when he is aware of and consciously
19 disregards a substantial and unjustifiable risk that
20 death will result from his conduct; the nature and
21 degree of the risk being such that it is grossly
22 unreasonable for him to disregard it.
23        In deciding whether the defendant's conduct
24 was reckless or grossly negligent, you should
25 consider all of the relevant facts and

1084

1 circumstances, including the nature and intent of
2 the defendant's conduct and the circumstances known
3 to him.
4         If you are satisfied that the Commonwealth
5 has proven the above elements of homicide by vehicle
6 beyond a reasonable doubt, you should find the
7 defendant guilty. If you are not satisfied beyond a
8 reasonable doubt, then you must find the defendant
9 not guilty.
10        To find the defendant guilty of this
11 offense, you must find beyond a reasonable doubt
12 that the defendant's conduct was a direct cause of
13 the death of Joshua A. and Joshua C. West.
14        In order to be a direct cause of death, a
15 person's conduct must be a direct and substantial
16 factor in bringing about the death. There can be
17 more than one direct cause of death.
18        A defendant who is a direct cause of death
19 may be criminally liable even though there are other
20 direct causes.
21        A defendant is not a direct cause of death
22 if the actions of the victim or the actions of a
23 third person or the occurrence of another event
24 played such an independent and important and
25 overriding role in bringing about the death,

1085

1 compared to the role of the defendant, that the
2 defendant's conduct does not amount to a direct and
3 substantial factor in bringing about the death.
4         A defendant's conduct may be a direct cause
5 of death, even though his conduct was not the last
6 or the immediate cause of death.
7         Thus, a defendant's conduct may be a direct
8 cause of death if it initiates an unbroken chain of
9 events leading to the death of the victims.
10        Another person's contributory negligence, if
11 any, is not a defense to a charge of vehicular
12 homicide if the defendant's conduct was a direct and
13 substantial factor in causing the death.
14        Ladies and gentlemen, please return to the
15 jury room and continue with your deliberations.
16        (The jury exited the courtroom at
17 11:49 a.m.)
18        (The following discussion occurred in
19 chambers:)
20        THE COURT: The question is, may we see the
21 time chart or time distance chart? Yes, they can.
22 Please read the second element again. And
23 actually, they wrote, please read the four elements,
24 specifically the second element again. And then
25 they crossed out the four elements specifically.

1086

1         MR. DANIELS: Are we just going to do the
2 four elements?
3         MR. BROWN: At this point, we're opening
4 up -- given the history of these deliberations,
5 normally I think it would be appropriate to read
6 them all.
7         THE COURT: If my memory serves, I have read
8 the instructions and the full instruction on
9 homicide by vehicle four times now at least.
10 I will read the second element again. And
11 then --
12        MR. BROWN: That's --
13        THE COURT: And tell them yes, they can have
14 the chart.
15        MR. BROWN: The second element, is that the
16 causation or is that the mens rea? What's the
17 second element?
18        THE COURT: I think it's the -- do you have
19 it?
20        MR. DANIELS: Acted recklessly or with gross
21 negligence.
22        THE COURT: And then I define recklessly and
23 gross negligence again.
24        (The discussion in chambers concluded.)
25        (The jury entered the courtroom at

1087

1 12:58 p.m.)
2          THE COURT: Ladies and gentlemen, I have
3 additional questions. The first one, may we see the
4 time distance chart. Yes. That will be brought
5 back to you in the jury room.
6          You would like me to read the second element
7 of homicide by vehicle.
8          The second element is that the defendant
9 acted recklessly or with gross negligence by driving
10 in a manner or engaging in conduct that violated one
11 of the six sections that I have read previously.
12          The terms reckless and grossly negligent
13 mean the same thing.
14          A defendant's conduct, including any failure
15 to perform a legal duty, is reckless or grossly
16 negligent when he is aware of and consciously
17 disregards a substantial and unjustifiable risk that
18 death will result from his conduct; the nature and
19 degree of the risk being such that it is grossly
20 unreasonable for him to disregard it.
21          In deciding whether the defendant's conduct
22 was reckless or grossly negligent, you should
23 consider all of the relevant facts and
24 circumstances, including the nature and intent of
25 the defendant's conduct and the circumstances known

1088

1 to him.
2          That is the second element. The chart will
3 be brought back to you shortly.
4          MR. BROWN: Your Honor, for the record, I
5 believe that's Commonwealth's 19 that will go back.
6          THE COURT: So noted. Thank you.
7          (The jury exited the courtroom at
8 12:59 p.m.)
9          (The jury entered the courtroom at
10 1:53 p.m.)
11          THE COURT: Ladies and gentlemen, it's my
12 understanding the jury has reached a verdict. Is
13 that correct?
14          THE FOREPERSON: It is.
15          THE COURT: Would you please hand the
16 bailiff the envelope.
17          MR. BROWN: Your Honor, approach quickly?
18          (A discussion was held off the record at
19 sidebar.)
20          THE COURT: Would the foreperson please rise
21 and read the verdict slip in its entirety. The
22 Defendant's first name is Emmanuel. You don't have
23 to try and pronounce his other name.
24          THE FOREPERSON: In the Court of Common
25 Pleas of Lancaster County, Pennsylvania, Criminal.

1089

1 Commonwealth of Pennsylvania versus Emmanuel. No.
2 4200-2013.
3          Verdict is as follows:
4          Count 1, homicide by vehicle, Joshua A.
5 West, deceased. Not guilty.
6          Count 2, homicide by vehicle, Joshua C.
7 West, deceased. Not guilty.
8          Count 3, aggravated assault by a vehicle,
9 Katie West. Not guilty.
10          THE COURT: All right. Would you please
11 record the verdict.
12          Would all jurors please rise.
13          THE CLERK: Harken to your verdict as the
14 Court hath recorded in the issue between the
15 Commonwealth of Pennsylvania versus Emmanuel Noviho,
16 Docket No. 4200 of 2013.
17          And now, this day, January 27th, 2015, we,
18 the jury empaneled, find the defendant, Count 1,
19 homicide by vehicle, Joshua A. West, deceased, not
20 guilty.
21          Count 2, homicide by vehicle, Joshua C.
22 West, deceased, not guilty.
23          Count 3, aggravated assault by vehicle,
24 Katie West, not guilty.
25          So say you all. If you agree with this

1090

1 verdict, please respond by saying I do.
2          THE JURY: I do.
3          THE CLERK: If you do not agree with this
4 verdict, please respond by saying I do not. Hearing
5 none, you may be seated. Thank you.
6          THE COURT: Ladies and gentlemen, I would
7 like to thank you for your service. At this time,
8 you are dismissed back to my chambers and I will be
9 with you shortly.
10          Counsel approach, please.
11          (The following discussion occurred at
12 sidebar:)
13          THE COURT: Anything else that needs to be
14 placed on the record at this time?
15          MR. BROWN: The summary offenses.
16          MR. DANIELS: I believe they have made a
17 determination as far as the summary offenses because
18 they are essential elements of the homicide by
19 vehicle case.
20          MR. BROWN: I would disagree. They
21 specifically did not make any findings as to the
22 guilty or not guilty status of the summary offenses.
23          What's more, theoretically they could find
24 him in violation of any one or more of the summary
25 violations but find another element of the offense

1091

1 not met for homicide by vehicle.
2         Specifically, they could find that he
3 violated the summary offenses but that it didn't
4 cause the crash or that it wasn't done in a reckless
5 fashion.
6         THE COURT: That's true.
7         MR. BROWN: So the summaries are still
8 before the Court.
9         THE COURT: Do you have the Information?
10        MR. BROWN: I have a copy, but it doesn't
11 have my amendments on it.
12        MR. DANIELS: I don't think you ever amended
13 it to —
14        THE COURT: No, the only ones that I'm
15 addressing are the ones that are on the Information.
16        MR. BROWN: Right, but I amended the
17 Information.
18        THE COURT: We will take a brief recess.
19        MR. BROWN: I think it might be up in my
20 office. You don't have the original?
21        THE COURT: It's probably back in my
22 chambers. I will have to go check. It's not here.
23        MR. BROWN: The only reason I ask that is in
24 fairness I can get mine, but if that's the official
25 one, I would rather us go by that.

1092

1         THE COURT: That's fine.
2         I think before I make a decision, I'm going
3 to want to hear argument from both of you with
4 regard to these. I need to go talk to the jury, so
5 perhaps we will take about a half an hour or so
6 recess and you can gather your thoughts and I want
7 to hear your arguments.
8         MR. DANIELS: Just so we're clear, which
9 ones?
10        THE COURT: I'm addressing the ones that are
11 on the Information. It would be Count 4, 5, 7, and
12 8.
13        About a half an hour recess.
14        (A recess was taken from 2:03 p.m. until
15 2:42 p.m.)
16        THE COURT: Counsel approach, please.
17        (The following discussion occurred at
18 sidebar:)
19        THE COURT: What applicable sections —
20        MR. BROWN: I think, Judge, you just have
21 Count 4.
22        THE COURT: No, that's not my question. Let
23 me ask my question, please.
24        MR. BROWN: Sorry.
25        THE COURT: What are the applicable fines

1093

1 for each one of the sections?
2         MR. BROWN: I believe they are all $25
3 fines.
4         THE COURT: All right. There's nothing
5 other than that; correct? That's my understanding.
6         MR. BROWN: I don't believe so.
7         THE COURT: All right. You may step back.
8         (The discussion at sidebar concluded.)
9         THE COURT: It becomes my responsibility to
10 make a decision with regard to the summary offenses
11 that have been charged in this case.
12        I note for the record that Count 6 has been
13 either withdrawn or is duplicative; correct,
14 Counsel?
15        MR. BROWN: That's correct. Yes, sir.
16        THE COURT: All right. Based upon the
17 evidence presented at trial, with regard to Count 4,
18 the period for required lighting, I find that the
19 Commonwealth has not met its burden of proof beyond
20 a reasonable doubt. I find the defendant not guilty
21 of Count 4.
22        On Count 5, too slow for conditions, I find
23 the defendant guilty. The Commonwealth has met its
24 burden of proof beyond a reasonable doubt on that
25 count.

1094

1         On Count 7, use below minimum speed limit, I
2 find the defendant guilty.
3         On Count 8, move vehicle unsafely, I find
4 the defendant guilty.
5         On each one of these, the defendant is
6 sentenced to pay the statutory fine of $25, plus
7 costs.
8         Is there anything further?
9         MR. DANIELS: Your Honor, other than my
10 previous noted objections to the summary offenses.
11        THE COURT: Counsel, you may articulate
12 those, please, for the record.
13        MR. DANIELS: Just that these are issues
14 that the jury considered. In my proposed jury
15 instructions, there were specific areas where the
16 jury could find that this violation was present or
17 not present or the defendant was guilty or not
18 guilty of those violations, which in my
19 understanding is why it's included in the homicide
20 by vehicle statute directions.
21        And I think that it's a factfinding endeavor
22 that the jury undertook and found him not guilty of
23 that homicide by vehicle. I don't think we should
24 have gotten to this point after the jury rendered
25 their verdict.

1095

1   THE COURT:  Mr. Brown?

2   MR. BROWN:  Your Honor, I think that's an

3   inaccurate statement of the law, first and foremost.

4   And to that end, as an example, as I mentioned

5   before, the jury specifically did not make

6   enumerated findings to guilty or not guilty to any

7   of those offenses on the verdict slip.

8   I don't think that the jury's verdict on the

9   three criminal charges really is reflective at all

10  as to any potential findings on the summary moving

11  violations.

12  Specifically, they could theoretically have

13  found the defendant in violation of all of those

14  summary offenses and even found him specifically

15  guilty of all those moving violations but found that

16  the Commonwealth failed to meet its burden on some

17  other element of homicide by vehicle or aggravated

18  assault by vehicle, specifically causation or the

19  mens rea.

20  So to that end, I don't think you can rely

21  on the jury's verdict on the criminal offenses to

22  read into any verdict on the summary violations.

23  Specifically, they did not make a specific

24  finding on them.

25  If the defendant were to be found guilty on

1096

1   those criminal offenses, we would still be going and

2   proceeding as we are now and the judge would then be

3   making a separate finding on those moving

4   violations.

5   THE COURT:  I think that is an accurate

6   statement of the law.

7   In fact, number one, the jury is not to

8   decide the summary offenses.

9   Number two, in this particular case, the

10  jury could very well have found the defendant to

11  have violated the Vehicle Code and not, for example,

12  found that the conduct of the defendant rose to a

13  level of recklessness or grossly negligent, as

14  required under the homicide by vehicle, the elements

15  of homicide by vehicle.

16  In fact, the jury required a number of -- or

17  asked a number of questions with regard to the

18  second element, that the defendant acted recklessly

19  or with gross negligence.  They asked a number of

20  questions, and they could very well have found a

21  violation of the Vehicle Code and then found,

22  however, that the conduct of the defendant was

23  merely negligent or something else and not grossly

24  negligent or reckless, as required by homicide by

25  vehicle.

1097

1   My ruling stands.  I note the defense

2   objections.

3   Is there anything further?

4   MR. BROWN:  I have nothing, Judge.

5   MR. DANIELS:  No, Your Honor.

6   THE COURT:  Counsel approach, please.

7   (A discussion was held off the record at

8   sidebar.)

9   (Court adjourned at 2:48 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

147

# EXHIBIT "B"

Case 5:15-cv-03151-JLS   Document 16-2   Filed 08/17/15   Page 2 of 3

Eff 10/31/13

## SENTENCING ORDER

page 1 of 3

Dkt. No. 4200-13   OTN T8360840   Date 1-27-15 FEB 2 2015

Defendant Mousuyoungassuma Emmanuel Yaogan Naviho   Judge Ashworth

Offenses Homicide by Veh (2d)¹³, AA 2/3¹³   D.A. Gram M.

G.P.____ St.____ Plea Agree.____ Mod.____   Def. Atty. Daniels

Nolo____ N/Pros____ ARD____ Sentencing X____   Reporter MW?B

Re-Sent____ Other____ Sec 17____   Clerk MW?B

☐ Bench Warrant Dismissed   ☐ Bail Reinstated   ☐ Certified Court Interpreter Used   ☐ Video

Reg Lighted Lamps⁵, Too Slow/Conditions, Slow moving veh⁵, Use Below min speed⁵, Move Veh unsafely⁵

COUNT: (#s 1,2,3)   OFFENSE → NOT GUILTY _____   Nol Pros____ Merges with ____

☐ SIPP   Committed:____yr____mo____days____hrs  To____yr____mo____days

☐ Mandatory   Probation/Sect 17/ARD____yr____mo____days   SERVE AT  LCP____ SCI____

Sentence   Intermediate Punishment Program____  **see additional sheet   House Arrest w/EM____

☐ Split   Fine/Processing Fee_____ &Cost   CONC (cc)____

Sentence   Restitution____   CONS (cs)____

Nol Pros Cost on County ____   Nol Pros Cost on Defendant____

☐ RRRI***   ____ RRRI Eligible/Not Eligible   ____RRRI Ineligibility Not Waived by DA

NOT GUILTY

COUNT: 4   OFFENSE Reg Lighted Lamps ⁵ _____   Nol Pros____ Merges with ____

☐ SIPP   Committed:____yr____mo____days____hrs  To____yr____mo____days

☐ Mandatory   Probation/Sect 17/ARD____yr____mo____days   SERVE AT  LCP____ SCI____

Sentence   Intermediate Punishment Program____  **see additional sheet   House Arrest w/EM____

☐ Split   Fine/Processing Fee_____ &Cost   CONC (cc)____

Sentence   Restitution____   CONS (cs)____

Nol Pros Cost on County ____   Nol Pros Cost on Defendant____

☐ RRRI ***   ____ RRRI Eligible/Not Eligible   ____RRRI Ineligibility Not Waived by DA

COUNT: 5   OFFENSE Too Slow F/Conditions ⁵ _____   Nol Pros____ Merges with ____

☐ SIPP   Committed:____yr____mo____days____hrs  To____yr____mo____days

☐ Mandatory   Probation/Sect 17/ARD____yr____mo____days   SERVE AT  LCP____ SCI____

Sentence   Intermediate Punishment Program____  **see additional sheet   House Arrest w/EM____

☐ Split   Fine/Processing Fee 2C &Cost   CONC (cc)____

Sentence   Restitution____   CONS (cs)____

Nol Pros Cost on County ____   Nol Pros Cost on Defendant____

☐ RRRI***   ____ RRRI Eligible/Not Eligible   ____RRRI Ineligibility Not Waived by DA

( withdrawn )

COUNT: 6   OFFENSE Slow moving Veh ⁵ _____   Nol Pros____ Merges with ____

☐ SIPP   Committed:____yr____mo____days____hrs  To____yr____mo____days

☐ Mandatory   Probation/Sect 17/ARD____yr____mo____days   SERVE AT  LCP____ SCI____

Sentence   Intermediate Punishment Program____  **see additional sheet   House Arrest w/EM____

☐ Split   Fine/Processing Fee_____ &Cost   CONC (cc)____

Sentence   Restitution____   CONS (cs)____

Nol Pros Cost on County ____   Nol Pros Cost on Defendant____

☐ RRRI***   ____ RRRI Eligible/Not Eligible   ____RRRI Ineligibility Not Waived by DA

***RRRI Sentence

☐ Aggregate:   Committed: ____to____

Sentence

   Counts:____

☐ RRRI   Committed:____yr____mo____days  To____

Sentence   By Order of The Court:

Prepared by: MWD H?B   Judge

   Clerk

COC-0001

Case 5:15-cv-03151-JLS   Document 16-2   Filed 08/17/15   Page 3 of 3

Eff 10/3/13

**SENTENCING ORDER**                                    page 2 of 5

Dkt. No. 4200-13  OTN T 336 0 840    Date 1-27-15

Defendant Mwyrmyrasuna Emmauell Yaogan    Judge Ashworth

Offenses ___ Non h's ___    D.A. Brown

G.P. ___ St. ___ Plea Agree. ___ Mod. ___    Def. Atty. Daniels

Nolo ___ N/Pros ___ ARD ___ Sentencing X    Reporter hlrb

Re-Sent ___ Other ___ Sec 17 ___    Clerk Hoby

☐ Bench Warrant Dismissed   ☐ Bail Reinstated   ☐ Certified Court Interpreter Used   ☑ Video

---

COUNT: 7  OFFENSE Use bebn Speed limit 5    Nol Pros ___ Merges with ___

☐ SIPP    Committed: ___ yr ___ mo ___ days ___ hrs  To ___ yr ___ mo ___ days

☐ Mandatory   Probation/Sect 17/ARD ___ yr ___ mo ___ days   SERVE AT  LCP ___ SCI ___

Sentence    Intermediate Punishment Program ___ **see additional sheet   House Arrest w/EM ___

☐ Split    Fine/Processing Fee 25 &Cost    CONC (cc) ___

Sentence    Restitution ___    CONS (cs) ___

Nol Pros Cost on County ___    Nol Pros Cost on Defendant ___

☐ RRRI***    ___ RRRI Eligible/Not Eligible    ___ RRRI Ineligibility Not Waived by DA

---

COUNT: 8  OFFENSE Move Veh Unsafely 5    Nol Pros ___ Merges with ___

☐ SIPP    Committed: ___ yr ___ mo ___ days ___ hrs  To ___ yr ___ mo ___ days

☐ Mandatory   Probation/Sect 17/ARD ___ yr ___ mo ___ days   SERVE AT  LCP ___ SCI ___

Sentence    Intermediate Punishment Program ___ **see additional sheet   House Arrest w/EM ___

☐ Split    Fine/Processing Fee 25 &Cost    CONC (cc) ___

Sentence    Restitution ___    CONS (cs) ___

Nol Pros Cost on County ___    Nol Pros Cost on Defendant ___

☐ RRRI ***    ___ RRRI Eligible/Not Eligible    ___ RRRI Ineligibility Not Waived by DA

---

COUNT:   OFFENSE ___    Nol Pros ___ Merges with ___

☐ SIPP    Committed: ___ yr ___ mo ___ days ___ hrs  To ___ yr ___ mo ___ days

☐ Mandatory   Probation/Sect 17/ARD ___ yr ___ mo ___ days   SERVE AT  LCP ___ SCI ___

Sentence    Intermediate Punishment Program ___ **see additional sheet   House Arrest w/EM ___

☐ Split    Fine/Processing Fee ___ &Cost    CONC (cc) ___

Sentence    Restitution ___    CONS (cs) ___

Nol Pros Cost on County ___    Nol Pros Cost on Defendant ___

☐ RRRI***    ___ RRRI Eligible/Not Eligible    ___ RRRI Ineligibility Not Waived by DA

---

COUNT:   OFFENSE ___    Nol Pros ___ Merges with ___

☐ SIPP    Committed: ___ yr ___ mo ___ days ___ hrs  To ___ yr ___ mo ___ days

☐ Mandatory   Probation/Sect 17/ARD ___ yr ___ mo ___ days   SERVE AT  LCP ___ SCI ___

Sentence    Intermediate Punishment Program ___ **see additional sheet   House Arrest w/EM ___

☐ Split    Fine/Processing Fee ___ &Cost    CONC (cc) ___

Sentence    Restitution ___    CONS (cs) ___

Nol Pros Cost on County ___    Nol Pros Cost on Defendant ___

☐ RRRI***    ___ RRRI Eligible/Not Eligible    ___ RRRI Ineligibility Not Waived by DA

---

**\*\*\*RRRI Sentence**

☐ Aggregate    Committed: ___ to ___

Sentence

Counts: ___

☐ RRRI    Committed: ___ yr ___ mo ___ days  To ___

Sentence    By Order of The Court:

Prepared by: ___

Clerk               Judge

COC-0001

150

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA EMMANUEL NOVIHO | : | CIVIL ACTION NO. 15-CV-03151 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LANCASTER COUNTY PENNSYLVANIA | : | |
| SCOTT F. MARTIN | : | |
| TODD E. BROWN | : | (ELECTRONICALLY FILED) |
| CHRISTOPHER DISSINGER | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**ORDER**

**AND NOW,** this _____ day of _____, 2015 upon consideration of

Defendants Lancaster County, Scott F. Martin, and Todd E. Brown (collectively "Lancaster

County Defendants")'s Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), and any response thereto, it is hereby ORDERED that said Motion to

Dismiss is GRANTED and Plaintiff's Complaint is hereby dismissed with prejudice.

_____
J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA EMMANUEL NOVIHO | : | CIVIL ACTION NO. 15-CV-03151 |
| Plaintiff, | : | |
| v. | : | |
| LANCASTER COUNTY PENNSYLVANIA SCOTT F. MARTIN TODD E. BROWN CHRISTOPHER DISSINGER | : : : : : | (ELECTRONICALLY FILED) |
| Defendants. | : | JURY TRIAL DEMANDED |

## DEFENDANTS LANCASTER COUNTY, SCOTT F. MARTIN, AND TODD E. BROWN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants Lancaster County, County Commissioner Scott F. Martin, and  Assistant District Attorney Todd E. Brown (collectively "Lancaster County Defendants") by and through their undersigned counsel, The MacMain Law Group, LLC, hereby move This Court for an Order dismissing Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure 12(b)(6) on the basis of Plaintiff's failure to state a claim upon which relief may be granted. The grounds of this Motion are more fully set forth in the accompanying Brief in Support of The Lancaster County Defendants' Motion.

WHEREFORE, the Lancaster County Defendants respectfully request that this Honorable Court dismiss with prejudice Plaintiff's Complaint as to all claims, and enter an Order in the form attached hereto.

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>August 31, 2015</u>

By:    <u>/s/ David J. MacMain</u>
David J. MacMain
Attorney I.D. No. 59320
Megan Kampf
Attorney I.D. No. 88027
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for Defendants*
*Lancaster County Pennsylvania, Scott F.*
*Martin, and Todd E. Brown*

## CERTIFICATE OF SERVICE

I, David J. MacMain, Esquire, hereby certify that on this 31st day of August, 2015, the

foregoing *Motion to Dismiss Plaintiff's Complaint* was filed electronically and is available for

viewing and downloading from the United States District Court for the Eastern District of

Pennsylvania. The following party was served via the ECF system:

> George A. Reihner
> Wright & Reihner P.C.
> 148 Adams Avenue
> Scranton, PA 18503
> gareihner@wrightreihner.com
> *Counsel for Plaintiff*
>
> Rolf E. Kroll
> Margolis Edelstein
> 3510 Trindle Road
> Camp Hill, PA 17011
> rkroll@margolisedelstein.com
> *Counsel for Defendant Christopher Dissinger*

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>August 31, 2015</u>          By:    <u>/s/ David J. MacMain</u>
David J. MacMain
Attorney I.D. No. 59320
Megan K. Kampf
Attorney I.D. No. 88027
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for Defendants*
*Lancaster County Pennsylvania, Scott F.*
*Martin, and Todd E. Brown*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA EMMANUEL NOVIHO | : | CIVIL ACTION NO. 15-CV-03151 |
| Plaintiff, | : | |
| v. | : | |
| LANCASTER COUNTY PENNSYLVANIA SCOTT F. MARTIN TODD E. BROWN CHRISTOPHER DISSINGER | : | (ELECTRONICALLY FILED) |
| Defendants. | : | JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF DEFENDANTS
LANCASTER COUNTY, SCOTT F. MARTIN, AND TODD E. BROWN'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants Lancaster County, Lancaster County Commissioner Scott F. Martin and

Assistant District Attorney (ADA) Todd Brown (collectively "Defendants" or "Lancaster County

Defendants") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

Plaintiff's Complaint (Doc. No. 1) with prejudice because it fails to set forth a legally viable

claim upon which relief can be granted.

As set forth herein, Plaintiff brings the present threshold §1983 unlawful seizure /

wrongful arrest / false imprisonment claim ADA Brown (Count II), derivative 'conspiracy

claims against ADA Brown and Commissioner Martin (Counts IV and V), and a derivative

*Monell* claim against Lancaster County (Count IV).

As discussed below and Plaintiff's hyperbole aside, Plaintiff contends, in truth, that even

though he violated the law, was found guilty of three traffic violations that caused a fatal

1

accident that killed a father and his two year old son when Plaintiff – a truck driver trainee –
pulled his unlit truck tractor into highway traffic, where it was both not visible in the darkened
night and was travelling 17.5 m.p.h. on a 65 m.p.h. highway, the other driver should have also
been charged because she had a history of drug addiction.  This contention, even if true, has
absolutely nothing to do with Plaintiff's actions and guilt, nor does it undercut in any way the
fact that Plaintiff's conviction bars, as a matter of law, his present threshold unlawful seizure
claim under the *Heck* favorable termination rule.  Namely, under *Heck v. Humphrey*, 512 U.S.
477 (1994), and resulting case law, "a § 1983 action that impugns the validity of the plaintiff's
underlying conviction cannot be maintained unless the conviction has been reversed on direct
appeal or impaired by collateral proceedings." See *e.g.*, *Gilles v. Davis*, 427 F.3d 197, 208-09
(3d Cir. 2005) and *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa. 2008).  That is exactly
what Plaintiff is attempting to do here – do an end-run around his own guilt, by making
scurrilous and wholly unfounded allegations against a non-party – Katie West (whose husband
and 2 year old son were killed), her brother – Commissioner Scott Martin, the investigating
Officer – co-defendant Detective Dissinger, and the prosecutor – ADA Brown who prosecuted
Plaintiff. Plaintiff knows, or should well know, that these allegations are both irrelevant to the
claims for which he was found guilty, and are also false and are being made in violation of Rule
11 of the Federal Rules of Civil Procedure[1].

---

[1] It is noteworthy that Plaintiff's Complaint, when making some of the most egregious accusations, prefaces
them by the frequent use of "upon information and belief."  While the use of this phrase – which is 'code' for
'I really have no facts to support my assertion' - may be permissible in some instances, such repeated and
vitriolic defamatory statements throughout Plaintiffs Complaint does not pass Rule 11 muster in this case.
Namely, Plaintiff and his counsel should be well aware that there is no basis for many of the 'upon information
and belief' facts contained in their complaint.  Namely, there has been substantial discovery in the case brought
by Katie West against C.R. England and (present) Plaintiff Noviho which was filed over a year ago on August
19, 2014. See, *West v. CR England. Inc, U.S.D.C. for E.D. of Pa. – 5:14-cv-04872 – EGS.* Discovery in the
*West* case has included the production of thousands of e-mails and documents from various Lancaster County
officials including Commissioner Martin, and numerous depositions. None of these countless documents
contain a **shred of evidence** of the alleged 'conspiracy,' 'undue influence,' or 'political power-wielding' tale

## I.   INTRODUCTION, SUMMARY OF FACTS AND PROCEDURAL HISTORY

As discussed herein, the present suit arises from a fatal motor vehicle accident that occurred on November 12, 2012 at 6:50 p.m. in the Northbound direction of Route 222 in Manheim Township when Plaintiff, a trainee driver with CR England Trucking, Inc., accompanied by a trainer driver from the trucking company who was sitting in the passenger seat, pulled his truck tractor into highway traffic from a dead stop on the shoulder of the highway - lights out - at a slow rate of speed.  Tragically, non-party Katie West, who was driving her husband and two small children in her 1996 Volkswagon Passat, did not see, and could not stop in time, to avoid collision with the darkened truck that had just pulled into her lane of traffic travelling at 17.5 m.p.h. on the 65 m.p.h. highway and a violent collision ensued which caused the death of West's husband and 2 year old son.

Despite Plaintiff's scurrilous allegations, the accident was thoroughly and fairly investigated and researched by numerous persons over several months (by both law enforcement and representatives of the Plaintiff's trucking company, their lawyers and agents); many witnesses were interviewed; and scientific testing and accident reconstruction efforts were conducted.

The end result of the accident investigation were the following simple, unassailable and uncontested facts – which Plaintiff concedes in his Complaint (Doc. No. 1):

---

that Plaintiff Noviho weaves in his Complaint. and bases his claims. Equally interesting, Noviho has refused to cooperate in the discovery process in *West*, including refusing to be deposed. As such, the parties are currently negotiating the extent of the 'adverse interest' that will be assessed against Mr. Noviho should the case reach trial. *See, e.g. West*, Document Numbers 62 and 68.

3

- A mere 16 seconds before the collision, Plaintiff and his truck tractor, were at a **complete stop** on the right hand shoulder of Highway 22. See, Plaintiff's Complaint, paras. 14-15.

- Plaintiff pulled his truck tractor on to the highway – which had a speed limit of 65 m.p.h. – and was **travelling 17.5 m.p.h.** – into the lane where West and her family were traveling. See, Plaintiff's Complaint, paras. 15-16, 27.

- One witness – who has no interest in the case and is not alleged to be part of the 'conspiracy' that plaintiff claims – Donald Schlinkman - was traveling in the adjoining lane as West, and observed that "[Plaintiff's truck] was in the process of reentering the road shortly before the crash" and that "[Plaintiff's] truck **did not have any lights on** and was **traveling very slowly.**" See, Plaintiff's Complaint, para. 42.

- West was interviewed and recalled that "something hit her or she hit something that was like black out of nowhere." See, Plaintiff's Complaint, para. 36.

- Plaintiff Noviho was charged with various offenses as a result of the accident, and while the jury, after very lengthy deliberations, could not unanimously agree that Noviho was guilty beyond a reasonable doubt of some of the offenses including vehicular homicide, he was found guilty by the Honorable David L. Ashworth of (1) driving too slow for conditions, (2) failure to use flashing signals, and (3) moving a vehicle unsafely. See, Criminal Docket attached as Exhibit A, and April 7, 2015 Opinion of Judge David L. Ashworth, attached hereto as Exhibit B.

Despite these uncontested facts, Plaintiff filed the present action on June 5, 2015 setting forth several claims against the Lancaster County Defendants and co-defendant Detective

4

Dissinger of the Manheim Township Police Department[2]. As to the Lancaster County Defendants, Plaintiff sets forth a threshold claim against ADA Brown, and derivative claims against ADA Brown, Commissioner Martin and Lancaster County as follows:

- Count II - §1983 – against ADA Brown ("in his investigative capacity") for unlawful seizure / wrongful arrest / false imprisonment;

- Count IV - §1983 – against Co-Defendant Dissinger, ADA Brown ("in his investigative capacity") and Commissioner Martin for Conspiracy to commit an unlawful seizure / wrongful arrest / false imprisonment";

- Count V - §1983 – against Co-Defendant Dissinger and Commissioner Martin for conspiracy to commit malicious prosecution; and

- Count VI - §1983 – *Monell* claim against Lancaster County.

As discussed below, Plaintiff's threshold claim – Count II – fails, as do his derivative conspiracy (Counts IV and V) and *Monell* claims[3]. Namely, as a result of the guilty verdict on the summary Motor Vehicle Code violations, Defendant cannot now re-litigate his innocence under the "favorable- termination rule" established by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), and adopted by the Third Circuit. See, *e.g*, *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005) and *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa. 2008).

## II.    LEGAL STANDARD UNDER RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "Rule

---

[2] Notably, this is about the time that Noviho, who is seeking money in the present suit and has made some incredibly defamatory statements against a host of persons beyond just the present defendants, began to refuse to cooperate in the suit against him. One wonders if the present suit is actually being pursued by Noviho or the trucking company CR England as means to deflect blame and exposure, and obtain leverage in the *West* suit?
[3] Co-Defendant Dissinger filed a motion to dismiss on July 17, 2015 (Doc. No. 12-3). The Lancaster County Defendants incorporate by reference the legal arguments made therein as many are equally applicable to the Lancaster County Defendants.

12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue at law." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). The standard requires a plaintiff to plead "enough sufficient facts to state a claim of relief that is plausible on its face." *Twombley*, 127 S. Ct. at 1974. Plaintiffs must have "nudged their claims across the line from conceivable to plausible, or the complaint must be dismissed." Id.

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matter of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). See *Pension Benefit Guar. Corp. v. White Consol. Indus, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that a District Court may take judicial notice of matters of public record without converting the motion into one for summary judgment); and *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) ("to resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings."). This is particularly applicable here as Plaintiff seeks to ignore or, at least not call to This Court's attention, (1) his guilty finding in the underlying criminal case, and (2) the other litigation pending before This Court – the Honorable Edward G. Smith.

In determining whether or not a motion to dismiss should be granted, a district court must accept as true the factual allegations in the complaint and construe all reasonable inference in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, a Court need not accept a complaint's bald assertions, subjective characterizations, or legal conclusions. *Evancho v. Fischer*, 423 F.3d 347, 351 (3d Cir. 2005).

This is also particularly applicable here as Plaintiff makes a number of 'upon information and belief' assertions which he knows or should know is not true; nor does the Court have to accept as true.

### III.    LEGAL ARGUMENT

#### A.   Plaintiff's Threshold Claim for Unlawful Seizure/Wrongful Arrest/False Imprisonment (Count II) Fails As A Matter of Law

In Count II, Plaintiff asserts a claim under §1983 for an alleged unlawful seizure / wrongful arrest / false imprisonment against the Defendant ADA Brown who prosecuted the criminal case against him. As he did with many of his factual assertions that are without basis by labeling his facts as being based "upon information and belief", Plaintiff does likewise in labeling the actions of ADA Brown as being in "his investigative capacity." This legal conclusion – which the Court need not accept – is a disingenuous attempt to avoid the absolute prosecutorial immunity that is afforded to prosecutors like ADA Brown. As noted above, Plaintiff should well know from the record developed in the other suit filed against him, that there is no good faith basis for him to allege that ADA Brown did anything other than act as a prosecutor. Indeed, the only way around this absolute prosecutorial immunity is for Plaintiff to weave this baseless and factually unsupported tale of a vast conspiracy involving the named Defendants and the unnamed District Attorney of Lancaster County. Notably, neither of the two key persons - the witness to the accident – Mr. Schlinkman who said that Noviho pulled into the dark highway with his truck tractor lights off, at a slow speed, and directly into the path of an unsuspecting Katie West, and the Honorable David Ashworth who found Plaintiff guilty of three traffic offenses which caused the accident, were apparently in on the conspiracy. Thus, Plaintiff's misguided attempt to label the prosecutorial actions of ADA Brown as "investigatory" to avoid the absolute immunity he is afforded, ought to be rejected and all claims against him dismissed

7

under the absolute prosecutorial immunity doctrine. See, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("In initiating a prosecution and presenting the state's case, the prosecutor is immune from a civil suit for damages under §1983").

However, even if the Court accepts this 'label' that Plaintiff uses, and the claim is examined on the merits, it nevertheless fails as a matter of law.

"Whether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause." *Shilling v. Brush*, 2007 WL 210802, *9 (M.D. Pa. Jan. 22, 2007); see also *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (explaining that, in order to prevail on a claim for unlawful arrest pursuant to Section 1983, a plaintiff must prove that the police arrested him without probable cause.)  Probable cause exists when "the facts and circumstances are sufficient to warrant a prudent man in believing that the [Plaintiff] had committed or [was] committing an offense."*Egolf v. Witmer*, 526 F.3d 104, 118 (3d Cir. 2008).

While the issue of probable cause is ordinarily determined at the summary judgment stage, in cases such as this, wherein the Plaintiff was convicted of at least one crime for which he was charged and probable cause is established for at least one of the charges, Plaintiff is precluded from bringing the cause of action under the "favorable termination" rule developed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* limits claims available under §1983 for plaintiffs who either are found guilty or plead guilty to criminal charges.  The Court specifically stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . .A claim for damages bearing that

relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

Id. at 486-87. The Third Circuit has, in turn, interpreted *Heck* to mean that "a §1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 208-209 (3d Cir. 2005).

In *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa. 2008) - a case with a similar underlying criminal history to the present case – the *Heck* bar was applied to preclude a §1983 false arrest claim. Specifically, the Plaintiff in *Kokinda* asserted a false arrest claim and argued in response to a motion to dismiss that he was convicted of 'merely a summary offense' and thus he was not permissibly taken into custody (i.e. arrested) under the Pennsylvania Rules of Criminal Procedure[4]. The Honorable Richard Caputo of the Middle District rejected this argument, applied the *Heck* doctrine, and granted Defendants motion to dismiss Plaintiff's false arrest claim. The Court held that a guilty plea – even for a 'minor' or 'summary' offense - necessarily required a finding of probable cause, and thus, served as a bar to Plaintiff's false arrest claims. See, also, *Kosler v. Crisanti*, 564 F.3d 181 (3d Cir. 2009)(even though Plaintiff acquitted of serious felony and misdemeanor charges, his conviction for summary offense and fine of $100 barred his false arrest claim under *Heck* favorable termination bar).

In the present matter, a jury, after lengthy deliberations, could not unanimously agree that Plaintiff was guilty beyond a reasonable doubt of the most serious offenses. Yet, Plaintiff was found guilty of three summary traffic offenses for which he was charged. As such, there was probable cause for three of the charged offenses and Plaintiff's claims are barred under the *Heck*

---

[4] This is one of the exact arguments that Plaintiff made in opposition to Co-Defendant Dissinger's Motion to Dismiss – namely, that the summary offenses were minor offenses and not 'arrest-able' charges. See, Plaintiff's Opposition Brief (Doc. No. 16) pp. 11-13.

9

preclusion doctrine. Accordingly, Plaintiff's claim for unlawful seizure / wrongful arrest / false imprisonment as asserted against ADA Brown in Count II fails as a matter of law and must be dismissed.

It is worth noting that while Plaintiff dresses up his claim as a false arrest claim, it is really grounded on his (or CR England Trucking) objection to investigative findings of the cause of the accident. In other words, Plaintiff and his trucking company employer disagree that the unlit, slow-moving truck that pulled into the highway was the cause of the accident and feel that some or all blame should be place on Katie West. Such a theory – that a poor or even biased accident investigation was conducted – cannot as a matter of law serve as the basis of a §1983 claim. Numerous courts have determined that the filing of a false police report in and of itself is not a constitutional violation, even if the report is the result of an intentional conspiracy or police misconduct. See, e.g., *Jarrett v. Bensalem*, 2008 WL 818615 (E.D. Pa. – Schiller) and 312 Fed. Appx. 505 (3d Cir. 2009), *Bush v. Philadelphia*, No. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 15, 1999) (Hart, M.J.); *Landrigan v. Warwick*, 628 F.2d 736, 744 (1st Cir. 1980); *Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969).

In *Jarrett*, Plaintiff truck driver and his employer trucking company brought a claim against an investigating police officer, like co-defendant Detective Dissinger, alleging that his conclusion that the truck driver who pulled out on to U.S. Route 1 at a slow rate of speed and blocked lanes of traffic, much like what occurred here, was the cause of the accident, and not the driver of the pick-up truck who was traveling the highway. The trucking company plaintiff was upset that the other driver – who had been drinking and had empty beers cans in his truck - had not been tested and prosecuted for DUI and/or found at fault for the accident. Plaintiff trucking company alleged that the other driver had some connection with the Bensalem Police

10

Department, and that the failure to cite him was the result of some nefarious cover-up and a

violation of the truck driver and trucking company's constitutional rights. On this basis – the

theory that Plaintiff is asserting here – the trucking company and driver brought a §1983 claim.

This Court, the Honorable Berle Schiller, and later the Third Circuit, held that even if Plaintiff

trucking company's 'conspiracy' theory was true, there was no constitutional right to a certain

conclusion by police, nor did Plaintiff have a right to have the other driver investigated, arrested

or fault at fault.[5]  See, District Court and Third Circuit Opinions attached as Exhibit C

collectively.

Likewise, in *Bush*, the plaintiff was involved in an automobile accident with an off-duty

police officer. 1999 WL 554585, at *2.  Another police officer arrived at the scene to investigate

the accident and filed a report that included only information supplied by the off-duty police

officer.  Id.  The investigating officer did not include the plaintiff's account of the accident in the

report and placed the blame for the accident on the plaintiff.  Id.  Additionally, the investigating

officer did not issue a citation to the off-duty officer, even though he did not have automobile

insurance, a valid inspection sticker, or a proper vehicle registration.  Id.  Bush brought an action

under Section 1983 and claimed that the defendants deprived him of his rights "by preparing and

filing a false accident report, by intimidating him, and by failing to enforce the motor vehicle

laws" against the off-duty officer.  Id. at *3.  The court found that the plaintiff's claim that the

defendants had performed an inadequate police investigation did not constitute a cognizable

injury, explaining that "if the false report itself cannot sustain a civil rights violation, it is hard to

---

[5] Like what is appears to be the case here, the Trucking Company was defending a personal injury action brought by the badly injured pick-up truck driver and conceded that the purpose of the suit against the investigating officer and Township was based on the fact that his conclusions were harmful in defending the suit filed against them. Like what appears to be the case here, it appeared that the driver was just a means or placeholder for the trucking company's suit and had little to no personal interest in his case.

imagine how the investigatory process that produced such a report could do so independently." Id. at *6. The court concluded that "there is no 'fundamental liberty interest' in having police perform a proper, impartial automobile accident investigation. That they should do so is obvious. That the United States Constitution requires them to do so, however, is simply wrong." Id. at *7.

Similarly, in *Moser v. Exeter Township*, the Honorable Ronald L. Buckwalter was presented with a claim in which a plaintiff brought suit against police officers under Section 1983 and alleged, among other things, that the officers "'intentionally, maliciously, and deliberately' wrote an accident report minimizing the severity of the accident" and "did not cite [the driver of the other car] for any traffic violations or bring criminal charges against her, 'due to his personal relationship' with her." No. 98-3525, 1998 WL 575109, at *3 (E.D. Pa. Sept. 4, 1998). The plaintiff further alleged that another officer "acting intentionally, maliciously and deliberately approved the 'false and factually misleading' accident report" and took no action against the driver of the other car. Id. The court granted the defendants' motion to dismiss because the plaintiff's "allegations fail to implicate federal rights" under Section 1983, nor did the plaintiff allege that he suffered any harm as a result of the defendants' actions. Id.

In sum, whether Plaintiff labels his claim as a false arrest, malicious prosecution or violation of his due process rights – the genesis and factual predicate of the claim – that the prosecution was unfair, biased, flawed – fails. Rather, such a claim, regardless of the label, fails as a matter of law and must be dismissed.

   **B.  Plaintiff's Conspiracy  - Unlawful Seizure (Count IV),
        and Conspiracy – Malicious Prosecution (Count V)
        Fail as a Matter of Law**

In Count IV of his Complaint, and County V of his Complaint, Plaintiff asserts a claims under §1983 for conspiracy to unlawful seize him and maliciously prosecute him respectively as against Commissioner Martin, ADA Brown, and Co-Defendant Detective Dissinger.

These two claim fails for multiple reasons.

First, as discussed above, and in Co-Defendant Dissinger's Brief, given that there was probable cause for the three traffic offenses – as demonstrated by the guilty conviction – Plaintiff's threshold false arrest / malicious prosecution / false arrest claim fails. Thus, if there is no constitutional violation in the first place, then there can be no derivative claim for a conspiracy to commit a constitutional violation.

Second, "a general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action." *Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231 (3d Cir. 1941); *see also Heath v. Shannon*, No. 4:CV-04-2275, 2006 U.S. Dist. LEXIS 17037, *1, *8-*9 (M.D. Pa. Feb. 17, 2006) (Jones, J.) ("In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.") (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)). Moreover, "to plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

In order to state a claim for conspiracy, "[a] plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal

13

right." *Heath*, 2006 U.S. Dist. LEXIS 17037 at *9-*10 (citing *D.R.*, 972 F.2d at 1377; *Rose*, 871 F.2d at 366; *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982). "Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. A plaintiff cannot rely on subjective suspicions and unsupported speculation." *Id.* (citations omitted).

And yet, that is exactly what Plaintiff has done here. He asserts that Commissioner Martin and Detective Dissinger were high school friends and acquainted on social media and thus implies that 'there must have been a conspiracy'. He further claims that Commissioner Martin and ADA Brown's boss were political allies, and thus 'there must have been a conspiracy.' This falls far short of the specificity required to asset a conspiracy. Further, if there was any such evidence of a conspiracy as alleged by Plaintiff, one would surely expect that Plaintiff would present such evidence in his complaint – not present shameless, defamatory innuendo and rank speculation. This is especially so given that there has been substantial discovery in the *West* case in which Noviho is a party, as is his employer CR England Trucking, Inc. and no doubt, there would have been something specific in the year-long discovery that Plaintiff could point to if any such evidence existed. Plaintiff does not – as no such 'conspiracy' occurred.

In truth, the allegations in Plaintiff's Complaint are nothing more than the "subjective suspicions and unsupported speculation" that are specifically prohibited. *Heath*, 2006 U.S. Dist. LEXIS 17037 at *9-*10. "Without such factual allegations, the rote pleading of 'conspiracy' is insufficient to state a claim," *Waris v. Mackey*, Civ. A. No. 09-1103, 2009 U.S. Dist. LEXIS 116961, *1, *37-*38 (E.D. Pa. Dec. 14, 2009) (Kugler, J.) (citing *Twombly*, 550 U.S. at 544) (dismissing complaint alleging conspiracy where not enough factual allegations to show an

agreement was made), and Plaintiff's conspiracy claims – Count IV and V should be dismissed.

## C. Plaintiff's *Monell* Claim (Count VI) Fails as a Matter of Law

Plaintiff's final claim – Count VI - is also derivative of his threshold unlawful arrest / malicious prosecution claims. Namely, Plaintiff asserts a claim against Lancaster County under a *Monell* theory of liability alleging that Commissioner Martin is a 'policy-maker' for the County. This claim fails for multiple reasons.

Derivatively, in order to establish liability under Section 1983 against a local government unit, such as Lancaster County, Plaintiff must demonstrate:  (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation.  *Monell v. Department of Social Svcs.*, 436 U.S. 658, 691 (1978); *Brown v. Commonwealth of Pennsylvania Dep't of Health Emergency Med. Svcs.*, 318 F.3d. 473 (3d Cir. 2003).

As discussed in the preceding sections, Plaintiff has failed to properly plead the first and seminal element of his derivative *Monell* claim - a constitutional violation.  Indeed, it is well-settled that, if there was no violation in the first place, then there can be no derivative municipal or supervisory claim.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992) (holding that a city may be liable for a policy or custom of failing to train its employees only "if a city employee violates another's constitutional rights."); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Marasco*, 318 F.3d at 505 ("[T]he initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"); *Nardini v. Hackett*, Civil Action No. 00-5038, 2001 U.S. Dist.

15

LEXIS 15896, *1, *22–*23 (E.D. Pa. Sept. 19, 2001) (Surrick, J.) (dismissing *Monell* claim where the Court found no underlying constitutional violation by the individual officers). Since there was no underlying constitutional violation, Plaintiff's derivative § 1983 *Monell* claim - Count VI - against the County of Lancaster also fails[6].

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Complaint against Defendants Lancaster County, Commissioner Martin, and ADA Brown should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), with prejudice, for failure to state a claim upon which relief may be granted.

If Defendants' Motion is granted, they reserve the right to seek fees and sanctions under, *inter alia*, 42 U.S.C. 1988, Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. §1927.

Respectfully submitted,

Dated: August 31, 2015                          /s/ David J. MacMain
                                                David J. MacMain, Esquire
                                                Attorney ID # 59320
                                                Megan K. Kampf, Esquire
                                                Attorney ID # 88027
                                                The MacMain Law Group, LLC
                                                101 Lindenwood Drive, Suite 160
                                                Malvern, PA 19355
                                                Dmacmain@macmainlaw.com
                                                Phone (484) 318 7703

---

[6] Plaintiff also fails to provide any support for his legal conclusion that Commissioner Martin – as one of three County Commissioners – can set policy for the County. Rather, any County decision would require a majority vote of at least two Commissioners. Plaintiff would additional have to show that another Commissioner was in on the conspiracy.

16

I, David J. MacMain, Esquire, hereby certify that on this 31st day of August, 2015, the

foregoing *Motion to Dismiss Plaintiff's Complaint* was filed electronically and is available for

viewing and downloading from the United States District Court for the Eastern District of

Pennsylvania. The following party was served via the ECF system:

> George A. Reihner
> Wright & Reihner P.C.
> 148 Adams Avenue
> Scranton, PA 18503
> gareihner@wrightreihner.com
> *Counsel for Plaintiff*
>
> Rolf E. Kroll
> Margolis Edelstein
> 3510 Trindle Road
> Camp Hill, PA 17011
> rkroll@margolisedelstein.com
> *Counsel for Defendant Christopher Dissinger*

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>August 31, 2015</u>          By:     <u>/s/ David J. MacMain</u>
                                                David J. MacMain
                                                Attorney I.D. No. 59320
                                                Megan K. Kampf
                                                Attorney I.D. No. 88027
                                                101 Lindenwood Drive, Suite 160
                                                Malvern, PA 19355
                                                *Attorney for Defendants*
                                                *Lancaster County Pennsylvania, Scott F.*
                                                *Martin, and Todd E. Brown*

# EXHIBIT "A"

Case: 16-3047   Document: 003112428611   Page: 163   Date Filed: 10/06/2016

Case 5:15-cv-03151-JLS   Document 17   Filed 08/31/15   Page 23 of 79
Case 5:15-cv-03151-JLS   Document 13   Filed 07/20/15   Page 1 of 10

# EXHIBIT "A"

## COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013

### CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Page 1 of 9

Mawuyrayrassuna Emmanuel Yaogan Noviho

Cross Court Docket Nos: 394 MDA 2015

| | |
|---|---|
| Judge Assigned: Ashworth, David L. | Date Filed: 09/11/2013     Initiation Date: 08/07/2013 |
| OTN: T 336034-6     LOTN: | Originating Docket No: MJ-02102-CR-0000227-2013 |
| Initial Issuing Authority: David P. Miller | Final Issuing Authority: |
| Arresting Agency: Manheim Twp Police Dept | Arresting Officer: Diesinger, Christopher M. |
| Complaint/Incident #: 2012MT10942 | |
| Case Local Number Type(s) | Case Local Number(s) |

| Case Status: | Closed | Status Date | Processing Status | Complaint Date: | 08/07/2013 |
|---|---|---|---|---|---|
| | | 02/28/2015 | Awaiting Appellate Court Decision | | |
| | | 01/27/2015 | Sentenced/Penalty Imposed | | |
| | | 01/27/2015 | Awaiting Sentencing | | |
| | | 10/01/2014 | Awaiting Trial | | |
| | | 11/13/2013 | Awaiting Pre-Trial Conference | | |
| | | 09/27/2013 | Awaiting Formal Arraignment | | |
| | | 09/11/2013 | Awaiting Filing of Information | | |

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 09/27/2013 | 9:00 am | Courtroom A | | Cancelled |
| Status Conference | 11/12/2013 | 9:00 am | Courtroom TBD | | Cancelled |
| Pretrial Conference | 12/23/2013 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 02/10/2014 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 05/12/2014 | 9:30 am | Courtroom 2 | Judge Joseph C. Madenspacher | Cancelled |
| Criminal Trial | 11/03/2014 | 9:00 am | Courtroom 12 | Judge David L. Ashworth | Scheduled |

| Date Of Birth: | 12/20/1990 | City/State/Zip: Newport News, VA 23608 |
|---|---|---|

Alias Name
Noviho, Johnspider

| Participant Type | Name |
|---|---|
| Defendant | Noviho, Mawuyrassuna Emmanuel Yaogan |

CPCMS 9082     Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 2 of 9

**Noviho, Mawuyrayrassuna Emmanuel Yaogan**                                   Nebbia Status: None

| Bail Action | Date | Bail Type | Percentage | Amount | Bail Posting Status | Posting Date |
|---|---|---|---|---|---|---|
| Set | 06/28/2013 | Unsecured | | $20,000.00 | | |

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 2 | 2 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 3 | 3 | F3 | 75 § 3732.1 §§A | Aggravated assault by vehicle | 11/12/2012 | T 336034-6 |
| 4 | 4 | S | 75 § 4302 §§A1 | Period For Requiring Lighted Lamps | 11/12/2012 | T 336034-6 |
| 5 | 5 | S | 75 § 3364 §§A | Too Slow For Conditions | 11/12/2012 | T 336034-6 |
| 6 | 6 | S | 75 § 3364 §§B1 | Slow moving vehicle to drive off roadway | 11/12/2012 | T 336034-6 |
| 7 | 7 | S | 75 § 4305 §§C | Use Below Minimum Speed Limit | 11/12/2012 | T 336034-6 |
| 8 | 8 | S | 75 § 3333 | Move Vehicle Unsafely | 11/12/2012 | T 336034-6 |

**Disposition**

| Case Event | | |
|---|---|---|
| Sequence/Description | Disposition Date | Final Disposition |
| Sentencing Judge | Offense Disposition | Grade   Section |
| Sentence/Diversion Program Type | Sentence Date | Credit For Time Served |
| Sentence Conditions | Incarceration/Diversionary Period | Start Date |

**Held for Court (Lower Court)**      Defendant Was Present

| Lower Court Disposition | 09/05/2013 | Not Final | |
|---|---|---|---|
| 1 / Homicide By Vehicle | Held for Court (Lower Court) | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | Held for Court (Lower Court) | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | Held for Court (Lower Court) | F3 | 75 § 3732.1 §§ A |
| 4 / Period For Requiring Lighted Lamps | Held for Court (Lower Court) | S | 75 § 4302 §§ A1 |
| 5 / Too Slow For Conditions | Held for Court (Lower Court) | S | 75 § 3364 §§ A |
| 6 / Slow moving vehicle to drive off roadway | Held for Court (Lower Court) | S | 75 § 3364 §§ B1 |
| 7 / Use Below Minimum Speed Limit | Held for Court (Lower Court) | S | 75 § 4305 §§ C |
| 8 / Move Vehicle Unsafely | Held for Court (Lower Court) | S | 75 § 3333 |

**Proceed to Court**      Defendant Was Not Present

| Information Filed | 09/27/2013 | Not Final | |
|---|---|---|---|
| 1 / Homicide By Vehicle | Held for Court | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | Held for Court | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | Held for Court | F3 | 75 § 3732.1 §§ A |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Case 5:15-cv-03151-JLS  Document 17  Filed 08/31/15  Page 26 of 79
Case 5:15-cv-03151-JLS  Document 13  Filed 07/20/15  Page 4 of 10

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

Court Case



Page 3 of 9

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

| Disposition | Disposition Date | Final Disposition | |
|---|---|---|---|
| Case Event | Offense Disposition | Grade | Section |
| Sequence/Description | Sentence Date | | Credit For Time Served |
| Sentencing Judge | Incarceration/Diversionary Period | | Start Date |
| Sentence/Diversion Program Type | | | |
| Sentence Conditions | | S | 75 § 4302 §§ A1 |
| 4 / Period For Requiring Lighted Lamps | Held for Court | S | 75 § 3364 §§ A |
| 5 / Too Slow For Conditions | Held for Court | S | 75 § 3364 §§ B1 |
| 6 / Slow moving vehicle to drive off roadway | Held for Court | S | 75 § 4305 §§ C |
| 7 / Use Below Minimum Speed Limit | Held for Court | S | 75 § 3333 |
| 8 / Move Vehicle Unsafely | Held for Court | | |
| | | **Final Disposition** | |
| Guilty | 01/27/2015 | F3 | 75 § 3732 §§ A |
| Trial | Not Guilty | | |
| 1 / Homicide By Vehicle | 01/27/2015 | F3 | 75 § 3732 §§ A |
| Ashworth, David L. | Not Guilty | | |
| 2 / Homicide By Vehicle | 01/27/2015 | F3 | 75 § 3732.1 §§ A |
| Ashworth, David L. | Not Guilty | | |
| 3 / Aggravated assault by vehicle | 01/27/2015 | S | 75 § 4302 §§ A1 |
| Ashworth, David L. | Not Guilty | | |
| 4 / Period For Requiring Lighted Lamps | 01/27/2015 | S | 75 § 3364 §§ A |
| Ashworth, David L. | Guilty | | |
| 5 / Too Slow For Conditions | 01/27/2015 | | |
| Ashworth, David L. | | S | 75 § 3364 §§ B1 |
| No Further Penalty | Withdrawn | | |
| 6 / Slow moving vehicle to drive off roadway | 01/27/2015 | S | 75 § 4305 §§ C |
| Ashworth, David L. | Guilty | | |
| 7 / Use Below Minimum Speed Limit | 01/27/2015 | | |
| Ashworth, David L. | | S | 75 § 3333 |
| No Further Penalty | Guilty | | |
| 8 / Move Vehicle Unsafely | 01/27/2015 | | |
| Ashworth, David L. | | | |
| No Further Penalty | | | |

Printed: 07/07/2015

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013
## CRIMINAL DOCKET
### Court Case

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 4 of 9

| | |
|---|---|
| **Name:** Todd Everett Brown | **Name:** Richard Hristos Katsifis |
| Assistant District Attorney | Private |
| **Supreme Court No:** 083914 | **Supreme Court No:** 314858 |
| **Phone Number(s):** | **Rep. Status:** Active |
| 717-299-8100   (Phone) | **Phone Number(s):** |
| **Address:** | 717-232-1851   (Phone) |
| Lancaster CO Da's Ofo | **Address:** |
| 50 N Duke St | Killian & Gephart Llp |
| Lancaster, PA 17602-2805 | PO Box 886 |
| | Harrisburg, PA 17108-0886 |
| | Representing: Noviho, Mawuyrayrassuna Emmanuel Yaogan |

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 06/28/2013 | | Miller, David P. |
| Bail Set - Noviho, Mawuyrayrassuna Emmanuel Yaogan | | | |
| 1 | 09/11/2013 | | Court of Common Pleas - Lancaster County |
| Original Papers Received from Lower Court | | | |
| 1 | 09/27/2013 | | Commonwealth of Pennsylvania |
| Information Filed | | | |
| 1 | 11/12/2013 | | Miller, Margaret C. |
| Order - Status, Relist for Pretrial Conference | | | |
| 2 | 11/12/2013 | | Daniels, Robert James Jr. |
| Entry of Appearance | | | |
| 1 | 12/23/2013 | | Madenspacher, Joseph C. |
| Status Order Filed | | | |
| 1 | 12/24/2013 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 12/24/2013 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013

### CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 5 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 02/10/2014 | | Knisely, Howard F. |
| Order - Status, Continued on Defendant | | | |
| 2 | 02/11/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 3 | 02/11/2014 | | Knisely, Howard F. |
| Order Granting Motion for Continuance | | | |
| 1 | 05/12/2014 | | Madenspacher, Joseph C. |
| List For Trial | | | |
| 3 | 05/14/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 4 | 05/14/2014 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |
| 1 | 09/29/2014 | | Ashworth, David L. |
| Order, Jury Trial Scheduled for week of 11/3/14 in CR12 | | | |
| 1 | 10/14/2014 | | Daniels, Robert James Jr. |
| Unopposed Motion For Continuance | | | |
| 1 | 10/31/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 10/31/2014 | | Ashworth, David L. |
| Order Granting Motion for Continuance | | | |
| 1 | 12/18/2014 | | Katsifis, Richard Hristos |
| Entry of Appearance | | | |
| 1 | 01/06/2015 | | Katsifis, Richard Hristos |
| Motion To Release Criminal History Records | | | |
| 1 | 01/07/2015 | | Ashworth, David L. |
| Order Granting Motion for Release of Criminal History recordes to Defense counsel | | | |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 6 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 01/21/2015 | | Brown, Todd Everett |
| Commonwealth's Motion in Limine | | | |
| 1 | 01/27/2015 | | Ashworth, David L. |
| Guilty | | | |
| Defendant is to pay all financial obligations | | | |
| 2 | 01/27/2015 | | Ashworth, David L. |
| Order - Sentence/Penalty Imposed | | | |
| 3 | 01/27/2015 | | Daniels, Robert James Jr. |
| Defenant's Proposed Jury Instructions | | | |
| 1 | 01/29/2015 | | Parsons, Joshua G. |
| DL-21 to be Prepared | | | |
| 1 | 02/03/2015 | | Court of Common Pleas - Lancaster County |
| Penalty Assessed | | | |
| 1 | 02/06/2015 | | Parsons, Joshua G. |
| DL-21 was prepared | | | |
| 1 | 02/09/2015 | | Unknown Filer |
| DL-21 Sent to PennDOT | | | |
| 1 | 02/26/2015 | | Daniels, Robert James Jr. |
| Notice of Appeal to the Superior Court | | | |
| 1 | 03/02/2015 | | Ashworth, David L. |
| Concise Statement Order | | | |
| 1 | 03/10/2015 | | Superior Court of Pennsylvania - Middle District |
| Docketing Statement from Superior Court | | | |
| 1 | 03/15/2015 | | Ashworth, David L. |
| Transcript of Jury Trial Vol. 1-6 | | | |

CPCMS 9082                                                                                      Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## COURT OF COMMON PLEAS OF LANCASTER COUNTY

Docket Number: CP-36-CR-0004200-2013

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

Page 7 of 9

v.

Mawuynayrassuna Emmanuel Yaogan Noviho

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 03/23/2015 | | Ashworth, David L. |
| Concise Statement of Errors Complained on Appeal | | | |
| 1 | 04/07/2015 | | Ashworth, David L. |
| Opinion | | | |
| 1 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Index of Record | | | |
| 2 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Original Record Sent | | | |

CPCMS 9082                                                                 Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 8 of 9

Last Payment Date: 02/26/2015                                      Total of Last Payment: -$70.50

Noviho, Mawuyrayrassuna Emmanuel Yaogan
Defendant

Costs/Fees

| | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| Miscellaneous Issuances | $16.50 | $0.00 | $0.00 | $0.00 | $16.50 |
| ATJ | $3.00 | $0.00 | $0.00 | $0.00 | $3.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CJES | $2.25 | $0.00 | $0.00 | $0.00 | $2.25 |
| Clerk Cost (Non-Jury/Guilty Plea) -6411AB1211 (Lan) | $132.00 | $0.00 | $0.00 | $0.00 | $132.00 |
| Clerk of Court Auto Fee-Costs 6593AAB1211 (Lan) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Commonwealth Cost - HB627 (Act 167 of 1992) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| County Court Cost (Act 204 of 1976) | $20.50 | $0.00 | $0.00 | $0.00 | $20.50 |
| DA Administration Fee - 6421AB130019021 (Lan) | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 |
| DA Cost - Summary - 6411AB1211 (Lancaster) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| JCPS | $10.25 | $0.00 | $0.00 | $0.00 | $10.25 |
| Judicial Computer Project | $8.00 | $0.00 | $0.00 | $0.00 | $8.00 |
| Sheriff Cost - Summary - 6411AB1211 (Lancaster) | $2.00 | $0.00 | $0.00 | $0.00 | $2.00 |
| State Court Costs (Act 204 of 1976) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| Prosecution Cost - 6411AB1211 (Lancaster) | $5.70 | $0.00 | $0.00 | $0.00 | $5.70 |
| Sealed Entry on Public Docket | $4.65 | $0.00 | $0.00 | $0.00 | $4.65 |
| Sealed Entry on Public Docket | $10.85 | $0.00 | $0.00 | $0.00 | $10.85 |
| Witness - 6411AB1211 (Lancaster) | $7.52 | $0.00 | $0.00 | $0.00 | $7.52 |
| Clerk of Court Auto Fee-Filing-6593AAB1211 (Lan) | $5.00 | -$5.00 | $0.00 | $0.00 | $0.00 |

CPCMS 9082                                                          Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 9 of 9

| Noviho, Mawuyrayrassuna Emmanuel Yaogan | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| Superior Court Filing Fee – 6444AB1211 (Lan) | $65.50 | -$65.50 | $0.00 | $0.00 | $0.00 |
| Postage | $7.40 | $0.00 | $0.00 | $0.00 | $7.40 |
| Postage | $16.95 | $0.00 | $0.00 | $0.00 | $16.95 |
| Costs/Fees Totals: | $494.57 | -$70.50 | $0.00 | $0.00 | $424.07 |
| **Fines** | | | | | |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Fines Totals: | $75.00 | $0.00 | $0.00 | $0.00 | $75.00 |
| Grand Totals: | $569.57 | -$70.50 | $0.00 | $0.00 | $499.07 |

** - Indicates assessment is subrogated

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT "B"

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :

              v.    :    No. 4200 - 2013

MAWUYRAYRASSUNA EMMANUEL    :
YAOGAN NOVIHO    :

ORDER

AND NOW, this 7th day of April, 2015, the Court hereby submits this Opinion

pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

2015 APR -7  PM 2:01

CLERK OF COURTS
LANCASTER COUNTY, PA

Copies to:    Susan E. Moyer, Assistant District Attorney
Robert Daniels, Esquire, 218 Pine Street, P.O. Box 886, Harrisburg, PA
17108-0886

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | No. 4200 - 2013 |
| | : | |
| MAWUYRAYRASSUNA EMMANUEL | : | |
| YAOGAN NOVIHO | : | |

OPINION SUR PA. R.A.P. 1925(a)

BY:   ASHWORTH, J., APRIL 7, 2015

    Mawuyrayrassuna Emmanuel Yaogan Noviho has filed a direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on January 27, 2015. This Opinion is written pursuant to Rule 1925(a) of Pennsylvania Rules of Appellate Procedure, and for the following reasons, this Court requests that this appeal be denied.

I.    **Background**

    On June 7, 2013, Noviho was charged with two counts of homicide by vehicle,[1] aggravated assault by a vehicle,[2] and related summary offenses as a result of conduct arising out of an incident on November 11, 2012. It was alleged that Noviho unintentionally caused the deaths of two people and the serious bodily injury of another as a result of his operation of a tractor while violating the Motor Vehicle Code in a

---

[1] 75 Pa. C.S.A. § 3732(A).

[2] 75 Pa. C.S.A. § 3732.1(A).

reckless or grossly negligent manner. Katie West was the operator of the other involved vehicle and she suffered serious bodily injury. Joshua A. West, her husband, was the front seat passenger and he was deceased as a result of the crash. Joshua C. West, her three-year-old son, who was in a child safety seat in the right rear passenger seat, also died from injuries sustained in the crash. Mrs. West's five-year-old daughter was in a booster seat in the left rear passenger seat and she suffered only minor injuries.

Following a six-day trial, the jury found Noviho not guilty of the homicide by vehicle and aggravated assault by vehicle charges. Following the jury's rendering of its verdict, this Court, sitting in judgment on the remaining summary charges, convicted Noviho of the Motor Vehicle Code violations of driving too slow for conditions, failure to use flashing signals, and moving a vehicle unsafely.[3][4] (N.T. at 1093-94.) Noviho was immediately sentenced to pay the statutory fines of $25.00 for each offense, plus costs.[5] (Id. at 1094.)

A timely notice of appeal to the Superior Court of Pennsylvania was filed on February 26, 2015. Pursuant to this Court's directive, Noviho furnished a concise statement of matters complained of on appeal which raises the following issues on

---

[3]75 Pa. C.S.A. § 3364(a), 75 Pa. C.S.A. § 4305(a), (b)(1), and 75 Pa. C.S.A. § 3333, respectively.

[4]Noviho was found not guilty of failure to use required lighted lamps, 75 Pa. C.S.A. § 4305(c), and the additional count of slow moving vehicle was withdrawn by the Commonwealth as duplicative. (Notes of Trial Testimony (N.T.) at 1093.)

[5]Section 6502 of the Motor Vehicle Code provides, in relevant part, that "[e]very person convicted of a summary offense for a violation of any of the provisions of this title for which another penalty is not provided shall be sentenced to pay a fine of $25." 75 Pa. C.S.A. § 6502(a).

2

appeal: (1) the Court erred in granting the Commonwealth's motion in limine; (2) the Court erred in excluding from evidence photographs taken at the scene of the accident; (3) the verdict on Count 5 (too slow for conditions) was against the weight/sufficiency of the evidence; (4) the verdict on Count 7 (use of flashing signals) was against the weight/sufficiency of the evidence; (5) the verdict on Count 8 (moving vehicle safely) was against the weight/sufficiency of the evidence; and (6) the Court erred in failing to allow the jury to indicate on the verdict slip which, if any, specific violation(s) of the Motor Vehicle Code occurred. (See Concise Statement at ¶¶ 1-6.) I will address these issues in reverse order.

## II.    Discussion

### A.    Jury Interrogatories

Noviho claims this Court erred by failing to have special interrogatories for the jury to determine whether the specific Motor Vehicle Code violations which were essential elements of the charged felony offenses were proven. (See Concise Statement at ¶ 6.)

> A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. . . . Proper appellate review dictates th[e] [Superior] Court consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. . . . Moreover, an appellant's belief that a court's instructions should contain additional explanation or his chosen dicta will not render a jury charge defective.

Commonwealth v. Hunzer, 868 A.2d 498, 516 (Pa. Super. 2005) (internal quotations

3

and citations omitted).  In **Hunzer**, the Superior Court found that where the trial court utilized the standard jury instruction for the offense charged (rape) and properly instructed on the elements required for that offense, the defendant's request for a special interrogatory as to a particular element of the offense (penetration) was properly denied.

Similarly, in the instant case, I used the standard jury instructions for the two felony offenses charged (homicide by vehicle and aggravated assault by vehicle), and instructed the jury as to the elements required to be proven beyond a reasonable doubt for each.  (N.T. at 1028-40.)  One common element for each felony was that Noviho committed a violation of the Motor Vehicle Code.  (Id. at 1029, 1037.)  The six underlying traffic regulations alleged to have been violated by Noviho were set forth at length during the charge (Id. at 1031-35), and repeated in response to questions by the jury during their deliberations.  (Id. at 1052-56, 1081-82.)  I concluded my initial instructions by noting: "You may find all, you may find none, but in order to find the defendant guilty, you must find beyond a reasonable doubt that he has been proven guilty of violating *at least one* of the Motor Vehicle Code motor vehicle regulations."  (Id. at 1039-40 (emphasis added).)

As the jurors were clearly, adequately and accurately instructed on the elements for each charged offense, there was no trial court error in refusing to have special interrogatories for the jury to determine those elements.  *See* **Hunzer**, *supra*. This allegation of error should be rejected.

4

Moreover, to allow the jury to specifically rule on the underlying motor vehicle violations would have been improper as no right to a jury trial historically or constitutionally is afforded an accused for a summary offense. The United States and Pennsylvania Constitutions require that only "one accused of a 'serious offense' be given a jury trial." **Commonwealth v. Mayberry**, 459 Pa. 91, 97, 327 A.2d 86, 89 (1974). "The question becomes whether the crime charged . . . is 'serious'. The test is clear. The decisions of the Supreme Court of the United States 'have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious and those carrying less are petty crimes.'"[6] Id. at 98, 327 A.2d at 89.

The Motor Vehicle Code violations at issue in this case do not provide for a sentence of imprisonment. Noviho was subject only to a fine for his summary offenses. Therefore, the right to trial by jury was not implicated, and he was not entitled to a trial by jury on the summary offenses. See **Commonwealth v. Kincade**, 358 Pa. Super. 591, 597, 518 A.2d 297, 300 (1986). See also **Commonwealth v. Smith**, 868 A.2d 1253, 1257 (Pa. Super. 2005). This Court was right to take the summary motor vehicle violations from the jury's consideration in this case.

Noviho further charges that the Court "abused its discretion in consulting with jurors prior to [the] Court's declaration of verdict regarding the Summary Offenses."

_____

[6] Under the definition in the Crimes Code, a "summary offense" is an offense "so designated in this title, or in a statute other than this title; or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." **Commonwealth v. Johnson**, 878 A.2d 973, 977 (Pa. Cmwlth. 2005) (quoting 18 Pa.C.S.A. § 106(c)).

5

(*See* Concise Statement at ¶ 6.)  Following the jury's verdict in this case, the

Commonwealth presented the summary offenses for a determination by the Court.

(N.T. at 1090.)  After hearing argument from counsel regarding the propriety of ruling on

those summary charges (Id. at 1090-91), I called a recess to allow counsel to prepare

their summations and to allow me to address the jurors in Chambers.[7]  (Id. at 1091-92.)

No objection was made by defense counsel at that time to my meeting with the jurors

and thanking them for their service.  (Id. at 1092.)  Nor was a motion for mistrial made

before a verdict on the summary charges was directed after I re-entered the courtroom.

(Id. at 1093.)  Failure of Noviho to object at trial to this alleged procedural impropriety at

trial waived that objection on appeal.  *See* **Commonwealth v. Romesburg**, 353 Pa.

Super. 215, 223, 509 A.2d 413, 417 (1986), and cases cited therein.

### B.    Weight/Sufficiency of the Evidence

Noviho has raised the issue of whether the evidence was sufficient to support his

summary convictions, given that the jury did not find the violations sufficient to convict

on the felony charges.  (*See* Statement of Errors at ¶¶ 3-5; *see also* N.T. at 1090,

1094.)  Noviho also argued at trial that the Court's verdict of guilty on the summary

motor vehicle charges is inconsistent with the jury's verdict of not guilty on the other

felony offenses that stemmed from the same alleged course of conduct.  (*See* N.T. at

1094-96.)

---

[7]There is nothing that prevents a trial judge from meeting with the jurors to thank them
for their service following their discharge from the case.  My meeting with the jurors, outside of
Noviho's presence, occurred after the jury had delivered its unanimous verdict, and after the
verdict was recorded by the clerk.  (N.T. at 1088-90.)

Our appellate courts have recognized that a criminal defendant who has been charged with both a summary offense and a felony offense may be placed in the unusual situation of having a trial before two separate and distinct fact finders -- a jury on the felony charge and a trial judge on the summary charge. *See, e.g.,* **Commonwealth v. Barger**, 956 A.2d 458, 459 (Pa. Super. 2008) (rape (F) and harassment (S)); **Commonwealth v. Wharton**, 406 Pa. Super. 431-32, 436, 594 A.2d 696, 697 (1991) (involuntary manslaughter (F) and driving at unsafe speed (S)); **Commonwealth v. Bowman**, 400 Pa. Super. 525, 526, 583 A.2d 1239, 1240 (1990) (accidents involving death or personal injury (F) and driving under suspension (S)). *See also* **Commonwealth v. Costa-Hernandez**, 802 A.2d 671 (Pa. Super. 2002) (DUI (M) and driving under suspension (S)); **Commonwealth v. Long**, 753 A.2d 272 (Pa. Super. 2000) (same); **Commonwealth v. Yachymiak**, 351 Pa. Super. 361, 505 A.2d 1024 (1986) (same). Such a consolidated jury/bench trial gives rise to the possibility of inconsistent factual findings. **Barger,** *supra* at 460. However, even if the judge's findings of fact, which support a conviction on the summary violation, do not comport with the jury's findings, which result in an acquittal of the felony charge, the judge's findings will not be disturbed on appeal, as the judge is under no duty to defer to the jury's findings on common factual issues. **Yachymiak,** *supra* at 366-67, 505 A.2d at 1026-27. *See also* **Wharton,** *supra* at 437, 594 A.2d at 699. Thus, inconsistent verdicts are permissible in Pennsylvania. **Barger,** *supra* at 460-61.

As I explained at trial, however, the two verdicts in this case are not necessarily inconsistent. A conviction for homicide by vehicle would have necessitated three

7

findings of fact: (1) Noviho caused the death of Joshua Alan West and/or Joshua Charles West (2) by acting recklessly or with gross negligence, (3) while violating a Motor Vehicle Code regulation. *See* 75 Pa. C.S.A. § 3732(a). My findings that Noviho violated three provisions of the Motor Vehicle Code are inconsistent only if the acquittal was based on the jury's doubt that Noviho operated his vehicle in violation of a driving regulation rather than on the absence of the other two elements of the offense. As I noted to counsel:

> [T]he jury . . . asked a number of questions with regard to the second element, that the defendant acted recklessly or with gross negligence.[5] They asked a number of questions, and they could very well have found a violation of the Vehicle Code and then found, however, that the conduct of the defendant was merely negligent or something else and not grossly negligent or reckless, as required by homicide by vehicle.

(*See* N.T. at 1096.) The jury in this case apparently struggled with the question of whether Noviho's conduct was reckless or grossly negligent. The verdicts in this case were not necessarily inconsistent. The "[Superior] Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict." **Commonwealth v. Swann**, 431 Pa. Super. 125, 128, 635 A.2d 1103, 1104-05 (1994). Therefore, I will address the sufficiency of the evidence as to each summary offense.

---

[5]The jury, in fact, asked that the second element of homicide by vehicle regarding recklessness or gross negligence be reread four times during their deliberations. (*See* N.T. at 1057, 1060, 1081, 1085.)

8

1.    **Count 5 – Too Slow for Conditions, 75 Pa. C.S.A. § 3364(a)**

Noviho was first found guilty of the summary offense of driving too slow

for conditions.  Section 3364 of the Motor Vehicle Code provides in relevant part:

> **(a) Impeding movement of traffic prohibited. –** Except when
> reduced speed is necessary for safe operation or in compliance with
> law, no person shall drive a motor vehicle at such a slow speed as to
> impede the normal and reasonable movement of traffic.

75 Pa. C.S.A. § 3364(a).  To establish a violation of § 3364, the Commonwealth does

not have to prove the speed at which the defendant was driving.  **Commonwealth v.**

**Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995).  However, an element of the

offense is proof that the defendant's slow driving speed impeded the flow of traffic.  Id.

Noviho claims the Commonwealth failed to establish that his "'slow speed was

not necessary for safe operation' where there was no testimony presented as to the

reasons for [Noviho's] speed or that the 'reasonable movement' of traffic was impeded."

(*See* Statement of Errors at ¶ 3.)  This argument must be rejected as the evidence

clearly and unequivocally established both the reason for Noviho's slow speed and its

impact on traffic.

It is undisputed that the applicable speed limit on the relevant stretch of Route

222 is 65 mph.  (*See* N.T. at 589.)  The Commonwealth's accident reconstruction

expert, Officer Bryan Kondras, conclusively determined that Noviho was operating his

tractor at 17 mph at the time of impact with the West vehicle.  (Id. at 618, 620.)  Noviho

initially reported to the police that he was driving between 50 and 55 mph in a known 65

mph zone.  (Id. at 729, 745; *see also* Commonwealth Exhibits 21 & 22.)  The expert

9

evidence would later establish that, in fact, Noviho had been traveling at speeds of 55 mph 1 minute and 44 seconds *prior* to the collision. (Id. at 615.) However, Noviho then brought his tractor to a stop, either on the roadway or on the shoulder of the road,[9] for 26 seconds. (Id. at 616-17.) Noviho re-entered the highway or resumed his travel just 16 seconds prior to the crash. (Id. at 618-19; *see also* Commonwealth Exhibit 19.) During that short time, Noviho only accelerated his tractor over 197 feet to a maximum speed of 17 mph at the time of impact. (Id. at 617-18, 621-22; *see also* Commonwealth Exhibit 19.) The Commonwealth's expert testified that, from the forensic evidence, Noviho was "not in a hurry to get up to speed." (Id. at 624.) The expert was also able to determine that there were no mechanical defects or malfunctions in the tractor, no roadway defects and no adverse weather conditions that might have contributed to the slow speed of the tractor and the ultimate crash. (Id. at 638.)

From this evidence, the reason for Noviho's slow speed was sufficiently established. Noviho pulled into traffic on a 65 mph highway from a dead stop and did not accelerate sufficiently to avoid impact with another vehicle on the roadway who was traveling with the normal flow of traffic.[10] (Id. at 626-27.) The slow speed was clearly not "necessary for safe operation or in compliance with law." *See* 75 Pa. C.S.A.

_____

[9] The Commonwealth expert testified only that the tractor was stopped either on the northbound roadway or on the shoulder of Route 222 197 feet before the Landis Valley Road overpass where the impact occurred. (N.T. at 617, 618, 621.) The forensic data and reconstruction analysis could not definitively place the stopped tractor either in the lane of travel or outside the lane of travel. (Id. at 625.) There is an improved shoulder in that location but no designated parking area or rest area. (Id. at 616-17.)

[10] Both James Schlinkman and Michele Levisky testified that they were driving at approximately 70 mph in the 65 mph zone. (N.T. at 247, 382.) According to these eyewitnesses, the West vehicle was traveling between 65 and 70 mph. (Id.) Thus, the West vehicle was traveling with the normal flow of traffic at the time of impact.

§ 3364(a). To the contrary, the Commonwealth expert testified that safety required Noviho to drive his tractor on the improved shoulder for a sufficient distance until he was operating at a safer speed to enter the highway and merge into traffic.[11] (Id. at 627.)

In order to constitute a violation of § 3364(a) of the Motor Vehicle Code, the Commonwealth had to further establish that Noviho's slow speed "impede[d] the normal and reasonable movement of traffic" on Route 222. See 75 Pa. C.S.A. § 3364(a). As for the "movement of traffic," there was abundant testimony to the presence of other vehicles on the roadway while Noviho was driving at the prohibited slow rate of speed. Noviho himself reported to the police that the traffic volume on Route 222 at the time of the collision was "normal," thus, indicating the presence of other vehicles on the roadway with him. (N.T. at 730.) Moreover, there was testimony at trial from two eyewitnesses to the collision who were traveling beside and behind the West vehicle at the time of impact.[12] (See Id. at 245-50; 382-91.) Clearly, there was sufficient evidence to establish the presence of traffic on Route 222 to impede.[13]

---

[11]The improved berm continued from where Noviho was first stopped, 197 feet south of the Landis Valley Road overpass, to beyond the point where the tractor came to stop after the collision. (N.T. at 598.)

[12]James Schlinkman testified that the traffic conditions on Route 222 were "[l]ight to moderate. Not real heavy." (N.T. at 380.) Michele Levisky also testified that there were vehicles ahead of her as she was driving in the left lane of Route 222 just prior to the collision. (Id. at 248-49.)

[13]The majority of the decisions in the Pennsylvania Common Pleas Courts hold that when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) there must be some testimony as to the presence of other vehicles on the roadway besides the defendant's vehicle and perhaps the police officer's vehicle. See Commonwealth v. McGrath, 78 Bucks Co. L. Rep. 212 (2004) (traffic stop not lawful where officer testified that there was no other traffic on roadway during his interaction with defendant,

11

The question for the Court then was when does a slow-moving vehicle "impede" the normal movement of traffic. This Court has found only two published Pennsylvania appellate court decisions interpreting this statute. In **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995), the Superior Court affirmed the defendant's conviction of impeding the "normal and reasonable movement of traffic" where he was driving between 18 and 28 mph below the posted maximum speed limit in a no-passing zone and causing a large number of vehicles to be backed up behind him. The Court explained:

> All that needed to be shown was that [Robbins] was operating his vehicle at such a slow speed that it was an impediment to the normal and reasonable movement of traffic. The testimony of the two officers indicated that [Robbins] was driving very slowly at a rate of speed of about 17 miles per hour through no-passing zones with speed limits of 35 and 45 miles per hour. *The officers also mentioned that between 18 or 20 cars were trailing behind [Robbins] and the operators of those vehicles were angry, raising their fists and honking their horns at [Robbins].*

Id. at 440, 657 A.2d at 1004 (emphasis added). This decision suggests that the driver of a slow-moving vehicle impedes traffic when his or her reduced speed interrupts the "normal and reasonable movement of traffic" by blocking or backing up traffic.

---

so slow rate of speed could not have impeded the normal movement of traffic); **Commonwealth v. Haugh**, No. C.A. 03-440, *slip op.* (Butler Co., June 17, 2003) (no reasonable suspicion of a violation of § 3364 where police officer testified there was no other traffic on the road during the four miles that he followed defendant driving at a slow speed); **Commonwealth v. Memminger**, No. 1481 Criminal 1999, *slip op.* (Monroe Co., Feb. 23, 2000) (no reasonable suspicion of a violation of § 3364 where the only traffic on highway at the time of the stop for slow speed was defendant's car and the police car that had been following him for five miles); *cf.* **Commonwealth v. Faustner**, No. 1742 of 2005, *slip op.* (Lehigh Co., Dec. 28, 2005) (summary vehicle code stop for "impeding traffic" lawful where no "civilian traffic" on roadway at the time, but only police officer's vehicle).

12

Other jurisdictions that have considered impeding traffic statutes, which are nearly identical to Pennsylvania's statute, have also focused on whether a driver's slow speed blocked or otherwise backed-up traffic. *See, e.g.,* **State v. Pray**, 5 Kan. App.2d 173, 613 P.2d 400 (1980) (holding that driving farm combine 12-15 mph on a state highway with a 13-vehicle back-up provided sufficient evidence to find the driver guilty of impeding the normal and reasonable movement of traffic); **State v. Lewis**, 980 So.2d 251 (La. App. 3rd Cir. 2008) (holding valid traffic stop where the speed limit was 70 mph and there were 8 cars waiting in the passing lane for a vehicle traveling less than the speed limit to move over so that they could pass by, thus impeding the normal flow of traffic); **State v. Haataja**, 611 N.W.2d 353 (Minn. Ct. App. 2000) (holding that an officer had reasonable suspicion to initiate a stop of a car where the driver was traveling 10-15 mph slower than the posted maximum speed limit and other cars were backed-up behind defendant); **State v. Benders**, 334 Mont. 231, 146 P.3d 751 (2006) (holding that driving approximately 30-45 mph under the posted maximum speed limit and a build-up of at least 4 vehicles gave officer "sufficient information, under the totality of the circumstances, to establish particularized suspicion that [defendant] was violating the law against impeding traffic"); **Moreno v. State**, 124 S.W.3d 339 (Tex.App. 2003) (holding that driving 25 mph in 45 mph zone provided officer with probable cause to stop vehicle for impeding traffic where officer also observed traffic backed up behind defendant's vehicle due to slow driving). Clearly, a driver can "impede" or interrupt the normal and reasonable movement of traffic if he or she causes other vehicles to come to a stop or a crawl.

13

Employing similar reasoning, our Superior Court concluded, in the second published appellate court decision interpreting § 3364(a), that when a driver's slow speed does not affect other motorists then the driver is not impeding the normal and reasonable movement of traffic. In **Commonwealth v. Lana**, 832 A.2d 527 (Pa. Super. 2003), the Superior Court found a traffic stop based on § 3364 to be without probable cause where a police officer stopped a motorist with out-of-state tags driving 5 to 10 mph in a 20.mph zone at 4:00 a.m. on a residential street in a high-crime area of Philadelphia. Citing to the record, the Court summarily concluded that "[n]o traffic was impeded by the speed of appellant's vehicle." Id. at 529. The Court further noted that the officer followed the slow-moving motorist "for a distance of just one block, barely enough time in which to fasten one's seat belt and adjust the mirrors." Id. As there was no evidence of the slow driving affecting other traffic, the Court held the officer lacked probable cause to execute a traffic stop of the defendant. Id. at 529-30. *See also* **Commonwealth v. Henderson**, 87 Bucks Co. L. Rep. 478 (2014) (stop unlawful where officer testified other traffic on roadway minimal and not impacted or affected in any way by defendant's sudden and rapid deceleration to an almost full stop in the middle lane of a three-lane highway); **Commonwealth v. Puskar**, No. 1859 of 2005, *slip op.* (Fayette Co. May 18, 2006) (where officer testified there was other traffic on the road but he had no recollection as to whether any vehicles were following behind defendant, court concluded officer had no knowledge that slow speed was impeding 'the normal and reasonable movement of traffic").

Other states have similarly decided that when a driver's slow speed does not have an effect upon other motorists on the roadway then the driver is not impeding the

14

flow of traffic.  *See, e.g., Agreda v. State*, 152 So.3d 114 (Fla. Dist. Ct. App. 2014)

(concluding that detective lacked legal basis for traffic stop for driving at such a slow

speed as to impede the normal flow of traffic, even if five other vehicles were following

behind the vehicle, where highway had two lanes in each direction, traffic was otherwise

light, detective had no trouble passing all the vehicles to reach the lead vehicle, and

vehicle's speed of 45 mph was within the permissible range for the highway); **People v.**

**Beeney**, 181 Misc.2d 201, 694 N.Y.S.2d 583, 586 (N.Y. Co. Ct. 1999) (noting that "the

dispositive factor when determining whether slow speed is a violation (or may serve as

reasonable articulable suspicion for a stop) is its effect upon other drivers"); **State v.**

**Bacher**, 170 Ohio App. 3d 457, 867 N.E.2d 864 (2007) (concluding that officer lacked

reasonable suspicion to initiate a stop of defendant's vehicle for impeding or blocking

traffic when there was no evidence in the record that defendant's slow speed affected

other drivers); **State v. Tiffin**, 202 Or.App. 199, 121 P.3d 9 (2005) (where the speed

was not significantly below the speed limit, there were no other cars on the road, and, if

the officers' vehicle was blocked at all, it was for a very short distance, it cannot be said

that defendant was blocking or impeding the normal and reasonable flow of traffic).

    Clearly, the duty imposed by § 3364(a), and other statutes around the country

like it, that proscribes against the slow speed of traffic upon state highways is for the

purpose of protecting against the risk that a slow-moving vehicle would block traffic or

create a dangerous condition on a highway designed and customarily used to carry

fast-moving traffic.  This is precisely what happened in the instant case.  The

Commonwealth established (1) Noviho's operation of a motor vehicle below the posted

speed limit, (2) which operation, impeded the "normal and reasonable movement of traffic."

Here, Noviho was driving on a controlled access, two-lane, one-way portion of the highway. He knew or should have known that other vehicles were likely to be driving at speeds within the maximum permitted by statute -- 65 mph. He was at a place where there was, insofar as the road was concerned, no apparent reason for curtailment of speed (such as warnings, obstructions, entrances, exits, etc.) or other existing condition which would cause a following motorist to anticipate that a driver in front would be driving at, or would slacken to, an unusually slow speed. Coupled with this is the important circumstance that Noviho had been driving at 55 mph. Within a two minute period, he brought his truck from 55 mph to a dead stop and then started his movement again, all the while without giving any warning, by use of his hazard lights, of his stopping or starting. He knew or should have known, by simply looking, that there were motorists behind him.[14] This conduct was voluntary on his part and was not necessary for safe operation or to comply with any law.

Under the circumstances of this case, there existed a substantially dangerous condition as created by Noviho's below speed limit driving that not just impeded traffic, but, as required by law, impeded the normal and reasonable movement of traffic and resulted in a fatal collision.[15] We, therefore, could conclusively determine from the facts

---

[14]Both eyewitnesses to the collision testified that the headlights on the West vehicle were on and illuminated the tractor at the time of impact. (N.T. at 245, 248, 251, 383, 385.)

[15]Moreover, the West vehicle could not safely pass the slow-moving tractor in the right lane as testimony established a passing car in the left lane in the moments prior to impact. (N.T. at 245, 247-48.)

16

as presented by the Commonwealth that Noviho was in violation of § 3364 of the Motor

Vehicle Code.

      2.     **Count 7 – Vehicular Hazard Signal Lamps, 75 Pa. C.S.A. § 4305**

        Noviho was also convicted at Count 7 of driving without the required

vehicular hazard signal lamps.  Section 4305 of the Motor Vehicle Code provides, in

relevant part, as follows:

> **(a) General rule.–** Simultaneous flashing of the two front and two
> rear signal lamps shall indicate a vehicular traffic hazard.  The driver
> of a motor vehicle equipped with simultaneous flashing signals shall
> use the signals when the vehicle is stopped or disabled on a highway,
> except when the vehicle is stopped in compliance with a traffic-control
> device or when legally parked. . . .
>
> **(b) Use outside business and residence districts.–** Outside of a
> business or residence district:
> (1) The driver of a motor vehicle or combination equipped with
> simultaneous flashing signals shall use the signals when the vehicle is
> unable to maintain a speed of at least 25 miles per hour because of
> weather, grade or other similar factors or is unable to maintain a speed
> consistent with the normal flow of traffic.
> . . .
>
> **(c) Use below minimum speed limit.–** The driver of a motor vehicle
> or combination equipped with simultaneous flashing signals shall use
> the signals when the vehicle is not maintaining at least the minimum
> speed established in accordance with the provisions of section 3364
> (relating to minimum speed regulation).

75 Pa. C.S.A. § 4305(a)-(c).

        Noviho was originally charged at Count 7 with violating subsection (c) above and,

accordingly, Count 7 is identified on the Information as "Use Below Minimum Speed

Limit."  However, during the trial in this matter, on oral motion of the Commonwealth's

attorney and without objection from defense counsel, the Information was amended at Count 7 to delete subsection (c) and to add subsections (a) and (b)(1). (N.T. at 62; *see also* N.T. at 74.) I made a notation on the Information to reflect these changes regarding the applicable subsections but I did not change the caption for Count 7 which read: "Use Below Minimum Speed Limit." This explains why, when I pronounced the verdict on Count 7, I referred to "use below minimum speed limit." (Id. at 1094.) In fact, Noviho was found guilty of violating subsections (a), "General Rule," and (b)(1), "Use outside business and residence districts."

Under the Pennsylvania Motor Vehicle Code, the use of hazard lights to warn of a traffic hazard is mandatory. Pursuant to § 4305(a), "[t]he driver of a motor vehicle equipped with simultaneous flashing signals *shall* use the signals when the vehicle is stopped or disabled on a highway, except when the vehicle is stopped in compliance with a traffic-control device or when legally parked." 75 Pa. C.S.A. § 4305(a) (emphasis added). The Commonwealth, therefore, was required to establish the following three facts: (1) Noviho's tractor was stopped, (2) on a highway, (3) without his flashing signals activated.

Route 222 constitutes a "highway" under § 4305 because the street is publicly maintained and open to the public for vehicular traffic.[16] Moreover, the tractor met the definition of "stopped" under § 4305. "Stopped" includes "any halting even

_____

[16] Section 102 of the Vehicle Code defines highways as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. . . ." 75 Pa. C.S.A. § 102. Thus, whether Noviho was on the traveled portion of the roadway or on the berm or shoulder, he was nonetheless on the highway.

18

momentarily." 75 Pa. C.S.A. § 102.[17] The use of the word "any" accounts for all stops regardless of the duration. Noviho's tractor was "stopped," for purposes of § 4305(a), on Route 222 for 26 seconds. (N.T. at 616.) The statute does provide for exceptions such as stopping to "avoid conflict with other traffic" or to comply "with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102. However, there was no evidence presented to suggest that Noviho stopped his tractor on the highway to avoid conflict with other traffic. Nor was there evidence to indicate that Noviho was merely abiding by traffic signs, signals, or officer directions.

Lastly, there was sufficient evidence to find that, when Noviho's tractor was stopped on the highway for 26 seconds, he did not utilize his flashing signals. Both eyewitnesses to the collision testified that they never saw a vehicle pulled off to the side of the roadway ahead of them with *any* lights on. (N.T. at 261, 383-84.) It was the consistent testimony of both drivers that the object which the West vehicle struck came out of the darkness. (Id. at 245-46, 249-51, 260, 383.)

Based upon all of the evidence provided at trial, Noviho was properly found guilty of the summary offense of being "stopped" on a "highway" without using his flashing signals to warn other drivers of a traffic hazard.[18] 75 Pa. C.S.A. § 4305(a).

---

[17]Section 102 of the Vehicle Code defines "stopped" as "any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102.

[18]The evidence would also have supported a violation of subsection (a) for failure of Noviho to use his flashing signals to warn of a traffic hazard *after* the collision when he was stopped on the shoulder of Route 222 while rescue efforts were being conducted on the occupants of the West vehicle. (See N.T. at 206, 232-33, 253, 255, 392, 604; *see also* Commonwealth Exhibit 7.) The testimony of four eyewitnesses that Noviho failed to activate his flashers on the tractor is in stark contrast to Noviho's two statements to the police the night of

19

Noviho was also charged with the related vehicular hazard signals offense found in § 4305(b)(1). Pursuant to that subsection, when outside business and residential areas,[18] "[t]he driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is unable to maintain a speed of at least 25 miles per hour because of weather, grade or other similar factors or is unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Noviho claims the evidence at trial failed to establish that he was "unable" to maintain a speed consistent with the normal flow of traffic where there was no testimony presented as to whether his vehicle was unable to "maintain speed." (*See* Statement of Errors at ¶ 4.)

The assumption by the Court is that Noviho is suggesting he was accelerating at the time of impact with the West vehicle and had not reached his maintainable speed. The statute requires the use of hazards when a vehicle is "unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Whether accelerating or not,[20] Noviho was driving in a designated lane of travel on a high-speed

---

the accident that he activated his "emergency lights" or "four-way flashers" after he "felt an impact from behind." (Id. at 729, 744, 745.)

[18] The testimony conclusively established that this section of Route 222 was outside business and residential areas, ran through a rural stretch of countryside, and was very dark. (N.T. at 116-17, 159, 210, 243-44, 381, 589-90.)

[20] What distinguishes this case is the fact that Noviho was not entering the highway from an entrance ramp which allows a vehicle to accelerate to the appropriate speed to merge into oncoming traffic. Such an approach lane also alerts highway traffic to the possibility of other vehicles entering the roadway at a reduced speed, although the vehicle entering the highway must always yield to oncoming traffic. See 75 Pa. C.S.A.§ 3321. In this case, Noviho stopped his vehicle on the highway and was attempting to re-enter the flow of traffic. He failed to use the improved shoulder as an acceleration ramp to achieve even a moderately safe speed before entering the highway and merging into traffic. (See N.T. at 627.)

20

road at a substantially subnormal speed that was clearly not consistent with the normal flow of traffic which was traveling at speeds of approximately 65 to 70 mph. (See N.T. at 247, 382.) Because Noviho could not maintain a speed consistent with the traffic flow on Route 222, he was required by law to activate his hazard lights to alert drivers to a dangerous condition on the highway.

Again, the testimony of the two eyewitnesses to the collision established the absence of Noviho's hazard lights. James Schlinkman testified that immediately prior to impact, he saw neither hazard lights, running lights, nor tail lights on the tractor. (N.T. at 383-84.) Similarly, Michele Levisky stated she saw no flashing hazards, no headlights, and no steady tail lights. (Id. at 251, 255.) This evidence conclusively established that Noviho failed to use his flashing signals when he was driving on Route 222 at a speed significantly less than the normal flow of traffic for a 65 mph zone.

### 3.    Count 8 – Move Vehicle Unsafely, 75 Pa. C.S.A. § 3333

Lastly, Noviho challenges this Court's verdict on the summary charge of failing to move his vehicle safely from a stopped position on the roadway. Section 3333 of the Motor Vehicle Code provides: "No person shall move a vehicle which is stopped, standing or parked unless and until the movement can be made with safety." 75 Pa. C.S.A. § 3333. Noviho charges that the Commonwealth failed to establish beyond a reasonable doubt "that the movement of [his] vehicle onto the roadway was unsafe where there was no testimony as to *when* the vehicle entered the roadway." (See Statement of Errors at ¶ 5 (emphasis added).)

21

To the contrary, there was exhaustive expert testimony from which the finder of fact could determine when Noviho entered the roadway. The electronic control module (ECM) from the tractor provided detailed data for the two-minute period of time surrounding the collision. (N.T. at 610-11.) At precisely 17-seconds before impact with the West vehicle, Noviho's tractor was in a stopped or idling position, with the brakes and clutch engaged. (Id. at 617, 625.) At precisely 16 seconds before impact with the West vehicle, Noviho's tractor started moving. (Id. at 618-19; *see also* Commonwealth Exhibit 19.) The data shows that the tractor traveled 197 feet over the course of 16 seconds at a top speed of 17 mph before the collision occurred. (Id. at 617-21.)

The Commonwealth's expert, Officer Kondras, presented the three possible scenarios for how and when Noviho entered the highway from his assumed position on the berm[21]; none of which was, in his opinion, safe given the speed of oncoming vehicles. (N.T. at 627.)

> [Noviho] either pulls out and immediately cuts over into the lane and is going 2 miles, 3 miles an hour[.]  [O]r he slowly pulls out and does a . . . very slow, steady movement over. And then if he's halfway through it, he's going 8, 11 miles an hour.
> Or he drives up the shoulder . . . and at the last second before impact he cuts over and immediately into the right lane. He's going 15 to 17 miles an hour at that point and . . . he essentially would have cut right in front of Ms. West's vehicle as he gets over.

(Id. at 628-29.) Based upon this information, Officer Kondras opined that "clearly it was unsafe to pull out. There's no safe time." (Id. at 628.)

---

[21]As noted previously, the ECM established that the tractor was stopped but it could not verify whether it was on or off the highway. (N.T. at 615-17, 621, 626.) The logical assumption is that the tractor was pulled off onto the shoulder of the roadway. The alternative, stopping a vehicle in a lane of travel on a 65 mph highway at night, is almost too ludicrous even to suggest.

22

This electronic data was confirmed by the eyewitness testimony of Schlinkman who stated that the time and distance that elapsed from Ms. West's headlights illuminating the tractor and the collision was "[n]o more than a second" (N.T. at 387), "instantaneous" (Id. at 388-89), "maybe a car length and a half." (Id. at 390.) The other witness, Levisky, testified that she heard the crash *first* and then "saw the headlights hit whatever was in front of it." (Id. at 245; *see also* Id. at 249.) She could not even identify the object as another vehicle until after she had brought her car to rest in the grass median. (Id. at 250, 252.)

There was sufficient testimony to support the finding that the tractor was standing either on the highway, or on its berm, at 17 seconds prior to impact, and that sometime during the next 16 seconds, Noviho operated his vehicle from a dead stop onto the 65 mph highway before such movement could be made with safety.

### 4.    Weight of the Evidence

Noviho also claims this Court's guilt determinations were against the weight of the evidence. This issue is waived, however, because Noviho failed to raise it properly at the conclusion of trial or in a post-sentence motion.

The Pennsylvania Rules of Criminal Procedure apply to the summary offenses in this case arising under the Motor Vehicle Code.[22] Accordingly, the Rules governing

---

[22]The case before this Court was a "court case" within the meaning of the Pennsylvania Rules of Criminal Procedure because Noviho was charged with felony offenses and summary offenses. Rule 103 defines the term "court case" as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa.R.Crim.P. 103. By contrast, "summary case" is defined as "a case in which the *only* offense or offenses charged are summary offenses." Id. (Emphasis added). The Comment to

23

post-trial practice are applicable here.[23] Rule 607 provides, in relevant part, that a claim that the verdict was against the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; (3) or in a post-sentence motion." Pa. R.Crim.P. 607(a). Noviho did not move for a new trial on weight of the evidence grounds at the conclusion of trial nor did he file a post-sentence motion raising a weight of the evidence claim. As such, this claim is waived. **Commonwealth v. Walsh**, 36 A.3d 613, 622 (Pa. Super. 2012) (*citing* **Commonwealth v. Priest**, 18 A.3d 1235 (Pa. Super. 2011) (concluding that appellant's claim that the verdict was against the weight of the evidence was waived because it was not presented to the trial court in a post-sentence motion)). *See also* Pa. R.Crim.P. 607, Comment ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.")).

Assuming, *arguendo*, that Noviho's weight of the evidence argument has been preserved for appellate review, it lacks merit. A claim that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict,

---

Pa.R.Crim.P. 400 provides that "[i]f one or more of the offenses charged is a misdemeanor, felony, or murder, the case is a court case (see Rule 103) and proceeds under Chapter 5 of the rules. Ordinarily, any summary offenses in such a case, if known at the time, must be charged in the same complaint as the higher offenses and must be disposed of as part of the court case." Pa. R.Crim.P. 400 Comment (citations omitted). Chapters 5, 6 and 7 of the Criminal Rules govern procedures in court cases and, therefore, govern this case.

[23] I note that Pa.R.Crim.P. 720(D), which prohibits post-sentence motion practice in summary convictions following a trial *de novo*, did not apply because the summary convictions were not from a trial *de novo* after losing before the local district magistrate judge, *see* **Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013), and because Rule 400 requires the summary offenses be addressed as court cases. Pa.R.Crim.P. 400, Comment.

24

but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." **Commonwealth v. Robinson**, 834 A.2d 1160, 1167 (Pa. Super. 2003). *See also* **Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006).

Our Superior Court has explained the proper standard of review applicable to a challenge to the weight of evidence:

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012) (*quoting* **Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 409 (2003)).

Considering the quality and quantity of the evidence in this case, as outlined above, there is no reason to reject the verdicts. This Court had the opportunity to see and hear the expert and lay witnesses and evaluated and determined the credibility and the weight of the evidence in favor of the Commonwealth and against Noviho. The verdicts in this case certainly do not shock this Court's sense of justice so as to make the award of a new trial imperative.

25

**C.    Motion *in Limine***

Noviho next claims the Court erred in granting the Commonwealth's motion *in limine,*

> including the decision to exclude the testimony of [Noviho's] expert
> witness prepared to testify to the reflective qualities of reflective tape
> placed on the rear of the truck, and an individual's ability to perceive
> and react to an obstacle, and allowing the Commonwealth's witnesses
> to opine as to whether the individual that ran into the back of the truck
> had time to perceive and react to the presence of the truck.

(Statement of Errors at ¶ 1.)  This adverse evidentiary ruling by the Court allegedly violated Noviho's constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.  **Commonwealth v. Begley,** 566 Pa. 239, 265, 780 A.2d 605, 620 (2001).  An abuse of discretion requires "not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."  **Commonwealth v. Charlton,** 902 A.2d 554, 559 (Pa. Super. 2006) (*quoting* **Commonwealth v. Widmer,** 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)).

The admissibility of an expert opinion is governed by Pennsylvania Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:

26

(a) the expert's scientific, technical or other specialized knowledge is
beyond that possessed by the average layperson;
(b) the expert's scientific, technical or other specialized knowledge will
help the trier of fact to understand the evidence or to determine a fact
in issue; and
(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. It has long been the law of this Commonwealth that "[t]he purpose of
expert testimony is to assist the factfinder in grasping complex issues not within the
knowledge, intelligence, and experience of the ordinary layman." **Commonwealth v.
Page**, 59 A.3d 1118, 1135 (Pa. Super. 2013) (*quoting* **Commonwealth v. Begley**, 566
Pa. 239, 263, 780 A.2d 605, 621 (2001)). On the other hand, "[p]henomena and
situations which are matters of common knowledge, may not be the subject for expert
testimony." **Collins v. Zediker**, 421 Pa. 52, 53, 218 A.2d 776, 777 (1966).

At the start of trial, the Commonwealth presented a motion *in limine* seeking to
preclude, *inter alia*, the proffered testimony of defense "human factors" expert, Mark
Lee Edwards, Ph.D., that a reasonably alert driver would have been able to detect and
respond to the presence of Noviho's tractor based on the conspicuity markings on the
rear of the tractor alone. (Commonwealth Motion *in Limine* at ¶ 20.) The
Commonwealth argued in its motion that this proffered expert testimony failed to satisfy
the test of Pa.R.E. 702 because (1) the jury did not require Dr. Edwards' expertise in
understanding this subject matter, and (2) his opinions would invade the province of the
jury. (Id. at ¶¶ 21-24.)

Noviho objected to the motion on two grounds. First, he argued that "[h]uman
factors experts have long been accepted as appropriate expert witnesses."
(Defendant's Response to Commonwealth's Motion *in Limine* at ¶ 21.) In fact, our

27

research uncovered no Pennsylvania cases allowing human factors testimony in a criminal case.[24] Second, Noviho claimed "a lay person would have little or no knowledge regarding the properties of reflective tape and the ability to perceive." (Id.) To the contrary, as noted by our sister court in **Morningstar v. Hoban**, 55 Pa. D.&C.4th 225 (Allegh. Co. 2002), when excluding the proffered testimony of a human factors expert on the ability of a layperson to estimate speeds:

> There are few skills better known to an average person than those surrounding driving. This includes estimating the speed of cars all around each of us every day. Expert testimony attacking the estimates of speed provided by eyewitnesses such as these with ample experience and opportunity for observation is impermissible both because the subject is not beyond the knowledge and skill of a layperson and because to permit the testimony would intrude upon the jury's function of deciding credibility. The proper methodology for attacking such testimony is the time tested art of cross-examination and not through expert testimony.

Id. at 251.

I would add that also included among the driving skills of a layperson is the ability to observe and react to reflective markings on other vehicles. This is something within the common knowledge and experience of all drivers and does not require expert testimony to understand. See **Collins v. Zediker**, *supra* (expert opinion offered as to speed of a pedestrian's pace was reversible error as matter was within common

---

[24]There are a handful of reported appellate *civil* cases where human factors experts were permitted to testify. See **Reinoso v. Heritage Warminster SPE LLC**, 108 A.3d 80 (Pa. Super. 2015); **Mitchell v. Gravely Int'l, Inc.**, 698 A.2d 618, 620 (Pa. Super. 1997); **Riley v. Warren Mfg., Inc.**, 455 Pa. Super. 384, 392, 688 A.2d 221, 225 (1997); **Mackowick v. Westinghouse Electric Corp.**, 373 Pa. Super. 434, 442, 541 A.2d 749, 752 (1988), *aff'd*, 525 Pa. 52, 575 A.2d 100 (1990); **Smith v. Kelly**, 2009 WL 9101529 (Pa. Cmwlth. 2009). See also **Frey v. Harley Davidson Motor Company, Inc.**, 734 A.2d 1 (Pa. Super. 1999) (expert testimony on visibility conspicuity permitted).

knowledge and experience of jury); **Christiansen v. Silfies**, 446 Pa. Super. 464, 667 A.2d 396 (1995) (expert testimony concerning weather conditions at time and place of accident properly excluded because weather conditions involve matters of common knowledge that are easily described and understood by laymen, and there was eyewitness testimony regarding the density of fog and level of visibility at accident scene). *See also* **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) (determining what areas of the body are vital is not a complex issue that would require medical testimony; "an ordinary layman could conclude without expert testimony that [the victim's] head, stomach, and neck are vital areas").

Based upon the case law and the facts of this case, I ruled that Noviho's human factors or conspicuity expert would be permitted to testify only to the existence of the reflective material on the truck and to the placement of the material on the tractor in compliance with the federal laws regarding such. (N.T. at 899-90.) The expert was precluded, however, from testifying as to the distances at which the reflective material could have or should have been visible to the West vehicle. (Id. at 900.) After reviewing the expert report, it was clear that this expert could not offer testimony with regard to the location, condition and/or type of headlights on the West vehicle, or the angle at which they shone on the rear of Noviho's tractor. (Id. at 900-01.) Nor could the expert testify to the specific road and lighting conditions at the time of the collision.

More importantly, there were two lay witnesses in this case, Levisky and Schlinkman, who testified to their ability to perceive the reflective markings on Noviho's tractor, a matter of common knowledge easily described and understood by ordinary

29

citizens. (See N.T. at 245, 249, 250-51, 261, 385.) The availability of firsthand observations from these eyewitnesses who were at the scene made the testimony of a human factors expert unnecessary and, indeed, permitting such testimony would have infringed on the jury's right to determine credibility. See **Commonwealth v. Delbridge**, 771 A.2d 1, 5-6 (Pa. Super. 2001).

Accordingly, following extensive argument by counsel, I ruled, on the record, that the Commonwealth's motion *in limine* to preclude the expert testimony of Dr. Edwards as to a driver's ability to perceive reflective markings on a tractor was granted as this was something every layperson with a driver's license could easily detail and comprehend. (See N.T. at 893-903.) This evidentiary ruling was not an abuse of the Court's discretion and Noviho's challenge to the ruling is without merit.

### D.    Accident Scene Photographs

Lastly, Noviho argues that the Court erred "by excluding from evidence photographs taken at the scene of the accident showing the positioning of the truck at the scene of the accident, emergency triangles placed at the scene of the accident and that the truck in question was visible from a significant distance." (Statement of Errors at ¶ 2.) Again, Noviho claims this adverse evidentiary ruling by the Court violated his constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Although Noviho does not specifically identify the challenged photographs for the Court, a review of the record indicates that Defense Exhibits 11, 12 and 13 were

30

214

objected to by the Commonwealth and not admitted into evidence. (See N.T. at 493-500, 951-52.) I will assume these photographs form the basis of Noviho's evidentiary challenge.

The admission of photographs is largely within the discretion of the trial court and will not be reversed except for an abuse of discretion. **Commonwealth v. Lowry**, 55 A.3d 743, 753 (Pa. Super. 2012) (*citing* **Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767, 776 (2004)). Here, there was no abuse of discretion in refusing to admit into evidence, for conspicuity purposes, Noviho's photographs of his tractor, where the photographs, although taken on the night of the crash, did not accurately depict the scene of the collision or the conditions at the time of impact. Specifically, (1) the tractor was positioned on the berm as opposed to the right lane of travel, some distance from the point of impact, (2) the tractor was artificially illuminated, and (3) reflective triangles had been placed near the tractor following the crash. (N.T. at 494-99.) *See* **Commonwealth v. Iafrate**, 385 Pa. Super. 579, 586, 561 A.2d 1244, 1247 (1989), *rev'd on other grounds*, 527 Pa. 497, 594 A.2d 293 (1991) (no abuse of discretion in court's refusal to admit into evidence photographs purporting to show the placement of vehicles on the street at the time of the incident given the different lighting conditions, the different distances of the car from the curb, and the insufficient foundation laid for the photo depicting the defendant posed by a car); Yachymiak, 351 Pa. Super. at 364-65, 505 A.2d at 1025-26 (court did not abuse its discretion in excluding photographs due to its doubt that the lighting, brightness levels, relative heights, depths and distances sufficiently reproduced the observations of the police, thereby failing to establish the probative value of the photographs).

31

Noviho's Exhibits 11, 12 and 13 had limited probative value relative to the conditions at the time of the crash and were also potentially confusing and prejudicial to the jury.  Therefore, they were properly excluded in this case.

III.    **Conclusion**

. For the reasons set forth above, this Court respectfully requests that the appeal of Mawuyrayrassuna Emmanuel Yaogan Noviho be denied.

Accordingly, I enter the following:

32

216

# EXHIBIT "C"

Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)

---

2008 WL 818615
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Claudio JARRETT and Keystone Freight Corp., Plaintiffs,
v.
TOWNSHIP OF BENSALEM, et al., Defendants.

Civil Action No. 07-1480.   |   March 26, 2008.

**Attorneys and Law Firms**

Joseph M. Toddy, Anton G. Marzano, Zarwin, Baum, Devito, Kaplan, Schaer & Toddy, P.C., Philadelphia, PA, for Plaintiffs.

David J. Macmain, Katherine Skubecz, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, Joseph J. Santarone, Jr., Marshall Dennehey Warner Coleman & Goggin, King of Prussia, PA, for Defendants.

---

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

**\*1** Plaintiffs Claudio Jarrett and Keystone Freight Corp. ("Keystone") bring this action against Defendants Derek Goldstein and George Price, officers of the Bensalem Police Department ("Department"), Fred Harren, Director of Public Safety and Chief of Police for the Township of Bensalem, and the Township of Bensalem, a municipality. Pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants Goldstein and Price violated their civil rights by filing a police report that falsely blamed Plaintiff Jarrett for an automobile accident that occurred while he was driving a truck for Plaintiff Keystone. Plaintiffs further assert a *Monell* claim against Defendants Harren and Bensalem, alleging that they failed to instruct, supervise, control, and/or discipline Defendant Goldstein, thereby ratifying the officer's conduct. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted, and all claims are dismissed.

### I. BACKGROUND

---

*Jarrett v. Township of Bensalem*, Not Reported in F.Supp.2d (2008)

On June 16, 2006, Plaintiff Jarrett was operating a tractor-trailer owned by Plaintiff Keystone, when he collided with a pickup truck being driven by non-party Jared Watson, who was then a volunteer firefighter. (Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.] Ex. A (Accident Report) at 3 & Ex. B (Watson Dep.) at 15.) Defendant Goldstein responded to the scene of the collision, investigated the accident and prepared a report. (Defs.' Mot. Ex A at 3; Pls.' Resp. to Defs.' Mot. for Summ. J. [hereinafter Pls.' Resp.] Ex. H (Goldstein Dep.) at 27.) Upon his arrival, Defendant Goldstein found Watson slumped over his steering wheel and unconscious. (Pls.' Resp. Ex. H at 27-34.) Watson was taken by rescue personnel to Frankford Torresdale Hospital. (*Id.*; Defs.' Mot. Ex. A at 5.) Plaintiff Jarrett was taken by non-party Officer Wolfinger to Warminster Hospital; Jarrett's injuries are not described by the parties. (Defs.' Mot. Ex. A at 4.) Both vehicles were towed to the public works garage; they were released by Goldstein on June 19, 2006. (*Id.* at 5.) Keystone employee Gerard Murray picked up the tractor trailer the same day. (*Id.*) The pickup truck was moved to Davidson's, an automobile body shop. (*Id.*)

Goldstein's initial report concluded that the "primary cause" of the accident was Plaintiff Jarrett's "entering the highway without safe clearance." (*Id.* at 4.) However, Goldstein also concluded that Watson "would have been able to stop his vehicle before contact had he been traveling the speed limit, [although] he would have [had] to take a drastic evasive action to avoid the crash ." (*Id.*) Goldstein thus determined that Watson's excessive speed was a "contributing factor" to the accident. (*Id.*) Plaintiff Jarrett was not cited with any traffic offense; Watson was cited with a registration violation, but not with any offense stemming from the accident. (*Id.*)

On June 27, 2006, counsel for Plaintiff Keystone notified the Department that while photographing Watson's vehicle, he noticed open alcoholic beverage containers inside. (*Id.* at 5; Defs.' Mot. Ex. B (Emails between Lt. Kirgan and Goldstein) at 1.) Defendant Goldstein maintains that he did not have probable cause at the accident scene to suspect that the unconscious Watson was driving while intoxicated and thus did not then search his vehicle; Plaintiffs allege that Goldstein did have probable cause, based on his statement that, "... I attempted to draw blood the night of the accident but the hospital refused to do [sic] take blood because the driver was critical." (*Id.*) On June 28, 2006, Defendant Goldstein inspected the vehicle at Davidson's body shop, but found that "the contents of the vehicle had been removed by the owner." (Defs.' Mot. Ex. A at 5.)

\*2  The Department investigated the possibility that Watson was driving while intoxicated over the next several months; all of their findings were added as supplements to the initial accident report. (*Id.* at 5-9.) Their investigation revealed that at least one of the "some twenty firefighters and paramedics on the scene" had smelled alcohol inside the Watson vehicle, though he did not know if it was coming from Watson's person. (*Id.* at 8; Pls.' Resp. To Defs.' Statement of Facts [hereinafter Pls.' Resp. to Facts] ¶ 11.) On November 2, 2006, a search warrant was issued to Frankford Torresdale Hospital for Watson's blood test results from the night of the accident. [1] (Defs.' Mot. Ex. A at 9.) Watson's blood alcohol level was found to be .173 and he was charged

*Jarrett v. Township of Bensalem*, Not Reported in F.Supp.2d (2008)

with driving under the influence of alcohol ("DUI"). (Defs.' Mot. Ex. D (DUI report) at 2.) Watson pled guilty to the charge and served ninety days in jail. (Defs.' Mot. Ex. E. at 54-55.)

In spite of the newly discovered evidence regarding Watson's intoxication, the Department never changed, and maintains, their ultimate conclusion that Jarrett is primarily liable for the accident and Watson is secondarily liable. (*See* Defs.' Mot. Ex. A.) On July 7, 2006, prior to the blood test results or DUI charge, Watson's insurance carrier notified Plaintiffs that they would not make any payment on their claim because of the finding of fault in the police report. (Pls.' Resp. Ex. M (Letter from Carrier) at 1.) On August 29, 2007, the carrier offered to settle the claim with Plaintiffs for fifty percent, or $3,740.02, "based on comparative negligence." (*Id.* at 2.) Meanwhile, Watson has filed a personal injury suit against Plaintiffs in the Philadelphia Court of Common Pleas. Plaintiffs have not informed this Court whether they have filed any counterclaims or joined any other relevant parties in the state case.

Plaintiffs claim that Defendants Goldstein and Price violated their due process rights under the Fourteenth Amendment by failing to properly investigate the accident, which resulted in a false allocation of fault.[2] They further assert a *Monell* claim against Defendants Harren and Bensalem for endorsing and ratifying Defendant Goldstein's deviation from department protocol. Defendants moved for summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir.2002).

## III. DISCUSSION

### A. Plaintiffs have failed to allege a constitutional deprivation by Defendant Goldstein

Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)

---

**\*3** Plaintiffs first allege that Defendant Goldstein violated their due process rights by filing a false police report. Plaintiffs fail to cite, and the Court has not found, a single case from any jurisdiction that enumerates an affirmative constitutional right to a correct police report. They likewise fail to adduce any right to be free from an incorrect police report, absent a resulting constitutional deprivation of life, liberty, or property. Plaintiffs' claim against Goldstein thus fails as a matter of law, as they have not suffered any constitutional harm.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir.2003) (*citing Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir.2000)). Section 1983 does not provide any substantive rights; rather, it is vehicle through which a plaintiff may vindicate federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, Section 1983 "does not provide 'a right to be free of injury whenever the State may be characterized as the tortfeasor'-the plaintiff must show a deprivation of a federally protected right." *Bush v. City of Phila.*, Civ. A. No. 98-0994, 1999 WL 554585, at \*3 (E.D.Pa. July 15, 1999) (quoting *Moser v. Exeter Twp. Borough of Council Members*, Civ. A. No. 98-3525,1998 WL 575109, at \*1 (E.D.Pa. Sept. 4, 1998) (internal citations omitted)).

## 1. *There is no constitutional right to a true police report*

Courts in the Eastern District of Pennsylvania and elsewhere have held that the filing of a false police report is not itself a constitutional violation, even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct. *Bush*, 1999 WL 554585, at \*4 (surveying cases). Accepting as true Plaintiffs' thin evidence of police misconduct, and even their conclusion that the report is false, no set of facts can make out a constitutional violation here as a matter of law.[3]

In *Moser*, the plaintiff alleged that a police officer "intentionally, maliciously, and deliberately" minimized the severity of a car accident in the police report and failed to cite the other driver "due to his personal relationship" with the driver's family; she further alleged that another officer approved the false report. *Moser*, 1998 WL 575109, at \*3. Judge Buckwalter granted the defendants' motion to dismiss the Section 1983 claim, holding that "[plaintiff's] allegations fail to implicate federal rights." *Id.* In *Bush*, the plaintiff was involved in a car accident with an off-duty police officer. The plaintiff filed a Section 1983 claim after finding that the investigating officer included only the off-duty officer's untrue version of the facts in the police report, and blamed the accident on plaintiff. In granting summary judgment, Judge Hart held that "there is no fundamental liberty interest in having police perform a proper, impartial automobile accident investigation. That they *should* do so is obvious. That the United States Constitution requires them to do so, however, is simply wrong." *Bush*, 1999 WL 554585, at \*7. Courts in other Circuits uniformly agree, and

---

Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)

Plaintiffs have adduced no evidence here that would support a contrary conclusion of law. *See, e.g., Landigran v. Warwick,* 628 F.2d 736, 744 (1st Cir.1980) ("We do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution."); *Shock v. Tester,* 405 F.2d 852, 855 (8th Cir.1969) (affirming that defendants knowingly and intentionally preparing, filing, and failing to correct a false automobile report could not support a cause of action).

### 2. Plaintiffs have shown no constitutional harm from a false police report

*4 While there is no constitutional right to an accurate police report, there is a constitutional right to be free from the consequences of the filing of a false report, if and only if those consequences "constitute a deprivation of life, liberty, or property." *Bush,* 1999 WL 554585, at *5 (*citing White v. Tamlyn,* 961 F.Supp. 1047,1056 (E.D.Mich.1997)). Plaintiffs fail to actually plead any presently existing constitutional deprivation. In their response to Defendants' motion, however, Plaintiffs aver that they have suffered two constitutional deprivations: (1) "Plaintiffs have already been denied a right of full recovery of the damage to their property by virtue of the dissemination of the report"; (2) "The drunk driver has sued the plaintiffs claiming that he was lawfully operating his motor vehicle on the basis of the faulty investigation. Plaintiffs will now expend time, money, and effort defending a baseless cause of action." (Pls.' Resp. at 14.) Neither is a constitutional harm.

As seems to be a pattern, Plaintiffs fail to cite to any legal authority that would demonstrate a constitutional right to receive what they consider to be "full recovery" on their insurance claim. While it should go without saying that a private insurance company's determinations of fault and recovery do not implicate Section 1983, there is no constitutionally protected "liberty or property interest in obtaining a large insurance settlement." *Hill v. Racine,* Civ. A. No. 04-831, 2005 WL 1657093, at *2 (E.D.Wis. July 13, 2005). Plaintiffs have produced no evidence that they contested the recovery determination. In any event, should Watson's insurance company continue to reject Plaintiffs' claim when presented with evidence that their insured was convicted of DUI, the insurance company would be the proper entity for Plaintiffs' challenge, not these defendants.

Neither is Plaintiffs' need to defend themselves in Watson's state personal injury lawsuit a constitutional deprivation of property. Simply put, Plaintiff Jarrett was the other driver in a serious collision that left Watson hospitalized and unconscious. Jarrett has adduced no evidence that Watson's lawsuit has anything to do with the police report at issue. Shockingly, Plaintiffs have volunteered that police reports are not admissible evidence in civil lawsuits in Pennsylvania. (Pls.' Resp. ¶ 10) ("Under Pennsylvania law, police reports ... are not evidential."); *see also Rox Coal Co. v. W.C.A.B. (Snizaski),* 570 Pa.60, 807 A.2d 906, 914-15 (Pa.2002) ("A police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence.") (*citing Holland v. Zelnick,* 469, 329 Pa.Super. 469, 478 A.2d 885, 888 (Pa.Super.1984)). Without any evidence that the police report has caused a constitutional harm in the state case, Plaintiffs cannot in good faith rest their purported constitutional deprivation

Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)

on a possibility that is not only unripe, but inadmissible. Because Plaintiffs have failed to plead a constitutional deprivation, their Section 1983 claim against Defendant Goldstein must fail as a matter of law. *See Bush,* 1999 WL 554585, at *4-6. Accordingly, summary judgment is granted as to Defendant Goldstein.

**B. Without a predicate constitutional deprivation by Officer Goldstein, Plaintiffs' *Monell* claim fails as a matter of law**

**\*5** In order to establish liability under Section 1983 against a local government unit or a supervisory official, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation. *Monell v. Dep't. of Social Servs. of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As we have held that Plaintiffs failed to demonstrate a predicate constitutional violation, we need not reach the *Monell* claim, as it too must fail as a matter of law. *Estate of Smith v. Marasco,* 318 F.3d 497, 505 (3d Cir.2003) ("[T]he initial question in a Section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all ."); *see also Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 467 (3d Cir.1989) ("[The municipal defendant] cannot be vicariously liable under *Monell* unless one of [the municipality's] employees is primarily liable under section 1983 itself."). Accordingly, summary judgment is granted to Defendants Harren and Bensalem.

**IV. CONCLUSION**
For the foregoing reasons, the Court grants summary judgment to Defendants Goldstein, Price, Harren, and Bensalem and dismisses all claims.[4] An appropriate Order follows.

**ORDER**

**AND NOW,** this **26st** day of **March, 2008,** upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' response thereto, and for the foregoing reasons, it is hereby **ORDERED** that Defendants' motion (Document No. 21) is **GRANTED.** The Clerk of Court is directed to close this case.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 818615

Footnotes

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                6

Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)

1   The Court notes the inconsistency between Goldstein's statement that the hospital refused to take Watson's blood and the Department's later receipt of blood test results. While this inconsistency raises questions about Goldstein's credibility, it does not alter the outcome of the case, which turns on a pure question of law.

2   It is unclear to the Court why Officer Price is named as a defendant. In his deposition, Defendant Price testified that he did not perform any investigative duties in this case. (Defs.' Mot. Ex. K (Price Dep.) at 34-37.) Plaintiffs' allegations against Officer Price are that he "sign[ed] off on the [police] report," "apparently made no effort to ensure that crucial evidence was retained or that those investigating the incident followed departmental procedures," and that "he failed to follow up on inaccuracies in the report once Officer Goldstein left the force." Plaintiffs do not cite to any evidence in support of any of these claims. (Pls.' Resp. to Facts ¶ 22.) Indeed, Price's signature appears nowhere on the report, and the record does not support any of the other allegations. (See Defs.' Mot. Ex. A.) As Plaintiff cannot show any constitutional violation by Defendant Price, summary judgment will be granted to him, and Plaintiffs' claim against Price is dismissed.

3   Plaintiffs' Complaint alleged that "Defendants conspired in not properly pursuing the investigation because they knew Watson, and therefore, let their knowledge of Watson color their investigation." (Compl. ¶ 21.) As the evidence adduced during discovery has shown no relationship among the officers and Watson, Plaintiffs have changed their theory. Plaintiffs now assert that the Defendants engaged in this alleged conspiracy because logos and symbols on Watson's car demonstrated he was a firefighter, though admittedly "personally unknown to them and from a different and neighboring town." (Pls.' Resp. to Facts ¶ 11.) The Court need not elaborate on this leap of faith, as even an intentional conspiracy to file a false report is not a constitutional violation. Bush, 1999 WL 554585, at *4.

4   Plaintiffs also appear to assert an Equal Protection Clause-based Fourteenth Amendment violation. Plaintiffs, however, do not even attempt to make a prima facie showing; instead, they simply refer to Plaintiff Jarrett in passing as a "foreign national." This is woefully insufficient to meet Plaintiff's initial burden, and summary judgment will be granted on the Equal Protection Clause claim. See, e.g., Moyer v. Borough of North Wales, Civ. A. No. 00-1092, 2000 WL 1665132, at *6 (E.D.Pa. Nov.7, 2000) ("The plaintiff must allege that she (1) is a member of a protected class; (2) was similarly situated to members of an unprotected class; and (3) was treated differently from the unprotected class.").

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

224

Jarrett v. Township Of Bensalem, 312 Fed.Appx. 505 (2009)

312 Fed.Appx. 505
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure
32.1 generally governing citation of judicial decisions issued on or after Jan. 1,
2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

Claudio JARRETT; Keystone Freight, Appellants
v.
TOWNSHIP OF BENSALEM; Fred Harran;
George Price; Derek Goldstein, Officer, j/s/a.

No. 08-2266.    |    Submitted Under Third Circuit  LAR
34.1(a) Feb. 6, 2009.    |    Filed Feb. 20, 2009.

**Synopsis**
**Background:** Motorist involved in motor vehicle accident brought § 1983 claim against township,
officer, and others alleging they conspired to file fraudulent police report concerning motor
vehicle accident. The United States District Court for the Eastern District of Pennsylvania, Berle
M. Schiller, J., 2008 WL 818615, granted summary judgment in favor of defendants. Plaintiff
appealed.

**Holdings:** The Court of Appeals, Lourie, Circuit Judge, held that:

[1] mere existence of allegedly incorrect police report did not implicate constitutional rights, and

[2] motorist did not have a constitutionally protected due process liberty interest in obtaining a
insurance settlement.

Affirmed.

*505  On Appeal from the United States District Court for the Eastern District of Pennsylvania
(D.C. No. 07-cv-1480), District Judge: Honorable Berle M. Schiller.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Jarrett v. Township Of Bensalem, 312 Fed.Appx. 505 (2009)

---

**Attorneys and Law Firms**

Joseph M. Toddy, Esq., Zarwin, Baum, Devito, Kaplan, Schaer & Toddy, Philadelphia, PA, for Appellants.

Janelle B. Fulton, Esq., David J. Macmain, Esq., Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Township of Bensalem, Fred Harran, George Price, Derek Goldstein.

Before: McKEE, JORDAN, and LOURIE *, Circuit Judges.

## OPINION OF THE COURT

LOURIE, Circuit Judge.

**\*\*1** Claudio Jarrett and Keystone Freight Corp. (collectively, "Appellants") appeal from a grant of summary judgment in favor of the Township of Bensalem, Fred Harran, George Price, and Derek Goldstein (collectively, "Appellees"). Appellants' claim, filed pursuant to **\*506** 42 U.S.C. § 1983, alleged that Appellees had conspired to file a fraudulent police report concerning a motor vehicle accident involving Jarrett. The District Court granted summary judgment, finding that because Appellants had failed to allege a constitutional violation, the claim failed as a matter of law. *Jarrett v. Twp. of Bensalem*, No. 07-1480, 2008 WL 818615, *5, 2008 U.S. Dist. LEXIS 23984, at *16 (E.D.Pa. Mar. 26, 2008). We agree with the District Court that Appellants' claim fails as a matter of law, and we will therefore affirm.

## I. Discussion

On June 16, 2006, Jarrett was driving a tractor-trailer owned by Keystone Freight Corp., when he was involved in an accident with a pickup truck being driven by a nonparty, Jared Watson. One of the named defendants, Officer Goldstein of the Bensalem police department, responded to the scene of the accident. [1] Goldstein investigated the scene and prepared an accident report in which he concluded that the "primary cause" of the accident was Jarrett entering the highway without "safe clearance." Goldstein also concluded that Watson's excessive speed at the time of the crash was a "contributing factor." Neither driver was cited for any offense stemming from the accident.

A few weeks later, after receiving a tip from Keystone Freight's counsel, the Bensalem Police Department began investigating whether Watson had been intoxicated on the night of the accident. Eventually, Watson was charged with driving under the influence. He pled guilty to that charge and served ninety days in jail. In spite of this, the Bensalem Police Department did not alter its police report.

---

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

*Jarrett v. Township Of Bensalem*, 312 Fed.Appx. 505 (2009)

---

Appellants then brought suit in the Eastern District of Pennsylvania, alleging that Officers Price and Goldstein had violated their civil rights by filing a false police report. *See Jarrett*, 2008 WL 818615, *1, 2008 U.S. Dist. LEXIS 23984, at *2. Appellants argued that because of the police report, they had become subject to a personal injury lawsuit filed by Watson and had been unable to obtain a full recovery on their insurance claim. They further asserted a *Monell* claim against Harren, the Director of Public Safety and Chief of Police, and the township of Bensalem, alleging that they had ratified Goldstein's unconstitutional conduct. *Id.*

The District Court granted Appellees' summary judgment motion, finding that Appellants had no constitutional right to an accurate police report and had failed to show any constitutional harm resulting from the police report. *Id.* at *3-5, 2008 U.S. Dist. LEXIS 23984, *10-15. Appellants appealed that decision.

We review a District Court's grant of summary judgment *de novo. Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir.2004). In doing so, we view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**2  Appellants' claim is brought pursuant to 42 U.S.C. § 1983, which "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution of the United States." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.2000). Thus, in order to state a cause of action under Section 1983, two allegations are required. "First, the plaintiff must allege that some person *507 has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *see also, e.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995) ("A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."). It is not disputed on appeal that Appellants' claim meets the state-action requirement for Section 1983 claims. The only issue for us to decide is whether Appellees' conduct deprived Appellants of any federal right.

[1]  The District Court determined that Appellants had not been deprived of any federal right. On appeal, Appellants make two arguments challenging that determination. First, Appellants argue that the Court erred in holding that there is no constitutional right to a correct police report. We disagree. Although Appellants claim that the Court's conclusion on this point was erroneous, they fail to cite any case supporting the contention that a constitutional right to a correct police report exists. The District Court correctly noted that "[c]ourts in the Eastern District of Pennsylvania and elsewhere have held that the filing of a false police report is not itself a constitutional violation." *Jarrett*, 2008 WL 818615, *3, 2008 U.S. LEXIS 23984 at *10; *see Bush v. City of Philadelphia*,

---

Jarrett v. Township Of Bensalem, 312 Fed.Appx. 505 (2009)

No. 98-0994, 1999 WL 554585, *1, 1999 U.S. Dist. LEXIS 11428, at *4 (E.D.Pa. July 16, 1999) (surveying cases and concluding that there is no constitutional right to a correct police report). Other circuits have reached the same result. *See, e.g., Landrigan v. Warwick,* 628 F.2d 736, 744 (1st Cir.1980) (finding that the mere existence of a false police report does not "deprive[ ] a person of a right secured by the Constitution"); *see also Shock v. Tester,* 405 F.2d 852, 855 (8th Cir.1969). Nor do Appellants provide any rationale for a holding that an individual has a constitutional right to an accurate police report. We thus agree with the District Court that the mere existence of an allegedly incorrect police report fails to implicate constitutional rights.

Appellants' second argument is that they have been subjected to constitutional harm resulting from the erroneous police report. Appellants claim two separate constitutional harms: first, that because of the erroneous police report, they are now defendants in a personal injury lawsuit brought by Watson, and second that because Jarrett was listed as the "primary cause" of the accident, they were unable to obtain a full recovery on their insurance claim.

**3  The District Court found that both of Appellants' claims of constitutional harm failed as a matter of law. First, the Court found that the allegedly unconstitutional police report was not the cause of Watson's civil lawsuit. It stated that Appellants had failed to demonstrate any evidence that the police report was the cause of the lawsuit.

We agree with the District Court that Appellants' argument is unpersuasive. Viewing the evidence in the light most favorable to Appellants, no reasonable fact-finder could conclude that the police report caused Appellants to have to defend themselves in state court. In fact, Appellants acknowledge that the police report is not admissible in Pennsylvania civil lawsuits. *Jarrett,* 2008 WL 818615, *4, 2008 U.S. Dist. LEXIS 23984, at *14; *see Rox Coal v. W.C.A.B.,* 570 Pa. 60, 807 A.2d 906, 914-15 (Pa.2002) ("A police report prepared by an officer who is not a witness to the accident is inadmissible."). That admission weakens Appellants' argument that the police report was the cause of whatever harm was caused by Watson's *508 filing of the civil suit. Moreover, any argument that a police report, which is open to the public, may have stimulated Watson to sue Jarrett is far too attenuated to constitute a constitutional harm. The police report can thus hardly be argued to have been the cause of a lawsuit.

[2]  Regarding Appellants' second claim, that they have suffered harm by not receiving a full recovery on their insurance claim, the District Court held that "there is no constitutionally protected 'liberty or property interest in obtaining a large insurance settlement.' " *Id.* at *4, 2008 U.S. Dist. LEXIS 23984, at *13-14 (quoting *Hill v. Racine,* No. 04-831, 2005 WL 1657093, *1, 2005 U.S. Dist. LEXIS 46520, at *2 (E.D.Wis. July 13, 2005)). We agree that one does not have a constitutional right to full recovery on an insurance claim. Nor is there a constitutional right even to a full insurance settlement. Section 1983 does not create new substantive rights, but instead provides a remedy for the violation of federal rights, *Baker v. McCollan,* 443 U.S. 137, 144 n. 3,

*Jarrett v. Township Of Bensalem,* 312 Fed.Appx. 505 (2009)

99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); no such right appears here. Appellants in this case appear to argue that their due process rights guaranteed in the Fourteenth Amendment have been violated. *See* Appellants' Br. at 19. However, to have a constitutionally protected property interest under the Fourteenth Amendment, "a person must have more than an abstract desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Appellants in this case cannot show that they have a "legitimate claim of entitlement" to a complete recovery of an insurance claim. Insurance payouts are subject to, *inter alia,* the policies and procedures of private insurance companies and to the specific facts relating to a particular loss. They are not entitlements, as that term is understood in context of the Fourteenth Amendment. We can find no case, and Appellants do not direct us to any case, that elevates the expectation of a complete insurance payout to a constitutional property interest. Nor do we find any reason to do so here. We thus affirm the District Court's conclusion that Appellants failed to properly state a claim under 42 U.S.C. § 1983.

## II. Conclusion
**\*\*4** For the foregoing reasons, the judgment of the District Court will be affirmed.

## All Citations

312 Fed.Appx. 505, 2009 WL 418623

Footnotes
\*  Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals for the Federal Circuit sitting by designation.
1  Another defendant, Officer George Price of the same police department, is listed as a "reviewer" on one of the police reports, but apparently he was not at the scene. The District Court noted that it is unclear why Price was even named a defendant. *Jarrett,* 2008 WL 818613, at \*2 n. 2, 2008 U.S. Dist. LEXIS 23984 at \*6 n. 2.

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

6

229

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA         :
EMMANUEL NOVIHO,       :      Civil Action No. 15-cv-03151
         Plaintiff       :
                         :      Jury Trial Demanded
     v.                    :
                         :      Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA: :
SCOTT F. MARTIN,         :
TODD E. BROWN, and       :
CHRISTOPHER DISSINGER,    :
              Defendants      :

## REPLY BRIEF OF DEFENDANT CHRISTOPHER DISSINGER

### I.    FACTUAL AND PROCEDURAL HISTORY

On or about August 17, 2015, Plaintiff filed a Brief in Opposition to Defendant

Dissinger's Motion to Dismiss. *See* Doc. 16. Though a large portion of Plaintiff's

Brief is devoted to a rehashing of the allegations made in the Complaint, the core of

the legal arguments made by Plaintiff can be summarized as follows. First, while

Plaintiff concedes that he was convicted of three Motor Vehicle code violations, he

asserts that these convictions are not for "crimes" but rather are "summary offenses"

which are not subject to arrest under the circumstances present here where the

"offenses" were not committed in the presence of the arresting officer. *See* Plaintiff's

Brief at Page 10 and 11. On this basis, Plaintiff asserts the Fourth Amendment

Seizure claims, set forth in Count II of the Complaint, should withstand Defendant

Dissinger's Motion to Dismiss.

Defendant Dissinger submits that this argument improperly conflates Pennsylvania criminal procedure with the Fourth Amendment's constitutional reasonableness requirement. Simply put, the focus of the Fourth Amendment is upon the objective reasonableness of an officer's conduct. There is no question that the facts pled in Plaintiff's Complaint demonstrate that Defendant Dissinger had ample evidence to support the reasonable conclusion that at least three motor vehicle code offenses had been committed and that Plaintiff had committed those offenses. Indeed, Plaintiff concedes, as he must, that the facts discovered in Defendant Dissinger's investigation not only supplied him with probable cause, but were sufficient to support a conviction on three of the offenses with which Plaintiff was charged.

The Third Circuit has addressed and resolved similar arguments in favor of dismissal of claims for Fourth Amendment violations where probable cause was established despite a failure to follow applicable criminal procedures. Accordingly, this argument in opposition to the entry of judgment against Plaintiff on the Fourth Amendment Seizure claims is without merit.

Plaintiff also argues against Defendant Dissinger's Motion to Dismiss Plaintiff's malicious prosecution claim based upon the analysis utilized by the Third Circuit in *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). Plaintiff submits, contrary to Dissinger's position, that probable cause for one of the offenses charged does ***not*** protect against malicious prosecution claims for the other charges. As noted in

Defendant's Brief in Support of Motion to Dismiss (Doc. 12-3), the Third Circuit in *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005), held that a finding of probable cause with respect to one of the claims asserted against a criminal defendant precludes a malicious prosecution claim with respect to all charges. *See, Wright*, 409 F.3d at 604. As discussed below, *Wright* is controlling on this issue and disposes of Plaintiff's malicious prosecution claims.

Plaintiff also asserts that the underlying criminal prosecution terminated favorably to him. Dissinger argues that in order to survive a motion to dismiss on a malicious prosecution claim, Plaintiff must "show" that the underlying criminal prosecution resulted in a "favorable termination." Dissinger asserts that the three vehicle code convictions are inextricably intertwined with the accident that gave rise to all charges against Plaintiff. Accordingly, Dissinger argues, Plaintiff's argument ignores the fact that these three convictions are demonstrate fault, and are inconsistent with a finding of innocence on the part of Plaintiff, even if they were insufficient to support the criminal homicide convictions. In support of his argument, Plaintiff observes that the that the *jury* disposed of the claims in which Plaintiff's trial defense was successful, while the *Trial Court* disposed of the other violations in which the Plaintiff was found guilty. As discussed below, the notion that the identity of the fact finder determining guilt in the underlying criminal proceeding matters for purposes of determining whether a criminal proceeding "terminated favorably" lacks support

of any precedent, and is further unsupported by any logical premise.  Accordingly, a

reply to Plaintiff's Brief in Opposition is warranted.


## II.    STATEMENT OF QUESTIONS PRESENTED

A.    WHETHER ALLEGED PROCEDURAL IRREGULARITIES ASSOCIATED WITH PLAINTIFF'S ARREST ARE   IRRELEVANT TO PLAINTIFF'S FOURTH AMENDMENT SEIZURE CLAIMS?

*(Answered in the affirmative.)*

B.    WHETHER THE THIRD CIRCUIT HAS DECLARED A FINDING OF PROBABLE CAUSE FOR AT LEAST ONE OF THE OFFENSES WITH WHICH A CRIMINAL DEFENDANT IS CHARGED IS DISPOSITIVE OF A SUBSEQUENT MALICIOUS PROSECUTION CLAIM ON ALL CHARGES?

*(Answered in the affirmative.)*

C.    WHETHER THE DISTINCTION BETWEEN THOSE OFFENSES RESOLVED BY THE TRIAL COURT AND THOSE RESOLVED BY THE JURY IS IRRELEVANT TO THE QUESTION WHETHER THE UNDERLYING CRIMINAL PROSECUTION "TERMINATED FAVORABLY" TO PLAINTIFF?

*(Answered in the affirmative.)*


## III.   ARGUMENT

A.    THE ALLEGED PROCEDURAL IRREGULARITIES ASSOCIATED WITH PLAINTIFF'S ARREST ARE   IRRELEVANT TO PLAINTIFF'S FOURTH AMENDMENT SEIZURE CLAIMS.

Defendant Dissinger argues that probable cause to charge and arrest Plaintiff

on the three charges for which he was convicted, bars all claims for "unlawful

seizure," "wrongful arrest" and "wrongful imprisonment." Plaintiff does not take issue with this argument as a general proposition, but instead argues that the argument "fails at its inception" because these charges "were not arrestable offenses under the circumstances." *See* Plaintiff's Brief at Pages 10-11. This argument improperly conflates the relevant Fourth Amendment analysis attendant to Plaintiff's current Section 1983 claims and the state law procedural analysis relevant to state law convictions for summary offenses not committed in the presence of the arresting officer.

Simply put, Plaintiff's Section 1983 claims are founded on the Fourth Amendment. The Fourth Amendment requires that there be probable cause for any governmental "seizure." Under the Fourth Amendment, an arrest is lawful so long as it is supported by probable cause. Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested. *See, United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).

In *Huff v. Cheltenham Twp.*, WL 4041963 (E.D. Pa. July 1, 2015), the court was confronted with a circumstance remarkably similar to that in the instant case. In *Huff*, a longstanding domestic dispute existed between Ms. Huff and her significant other, Mr. Porter. Stories varied widely regarding the most recent episode of their

domestic difficulties that resulted in charges being filed against both individuals. It was uncontested however, that both Ms. Huff and Mr. Porter showed signs of injury and that Ms. Huff threw Mr. Porter's cell phone into the street where it "shattered." Following an investigation by the arresting officers, Ms. Huff and Mr. Porter were arrested and charged with disorderly conduct. In contrast to the instant case, *all* the charges against Ms. Huff were eventually dismissed by a magistrate judge. As in the instant case, Ms. Huff brought charges for false arrest and malicious prosecution. In opposition to these claims, the arresting officers noted that they at least had probable cause to arrest Huff on the charge of criminal mischief because she admitted to breaking Mr. Porter's phone.

In this very recent and well-reasoned decision authored by Judge Pappert, this Honorable Court began its analysis by observing that the Fourth Amendment prohibits arrests without probable cause. *See, Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). While probable cause requires more than a reasonable suspicion, it does not require the same type of "specific evidence of each element of the offense as would be needed to support a conviction." *See, Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) *cited with approval Huff*, 215 WL 4041963, slip op. at p. 3.

As in the instant case, the charge against Ms. Huff was for a summary offense, and, as in the instant case, that offense was not committed in the presence of the

arresting officer.  Like Plaintiff in the instant case, Ms. Huff argued that as the charge against her was for a summary offense, her arrest offended the Fourth Amendment because the offense was not committed in the officer's presence.  Unlike the instant case, there were no other charges supported by neutral and independent witnesses that would have supported an arrest and in contrast to the instant case, all charges against Ms. Huff were dismissed by the Magistrate Judge.  Nevertheless, Ms. Huff's argument continued, as Plaintiff's does here, that pursuant to the Rules of Criminal Procedure, an arrest without a warrant for a summary offense not committed in the presence of the arresting officer  is permitted in only a discreet number of offenses and that the charges against her were not among them.

The Eastern District Court rejected Ms. Huff's argument for the same reason that this Honorable Court should reject Plaintiff's argument herein: because the Fourth Amendment reasonableness analysis is not dependant upon  Pennsylvania Criminal Procedure, but upon whether the "seizure" was supported by probable cause. The *Huff* court noted that the Third Circuit's decisions in *Primrose v. Mellott*, 541 F. App'x 177 (3d Cir. 2013), and *United States v. Laville*, 480 F.3d 187 (3d Cir. 2007), make it clear that the mere failure to follow the state Rules of Criminal Procedure is not dispositive of the touchstone probable cause requirement that lies at the heart of Fourth Amendment claims.  More specifically, the *Huff* court cited *Primrose* with approval for the following proposition:

> "*Primrose* contends, under Pennsylvania law, a police
> officer does not have authority to arrest a person for a
> 'summary offense' that takes place out of the presence of a
> police officer. Of course, *that is not the test we apply for*
> *finding probable cause under the Fourth Amendment*
> *when evaluating a false arrest claim.* 'A significant body
> of case law makes clear ... why a Fourth Amendment
> determination cannot turn on the exigencies of the law of
> a particular state or territory....'"

*Huff*, 2015 WL 4041963, slip op. at p. 6 *citing Primrose*, 541 F. App'x at 181.

The *Huff* court's analysis noted that our Third Circuit has made it clear that the validity of an arrest under state law should not be confused with the Fourth Amendment concept of reasonableness. The Huff Court observed that the "validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause." *Id.* slip op. at p. 6.

The Third Circuit has recognized that "the probable cause required to extinguish a false arrest claim under the Fourth Amendment is a separate inquiry from procedures an individual state authorizes by statute." *Id.* slip op. at p. 6. *See also,* *Levine v. Rodden,* 2015 WL 215178 at p. 5 (E.D. Pa. May 7, 2015) (while Pennsylvania Rules of Criminal Procedure prohibit warrantless arrests for misdemeanors committed outside the presence of the arresting officer, these Rules alone do not automatically imply similar prohibition in the United States Constitution that could become the basis for a Section 1983 claim); *Milborne v. Baker,* 2012 WL 1889148, slip op. at p. 9 (E.D. Pa. May 23, 2012) (Plaintiff's claim of a violation

on warrantless arrests for misdemeanors committed outside the presence of the officer is "inapposite to the constitutional question").

The *Huff* Court also drew guidance from the Third Circuit decision in *Hughes v. Shestakov*, 76 F. App'x 450, (3d Cir. 2003). In *Hughes*, even though probable cause existed for the arrest for the underlying summary offense, the plaintiff claimed his Fourth Amendment rights were violated because he was arrested without a warrant for a summary offense committed outside the presence of the arresting officers. In sweeping language, the *Hughes* court reasoned that the "Fourth Amendment does not require an arrest warrant for a minor criminal violation." *Id.* 76 F. App'x at 451, slip op. at p. 7. Subsequent cases have interpreted the *Hughes* decision to mean that the presence of probable cause is sufficient to defeat a false arrest or false imprisonment claim under Section 1983 even where the arrest was made without a warrant for a misdemeanor or a summary offense committed outside the presence of the arresting officers. *Id.*

In light of the Third Circuit precedent applicable to this case, and the indisputable presence of probable cause in light of the convictions for at least three of the offenses for which Plaintiff was charged, it is respectfully submitted that Plaintiff's Fourth Amendment seizure claims in the nature of a claim for "unlawful seizure;" "wrongful arrest;" and "false imprisonment;" must fail as a matter of law.

**B.    THE THIRD CIRCUIT HAS DECLARED A FINDING OF PROBABLE CAUSE FOR AT LEAST ONE OF THE OFFENSES WITH WHICH A CRIMINAL DEFENDANT IS CHARGED IS DISPOSITIVE OF A SUBSEQUENT MALICIOUS PROSECUTION CLAIM.**

Defendant Dissinger argues that the conviction of three of the offenses with which Plaintiff was charged is dispositive proof that there was probable cause for those charges. He further argues that the Third Circuit has declared a finding of probable cause for one of the charges against a criminal defendant precludes a subsequent claim for malicious prosecution as a matter of law. *See, Wright v. City of Philadelphia,* 409 F.3d 595, 604 (3d Cir. 2005).  Significantly, Plaintiff does not dispute that proof of the absence of probable cause is a necessary element of a cause of action for malicious prosecution.  However, based upon Plaintiff's Brief, Plaintiff appears to assert that the Third Circuit's decision in *Johnson* stands for the proposition that there must be probable cause for each of the crimes asserted in order to defeat a claim for malicious prosecution as to each of those crimes, as set forth in Plaintiff's Brief at pp. 15-16.

In *Johnson,* the Plaintiff was a parolee who was involved in an altercation with a parole officer.  Plaintiff was charged with simple assault, aggravated assault, terroristic threats and reckless endangerment.  Subsequently, the state dismissed all the charges.  Plaintiff then initiated a Section 1983 claim in which he asserted a claim for malicious prosecution.  The district court found that the state had probable cause

to arrest for the charge associated with making terroristic threats. Based upon that finding, the district court dismissed Plaintiff's malicious prosecution claim pertaining to all of the criminal charges. The Third Circuit reversed. Although the *Johnson* decision expressly noted that it did not intend to diminish the precedential status of *Wright*, Plaintiff predictably directs this Court's attention to the language in *Johnson* wherein the Third Circuit asserts that it did not "understand *Wright* to establish legal precedent of such broad application that it would insulate law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause for the arrest of the Plaintiff on any one charge." *Id.* 477 F.3d at 83.

Fortunately for purposes of resolution of the instant case, *Johnson* is distinguishable on its facts from the instant case, and to the extent that it is not, has been held by the Third Circuit to be controlled by the *Wright* decision. Factually, *Johnson* was a case in which all the claims against Mr. Johnson were ultimately dismissed by the magistrate judge. Thus, while the district court and Third Circuit ultimately and independently found probable cause to exist on one of the charges, the case is factually on a much different footing than the instant case where there was probable cause not only for one but for three of the charges leveled against Plaintiff and where Plaintiff was convicted on three of those charges.

Even if this Honorable Court is unpersuaded that the above-referenced factual distinction warrants a result different than that obtained in *Johnson*, the court in

*Kossler v. Crisanti*, 564 F.3d 181 (3d Cir. 2009), nevertheless compels dismissal of the malicious prosecution clam against Defendant Dissinger as it expressly declares that *Wright* is controlling on this issue. In *Kossler,* the Third Circuit was confronted with a barroom altercation in which an off duty police officer was injured as he attempted to quell the disturbance. Although the trial court did not find sufficient evidence to convict on the more serious charges of aggravated assault against the police officer, the trial court convicted Mr. Kossler of disorderly conduct arising from the altercation. Mr. Kossler then asserted a Section 1983 claim alleging, *inter alia,* malicious prosecution against the police officer. In resolving this claim against Mr. Kossler, the Third Circuit analyzed the *Wright* decision in juxtaposition to its decision in *Johnson.* In describing its holding in *Wright,* a decision that the Third Circuit had rendered four years earlier, the *Kossler* court noted the following with approval:

> "Thus we determined that the existence of probable cause
> for the arrest — stemming from the existence of probable
> cause for at least one charge — precluded the plaintiff from
> proceeding with her malicious prosecution claim with
> respect to any of the charges brought against her."

*Id.* 564 F.3d at 193-194.

In citing the *Wright* decision with approval, the *Kossler* court expressly recognized the tension that existed in this regard between its decision in *Johnson* and *Wright.* In discussing the two cases, the *Kossler* court admitted that resolution of this

tension was not essential to disposition of the case before it. However, with regard to harmonizing *Johnson* versus *Wright*, the *Kossler* court observed the following:

> "Even assuming arguendo that *Wright* and *Johnson* are in unavoidable conflict, '[t]his Circuit has long held that if its cases conflict, the earlier is the controlling authority and the later is ineffective as precedence. *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008)."

Kossler, 564 F.3d at 188 n.8

In light of the foregoing, Defendant Dissinger asserts that the multiple convictions in the instant case distinguish it factually from *Johnson* making it more similar to the factual setting in *Wright* thereby obviating the need to harmonize the two cases. However, if one of those two cases must control, the Third Circuit has declared that it is the *Wright* case that is controlling. As the most recent pronouncement of the Third Circuit declares that a finding of probable cause for one of the charges leveled against a criminal defendant bars a Section 1983 claim for malicious prosecution with respect to all charges asserted against that defendant, Defendant Dissinger is entitled to judgment as a matter of law. In this instance, as not even Plaintiff disputes the existence of probable cause for the three charges of violations for 75 Pa. Cons. Stat. § 3364(A); 3364(B)(1); and 3333, Plaintiff's claims for malicious prosecution are barred by virtue of the existence of probable cause for at least three of the charges asserted.

**C.    THE DISTINCTION BETWEEN THOSE OFFENSES RESOLVED BY THE TRIAL COURT AND THOSE RESOLVED BY THE JURY IS IRRELEVANT TO THE QUESTION WHETHER THE UNDERLYING CRIMINAL PROSECUTION "TERMINATED FAVORABLY" TO PLAINTIFF**

In a creative argument, Plaintiff attaches significance to the fact that three of the charges against him were resolved by a jury in his favor, while three other charges were resolved against Plaintiff by the Trial Court. Somehow, Plaintiff concludes that his good fortune in front of the jury entitles him to an overall finding of "favorable termination" sufficient to support a claim for malicious prosecution. First, Defendant Dissinger notes that this argument is asserted without any citation to any authority whatsoever. Independent research by Defendant Dissinger has revealed none. On the contrary, this argument is made against the weight of authority as set forth in *Kossler*, *et.al*. However, just as importantly, the rationale behind the favorable termination element of a malicious prosecution claim would be undermined if Plaintiff's argument were given credence by this Honorable Court.

In *Kossler*, as in the instant case, the plaintiff attempted to assert a malicious prosecution claim after mounting a successful defense to the more serious charges against him, but was nevertheless  found guilty of a summary offense.  As in the instant case, the summary offense in *Kossler* was not a lesser included offense of the unsuccessfully prosecuted felony charges. However,  the *Kossler* Court held these distinctions were not a basis upon which to find that the overall criminal prosecution

terminated favorably to the plaintiff such that a malicious prosecution claim could follow:

> "To determine whether a party has received a favorable termination in the underlying case, the court considers the *judgment as a whole* in the prior action; ... the termination must reflect the merits of the action and the plaintiff's innocence of the *misconduct alleged in the lawsuit*."

(Emphasis in original) *citing* W.P. Keeton, et al., Prosser and Keeton on the Law of Torts § 119 (5ᵗʰ Ed. 1984); 52 Am. Jur. 2d Malicious Prosecution § 32 (Supp. 2007).

The *Kossler* court noted that "when the circumstances – both the offenses as stated in the statute and the underlying facts of the case – indicate that the *judgment as a whole does not reflect the plaintiff's innocence*, then the plaintiff fails to establish the favorable termination element." (Emphasis added). *Id.* 564 F.3d at 188.

In *Kossler*, the Third Circuit observed that the charges against Mr. Kossler were all based upon the bar fight. The Court found that Mr. Kossler was cited for, and convicted of, disorderly conduct arising from that altercation. In assessing the import of such a finding in light of the underlying basis for the "favorable termination" element of a malicious prosecution claim, the Court held it was *inconsistent* with a finding of "Kossler's innocence on the night of the fight." *Id.* Thus, the *Kossler* court found that as all the charges arose from the fight and not all the charges were resolved in Mr. Kossler's favor, that Mr. Kossler had failed to

establish the favorable termination element that is a prerequisite to a malicious prosecution claim.

In the instant case, as in *Kossler*, Plaintiff was successful in his defense of the more serious charges against him. However, also like the circumstance in Kossler, Plaintiff was convicted of three summary offenses arising from the same incident. These determinations of guilt support a finding that "the state criminal proceeding – *the entirety of which* resolved [plaintiff's] guilt and punishment for [the accident] did not end in [plaintiff's] favor even when we view the facts in the light most favorable to him." *Kossler*, 564 F.3d at 189.

Aside from the lack of precedential support for his position, the fatal flaw in Plaintiff's contention is that the analysis of the favorable termination element of a malicious prosecution claim clearly focuses upon the "entire" criminal proceeding. A criminal prosecution is not "malicious" if it is at least partially founded in fact and law. Here, Plaintiff's prosecution was not entirely successful, nor was entirely meritless. Plaintiff's unsupported attempt to bifurcate those charges that favor him, *and* on the basis of that bifurcation, suggest that the entire criminal prosecution terminated in his favor, flies in the face of the rational behind the favorable termination element of a malicious prosecution claim, and of common sense. Accordingly, Defendant Dissinger asks that this Honorable Court grant his Motion to Dismiss Plaintiff's malicious prosecution claims.

Page 16 of 18

245

## IV.    **CONCLUSION**

Defendant Dissinger relies on his Brief In Support of Motin to Dismiss for the Court's resolution of the balance of Plaintiff's claims. Respectfully, he requests that in light of the arguments and authority set forth above, that this Honorable Court grant Defendant Dissinger's Motion to Dismiss, and that Plaintiff's claims be dismissed with prejudice for failure to state a claim as a matter of law.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date:  September 4, 2015          By:   */s/ Rolf E. Kroll*
ROLF E. KROLL, ESQUIRE
PA. Attorney I.D. No. 47243
Attorney for Defendant Dissinger
3510 Trindle Road
Camp Hill, PA  17011
(717) 975-8114  Direct:  (717) 760-7502
Fax:  (717) 975-8124

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on the following, via the US District Court ECF filing system at the address listed below:

George A. Reihner, Esquire
Wright & Reihner, P.C.
Gareihner@wrightreihner.com
*Attorney for Plaintiff*


MARGOLIS EDELSTEIN


Date: September 4, 2015              By:    /s/ Rolf E. Kroll

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MAWUYRAYRASSUNA EMMANUEL NOVIHO, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO.: 15-CV-03151 |
| | : |
| V. | : |
| | : JURY TRIAL DEMANDED |
| LANCASTER COUNTY, et al., | : |
| | : |
| Defendants. | : |

---

### PLAINTIFF'S BRIEF IN OPPOSITION TO
### THE MOTION TO DISMISS FILED BY DEFENDANTS LANCASTER COUNTY,
### SCOTT F. MARTIN AND TODD E. BROWN

Plaintiff Mawuyrayrassuna Emmanuel Noviho ("Noviho" of "Plaintiff"), by his undersigned counsel, hereby submits this Brief in Opposition to the Motion to Dismiss filed in the above-captioned action by Defendants Lancaster County (the "County"), Scott F. Martin ("Martin") and Todd E. Brown ("Brown")(collectively, the "County Defendants").

### I.    FACTUAL BACKGROUND

Noviho commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint against multiple defendants, including the County Defendants, on June 5, 2015. Noviho's Complaint contains a very detailed and specific account of the egregious facts giving rise to his claims, all of which must be accepted as true for purposes of ruling on the instant motion to dismiss. By way of summary, at approximately 6:50 p.m. on Monday, November 12, 2012, Noviho, a licensed commercial truck driver for CR England, Inc., was driving a 2012 Freightliner Cascadia northbound on Pennsylvania State Route 222 in Lancaster County, Pennsylvania. (Complaint, ¶¶ 12-13). Gregory Guerrier ("Guerrier"), an experienced operator, was in the passenger seat. (Id.). Further, the conditions that evening were clear and dry, and the

vehicle was not hauling a trailer. (Id., at ¶ 13). As Noviho was operating the tractor, Guerrier

noticed two switches on the tractor's dashboard in the off position; specifically, the airbag and

axle differential switches. (Id., at ¶ 14). Guerrier directed Noviho to pull over to the right hand

shoulder of State Route 222 in order to activate the switches. (Id.). The tractor needed to come

to a complete stop in order to do so. (Id.). According to both Noviho and Geurrier, the entire

stop took less than thirty (30) seconds, during which time the headlights and taillights on the

tractor remained on. (Id.).

After Noviho activated the aforementioned switches, he turned on the vehicle's four-way

flashers and began to drive up the shoulder of the road in order to build speed to access the

driving lane of State Route 222. (Complaint, ¶ 15). He did so and approximately sixteen (16)

seconds after the tractor started moving, Noviho accessed the right lane of State Route 222

traveling at approximately seventeen and a half (17½) miles per hour. (Id.). At that same time,

Katie West ("West") was operating a 1996 Volkswagon Passat northbound on State Route 222

behind Noviho. (Id., at ¶ 16). There were three (3) passengers in the Passat: Joshua West,

West's husband, Jocelyn West, West's daughter, and Joshua Charles West, West's infant son.

(Id.). None of the passengers were belted or properly restrained as required by law. (Id.).

Jocelyn West was on a booster seat that was not secured in any way to the Passat, and Joshua

Charles West was buckled into a car seat that was just resting on the rear seat of West's vehicle.

(Id.). West was operating her Passat at a rate of speed in excess of the posted limit. (Id., at ¶

17). She was also driving under the influence of heroin and methadone. Her husband was also

under the influence of morphine, if not heroin. (Id.).

As a result of the foregoing, West did not or could not pay proper attention to the

roadway ahead and she drove her vehicle at seventy (70) miles per hour straight into the rear of

2

Noviho's tractor without attempting to brake or initiate any evasive maneuver. (Complaint, ¶ 18). Noviho and Guerrier felt the violent impact after which Noviho slowly pulled over on the right shoulder of Route 222 and turned off the vehicle's lights and engine and waited for first responders to arrive. (Id.). The violent collision was catastrophic: Joshua West died at the scene from multiple traumatic injuries; Joshua Charlie West died at the hospital; and West suffered multiple injuries for which she has received treatment. (Id., at ¶ 19). Jocelyn West, miraculously, was uninjured. (Id.).

Shortly after the tractor pulled off the road, a woman and her husband (unknown to Noviho) arrived at the tractor to check on Noviho and Guerrier. (Complaint, ¶ 20). She told Noviho to remain in the tractor until medical personnel arrived. (Id.). She also told him that the vehicle that hit them was speeding and driving erratically. (Id.). Manheim Township Police Officer David Onda ("Officer Onda") next approached the tractor speaking first to Guerrier who advised the officer that they were struck from behind. (Id., at ¶ 21). Guerrier indicated that he was not injured and Officer Onda then proceeded to check on Noviho. (Id.). Officer Onda directed Noviho to remain in the tractor and that he would have an ambulance dispatched for him. (Id.). Noviho complied with that direction and, shortly thereafter, Noviho and Guerrier were transported by ambulance to a local hospital. (Id.).

At approximately 8:20 p.m. on November 12, 2012, Defendant Christopher Dissinger ("Dissinger"), also a Manheim Township Police Officer, approached Noviho at the hospital and asked Noviho if he could speak with him about the crash. (Complaint, ¶ 23). Noviho briefly described the accident and gave Defendant Dissinger information regarding the events of the day. (Id.). After Defendant Dissinger spoke with Noviho, Defendant Dissinger contacted Defendant Assistant District Brown who directed him to get a blood sample from Noviho. (Id.).

3

Dissinger requested Noviho's consent for the blood sample. Noviho consented and the test results confirmed that Noviho was not under the influence of alcohol or any drug at the time of the crash. (Id.).

While Defendant Dissinger was interviewing Noviho, another Manheim Township Police Officer, Detective Robert Beck ("Beck"), was interviewing Guerrier. (Complaint, ¶ 24). Based on Defendant Dissinger's and Beck's interviews at the hospital, they were aware of, inter alia, the following:

- a woman told Noviho that the car that hit him was speeding and driving erratically;

- that there was a car proceeding northbound on State Route 222 about three (3) to four (4) car lengths ahead of the tractor which was illuminating the road;

- that it was very dark outside and that Noviho was driving the tractor with the headlights and taillights activated, otherwise they could not have seen where they were going; and

- Noviho had pulled off State Route 222 in order to activate the above-referenced switches and that he was struck from the rear very shortly after accessing the driving lane of State Route 222. (Id.)

The above-mentioned material facts, and many others, were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and charges were filed against Noviho. (Complaint, ¶ 24). In fact, during this extended "investigation", a high-profile civil attorney for West and her politically-powerful brother, Defendant Martin, a Lancaster County Commissioner, met with various representatives of the District Attorney's office, including Lancaster County District Attorney Craig W. Stedman ("Stedman") and Brown. (Id.). Again, upon information and belief, during this time, Martin and those acting in concert with him lobbied for criminal charges to be filed against Noviho, not West, and, in doing so, wrongfully abused their personal and political influence with Defendant

4

Dissinger, Brown and Stedman. (Id.). The last meeting with Stedman and Brown was held shortly before charges were filed against Noviho. (Id.). The charges were filed against Noviho for the purpose of enhancing the value of West's and the Martin family's now pending civil actions. (Id.).

On June 7, 2013, Defendant Dissinger presented an arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Magisterial District Judge David P. Miller ("Judge Miller") for approval. (Complaint, ¶ 25). Both of those documents were prepared with the aid and assistance of Brown who lead, directed and/or supervised the purported seven (7) month "investigation". (Id.). Based on the incomplete, knowingly false and materially misleading affidavit of probable cause, Judge Miller approved the request and Noviho was charged.[1]

As summarized below and set forth more fully in the Complaint, had a truthful account of the crash been presented to Judge Miller, West, not Noviho, would have been charged, and the value of the West-Martin family civil actions would have plummeted, perhaps to zero (0). (Id.).

- First, West was not travelling sixty-five (65) miles per hour at the time of the crash as represented by Defendant Dissinger's affidavit of probable cause. James Schlinkman ("Schlinkman"), a purported witness to the accident, admitted to police on November 12, 2012, that he was travelling seventy (70) miles per hour behind West's vehicle and that he was not gaining ground on her Passat. (Id., at ¶ 27);

- Second, West was operating her vehicle under the influence of heroin and other prescription medication, and a burnt spoon used for heating heroin was found in her purse at the crash site. Defendant Dissinger concealed, withheld and/or omitted this information from his affidavit of probable cause. (Id., at ¶¶ 28-29);

- Third, West made no effort to brake or take any evasive action before the crash. Rather, she drove her Passat straight into the rear of Noviho's tractor at seventy (70) miles per hour. Defendant Dissinger and Brown elected to tell Judge Miller

---

[1]    The charges were as follows: Offense 1 – Homicide by Vehicle (2 counts); Offense 2 – Aggravated Assault by Vehicle (1 count); Offense 3 – Periods for requiring lighted lamps (1 count); Offense 4 – Minimum Speed Regulation (1 count); Offense 5 – Vehicular hazard signal lamps (1 count); Offense 6 – Moving stopped or parked vehicle (1 count). (Id.).

only that West did not have time to appropriately perceive and react to Noviho's tractor. (Id., at ¶ 30);

- Fourth, West's children were not properly restrained and/or secured in safety or booster seats as mandated by Pennsylvania law. Despite the foregoing, Defendant Dissinger and Brown contrived their affidavit of probable cause to create the knowingly false impression that West's children were properly restrained in order to prevent Judge Miller from considering West's culpability for the crash. (Id., at ¶ 31);

- Fifth, three (3) witnesses (Schlinkman, Guerrier and Noviho) advised police on November 12, 2012, that a woman at the crash scene reported that West's Passat was travelling erratically and at an excessive rate of speed prior to the crash. Defendant Dissinger and Brown concealed, withheld and/or omitted this fact from Judge Miller to shield West from judicial scrutiny in this matter. (Id., at ¶ 32); and

- Sixth, Defendant Dissinger presented as unchallenged the averment to Judge Miller that Noviho's vehicle was travelling in total darkness on State Route 222 without any headlights, taillights or other illumination. In contrast, both Noviho and Guerrier represented to the police on November 12, 2012, that the tractor's headlights and taillights were illuminated at all times with respect to the crash and that the tractor's four-way flashers were engaged while Noviho was driving on the right-hand shoulder of State Route 222. (Id., at ¶¶ 33-34).

Of significant importance, Defendant Dissinger and Brown accepted as true the statements of three (3) purported witnesses, West, Schlinkman and Michelle Levitsky ("Levitsky"), and rejected as false the statements of Noviho and Guerrier. (Id.). However, Defendant Dissinger and Brown knew, as of June 7, 2013, that neither West, Schlinkman nor Levitsky were credible, consistent or otherwise worthy of belief. (Id.). Moreover, on significant issues, their statements were inherently irreconcilable. (Id.). The specific details which establish that the three (3) witnesses were not credible or worthy of belief are set forth more fully in the Complaint. (Id., at ¶¶ 35-51). In essence, Defendants Dissinger and Brown failed to disclose to Judge Miller any of the material exculpatory and/or contradictory evidence that was uncovered during the purported seven (7) month "investigation".

As previously stated, due to the knowingly false and materially misleading affidavit of probable cause, Noviho was unlawfully charged with multiple felonies, including vehicular homicide, arising from an automobile/tractor-trailer crash that was, in fact, caused by Martin's sister, West. (Complaint, ¶ 1). Thus, rather than having West held accountable for her acts, Martin, and those acting in concert with him, caused criminal prosecutors and detectives under his direct political influence to bring felony charges against Noviho in an effort to enhance the value of West's civil action. (Id., at ¶ 3).

Despite the serious nature of the charges being "investigated" by Defendant Dissinger and Brown, as well as other local law enforcement officers, West did not engage criminal defense counsel like she did for her prior, less significant drug-related arrests. (Complaint, ¶ 4). Rather, as stated above, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prosecute civil actions on behalf of West, her husband and her two (2) minor children. (Id.). Upon information and belief, West did not engage defense counsel because Martin knew that Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes. (Id.). He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate. (Id.). Their longtime relationship remains cordial to date and they follow each other on social media. (Id.). Further, upon information and belief, Martin exercised his personal and political influence over Stedman, Brown and/or Defendant Dissinger to charge Noviho for the reasons set forth above. (Id.).

II.    **ARGUMENT**

    **A. Legal Standard**

    According to Rule 8 of the Federal Rules of Civil Procedure, a complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). The pleading standard announced in Rule 8 does not require "detailed factual allegations", but does require more than labels, conclusions, and "a formulaic recitation of a cause of action's elements". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted).

    When applying this Rule in the context of a motion to dismiss, it is well-settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). While courts must accept as true all factual allegations contained in the complaint, the same tenet is inapplicable to legal conclusions. Id. Thus, "[a] claim has facial plausibility when the Noviho pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Stated simply, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id., 556 U.S. at 679, 129 S. Ct. at 1950.

    **B. Noviho sets forth plausible claims for unlawful seizure, wrongful arrest and false imprisonment against Defendant Brown in Count II of the Complaint.**

        **1. Assistant District Attorney Brown Is Not Absolutely Immune From Suit For The Pre-Arrest Investigative Conduct Complained of In This Action.**

    Defendant Brown is not entitled to absolute immunity as he initially contends where, as here, he is being sued for acts taken in his investigatory capacity prior to Noviho's arrest. To this end, Plaintiff asserts the following claims against Defendant Brown:

8

- Count II 42 U.S.C. § 1983 - Unlawful Seizure/Wrongful Arrest – False Imprisonment (Investigative Capacity Only); and

- Count IV 42 U.S.C. § 1983 - Conspiracy to Violate Civil Rights -Unlawful Seizure/Wrongful Arrest – False Imprisonment (Investigative Capacity Only).

(Complaint, pp.27-31, 35-37).  As made clear in the Complaint, the claims asserted against Defendant Brown in Counts II and IV are "not based on any acts and/or omissions by Defendant Brown during the **post-arrest prosecution** of Noviho".  (Id. at ¶ 69; emphasis added.)  Rather, said claims are "based on the acts and/or omissions by Defendant Brown during his **pre-arrest investigation** into the criminal offenses eventually filed against Noviho".  (Id.; emphasis added.)

Contrary to Defendant Brown's erroneous assertion, the suit against him in "his investigative capacity" is not a mere "legal conclusion" or "a disingenuous attempt to avoid the absolute prosecutorial immunity that is afforded to prosecutors".  (Supporting Brief at p.7). Defendant Brown likewise erroneously states that "there is no good faith basis . . . to allege that Brown did anything other than act as a prosecutor".  (Id.)  Noviho's Complaint very clearly articulates Defendant Brown's role in the pre-arrest investigation at issue herein, including the following:

- Defendant Brown served as an Assistant District Attorney of Lancaster County assigned to handle all aspects of the investigation into the events in question, including the preliminary investigation prior to the initiation of any criminal charges against Noviho;

- Defendant Brown was directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation;

- In fact, because of the high-profile nature of the case, Defendant Brown played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information, statements and/or evidence obtained;

- Defendant Brown actively participated, collaborated and/or assisted other law enforcement personnel in discussing and reviewing the evidence and, together, made a collective decision about whether there was probable cause to make an arrest and what information should be included in the Affidavit of Probable Cause prior to the initiation of any criminal proceedings against Noviho;

- In his capacity as an investigator, Defendant Brown likewise knowingly and/or deliberately, or with a reckless disregard for the truth, concealed/ignored/withheld/omitted material facts and/or exculpatory and/or contradictory evidence from the Affidavit of Probable Cause. Moreover, he included statements in the Affidavit of Probable Cause that he knew or should have known were false or not credible or trustworthy for the sole purpose of procuring the unlawful arrest of Noviho; and

- In fact, the evidence of record demonstrates that Defendant Brown knew that the Affidavit of Probable Cause contained only those facts which were allegedly incriminating to Noviho, but concealed, ignored, withheld and/or omitted all of the inconsistencies, material facts and/or exculpatory/contradictory evidence which tended to establish Noviho's innocence. (Complaint, ¶¶ 70-76).

It is clear from these allegations -- which must be accepted as true for purposes of ruling on the instant motion to dismiss -- that Plaintiff's clams against Defendant Brown are based entirely on his investigative role in directing, assisting and/or otherwise participating with the other law enforcement personnel in gathering information, statements and/or evidence prior to the initiation of any criminal proceedings against Noviho. These allegations go well beyond legal conclusions, and are not based "upon information and belief" as Defendant Brown erroneously proffers in his supporting brief. (Supporting Brief at p.7).

In fact, the controlling case law clearly provides that Defendant Brown's conduct as complained of herein is, in fact, investigative and not deserving of the absolute immunity defense. To this end, when performing the types of investigatory functions alleged by Noviho in the Complaint, the Third Circuit has concluded that a prosecutor does not enjoy the protections of absolute immunity. As emphasized in <u>Carter v. City of Philadelphia</u>, 181 F.3d 339 (3d Cir. 1999), "the Supreme Court has been 'quite sparing' in its recognition of absolute immunity". <u>Id</u>.

10

at 355 (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)). The "Supreme Court directs a 'functional' approach to immunity issues, and requires the official seeking absolute immunity to bear the burden of showing it is justified for the function in question." Id. at 355-56 (quoting Burns, 500 U.S. at 486-87; citing Buckley v. Fitzsimmons, 509 U.S. 259 (1993)). Significantly, where a prosecutor is performing an investigative function, a prosecutor is not protected by absolute immunity. Id. at 356 (quoting Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)). Of particular relevance here, the Carter Court stated:

> The [Supreme] Court expressly rejected an argument that a prosecutor's directory role in police investigations is sufficiently related to her advocate function. The Supreme Court explained that "[a]lmost any action by a prosecutor . . . could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive".

Id. at 356 n.58 (quoting Burns, 500 U.S. at 495).

The Third Circuit also highlighted the investigative/prosecutorial distinction in Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992), wherein the Court explained:

> Merely investigative evidence-gathering is not absolutely protected . . . . Evidence gleaned prior to the filing is deemed investigative. Certain pre-filing interactions with the police are "investigative, such as directing evidence gathering.

Id. at 1465. Accordingly, it is well-settled that where -- as here -- a prosecutor "assists, directs or otherwise participates with the police'" in the "'acquisition of evidence prior to indictment undertakes conduct which is beyond the scope of his litigation-related duties', and absolute immunity is thus not available". Vetere v. O'Reilly, 1990 U.S. Dist. LEXIS 11120, * (D. N.J. Aug. 21, 1990)(quoting Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)). See also Matheny v. County of Allegheny, 2010 U.S. Dist. LEXIS 24189, * 6 (W.D. Pa. March 16, 2010)(prosecutor

not entitled to absolute immunity because the act complained of "did not occur during the prosecution phase of plaintiff's criminal case").

Defendant Brown's attempt to recast his pre-arrest involvement into the investigation of Noviho as a prosecutorial act was rejected by the Supreme Court in Buckley v. Fitzsimmons, 509 U.S. 259 (1993).  In Buckley, the Supreme Court stressed:

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventual arrested, indicted, and tried, that work may be retroactively described as "preparation for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.  When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Id. at 276.  See also Odd v. Malone, 538 F.3d 202, 213 (3d Cir. 2008)(quoting Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995))("The prosecutorial nature of an act does not spread backwards like an inkblot, immunizing everything it touches").

Consistent with the controlling precedent outlined above, Defendant Brown is not protected by absolute immunity because the claims asserted against him are predicated entirely upon his investigative role in directing, assisting and/or otherwise participating with the officers in gathering information, statements and/or evidence prior to the initiation of any criminal proceedings against Noviho.  See Spiess v. Pocono Mountain Regional Police Department, 2013 U.S. Dist. LEXIS 41814, ** 40-43 (M.D. Pa. Mar. 26, 2013)(denying summary judgment to assistant district attorney on absolute immunity grounds where his "actions were akin to merely advising officers as to probable cause or directing the gathering of evidence in an investigatory capacity").

12

### 2. Motor Vehicle Code Offenses[2]

Similar to the argument advanced by Defendant Dissinger in support of his motion to dismiss, Defendant Brown likewise contends that Count II must be dismissed because even though a jury acquitted Noviho of the vehicular homicide/assault charges challenged in this action, the trial judge convicted Noviho of three (3) separate summary Motor Vehicle Code violations, thereby establishing probable cause for the "seizure" in question as to all charges. Defendants' argument is based on the following rationale articulated by the courts: if an individual is arrested/seized for a series of charges, and probable cause is established for one of the charges, the arrest/seizure is justified for all offenses.

Notwithstanding the criminal procedural argument advanced by Noviho in opposition to Defendant Dissinger's motion, this argument also fails from its inception for the simple reason that Noviho was not arrested or seized for any of these summary traffic offenses. Rather, Noviho was arrested/seized almost seven months after the alleged incident pursuant to an Arrest Warrant for felony vehicular homicide charges, and not any of the summary traffic offenses relied upon by Defendants. (See Arrest Warrant, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "1", indicating "Offense Date: 11/12/2012"; Date of Warrant as "June 07, 2013"; and "Reason For Warrant: Felony").

Because Noviho was not arrested/seized for the summary traffic offenses relied upon by Defendants, the rationale for the concept of -- probable cause for one seizure is probable cause for all seizures -- simply does not apply here. In short, it is clear that the "seizure" which occurred here resulted solely from the Arrest Warrant issued for the felony charges, all of which

---

[2]    As requested in Plaintiff's response to the Dissinger motion, Plaintiff requests, in the alternative, that this Court stay disposition of the instant motion to dismiss pending resolution of Noviho's outstanding appeal of the three (3) summary traffic convictions.

13

terminated in favor of Noviho by way of the jury's acquittal. The "seizure" did not result from the separate summary traffic offenses adjudicated by the trial court. For these reasons, the rationale for the concept of seizure for one charge equals seizure on all charges does not apply here, and Defendant Brown's motion must be denied.[3]

### 3. This is not a false report, failure to investigate and/or failure to charge case.

Defendant Brown next cites a series of cases in an effort to recast Novioho's wrongful arrest case as a failure to investigate and/or failure to charge case. (Supporting Brief at pp.10-12). While West could have and should have been charged in this case, this is not a false report, failure to investigate and/or failure to charge case. This is a wrongful arrest/false arrest claim, and the Complaint makes that point very clear. (See Complaint, pp.27-31, ¶¶ 67-84).

To state a Fourth Amendment claim for false arrest, a plaintiff must establish: (1) there was an arrest; and (2) the arrest was made without probable cause. Dowling v. City of Phil., 855 F.2d 136, 141 (3d Cir. 1988). Moreover, it is well-established that questions of probable cause in a civil rights suit for false arrest/wrongful arrest are generally ones for the jury, particularly where "the probable cause determination rests on credibility conflicts". Jaslar v. Zavada, 2009 U.S. Dist LEXIS 1772, ** 8-9 (M.D. Pa. Jan. 12, 2009)(Vanaskie, J.)(reversing Report and

---

[3]    In Defendant Dissiger's reply brief, he contends that Plaintiff's argument on the summary offenses is without merit because the Fourth Amendment only concerns itself with probable cause and the "objective reasonableness of an officer's conduct". In support of his argument, he relies primarily on Huff v. Cheltenham Twp., WL 4041963 (E.D. Pa. July 1, 2015), wherein the Court emphasized that the Fourth Amendment reasonableness analysis is not dependent upon Pennsylvania Criminal Procedure, but upon whether the "seizure" was supported by probable cause. Again, this argument is without merit for the simple reason that the "seizure" in this case resulted from an Arrest Warrant issued for the felony charges. Noviho was not "seized" for any of the summary traffic offenses. And, as set forth more fully below, a jury can easily conclude that the "seizure" for these felony offenses was not objectively reasonable and, therefore, not supported by probable cause when accepting as true the well-pleaded allegations of Noviho's Complaint against the long-standing precedent outlined herein.

Recommendation of magistrate judge who granted summary judgment in favor of defendants on probable cause issue). See also Anderson v. Goga, 2011 U.S. Dist. LEXIS 115041, * 13 (W.D. Pa. Oct. 5, 2011)("In a § 1983 case, whether probable cause exists is ordinarily a question of fact for the jury").    It is also well-established that the court "must take a 'totality-of-the-circumstances approach'" when "analyzing whether probable cause existed for an arrest". Reedy, 615 F.3d at 211 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

Defendant Brown also loses sight of the fact that where -- as here -- wrongful arrest cases are premised on the alleged omission of material facts/exculpatory evidence from an affidavit of probable cause, there is usually no dispute that the affidavit, "on its face", is sufficient to support a finding probable cause by a magisterial district judge. Jaslar, 2009 U.S. Dist. LEXIS 1772 at * 17.  See also Anderson, 2011 U.S. Dist. LEXIS 115041 at ** 13-14.  That is why the issue of probable cause must "be decided in the context of all alleged material misrepresentations in and omissions from the probable cause affidavit for which there is evidentiary support". Jaslar, 2009 U.S. Dist. LEXIS 1772 at * 13.  To this end, "the materiality of the alleged misstatements and purported omissions is determined by excising from the probable cause affidavit the alleged 'offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine[ing] whether or not the corrected warrant affidavit would establish probable cause'".  Jaslar, 2009 U.S. Dist. LEXIS 1772 at ** 10-11 (alterations in original)(quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)).  "The purpose of this analysis is to assure that a police officer is not free to disregard plainly exculpatory evidence when preparing the affidavit of probable cause". O'Hara v. Hanley, 2011 U.S. Dist. LEXIS 26180, * 19 (W.D. Pa. March 15, 2011).

Moreover, the Third Circuit has concluded that "[a]ssertions can be made with a reckless disregard for the truth 'even if they involve minor details -- recklessness is measured not by the

15

relevance of the information, but the demonstration of willingness to affirmatively distort the truth'". Reedy v. Evanson, 615 F.3d 197, 213 (3d Cir. 2010)(alteration added) (quoting Wilson, 212 F.3d at 783). As such, "'omissions are made with a reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know' in making a probable cause determination". Id. See also Anderson, 2011 U.S. Dist. LEXIS 115041 at * 14; Hayes v. City of Philadelphia, 2005 U.S. Dist. LEXIS 27916, ** 15-17 (E.D. Pa. 2005)(Information from investigation which is omitted and contradicts facts set forth in the affidavit of probable cause is information a judge would want to know when determining probable cause).

As further explained by the Third Circuit in Wilson, supra:

> On the other hand, one of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead. The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. **It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.**

Wilson, 212 F.3d at 787 (emphasis added).

Indeed, arresting officers are not free to conceal from the magistrate judge the conflicting information and exculpatory evidence because it creates the "'unnecessary danger of unlawful arrest'". 615 F.3d at 223 (quoting Malley v. Briggs, 475 U.S. 335 (1986)). See also Anderson, 2011 U.S. Dist. LEXIS 115041 at ** 17-18 ("alleged victims' mental condition, her previous history of sexual assault accusations, and other information known to defendant officer sufficient to cast doubt on the veracity of [victim's] accusations" would "suggest the required

16

element for Plaintiff's claims that such facts would have been pertinent to the essential inquiry of probable cause"); Malley, 475 U.S. at 345-46 (because magistrate judges are fallible and may make mistakes, it is "reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment").

Accordingly, Defendants Brown and Dissinger are not excused from reporting conflicting and exculpatory evidence simply because of the existence of alleged inculpatory evidence, which they seem to suggest throughout their briefs. O'Hara, 2011 U.S. Dist. LEXIS 26180 at * 21 ("While there was inculpatory evidence, that does not excuse the failure to report exculpatory evidence"). As emphasized by the Third Circuit in Wilson and reaffirmed in Reedy, *supra*, "an officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists". 615 F.3d at 213-14. Accordingly, Defendants' repeated reference to the accusations of the alleged victim and eyewitnesses does not change the result.

As explained by the court in O'Hara, while the accusations of the victim and the forensic interview "appear compelling", a genuine issue of material fact exists as to whether there was probable cause at the time arrest where -- as here -- "there is a substantial amount of contradictory evidence that was available to [defendant] that was not contained in the affidavit of probable cause". Id. at * 22. See also Roach v. Marrow, 2012 U.S. Dist. LEXIS 43075, * 21 (M.D. Pa. March 28, 2012)("if the defendant officer relies solely on reports of eyewitnesses whose credibility is in dispute, then there may not be probable cause to warrant an arrest"); Wilson, 212 F.3d at 790 ("Independent exculpatory evidence or substantial evidence of the witnesses' own unreliability that is known by the arresting officer could outweigh the identification such that probable cause would not exist"); Harris v. Jacobs, 2012 U.S. Dist.

17

LEXIS 134044, * 21 (E.D. Pa. Sept. 19, 2012)(an officer has a "duty to further investigate when plainly exculpatory evidence or circumstances indicating a witness's unreliability are known"). The same reasoning and conclusion apply with equal force here.

As demonstrated in more detail above and in Noviho's Complaint, Defendants Brown and Dissinger were in possession of evidence of the victim's and/or witnesses' unreliability and complete lack of credibility.  Incredibly, this evidence was ignored by Defendants Brown and Dissinger and never made its way into the affidavit of probable cause.  More importantly, the evidence was concealed from the magistrate judge who issued the warrant for Noviho's arrest. See, e.g., Toth v. Rocco, 2011 U.S. Dist. LEXIS 135178, * 19 (Nov. 23, 2011 W.D. Pa. 2011)(when officers are in possession of information which calls into question the credibility of the victim, including information relating to the victims' past, "the sufficiency of the probable cause for the arrest is a question properly left for the jury"); Vassallo v. Fox, 2004 U.S. Dist. LEXIS 24799, ** 18-19 (E.D. Pa. Dec. 9, 2004)(when reliability of witness is in doubt, "the sufficiency of the affidavit to establish probable cause is also in doubt").

As further detailed above and in his Complaint, Noviho alleges that Defendants Brown and Dissinger inserted into the affidavits of probable cause only those facts which were allegedly incriminating to Noviho, and then ignored and omitted all of the exculpatory evidence which proved his innocence.  This they cannot do. Here, it can easily be concluded based on Novioho's well-pleaded allegations -- which must be accepted as true -- that Defendants Brown and Dissinger included in the affidavit of probable cause only those facts which were allegedly incriminating to Noviho, and then ignored and omitted the substantial conflicting, inconsistent and exculpatory evidence; that the omission of these inconsistencies and exculpatory evidence constitutes a reckless disregard for the truth; that Defendants Brown and Dissinger did not want

18

the judge to know the "totality of the circumstances" because, if disclosed, the judge would not issue a warrant for Noviho's arrest; that Defendants Brown and Dissinger manipulated the affidavit of probable cause for the sole "purpose of procuring a prosecution for which they otherwise lacked probable cause". <u>Jaslar</u>, 2009 U.S. Dist. LEXIS 1772 at * 20 n.9.; that the inclusion of these material and exculpatory facts could have easily avoided what the Third Circuit appropriately described as the "'unnecessary danger of unlawful arrest'". <u>Reedy</u>, 615 F.3d at 223 (<u>quoting</u> <u>Malley</u>, 475 U.S. 335); and that, at the time the arrests were made, the facts and circumstances within Defendant Brown and/or Dissinger's knowledge were not sufficient to warrant a prudent man believing that Noviho committed the offenses for which he was charged. <u>See</u> <u>Reedy</u>, 615 F.3d at 215. <u>See also</u> <u>Vassallo</u>, 2004 U.S. Dist. LEXIS 24799 at * 22 ("A reasonably well-trained officer would be aware that such an action, manipulating a warrant application and related investigations to obtain the arrest of another without probable cause, is unlawful").

In sum, the well-pleaded allegations in Noviho's Complaint, all of which are predicated upon and consistent with, the long-standing precedent highlighted above, make it very clear that this is a wrongful arrest/false arrest claim, and not a failure to investigate or a failure to charge case as Defendant Brown erroneously suggests. (<u>See</u> Complaint, pp.27-31, ¶¶ 67-84). In fact, not once in Count II does Noviho mention Katie West, the failure to investigate West, the failure to charge West and/or the failure to arrest West. (<u>See</u> <u>id.</u>) For these reasons, the cases cited by Defendant Brown in a self-serving effort to recast Noviho's claims are easily distinguishable from the matter *sub judice*. <u>See</u> <u>Jarrett v. Township of Bensalem</u>, 2008 U.S. Dist. LEXIS 23984, * 2 (E.D. Pa. Mar. 26, 2008)(plaintiff filed civil rights claim against officer for filing report that falsely blamed him for automobile accident; not a wrongful arrest claim based on lack of

19

probable cause); <u>Bush v. City of Phila.</u>, 1999 U.S. Dist. LEXIS 11428, \*\* 7-8 (E.D. Pa. July 16, 1999)(plaintiff filed civil rights claim against officer for filing false accident report in connection with automobile accident; not a wrongful arrest claim based on lack of probable cause); <u>Estate of Moser v. Exeter Twp. Borough Council Members</u>, 1998 U.S. Dist. LEXIS 14012, \*\* 9-10 (E.D. Pa. Sept. 9, 1998)(plaintiff estate administrator filed civil rights claim on behalf of decedent against officer for filing report which minimized severity of automobile accident; not a wrongful arrest claim based on lack of probable cause).

### C. Noviho sets forth plausible claims for conspiracy in Counts IV and V of the Complaint.

#### 1. Summary Traffic Convictions.

Defendant Brown first contends that the conspiracy claims fail because the underlying wrongful arrest and malicious prosecutions claims fail due to Noviho's convictions on the summary traffic offenses outlined more fully above. This argument is misguided for the same reasons articulated above, which are incorporated herein by reference.

#### 2. Noviho's conspiracy claim is not based on "shameless, defamatory innuendo and rank speculation" as Defendant Brown erroneously contends.

In order to state a claim for conspiracy under § 1983, a plaintiff must allege that two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of state law." <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970); <u>Parkway Garage, Inc. v. City of Philadelphia</u>, 5 F.3d 685, 700 (3d Cir. 1993). Although there must be some proof of an understanding or concerted effort or plan to cause harm or injury to the Plaintiff to support a § 1983 conspiracy claim, the proverbial "smoking gun" evidence is not required. <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 469 (11th Cir. 1990), <u>cert. denied</u>, 500 U.S. 932 (1991) (rejecting

"smoking gun" requirement and holding that "[n]othing more than 'an understanding' and 'willful participation' is necessary to show the kind of joint action that will subject [a defendant] to § 1983 liability").

Moreover, a § 1983 conspiracy can be, and often is, proven by circumstantial evidence. Parkway Garage, 5 F.3d at 698 ("[o]ne can hardly expect [the defendants] to admit wrongdoing; circumstantial evidence . . . usually will suffice."); accord, Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 668 (1989) ("a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence"). Where a conspiracy claim is based on circumstantial evidence, the claim must be assessed by the finder of fact. See Lessard v. Jersey Shore State Bank, 702 F. Supp. 96, 100 (M.D. Pa. 1988). As the United States Supreme Court has emphasized:

> The proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of evenhanded justice.

Pollier v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 473 (1962).

Contrary to Defendant Brown's self-serving attempt to downplay the significance of the relationships and actions at issue in this case, Noviho's Complaint adequately sets forth sufficient factual allegations from which reasonable jurors can, and indeed should, conclude that Defendants Brown, Dissinger and Martin conspired to violate Noviho's civil rights. These well-pleaded facts include the following:

- To further the personal, political and financial goals of a powerful Republican County Commissioner in Lancaster County, Defendant Martin, Noviho was unlawfully charged with vehicular homicide and multiple related felonies

21

concerning an automobile/tractor trailer crash that was, in fact, caused by Martin's sister, Katie West (Complaint, ¶ 1);

- Rather than having his sister held accountable for her acts, Martin, caused criminal prosecutors and detectives under his direct political influence and control to bring felony charges against Noviho, not West, for, inter alia, homicide by vehicle and aggravated assault by vehicle. Those charges, however, were based on knowingly false and irreconcilably conflicting statements of purported witnesses. Defendant Dissinger, a long-time friend of Defendant Martin, was the lead detective on the seven (7) month "investigation" into the crash. He was also a social media "friend" of West. When Defendant Dissinger appeared before a magisterial district judge, the Honorable David P. Miller, to obtain a warrant for Noviho's arrest, Defendant Dissinger intentionally concealed the highly relevant facts regarding West's role and culpability in the crash. Defendant Dissinger also failed to disclose any of the material exculpatory and/or contradictory evidence that was uncovered during the seven (7) month "investigation" that he conducted with and under the direction and supervision of Defendant Brown (Complaint, ¶ 3);

- Despite the serious nature of the charges being investigated by Defendants Brown and Dissinger, West did not engage criminal defense counsel like she did for her many prior drug-related arrests. Rather, within days of the crash, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prepare and prosecute civil actions on behalf of West, her husband and her two (2) minor children. Upon information and belief, West did not engage defense counsel because Defendant Martin knew that Lancaster County's District Attorney, Craig W. Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes. He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate. Their relationship today remains cordial and they follow each other on social media. Further, upon information and belief, Defendant Martin exercised his personal and political influence over the District Attorney, Defendant Brown and/or Defendant Dissinger to charge Noviho in order to materially enhance the value of the above-referenced civil actions. Noviho -- an emigrant from Togo, Africa with no similar political ties and/or high-profile friendships in the community -- was the unfortunate victim of this political conspiracy (Complaint, ¶ 4);

- Inconsistent, exculpatory evidence and material facts/evidence were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and charges were filed against Noviho. In fact, during this extended "investigation", Defendant Martin and West's high-profile civil attorney met with various representatives of the District Attorney's office, including Stedman and Defendant Brown. Again, upon information and belief, during this time, Defendant Martin and those acting in concert with him, lobbied for criminal charges to be filed against Noviho, not West and, in doing so,

22

269

wrongfully abused their personal and political influence with Dissinger, Brown and Stedman. The last meeting with Stedman and Brown was shortly before charges were filed against Noviho. Again, those charges were filed for the purpose of enhancing the value of West's and the Martin family's now pending civil actions (Complaint, ¶ 24);

- Defendants Brown and Dissinger filed a knowingly false affidavit of probable cause with the magistrate judge in connection with the issuance of an arrest warrant for Noviho (Complaint, ¶¶ 25-34);

- During the investigation, West told a series of lies which Defendants Dissinger and Brown knew were false (Complaint, ¶¶ 35-40);

- During the investigation, Defendants Brown and Dissinger knew that witnesses were not credible and gave inconsistent statements on material issues (Complaint, ¶¶41-51); and

- Defendant Brown communicated regularly throughout the purported seven (7) month investigation and Noviho's criminal proceedings with West's and the Martin family's civil attorney (Complaint, ¶¶ 34, 36, 38).

These numerous allegations of Defendant Dissinger, Brown and Martin's overt acts, among others, are not stated in conclusory fashion in violation of the Federal Rules of Civil Procedure. Not surprisingly, Defendant Brown ignores these well-pleaded and specific facts and, instead, accuses Noviho of "shameless, defamatory innuendo and rank speculation". (Supporting Brief at p.14). In light of the specific conspiratorial facts set forth above and more fully in the Complaint, this attack is simply not credible. In fact, from these well pleaded facts, reasonable jurors can, and indeed should, conclude that Defendants Brown, Dissinger and Martin conspired to violate Noviho's civil rights. In short, Noviho's Complaint provides a specific, detailed account of the conspiracy to unlawfully charge Noviho with vehicular homicide and aggravated assault by vehicle, and the personal and political reasons behind it. Accordingly,

23

Defendant Brown's motion to dismiss the conspiracy claims set forth in Counts IV and V should be denied.

### D.  Monell Claim (Count VI).

Defendant Brown's final contention is that Noviho's <u>Monell</u> claim against Lancaster County in Count VI fails as a matter of law because Noviho has failed to state claims for the underlying constitutional violation of unlawful seizure, wrongful arrest, false imprisonment and/or malicious prosecution.  (Supporting Brief at p.15).  Again, this argument is predicated upon a finding that his position concerning these underlying Counts is correct.  As argued at length above, this argument is misguided, and Noviho has sufficiently sets forth plausible claims for unlawful seizure, wrongful arrest, false imprisonment and malicious prosecution.

## III.    CONCLUSION

For any or all of the foregoing reasons, Plaintiff Mawuyrayrassuna Emmanuel Noviho respectfully requests that the Motion to Dismiss filed in the above-captioned action by Defendants Lancaster County, Todd E. Brown and Scott F. Martin be DENIED, in its entirety.

Respectfully submitted,

**WRIGHT & REIHNER, P.C.**

By:  /s/ George A. Reihner
George A. Reihner
Frank J. Tunis, Jr.
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166
(570) 961-1199 – fax

Dated:  September 14, 2015            Attorneys for Plaintiff

24

## CERTIFICATE OF SERVICE

I, George A. Reihner, hereby certify that I have caused to be served this day a true and correct copy of this Brief in Opposition to Motion to Dismiss on all counsel and/or parties of record <u>via</u> the Electronic Filing system of this Court.


<u>/s/ George A. Reihner</u>
George A. Reihner

Dated:  September 14, 2015

# Exhibit "1"

County of Lancaster District Attorney 00372



COMMONWEALTH OF PENNSYLVANIA
COUNTY OF LANCASTER

**Arrest Warrant**

| | |
|---|---|
| **Mag. Dist. No. :** MDJ-02-1-02 | Commonwealth of Pennsylvania |
| **MDJ Name :** Honorable David P. Miller | v. |
| **Address :** 2205 Oregon Pike | Mawuyrayrassuna Emmanuel Yaogan Noviho |
| Lancaster, PA 17601 | |
| **Telephone :** 717-569-8774 | |

| | | | |
|---|---|---|---|
| Complaint No: | 2012MT10942 | Issued For: | Mawuyrayrassuna Emmanuel Yaogan Noviho |
| Charging Officer: | Dissinger, Christopher M | Docket No: | MJ-02102-CR-0000227-2013 |
| Arresting Agency: | Manheim Township Police Dept | | |
| Case Filed: | 06/07/2013 | NCIC OFF: | 0909 |
| OTN: | T 336034-6 | OOC: | |
| Reason For Warrant: | Felony | WARRANT ID: | DIS702586084 |
| Offense Date: | 11/12/2012 | Warrant Control No: | 02102-AW-0000233-2013 |
| Lead Offense: | 75 § 3732 §§ A Homicide By Vehicle | | |

**TO THE AGENCY: Manheim Township Police Dept**

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant, Mawuyrayrassuna Emmanuel Yaogan Noviho, into custody. When the defendant is taken into custody, bring the defendant before me at the Court address shown above to answer the complaint of Christopher M Dissinger charging the defendant with the offense(s) set forth above and further to be dealt with according to law.

Witness the hand and official seal of the issuing authority on this 7th day of June, 2013.

June 07, 2013
_____
Date

_____
Magisterial District Judge Miller





MJ-02102-CR-0000227-2013        02102-AW-0000233-2013        Mawuyrayrassuna Emmanuel Yao

MDJS 417                                                                              1                          Printed: 06/07/2013 1:52:43PM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA | : | |
| EMMANUEL NOVIHO, | : | Civil Action No. 15-cv-03151 |
| Plaintiff | : | |
| | : | Jury Trial Demanded |
| v. | : | |
| | : | Honorable Jeffrey Schmehl |
| LANCASTER COUNTY PENNSYLVANIA: | | |
| SCOTT F. MARTIN, | : | |
| TODD E. BROWN, and | : | |
| CHRISTOPHER DISSINGER, | : | |
| Defendants | : | |

## DEFENDANT, CHRISTOPHER DISSINGER'S, MOTION FOR LEAVE TO ATTACH SUPPLEMENTAL EXHIBIT TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

AND NOW comes Defendant, Christopher Dissinger ("Defendant Dissinger"), to move this Honorable Court for leave to attach a supplemental exhibit to his Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) (Doc. 12) filed on or about July 17, 2015, and in support thereof avers as follows:

1.   Plaintiff commenced this action by filing a Complaint with this Honorable Court on or about June 5, 2015.

2.   Plaintiff's Complaint alleges numerous civil rights claims pursuant to 42 U.S.C. § 1983 including, *inter alia*, allegations that Defendant Dissinger was involved in unlawful seizure, wrongful arrest and false imprisonment (Count 1).

3.   Plaintiff also asserts that Defendant Dissinger commenced a malicious prosecution (Count 3).

4.    Plaintiff further alleges that Defendant Dissinger engaged in a conspiracy with regard to the unconstitutional conduct alleged in Counts 1 and 3. (Count 4 and 5).

5.    On or about July 17, 2015, Defendant Dissinger filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) (Doc. 12) and Brief in Support thereof (Doc. 12-3).

6.    In said Motion, Defendant Dissinger asserts that the Plaintiff's arrest was made with probable cause, thereby defeating Plaintiff's claims to false arrest, false imprisonment and unlawful seizure.  Moreover, Plaintiff's claims for malicious prosecution must fail as the underlying criminal prosecution did not terminate favorably to Plaintiff.  Moreover, Plaintiff's admission that the Lancaster District Attorney's Office was fully apprised of the events in question and signed off on the charges, coupled with the probable cause for the charges, precludes any claim for malicious prosecution against Defendant Dissinger as a matter of law.

7.    At the time of the underlying criminal trial, Plaintiff was found guilty for the summary offenses of traveling too slow for conditions, traveling below the minimum speed limit and for moving his vehicle unsafely.  *See,* Exhibit "A" to Defendant Dissinger's Motion to Dismiss (Doc. 12).

8.    Following those convictions, Plaintiff filed a direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on January

-2-

27, 2015. In the most recent conference with the Court, the Court inquired into the status of the appeal of the summary offenses. While Defendant Dissinger maintains that the finding of guilt by the trial court on the summary offenses, having heard all the admissible evidence including the presence of heroin in Ms. West's system, is sufficient to enter judgment in favor of Defendants, Defendant Dissinger respectfully submits that affirmation of those convictions by the Superior Court removes all doubt regarding the probable cause element that is essential to all of Plaintiff's claims.

9.      On February 17, 2016, the Superior Court issued a Non-Precedential Decision affirming the Trial Court's April 7, 2015, opinion.

10.     Defendant Dissinger moves this Honorable Court for leave to attach the Superior Court decision affirming the Trial Court, and Trial Court Opinion upon which the Superior Court relies heavily as Exhibit "B" to his Motion to Dismiss filed on or about July 17, 2015 (Doc. 12).  A true and correct copy of proposed Exhibit "B" is attached hereto.

WHEREFORE, Defendant, Christopher Dissinger, respectfully requests that this Honorable Court enter an order granting leave to Defendant Dissinger to attach the Superior Court decision, and corresponding trial court Opinion, of February 17, 2016, as Exhibit "B" for consideration by this Honorable Court in deciding the pending Motion to Dismiss (Doc. 12).

-3-

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: February 18, 2016          By:   /s/ Rolf E. Kroll
                                 ROLF E. KROLL, ESQUIRE
                                 PA. Attorney I.D. No. 47243
                                 Attorney for Defendant Dissinger
                                 3510 Trindle Road
                                 Camp Hill, PA  17011
                                 (717) 975-8114  Direct:  (717) 760-7502
                                 Fax:  (717) 975-8124

## PROOF OF SERVICE

I hereby certify that I served a copy of the foregoing on the following, via the US District Court ECF filing system at the address listed below:

George A. Reihner, Esquire
Wright & Reihner, P.C.
Gareihner@wrightreihner.com

David J. MacMain, Esquire
The MacMain Law Group
dmacmain@macmainlaw.com


MARGOLIS EDELSTEIN


Date: February 18, 2016          By:    /s/ Rolf E. Kroll

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA                          :
EMMANUEL NOVIHO,                        :
            Plaintiff          :
                                :
      v.                        :    Civil Action No. 15-cv-03151
                                :
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                        :    Jury Trial Demanded
TODD E. BROWN, and                      :
CHRISTOPHER DISSINGER,                  :
            Defendants         :

### CERTIFICATE OF CONCURRENCE

I, Rolf E. Kroll, of the law firm of Margolis Edelstein, hereby certify that

the concurrence of counsel in Defendant Dissinger's Motion for Leave to Attach

Supplemental Exhibit to Motion to Dismiss Plaintiff's Complaint Pursuant to Rule

12(b)(6), has been sought and obtained.


Respectfully submitted,

MARGOLIS EDELSTEIN

Date: February 18, 2016        By:    */s/ Rolf E. Kroll*
                            ROLF E. KROLL, ESQUIRE
                            PA. Attorney I.D. No. 47243
                            Attorney for Defendant Dissinger
                            3510 Trindle Road
                            Camp Hill, PA  17011
                            (717) 975-8114  Direct:  (717) 760-7502
                            Fax:  (717) 975-8124

# EXHIBIT "A" PART 1

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA                         :
EMMANUEL NOVIHO,                       :        Civil Action No. 15-cv-03151
          Plaintiff     :
                  :        Jury Trial Demanded
                  :
      v.              :
                  :        Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                       :
TODD E. BROWN, and                     :
CHRISTOPHER DISSINGER,                 :
          Defendants    :

### DEFENDANT, CHRISTOPHER DISSINGER'S, MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1.    Plaintiff commenced this action by filing a Complaint with this Honorable Court on or about June 5, 2015.

2.    The core of Plaintiff's Complaint arises from a motor vehicle accident that occurred at 6:50 p.m. on November 12, 2012. *See*, Plaintiff's Complaint at Paragraph 13.

3.    Plaintiff admits that this tragic accident took the lives of Joshua West and Joshua Charles West. *See*, Plaintiff's Complaint at Paragraph 19.

4.    Plaintiff admits at the time of the accident, he was traveling 17.5 miles per hour where the speed limit was 65 mph. *See*, Plaintiff's Complaint at Paragraphs 15-16 & 27.

5.     Plaintiff admits that Katie West, the wife of Joshua West and the mother of Joshua Charles West, was the operator of a 1996 Volkswagen Passat that was traveling northbound on State Route 222 directly behind Plaintiff at 6:50 p.m. on Monday, November 12, 2012. *See*, Plaintiff's Complaint at Paragraph 16.

6.     Furthermore, Plaintiff admits that a mere sixteen (16) seconds before the accident, he was at a complete stop on the right hand shoulder of State Route 222 and was in the process of re-entering the travel lanes, reaching his approximate speed of 17.5 miles an hour when the accident occurred. *See*, Plaintiff's Complaint at Paragraphs 14-15.

7.     Plaintiff spends much time and energy in a vitriolic character assassination of Katie West and her husband, and suggests in numerous paragraphs of the Complaint that Katie West's heroin use caused this tragic accident.

8.     However, none of the allegations regarding Katie West have anything to do with Plaintiff's responsibilities regarding other motorists on the highway.

9.     In this regard, Plaintiff is constrained to admit that after the tragic accident, Katie West was interviewed and recalled that "something hit her or she hit something that was like black out of nowhere." *See*, Plaintiff's Complaint at Paragraph 36.

10.     More importantly, Plaintiff admits that there was a witness named Donald Schlinkman who was a motorist traveling somewhere between 40 and 100 yards from the impact in the left passing lane. *See*, Paragraphs 43-46.

11.     Nowhere in Plaintiff's Complaint does Plaintiff suggest that Mr. Schlinkman was involved in the alleged conspiracy to wrongfully arrest and prosecute him. Nor does Plaintiff suggest that there was any third party witness in a better position to describe how the accident occurred. In other words, Mr. Schlinkman, who had a vantage very similar to Katie West, had no motive to lie, and gave a detailed account of the accident, supported the charges against Plaintiff.

12.     Specifically, Mr. Schlinkman reported to the police that Plaintiff was "in the process of reentering the road shortly before the crash." *See*, Plaintiff's Complaint at Paragraph 42.

13.     Mr. Schlinkman also reported to the police that the "truck did not have any lights on and was traveling very slowly." *See*, Plaintiff's Complaint at Paragraph 42. Obviously, both of these observations are admitted as true and corroborated by Plaintiff himself in his own Complaint. *See*, Plaintiff's Complaint at Paragraphs 14 and 15. The only disputed fact is whether Plaintiff's lights were on. Plaintiff, with a vested interest in the outcome, claims his lights were activated. Mr. Schlinkman, who has no interest in the outcome, asserts they were not.

14.     Importantly, Mr. Schlinkman was interviewed mere hours after the accident took place. *See,* Plaintiff's Complaint at Paragraph 43. While Plaintiff spends considerable effort attempting to attack the credibility of this unbiased third-party witness, Plaintiff admits that Mr. Schlinkman's recollection was that "he did not see the truck until he was immediately upon it and West's Passat was flipping in the air as he passed it in the left lane ... ." *See,* Plaintiff's Complaint at Paragraph 48.

15.     Nor can Plaintiff avoid the reality that Mr. Schlinkman "portrayed the scene as very, very dark and the only lights able to illuminate the area were West's and his." *See,* Plaintiff's Complaint at Paragraph 47.

16.     Thus, Plaintiff admits, by the very terms of his Complaint, that Defendant Dissinger's investigation revealed the following facts: that the accident occurred on November 12, 2012 at 6:50 p.m., at which time, it was "very dark"; *See,* Plaintiff's Complaint at Paragraph 24(c) and Paragraph 13; that Plaintiff started his tractor from a dead stop along the side of the highway a mere 16 seconds before the Accident occurred; *See,* Paragraph 14; that Plaintiff had accessed the right travel late of a 65 mph highway at a mere 17.5 miles per hour in a 65 mile an hour zone; *See,* Paragraphs 14 and 15; and that unbiased eyewitness testimony confirms Plaintiff's re-entry maneuver, his slow speed, and asserts that his lights were not activated. These facts are admitted in Plaintiff's Complaint and

-4-

were derived, in large part, from a disinterested third-party witness with a vantage very similar to that of Plaintiff or from uncontroverted forensic analysis. *See,* Plaintiff's Complaint at Paragraphs 43-49.

17.    Plaintiff admits that a 7-month investigation took place. *See,* Plaintiff's Complaint at Paragraph 24.

18.    Plaintiff admits that the case was prosecuted by the Lancaster County District Attorney's Office in general and by Defendant Brown in particular. *See,* Plaintiff's Complaint at Paragraphs 70-74. Defendant Brown is identified as an Assistant District Attorney of Lancaster County who was assigned to "handle all aspects of the investigation into the events in question including the preliminary investigation prior to the initiation of any criminal charges against Noviho." *See,* Plaintiff's complaint at Paragraph 70.

19.    Plaintiff alleges that Defendant Brown was "directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation."

20.    Finally, Plaintiff alleges that Defendant Brown "played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information,

# EXHIBIT "A" PART 2

statements and/or other evidence obtained by law enforcement personnel." *See*, Plaintiff's Complaint at Paragraph 73.

21.    Plaintiff further alleges that Defendant Brown was involved in "a collective decision about whether there was probable cause to make an arrest and what information should be included in the affidavit of probable cause prior to the initiation of any criminal proceedings against Noviho."

22.    After the 7-month investigation, Plaintiff admits that the following charges were filed against him:

> Offense No. 1 – Homicide by Vehicle (2 counts)
> Offense No. 2 – Aggravated Assault by Vehicle (1 count)
> Offense No. 3 – Periods for requiring lighted lamps (1 count)
> Offense No. 4 – Minimum Speed Regulation (1 count)
> Offense No. 5 – Vehicular Hazard Signal Lamps (1 count)
> Offense No. 6 – Moving stopped or parked vehicle (1 count)
> *See*, Plaintiff's Complaint at Paragraph 25.

23.    Unquestionably, all of these Counts address the tragic accident that occurred on November 12, 2012. Additionally, Plaintiff neglected to mention that he was cited for moving vehicle unsafely. A true and correct copy of the criminal docket for which the Court can take judicial notice is attached hereto as Exhibit "A."

24.    Conspicuously absent from Plaintiff's Complaint is the fact that, while Plaintiff was adjudged not guilty in the homicide by vehicle and the aggravated

assault charges, as well as the charge for a period requiring lighted lamps, he was found guilty for traveling too slow for conditions, traveling below the minimum speed limit and for moving his vehicle unsafely. *See,* Exhibit "A."

25.    Defendant Dissinger respectfully submits that the foregoing admissions contained in Plaintiff's Complaint and the record from the criminal proceeding constitute overwhelming evidence that crimes had been committed and that Plaintiff committed those crimes.

26.    Despite the foregoing, Plaintiff has filed a Complaint with this Honorable Court alleging that Defendant Dissinger was involved in unlawful seizure, wrongful arrest and false imprisonment (Count 1).

27.    Plaintiff also asserts that Defendant Dissinger commenced a malicious prosecution (Count 3).

28.    Plaintiff further alleges that Defendant Dissinger engaged in a conspiracy with regard to the unconstitutional conduct alleged in Counts 1 and 3. (Count 4 and 5).

29.    Defendant Dissinger asserts that the Plaintiff's arrest was made with probable cause, thereby defeating Plaintiff's claims to false arrest, false imprisonment and unlawful seizure.  Moreover, Plaintiff's claims for malicious prosecution must fail as the underlying criminal prosecution did not terminate favorably to Plaintiff.  Moreover, Plaintiff's admission that the Lancaster District

-7-

Attorney's Office was fully apprised of the events in question and singed off on the charges, coupled with the probable cause for the charges, precludes any claim for malicious prosecution against Defendant Dissinger as a matter of law.

### I. MOTION TO DISMISS CLAIMS FOR UNLAWFUL SEIZURE, WRONGFUL ARREST AND FALSE IMPRISONMENT

30.    In Count I, Plaintiff attempts to assert claims for unlawful seizure, wrongful arrest, and false imprisonment. Plaintiff's claims for unlawful seizure, wrongful arrest and false imprisonment are all grounded in the Fourth Amendment which provide guarantees against unreasonable seizure. *See, Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (*citing, Gorman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

31.    Plaintiff's claim for "unlawful seizure" is merely a "seizure" without probable cause. *See, Palma v. Atlantic County*, 53 F. Supp. 2d 743 (D. NJ. 1999).

32.    To maintain a false arrest, false imprisonment or unlawful seizure claim, a plaintiff must plead facts to establish first that a seizure existed, and second that the arresting officer lacked probable cause to make the arrest. *See, Garcia*, 155 F. Supp. at 265.

33.    Probable cause exists when the totality of the facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense. *Id.*

34.     A false arrest, false imprisonment or unlawful seizure claim will fail if

there was probable cause to arrest for *at least one* of the offenses involved. *See,*

*Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007); *See also, Barna v. City of Perth*

*Amboy*, 42 F.3d 809, 818 (3d Cir. 1994) (For an arrest to be justified "[p]robable

cause need only exist as to any offense that could be charged under the

circumstances").

35.     Here, Plaintiff was convicted of three of the crimes for which he was

charged. Accordingly, not only did Defendant Dissinger have probable cause to

arrest, but there was sufficient evidence to convict Plaintiff, beyond a reasonable

doubt, that "at least one," and indeed, three crimes were committed, and that

Plaintiff committed those crimes. Accordingly, Plaintiff's claims for unlawful

seizure, wrongful arrest, and false imprisonment must all fail as a matter of law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully request that

this Honorable Court enter an order dismissing Count I of Plaintiff's Complaint as

a matter of law with prejudice.

## II.  MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION

36.     In Count III of Plaintiff's Complaint, Plaintiff attempts to assert a

claim for malicious prosecution. As noted above, Plaintiff was convicted of several

of the offenses inextricably intertwined in the tragic accident at issue and

accordingly, there was probable cause to prosecute those claims.

37.    Plaintiff's claims for malicious prosecution must fail as Defendant Dissinger had probable cause to charge Plaintiff with the crimes at issue.

38.    As the Third Circuit noted in *Wright v. City of Philadelphia*, 409 F.3d 593 (3d Cir. 2005), probable cause for at least one of the charges involved in the underlying criminal proceeding disposes of a subsequent malicious prosecution claim with respect to all the charges.

39.    In *Wright*, the plaintiff faced charges of burglary, theft, criminal trespass and criminal mischief for breaking into a house where she was allegedly sexually assaulted.  The city police officers conducted two separate investigations regarding the break in and the sexual assault.  All of the charges brought against the plaintiff were eventually dismissed.  However, the court concluded that there was probable cause to arrest and prosecute the plaintiff on the criminal trespass charge based upon the information available to the officers at the time of the arrest. With regard to the subsequent claim for malicious prosecution, the *Wright* court held:

> "Even though our discussion of probable cause was
> limited to the criminal trespass claim, it disposes of her
> malicious prosecution claims with respect to all of the
> charges brought against her, including the burglary."
> Id. 409 F.3d at 604.

40.    Thus, the Third Circuit has determined that the existence of probable cause for an arrest, stemming from the existence of probable cause for at least one

-10-

# EXHIBIT "A" PART 3

charge, precludes a plaintiff from proceeding with a malicious prosecution claim

with respect to any of the charges brought against him. *Id.*

41.    Additionally, Plaintiff's claims for malicious prosecution must be

dismissed because Plaintiff has failed to plead, much less state, any facts in support

of a contention that Plaintiff received a "favorable termination" in the underlying

criminal prosecution.

42.    In order to plead a Section 1983 malicious prosecution claim, a

plaintiff must "show" with facts, that:

> "(1) The defendants initiated a criminal proceeding;
> (2) *The criminal proceeding ended in plaintiff's favor;*
> (3) The proceeding was initiated without probable cause;
> (4) The defendants acted maliciously and for a purpose
> other than bringing the plaintiff to justice; and
> (5) The plaintiff suffered deprivation of liberty consistent
> with the concept of seizure as a consequence of the legal
> proceeding."

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

43.    The purpose of the "favorable termination" requirement is to avoid the

possibility that a claimant may file a successful tort action having been convicted

in the underlying criminal prosecution thereby contravening the strong judicial

policy against the creation of two conflicting resolutions out of the same or

identical transaction. *See, Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364,

129 L.Ed.2d 383 (1994).

44.   It has long been the law of this Circuit that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the "favorable termination" element. *See, Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *see also, Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (Expungement under the ARD program was not a favorable termination because the program imposes burdens upon the criminal defendant not consistent with innocence). Thus, the law in this Circuit is clear that when the underlying criminal judgment, when taken as a whole, does not reflect the plaintiff's innocence, then the plaintiff has failed to establish the "favorable termination" element. *See, Kossler v. Crisanti*, 564 F.3d 181(3d Cir. 2009).

45.   In *Kossler*, the Third Circuit was confronted with a bar fight in which an intoxicated citizen injured an off-duty police officer albeit, in the course and performance of his duties. Mr. Kossler was charged with aggravated assault in the first and second degree as well as with the summary offense of disorderly conduct. Although the trial court declined to find any misdemeanors or felonies, Mr. Kossler was convicted and found guilty of disorderly conduct and fined $100.00. When Mr. Kossler subsequently filed a malicious prosecution claim, the Third Circuit was faced with the prospect of determining whether the conviction on the disorderly conduct charge barred the malicious prosecution claim.

-12-

295

46.    In finding that the disorderly conduct conviction barred the malicious prosecution claim, the Third Circuit concluded that Mr. Kossler's acquittal on the aggravated assault and public intoxication charges could not be divorced from his simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct, and thus barred his malicious prosecution claim for failure to establish the favorable termination element of the claim.  Id. 189.

47.    In this case, Plaintiff's acquittal for the vehicular homicide and aggravated assault charges all arise from the same tragic accident that gave rise to Plaintiff's conviction  for driving too slow for conditions and moving his vehicle unsafely.  Thus, the acquittal cannot be separated from the finding of guilt and under such circumstances, Plaintiff cannot establish the requisite favorable termination element of his malicious prosecution claim. Accordingly, this claim must likewise fail as a matter of law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully request that this Honorable Court enter an order dismissing Plaintiff's Complaint with prejudice.

### III.    MOTION TO DISMISS CONSPIRACY CLAIM

48.    In Counts IV and V, Plaintiff attempts to assert claims of conspiracy with regard to the underlying allegations set forth in Counts I and III respectively. Plaintiff's claims for conspiracy must fail as Plaintiff has failed to state claims for

-13-

the underlying objects of the conspiracy, i.e. the unlawful seizure, wrongful arrest,

false imprisonment and malicious prosecution claims.  Moreover, Plaintiff has

insufficiently pled any overt act in furtherance of the particular objects of the

conspiracy, and have only stated same in conclusory fashion in violation of the

Federal Rules of Civil Procedure.  Therefore, conspiracy must fail as a matter of

law.

WHEREFORE, Defendant, Christopher Dissinger, respectfully requests that

this Honorable Court enter an order dismissing Plaintiff's Complaint with

prejudice.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: July 17, 2015            By:    /s/ Rolf E. Kroll
                               ROLF E. KROLL, ESQUIRE
                               PA. Attorney I.D. No. 47243
                               Attorney for Defendant Dissinger
                               3510 Trindle Road
                               Camp Hill, PA  17011
                               (717) 975-8114  Direct:  (717) 760-7502
                               Fax:  (717) 975-8124

-14-

## PROOF OF SERVICE

I hereby certify that I served a copy of the foregoing on the following, via

the US District Court ECF filing system at the address listed below:

George A. Reihner, Esquire
Wright & Reihner, P.C.
Gareihner@wrightreihner.com
*Attorney for Plaintiff*


MARGOLIS EDELSTEIN


Date: July 17, 2015 _____          By: _/s/ Rolf E. Kroll_____

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA                          :
EMMANUEL NOVIHO,                        :
          Plaintiff        :
                    :
  v.                                  :      Civil Action No. 15-cv-03151
                    :
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                        :      Jury Trial Demanded
TODD E. BROWN, and                      :
CHRISTOPHER DISSINGER,                  :
          Defendants        :

## CERTIFICATE OF NON-CONCURRENCE

I, Rolf E. Kroll, of the law firm of Margolis Edelstein, hereby certify that

the concurrence of counsel in Defendant Dissinger's Motion to Dismiss Plaintiff's

Complaint has been sought and counsel for Plaintiff does not concur.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: July 17, 2015      By: _/s/ Rolf E. Kroll_
                            ROLF E. KROLL, ESQUIRE
                            PA. Attorney I.D. No. 47243
                            Attorney for Defendant Dissinger
                            3510 Trindle Road
                            Camp Hill, PA 17011
                            (717) 975-8114  Direct:  (717) 760-7502
                            Fax:  (717) 975-8124

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA :
EMMANUEL NOVIHO, :  Civil Action No. 15-cv-03151
    Plaintiff :
       :  Jury Trial Demanded
  v.     :
       :  Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,  :
TODD E. BROWN, and :
CHRISTOPHER DISSINGER, :
    Defendants :

**ORDER**

AND NOW, this _____ day of _____, 2015, upon

consideration of the Motion to Dismiss filed by Defendant Christopher Dissinger,

it is NOW AND HEREBY ORDERED that Defendant's Motion is GRANTED

and Plaintiff's Complaint if hereby DISMISSED WITH PREJUDICE.

**BY THE COURT**

_____
         J.

# EXHIBIT "B" PART 1

J-A34011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MAWUYRAYRASSUNA EMMANUEL YAOGAN NOVIHO | |
| Appellant | No. 394 MDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004200-2013

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

JUDGMENT ORDER BY PANELLA, J.          **FILED FEBRUARY 17, 2016**

Appellant, Mawuyrayrassuna Emmanuel Yaogan Noviho, appeals from the judgment of sentence entered by the Honorable David L. Ashworth, Court of Common Pleas of Lancaster County. We affirm.

We assume the parties' familiarity with the facts and procedural history of the case. For a recitation of the facts and procedural history of this matter, we direct the reader to the opinion of the trial court. *See* Trial Court Opinion, 4/7/15, at 1-3.

We have reviewed the briefs of the parties, the certified record, and the trial court opinion. The trial court, the Honorable David L. Ashworth, has authored an opinion that ably disposes of the issues presented on appeal. We affirm based on that opinion. *See id.*, at 3-32.

J-A34011-15


Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016

- 2 -

303

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
### C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA    :

                       v.    :    No. 4200 - 2013

MAWUYRAYRASSUNA EMMANUEL    :
YAOGAN NOVIHO    :

### OPINION SUR PA. R.A.P. 1925(a)

BY:    ASHWORTH, J., APRIL 7, 2015

Mawuyrayrassuna Emmanuel Yaogan Noviho has filed a direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on January 27, 2015. This Opinion is written pursuant to Rule 1925(a) of Pennsylvania Rules of Appellate Procedure, and for the following reasons, this Court requests that this appeal be denied.

## I.    Background

On June 7, 2013, Noviho was charged with two counts of homicide by vehicle,[1] aggravated assault by a vehicle,[2] and related summary offenses as a result of conduct arising out of an incident on November 11, 2012. It was alleged that Noviho unintentionally caused the deaths of two people and the serious bodily injury of another as a result of his operation of a tractor while violating the Motor Vehicle Code in a

---

[1] 75 Pa. C.S.A. § 3732(A).

[2] 75 Pa. C.S.A. § 3732.1(A).

reckless or grossly negligent manner.  Katie West was the operator of the other involved vehicle and she suffered serious bodily injury.  Joshua A. West, her husband, was the front seat passenger and he was deceased as a result of the crash.  Joshua C. West, her three-year-old son, who was in a child safety seat in the right rear passenger seat, also died from injuries sustained in the crash.  Mrs. West's five-year-old daughter was in a booster seat in the left rear passenger seat and she suffered only minor injuries.

Following a six-day trial, the jury found Noviho not guilty of the homicide by vehicle and aggravated assault by vehicle charges.  Following the jury's rendering of its verdict, this Court, sitting in judgment on the remaining summary charges, convicted Noviho of the Motor Vehicle Code violations of driving too slow for conditions, failure to use flashing signals, and moving a vehicle unsafely.[3][4]  (N.T. at 1093-94.)  Noviho was immediately sentenced to pay the statutory fines of $25.00 for each offense, plus costs.[5]  (Id. at 1094.)

A timely notice of appeal to the Superior Court of Pennsylvania was filed on February 26, 2015.  Pursuant to this Court's directive, Noviho furnished a concise statement of matters complained of on appeal which raises the following issues on

_____

[3]75 Pa. C.S.A. § 3364(a), 75 Pa. C.S.A. § 4305(a), (b)(1), and 75 Pa. C.S.A. § 3333, respectively.

[4]Noviho was found not guilty of failure to use required lighted lamps, 75 Pa. C.S.A. § 4305(c), and the additional count of slow moving vehicle was withdrawn by the Commonwealth as duplicative. (Notes of Trial Testimony (N.T.) at 1093.)

[5]Section 6502 of the Motor Vehicle Code provides, in relevant part, that "[e]very person convicted of a summary offense for a violation of any of the provisions of this title for which another penalty is not provided shall be sentenced to pay a fine of $25." 75 Pa. C.S.A. § 6502(a).

2

appeal: (1) the Court erred in granting the Commonwealth's motion in limine; (2) the Court erred in excluding from evidence photographs taken at the scene of the accident; (3) the verdict on Count 5 (too slow for conditions) was against the weight/sufficiency of the evidence; (4) the verdict on Count 7 (use of flashing signals) was against the weight/sufficiency of the evidence; (5) the verdict on Count 8 (moving vehicle safely) was against the weight/sufficiency of the evidence; and (6) the Court erred in failing to allow the jury to indicate on the verdict slip which, if any, specific violation(s) of the Motor Vehicle Code occurred.  (*See* Concise Statement at ¶¶ 1-6.)  I will address these issues in reverse order.

## II.    Discussion

### A.    Jury Interrogatories

Noviho claims this Court erred by failing to have special interrogatories for the jury to determine whether the specific Motor Vehicle Code violations which were essential elements of the charged felony offenses were proven.  (*See* Concise Statement at ¶ 6.)

> A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. . . .  Proper appellate review dictates th[e] [Superior] Court consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. . . .  Moreover, an appellant's belief that a court's instructions should contain additional explanation or his chosen dicta will not render a jury charge defective.

**Commonwealth v. Hunzer**, 868 A.2d 498, 516 (Pa. Super. 2005) (internal quotations

3

# EXHIBIT "B" PART 2

and citations omitted).  In **Hunzer**, the Superior Court found that where the trial court utilized the standard jury instruction for the offense charged (rape) and properly instructed on the elements required for that offense, the defendant's request for a special interrogatory as to a particular element of the offense (penetration) was properly denied.

Similarly, in the instant case, I used the standard jury instructions for the two felony offenses charged (homicide by vehicle and aggravated assault by vehicle), and instructed the jury as to the elements required to be proven beyond a reasonable doubt for each.  (N.T. at 1028-40.)  One common element for each felony was that Noviho committed a violation of the Motor Vehicle Code.  (Id. at 1029, 1037.)  The six underlying traffic regulations alleged to have been violated by Noviho were set forth at length during the charge (Id. at 1031-35), and repeated in response to questions by the jury during their deliberations.  (Id. at 1052-56, 1081-82.)  I concluded my initial instructions by noting: "You may find all, you may find none, but in order to find the defendant guilty, you must find beyond a reasonable doubt that he has been proven guilty of violating *at least one* of the Motor Vehicle Code motor vehicle regulations."  (Id. at 1039-40 (emphasis added).)

As the jurors were clearly, adequately and accurately instructed on the elements for each charged offense, there was no trial court error in refusing to have special interrogatories for the jury to determine those elements.  *See* **Hunzer**, *supra.*  This allegation of error should be rejected.

4

Moreover, to allow the jury to specifically rule on the underlying motor vehicle violations would have been improper as no right to a jury trial historically or constitutionally is afforded an accused for a summary offense. The United States and Pennsylvania Constitutions require that only "one accused of a 'serious offense' be given a jury trial." **Commonwealth v. Mayberry,** 459 Pa. 91, 97, 327 A.2d 86, 89 (1974). "The question becomes whether the crime charged . . . is 'serious'. The test is clear. The decisions of the Supreme Court of the United States 'have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious and those carrying less are petty crimes.'"[6] Id. at 98, 327 A.2d at 89.

The Motor Vehicle Code violations at issue in this case do not provide for a sentence of imprisonment. Noviho was subject only to a fine for his summary offenses. Therefore, the right to trial by jury was not implicated, and he was not entitled to a trial by jury on the summary offenses. *See* **Commonwealth v. Kincade,** 358 Pa. Super. 591, 597, 518 A.2d 297, 300 (1986). *See also* **Commonwealth v. Smith,** 868 A.2d 1253, 1257 (Pa. Super. 2005). This Court was right to take the summary motor vehicle violations from the jury's consideration in this case.

Noviho further charges that the Court "abused its discretion in consulting with jurors prior to [the] Court's declaration of verdict regarding the Summary Offenses."

---

[6] Under the definition in the Crimes Code, a "summary offense" is an offense "so designated in this title, or in a statute other than this title; or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." **Commonwealth v. Johnson,** 878 A.2d 973, 977 (Pa. Cmwlth. 2005) (*quoting* 18 Pa.C.S.A. § 106(c)).

5

*(See* Concise Statement at ¶ 6.)  Following the jury's verdict in this case, the
Commonwealth presented the summary offenses for a determination by the Court.
(N.T. at 1090.)  After hearing argument from counsel regarding the propriety of ruling on
those summary charges (Id. at 1090-91), I called a recess to allow counsel to prepare
their summations and to allow me to address the jurors in Chambers.[7]  (Id. at 1091-92.)
No objection was made by defense counsel at that time to my meeting with the jurors
and thanking them for their service.  (Id. at 1092.)  Nor was a motion for mistrial made
before a verdict on the summary charges was directed after I re-entered the courtroom.
(Id. at 1093.)  Failure of Noviho to object at trial to this alleged procedural impropriety at
trial waived that objection on appeal.  *See* **Commonwealth v. Romesburg**, 353 Pa.
Super. 215, 223, 509 A.2d 413, 417 (1986), and cases cited therein.

### B.    Weight/Sufficiency of the Evidence

Noviho has raised the issue of whether the evidence was sufficient to support his
summary convictions, given that the jury did not find the violations sufficient to convict
on the felony charges.  (*See* Statement of Errors at ¶¶ 3-5; *see also* N.T. at 1090,
1094.)  Noviho also argued at trial that the Court's verdict of guilty on the summary
motor vehicle charges is inconsistent with the jury's verdict of not guilty on the other
felony offenses that stemmed from the same alleged course of conduct.  (*See* N.T. at
1094-96.)

---

[7]There is nothing that prevents a trial judge from meeting with the jurors to thank them
for their service following their discharge from the case. My meeting with the jurors, outside of
Noviho's presence, occurred after the jury had delivered its unanimous verdict, and after the
verdict was recorded by the clerk. (N.T. at 1088-90.)

6

Our appellate courts have recognized that a criminal defendant who has been charged with both a summary offense and a felony offense may be placed in the unusual situation of having a trial before two separate and distinct fact finders -- a jury on the felony charge and a trial judge on the summary charge. *See, e.g.,* **Commonwealth v. Barger,** 956 A.2d 458, 459 (Pa. Super. 2008) (rape (F) and harassment (S)); **Commonwealth v. Wharton,** 406 Pa. Super. 431-32, 436, 594 A.2d 696, 697 (1991) (involuntary manslaughter (F) and driving at unsafe speed (S)); **Commonwealth v. Bowman,** 400 Pa. Super. 525, 526, 583 A.2d 1239, 1240 (1990) (accidents involving death or personal injury (F) and driving under suspension (S)). *See also* **Commonwealth v. Costa-Hernandez,** 802 A.2d 671 (Pa. Super. 2002) (DUI (M) and driving under suspension (S)); **Commonwealth v. Long,** 753 A.2d 272 (Pa. Super. 2000) (same); **Commonwealth v. Yachymiak,** 351 Pa. Super. 361, 505 A.2d 1024 (1986) (same). Such a consolidated jury/bench trial gives rise to the possibility of inconsistent factual findings. **Barger,** *supra* at 460. However, even if the judge's findings of fact, which support a conviction on the summary violation, do not comport with the jury's findings, which result in an acquittal of the felony charge, the judge's findings will not be disturbed on appeal, as the judge is under no duty to defer to the jury's findings on common factual issues. **Yachymiak,** *supra* at 366-67, 505 A.2d at 1026-27. *See also* **Wharton,** *supra* at 437, 594 A.2d at 699. Thus, inconsistent verdicts are permissible in Pennsylvania. **Barger,** *supra* at 460-61.

As I explained at trial, however, the two verdicts in this case are not necessarily inconsistent. A conviction for homicide by vehicle would have necessitated three

7

findings of fact: (1) Noviho caused the death of Joshua Alan West and/or Joshua Charles West (2) by acting recklessly or with gross negligence, (3) while violating a Motor Vehicle Code regulation.  *See* 75 Pa. C.S.A. § 3732(a).  My findings that Noviho violated three provisions of the Motor Vehicle Code are inconsistent only if the acquittal was based on the jury's doubt that Noviho operated his vehicle in violation of a driving regulation rather than on the absence of the other two elements of the offense.  As I noted to counsel:

> [T]he jury . . . asked a number of questions with regard to the second element, that the defendant acted recklessly or with gross negligence.[8]  They asked a number of questions, and they could very well have found a violation of the Vehicle Code and then found, however, that the conduct of the defendant was merely negligent or something else and not grossly negligent or reckless, as required by homicide by vehicle.

(*See* N.T. at 1096.)  The jury in this case apparently struggled with the question of whether Noviho's conduct was reckless or grossly negligent.  The verdicts in this case were not necessarily inconsistent.  The "[Superior] Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict." **Commonwealth v. Swann**, 431 Pa. Super. 125, 128, 635 A.2d 1103, 1104-05 (1994).  Therefore, I will address the sufficiency of the evidence as to each summary offense.

---

[8] The jury, in fact, asked that the second element of homicide by vehicle regarding recklessness or gross negligence be reread four times during their deliberations. (*See* N.T. at 1057, 1060, 1081, 1085.)

8

# EXHIBIT "B" PART 3

1.    **Count 5 – Too Slow for Conditions, 75 Pa. C.S.A. § 3364(a)**

Noviho was first found guilty of the summary offense of driving too slow for conditions. Section 3364 of the Motor Vehicle Code provides in relevant part:

> **(a) Impeding movement of traffic prohibited.** – Except when reduced speed is necessary for safe operation or in compliance with law, no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic.

75 Pa. C.S.A. § 3364(a). To establish a violation of § 3364, the Commonwealth does not have to prove the speed at which the defendant was driving. **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995). However, an element of the offense is proof that the defendant's slow driving speed impeded the flow of traffic. Id.

Noviho claims the Commonwealth failed to establish that his "'slow speed was not necessary for safe operation' where there was no testimony presented as to the reasons for [Noviho's] speed or that the 'reasonable movement' of traffic was impeded." (*See* Statement of Errors at ¶ 3.) This argument must be rejected as the evidence clearly and unequivocally established both the reason for Noviho's slow speed and its impact on traffic.

It is undisputed that the applicable speed limit on the relevant stretch of Route 222 is 65 mph. (*See* N.T. at 589.) The Commonwealth's accident reconstruction expert, Officer Bryan Kondras, conclusively determined that Noviho was operating his tractor at 17 mph at the time of impact with the West vehicle. (Id. at 618, 620.) Noviho initially reported to the police that he was driving between 50 and 55 mph in a known 65 mph zone. (Id. at 729, 745; *see also* Commonwealth Exhibits 21 & 22.) The expert

9

evidence would later establish that, in fact, Noviho had been traveling at speeds of 55 mph 1 minute and 44 seconds *prior* to the collision. (Id. at 615.) However, Noviho then brought his tractor to a stop, either on the roadway or on the shoulder of the road,[9] for 26 seconds. (Id. at 616-17.) Noviho re-entered the highway or resumed his travel just 16 seconds prior to the crash. (Id. at 618-19; *see also* Commonwealth Exhibit 19.) During that short time, Noviho only accelerated his tractor over 197 feet to a maximum speed of 17 mph at the time of impact. (Id. at 617-18, 621-22; *see also* Commonwealth Exhibit 19.) The Commonwealth's expert testified that, from the forensic evidence, Noviho was "not in a hurry to get up to speed." (Id. at 624.) The expert was also able to determine that there were no mechanical defects or malfunctions in the tractor, no roadway defects and no adverse weather conditions that might have contributed to the slow speed of the tractor and the ultimate crash. (Id. at 638.)

From this evidence, the reason for Noviho's slow speed was sufficiently established. Noviho pulled into traffic on a 65 mph highway from a dead stop and did not accelerate sufficiently to avoid impact with another vehicle on the roadway who was traveling with the normal flow of traffic.[10] (Id. at 626-27.) The slow speed was clearly not "necessary for safe operation or in compliance with law." *See* 75 Pa. C.S.A.

---

[9]The Commonwealth expert testified only that the tractor was stopped either on the northbound roadway or on the shoulder of Route 222 197 feet before the Landis Valley Road overpass where the impact occurred. (N.T. at 617, 618, 621.) The forensic data and reconstruction analysis could not definitively place the stopped tractor either in the lane of travel or outside the lane of travel. (Id. at 625.) There is an improved shoulder in that location but no designated parking area or rest area. (Id. at 616-17.)

[10]Both James Schlinkman and Michele Levisky testified that they were driving at approximately 70 mph in the 65 mph zone. (N.T. at 247, 382.) According to these eyewitnesses, the West vehicle was traveling between 65 and 70 mph. (Id.) Thus, the West vehicle was traveling with the normal flow of traffic at the time of impact.

10

# EXHIBIT "B" PART 4

§ 3364(a). To the contrary, the Commonwealth expert testified that safety required Noviho to drive his tractor on the improved shoulder for a sufficient distance until he was operating at a safer speed to enter the highway and merge into traffic.[11] (Id. at 627.)

In order to constitute a violation of § 3364(a) of the Motor Vehicle Code, the Commonwealth had to further establish that Noviho's slow speed "impede[d] the normal and reasonable movement of traffic" on Route 222. *See* 75 Pa. C.S.A. § 3364(a). As for the "movement of traffic," there was abundant testimony to the presence of other vehicles on the roadway while Noviho was driving at the prohibited slow rate of speed. Noviho himself reported to the police that the traffic volume on Route 222 at the time of the collision was "normal," thus, indicating the presence of other vehicles on the roadway with him. (N.T. at 730.) Moreover, there was testimony at trial from two eyewitnesses to the collision who were traveling beside and behind the West vehicle at the time of impact.[12] (*See* Id. at 245-50; 382-91.) Clearly, there was sufficient evidence to establish the presence of traffic on Route 222 to impede.[13]

---

[11]The improved berm continued from where Noviho was first stopped, 197 feet south of the Landis Valley Road overpass, to beyond the point where the tractor came to stop after the collision. (N.T. at 598.)

[12]James Schlinkman testified that the traffic conditions on Route 222 were "[l]ight to moderate. Not real heavy." (N.T. at 380.) Michele Levisky also testified that there were vehicles ahead of her as she was driving in the left lane of Route 222 just prior to the collision. (Id. at 248-49.)

[13]The majority of the decisions in the Pennsylvania Common Pleas Courts hold that when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) there must be some testimony as to the presence of other vehicles on the roadway besides the defendant's vehicle and perhaps the police officer's vehicle. *See* **Commonwealth v. McGrath**, 78 Bucks Co. L. Rep. 212 (2004) (traffic stop not lawful where officer testified that there was no other traffic on roadway during his interaction with defendant,

The question for the Court then was when does a slow-moving vehicle "impede" the normal movement of traffic. This Court has found only two published Pennsylvania appellate court decisions interpreting this statute. In **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995), the Superior Court affirmed the defendant's conviction of impeding the "normal and reasonable movement of traffic" where he was driving between 18 and 28 mph below the posted maximum speed limit in a no-passing zone and causing a large number of vehicles to be backed up behind him. The Court explained:

> All that needed to be shown was that [Robbins] was operating his vehicle at such a slow speed that it was an impediment to the normal and reasonable movement of traffic. The testimony of the two officers indicated that [Robbins] was driving very slowly at a rate of speed of about 17 miles per hour through no-passing zones with speed limits of 35 and 45 miles per hour. *The officers also mentioned that between 18 or 20 cars were trailing behind [Robbins] and the operators of those vehicles were angry, raising their fists and honking their horns at [Robbins].*

Id. at 440, 657 A.2d at 1004 (emphasis added). This decision suggests that the driver of a slow-moving vehicle impedes traffic when his or her reduced speed interrupts the "normal and reasonable movement of traffic" by blocking or backing up traffic.

---

so slow rate of speed could not have impeded the normal movement of traffic); **Commonwealth v. Haugh**, No. C.A. 03-440, *slip op.* (Butler Co., June 17, 2003) (no reasonable suspicion of a violation of § 3364 where police officer testified there was no other traffic on the road during the four miles that he followed defendant driving at a slow speed); **Commonwealth v. Memminger**, No. 1481 Criminal 1999, *slip op.* (Monroe Co., Feb. 23, 2000) (no reasonable suspicion of a violation of § 3364 where the only traffic on highway at the time of the stop for slow speed was defendant's car and the police car that had been following him for five miles); *cf.* **Commonwealth v. Faustner**, No. 1742 of 2005, *slip op.* (Lehigh Co., Dec. 28, 2005) (summary vehicle code stop for "impeding traffic" lawful where no "civilian traffic" on roadway at the time, but only police officer's vehicle).

12

318

# EXHIBIT "B" PART 5

Other jurisdictions that have considered impeding traffic statutes, which are nearly identical to Pennsylvania's statute, have also focused on whether a driver's slow speed blocked or otherwise backed-up traffic. *See, e.g.,* **State v. Pray**, 5 Kan. App.2d 173, 613 P.2d 400 (1980) (holding that driving farm combine 12-15 mph on a state highway with a 13-vehicle back-up provided sufficient evidence to find the driver guilty of impeding the normal and reasonable movement of traffic); **State v. Lewis**, 980 So.2d 251 (La. App. 3rd Cir. 2008) (holding valid traffic stop where the speed limit was 70 mph and there were 8 cars waiting in the passing lane for a vehicle traveling less than the speed limit to move over so that they could pass by, thus impeding the normal flow of traffic); **State v. Haataja**, 611 N.W.2d 353 (Minn. Ct. App. 2000) (holding that an officer had reasonable suspicion to initiate a stop of a car where the driver was traveling 10-15 mph slower than the posted maximum speed limit and other cars were backed-up behind defendant); **State v. Benders**, 334 Mont. 231, 146 P.3d 751 (2006) (holding that driving approximately 30-45 mph under the posted maximum speed limit and a build-up of at least 4 vehicles gave officer "sufficient information, under the totality of the circumstances, to establish particularized suspicion that [defendant] was violating the law against impeding traffic"); **Moreno v. State**, 124 S.W.3d 339 (Tex.App. 2003) (holding that driving 25 mph in 45 mph zone provided officer with probable cause to stop vehicle for impeding traffic where officer also observed traffic backed up behind defendant's vehicle due to slow driving). Clearly, a driver can "impede" or interrupt the normal and reasonable movement of traffic if he or she causes other vehicles to come to a stop or a crawl.

13

Employing similar reasoning, our Superior Court concluded, in the second published appellate court decision interpreting § 3364(a), that when a driver's slow speed does not affect other motorists then the driver is not impeding the normal and reasonable movement of traffic. In **Commonwealth v. Lana**, 832 A.2d 527 (Pa. Super. 2003), the Superior Court found a traffic stop based on § 3364 to be without probable cause where a police officer stopped a motorist with out-of-state tags driving 5 to 10 mph in a 20 mph zone at 4:00 a.m. on a residential street in a high-crime area of Philadelphia. Citing to the record, the Court summarily concluded that "[n]o traffic was impeded by the speed of appellant's vehicle." Id. at 529. The Court further noted that the officer followed the slow-moving motorist "for a distance of just one block, barely enough time in which to fasten one's seat belt and adjust the mirrors." Id. As there was no evidence of the slow driving affecting other traffic, the Court held the officer lacked probable cause to execute a traffic stop of the defendant. Id. at 529-30. *See also* **Commonwealth v. Henderson**, 87 Bucks Co. L. Rep. 478 (2014) (stop unlawful where officer testified other traffic on roadway minimal and not impacted or affected in any way by defendant's sudden and rapid deceleration to an almost full stop in the middle lane of a three-lane highway); **Commonwealth v. Puskar**, No. 1859 of 2005, *slip op.* (Fayette Co. May 18, 2006) (where officer testified there was other traffic on the road but he had no recollection as to whether any vehicles were following behind defendant, court concluded officer had no knowledge that slow speed was impeding 'the normal and reasonable movement of traffic").

Other states have similarly decided that when a driver's slow speed does not have an effect upon other motorists on the roadway then the driver is not impeding the

14

flow of traffic.  *See, e.g.,* **Agreda v. State**, 152 So.3d 114 (Fla. Dist. Ct. App. 2014) (concluding that detective lacked legal basis for traffic stop for driving at such a slow speed as to impede the normal flow of traffic, even if five other vehicles were following behind the vehicle, where highway had two lanes in each direction, traffic was otherwise light, detective had no trouble passing all the vehicles to reach the lead vehicle, and vehicle's speed of 45 mph was within the permissible range for the highway); **People v. Beeney**, 181 Misc.2d 201, 694 N.Y.S.2d 583, 586 (N.Y. Co. Ct. 1999) (noting that "the dispositive factor when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) is its effect upon other drivers"); **State v. Bacher**, 170 Ohio App. 3d 457, 867 N.E.2d 864 (2007) (concluding that officer lacked reasonable suspicion to initiate a stop of defendant's vehicle for impeding or blocking traffic when there was no evidence in the record that defendant's slow speed affected other drivers); **State v. Tiffin**, 202 Or.App. 199, 121 P.3d 9 (2005) (where the speed was not significantly below the speed limit, there were no other cars on the road, and, if the officers' vehicle was blocked at all, it was for a very short distance, it cannot be said that defendant was blocking or impeding the normal and reasonable flow of traffic).

Clearly, the duty imposed by § 3364(a), and other statutes around the country like it, that proscribes against the slow speed of traffic upon state highways is for the purpose of protecting against the risk that a slow-moving vehicle would block traffic or create a dangerous condition on a highway designed and customarily used to carry fast-moving traffic.  This is precisely what happened in the instant case.  The Commonwealth established (1) Noviho's operation of a motor vehicle below the posted

15

# EXHIBIT "B" PART 6

speed limit, (2) which operation, impeded the "normal and reasonable movement of traffic."

Here, Noviho was driving on a controlled access, two-lane, one-way portion of the highway. He knew or should have known that other vehicles were likely to be driving at speeds within the maximum permitted by statute -- 65 mph. He was at a place where there was, insofar as the road was concerned, no apparent reason for curtailment of speed (such as warnings, obstructions, entrances, exits, etc.) or other existing condition which would cause a following motorist to anticipate that a driver in front would be driving at, or would slacken to, an unusually slow speed. Coupled with this is the important circumstance that Noviho had been driving at 55 mph. Within a two minute period, he brought his truck from 55 mph to a dead stop and then started his movement again, all the while without giving any warning, by use of his hazard lights, of his stopping or starting. He knew or should have known, by simply looking, that there were motorists behind him.[14] This conduct was voluntary on his part and was not necessary for safe operation or to comply with any law.

Under the circumstances of this case, there existed a substantially dangerous condition as created by Noviho's below speed limit driving that not just impeded traffic, but, as required by law, impeded the normal and reasonable movement of traffic and resulted in a fatal collision.[15] We, therefore, could conclusively determine from the facts

---

[14]Both eyewitnesses to the collision testified that the headlights on the West vehicle were on and illuminated the tractor at the time of impact. (N.T. at 245, 248, 251, 383, 385.)

[15]Moreover, the West vehicle could not safely pass the slow-moving tractor in the right lane as testimony established a passing car in the left lane in the moments prior to impact. (N.T. at 245, 247-48.)

16

as presented by the Commonwealth that Noviho was in violation of § 3364 of the Motor

Vehicle Code.

>    2.    **Count 7 – Vehicular Hazard Signal Lamps, 75 Pa. C.S.A. § 4305**

Noviho was also convicted at Count 7 of driving without the required

vehicular hazard signal lamps.  Section 4305 of the Motor Vehicle Code provides, in

relevant part, as follows:

>    **(a) General rule.–** Simultaneous flashing of the two front and two
>    rear signal lamps shall indicate a vehicular traffic hazard.  The driver
>    of a motor vehicle equipped with simultaneous flashing signals shall
>    use the signals when the vehicle is stopped or disabled on a highway,
>    except when the vehicle is stopped in compliance with a traffic-control
>    device or when legally parked. . . .
>
>    **(b) Use outside business and residence districts.–** Outside of a
>    business or residence district:
>    (1) The driver of a motor vehicle or combination equipped with
>    simultaneous flashing signals shall use the signals when the vehicle is
>    unable to maintain a speed of at least 25 miles per hour because of
>    weather, grade or other similar factors or is unable to maintain a speed
>    consistent with the normal flow of traffic.
>
>    . . .
>
>    **(c) Use below minimum speed limit.–** The driver of a motor vehicle
>    or combination equipped with simultaneous flashing signals shall use
>    the signals when the vehicle is not maintaining at least the minimum
>    speed established in accordance with the provisions of section 3364
>    (relating to minimum speed regulation).

75 Pa. C.S.A. § 4305(a)-(c).

Noviho was originally charged at Count 7 with violating subsection (c) above and,

accordingly, Count 7 is identified on the Information as "Use Below Minimum Speed

Limit."  However, during the trial in this matter, on oral motion of the Commonwealth's

17

# EXHIBIT "B" PART 7

attorney and without objection from defense counsel, the Information was amended at Count 7 to delete subsection (c) and to add subsections (a) and (b)(1). (N.T. at 62; *see also* N.T. at 74.) I made a notation on the Information to reflect these changes regarding the applicable subsections but I did not change the caption for Count 7 which read: "Use Below Minimum Speed Limit." This explains why, when I pronounced the verdict on Count 7, I referred to "use below minimum speed limit." (Id. at 1094.) In fact, Noviho was found guilty of violating subsections (a), "General Rule," and (b)(1), "Use outside business and residence districts."

Under the Pennsylvania Motor Vehicle Code, the use of hazard lights to warn of a traffic hazard is mandatory. Pursuant to § 4305(a), "[t]he driver of a motor vehicle equipped with simultaneous flashing signals *shall* use the signals when the vehicle is stopped or disabled on a highway, except when the vehicle is stopped in compliance with a traffic-control device or when legally parked." 75 Pa. C.S.A. § 4305(a) (emphasis added). The Commonwealth, therefore, was required to establish the following three facts: (1) Noviho's tractor was stopped, (2) on a highway, (3) without his flashing signals activated.

Route 222 constitutes a "highway" under § 4305 because the street is publicly maintained and open to the public for vehicular traffic.[16] Moreover, the tractor met the definition of "stopped" under § 4305. "Stopped" includes "any halting even

---

[16]Section 102 of the Vehicle Code defines highways as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. . . ." 75 Pa. C.S.A. § 102. Thus, whether Noviho was on the traveled portion of the roadway or on the berm or shoulder, he was nonetheless on the highway.

18

327

momentarily." 75 Pa. C.S.A. § 102.[17] The use of the word "any" accounts for all stops regardless of the duration.  Noviho's tractor was "stopped," for purposes of § 4305(a), on Route 222 for 26 seconds.  (N.T. at 616.)  The statute does provide for exceptions such as stopping to "avoid conflict with other traffic" or to comply "with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102.  However, there was no evidence presented to suggest that Noviho stopped his tractor on the highway to avoid conflict with other traffic.  Nor was there evidence to indicate that Noviho was merely abiding by traffic signs, signals, or officer directions.

Lastly, there was sufficient evidence to find that, when Noviho's tractor was stopped on the highway for 26 seconds, he did not utilize his flashing signals.  Both eyewitnesses to the collision testified that they never saw a vehicle pulled off to the side of the roadway ahead of them with *any* lights on.  (N.T. at 261, 383-84.)  It was the consistent testimony of both drivers that the object which the West vehicle struck came out of the darkness.  (Id. at 245-46, 249-51, 260, 383.)

Based upon all of the evidence provided at trial, Noviho was properly found guilty of the summary offense of being "stopped" on a "highway" without using his flashing signals to warn other drivers of a traffic hazard.[18] 75 Pa. C.S.A. § 4305(a).

---

[17]Section 102 of the Vehicle Code defines "stopped" as "any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102.

[18]The evidence would also have supported a violation of subsection (a) for failure of Noviho to use his flashing signals to warn of a traffic hazard *after* the collision when he was stopped on the shoulder of Route 222 while rescue efforts were being conducted on the occupants of the West vehicle. (See N.T. at 206, 232-33, 253, 255, 392, 604; see also Commonwealth Exhibit 7.) The testimony of four eyewitnesses that Noviho failed to activate his flashers on the tractor is in stark contrast to Noviho's two statements to the police the night of

19

# EXHIBIT "B" PART 8

Noviho was also charged with the related vehicular hazard signals offense found in § 4305(b)(1). Pursuant to that subsection, when outside business and residential areas,[19] "[t]he driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is unable to maintain a speed of at least 25 miles per hour because of weather, grade or other similar factors or is unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Noviho claims the evidence at trial failed to establish that he was "unable" to maintain a speed consistent with the normal flow of traffic where there was no testimony presented as to whether his vehicle was unable to "maintain speed." (*See* Statement of Errors at ¶ 4.)

The assumption by the Court is that Noviho is suggesting he was accelerating at the time of impact with the West vehicle and had not reached his maintainable speed. The statute requires the use of hazards when a vehicle is "unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Whether accelerating or not,[20] Noviho was driving in a designated lane of travel on a high-speed

---

the accident that he activated his "emergency lights" or "four-way flashers" after he "felt an impact from behind." (Id. at 729, 744, 745.)

[19] The testimony conclusively established that this section of Route 222 was outside business and residential areas, ran through a rural stretch of countryside, and was very dark. (N.T. at 116-17, 159, 210, 243-44, 381, 589-90.)

[20] What distinguishes this case is the fact that Noviho was not entering the highway from an entrance ramp which allows a vehicle to accelerate to the appropriate speed to merge into oncoming traffic. Such an approach lane also alerts highway traffic to the possibility of other vehicles entering the roadway at a reduced speed, although the vehicle entering the highway must always yield to oncoming traffic. *See* 75 Pa. C.S.A.§ 3321. In this case, Noviho stopped his vehicle on the highway and was attempting to re-enter the flow of traffic. He failed to use the improved shoulder as an acceleration ramp to achieve even a moderately safe speed before entering the highway and merging into traffic. (*See* N.T. at 627.)

road at a substantially subnormal speed that was clearly not consistent with the normal flow of traffic which was traveling at speeds of approximately 65 to 70 mph. (*See* N.T. at 247, 382.) Because Noviho could not maintain a speed consistent with the traffic flow on Route 222, he was required by law to activate his hazard lights to alert drivers to a dangerous condition on the highway.

Again, the testimony of the two eyewitnesses to the collision established the absence of Noviho's hazard lights. James Schlinkman testified that immediately prior to impact, he saw neither hazard lights, running lights, nor tail lights on the tractor. (N.T. at 383-84.) Similarly, Michele Levisky stated she saw no flashing hazards, no headlights, and no steady tail lights. (Id. at 251, 255.) This evidence conclusively established that Noviho failed to use his flashing signals when he was driving on Route 222 at a speed significantly less than the normal flow of traffic for a 65 mph zone.

### 3.    Count 8 – Move Vehicle Unsafely, 75 Pa. C.S.A. § 3333

Lastly, Noviho challenges this Court's verdict on the summary charge of failing to move his vehicle safely from a stopped position on the roadway. Section 3333 of the Motor Vehicle Code provides: "No person shall move a vehicle which is stopped, standing or parked unless and until the movement can be made with safety." 75 Pa. C.S.A. § 3333. Noviho charges that the Commonwealth failed to establish beyond a reasonable doubt "that the movement of [his] vehicle onto the roadway was unsafe where there was no testimony as to *when* the vehicle entered the roadway." (*See* Statement of Errors at ¶ 5 (emphasis added).)

21

# EXHIBIT "B" PART 9

To the contrary, there was exhaustive expert testimony from which the finder of fact could determine when Noviho entered the roadway. The electronic control module (ECM) from the tractor provided detailed data for the two-minute period of time surrounding the collision. (N.T. at 610-11.) At precisely 17 seconds before impact with the West vehicle, Noviho's tractor was in a stopped or idling position, with the brakes and clutch engaged. (Id. at 617, 625.) At precisely 16 seconds before impact with the West vehicle, Noviho's tractor started moving. (Id. at 618-19; see also Commonwealth Exhibit 19.) The data shows that the tractor traveled 197 feet over the course of 16 seconds at a top speed of 17 mph before the collision occurred. (Id. at 617-21.)

The Commonwealth's expert, Officer Kondras, presented the three possible scenarios for how and when Noviho entered the highway from his assumed position on the berm[21]; none of which was, in his opinion, safe given the speed of oncoming vehicles. (N.T. at 627.)

> [Noviho] either pulls out and immediately cuts over into the lane and is going 2 miles, 3 miles an hour[.] [O]r he slowly pulls out and does a . . . very slow, steady movement over. And then if he's halfway through it, he's going 8, 11 miles an hour.
> Or he drives up the shoulder . . . and at the last second before impact he cuts over and immediately into the right lane. He's going 15 to 17 miles an hour at that point and . . . he essentially would have cut right in front of Ms. West's vehicle as he gets over.

(Id. at 628-29.) Based upon this information, Officer Kondras opined that "clearly it was unsafe to pull out. There's no safe time." (Id. at 628.)

---

[21]As noted previously, the ECM established that the tractor was stopped but it could not verify whether it was on or off the highway. (N.T. at 615-17, 621, 626.) The logical assumption is that the tractor was pulled off onto the shoulder of the roadway. The alternative, stopping a vehicle in a lane of travel on a 65 mph highway at night, is almost too ludicrous even to suggest.

22

This electronic data was confirmed by the eyewitness testimony of Schlinkman who stated that the time and distance that elapsed from Ms. West's headlights illuminating the tractor and the collision was "[n]o more than a second" (N.T. at 387), "instantaneous" (Id. at 388-89), "maybe a car length and a half." (Id. at 390.) The other witness, Levisky, testified that she heard the crash *first* and then "saw the headlights hit whatever was in front of it." (Id. at 245; *see also* Id. at 249.) She could not even identify the object as another vehicle until after she had brought her car to rest in the grass median. (Id. at 250, 252.)

There was sufficient testimony to support the finding that the tractor was standing either on the highway, or on its berm, at 17 seconds prior to impact, and that sometime during the next 16 seconds, Noviho operated his vehicle from a dead stop onto the 65 mph highway before such movement could be made with safety.

### 4.    Weight of the Evidence

Noviho also claims this Court's guilt determinations were against the weight of the evidence. This issue is waived, however, because Noviho failed to raise it properly at the conclusion of trial or in a post-sentence motion.

The Pennsylvania Rules of Criminal Procedure apply to the summary offenses in this case arising under the Motor Vehicle Code.[22] Accordingly, the Rules governing

---

[22]The case before this Court was a "court case" within the meaning of the Pennsylvania Rules of Criminal Procedure because Noviho was charged with felony offenses and summary offenses. Rule 103 defines the term "court case" as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa.R.Crim.P. 103. By contrast, "summary case" is defined as "a case in which the *only* offense or offenses charged are summary offenses." Id. (Emphasis added). The Comment to

# EXHIBIT "B" PART 10

post-trial practice are applicable here.[23]  Rule 607 provides, in relevant part, that a claim that the verdict was against the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; (3) or in a post-sentence motion." Pa. R.Crim.P. 607(a).  Noviho did not move for a new trial on weight of the evidence grounds at the conclusion of trial nor did he file a post-sentence motion raising a weight of the evidence claim. As such, this claim is waived. **Commonwealth v. Walsh**, 36 A.3d 613, 622 (Pa. Super. 2012) (*citing* **Commonwealth v. Priest**, 18 A.3d 1235 (Pa. Super. 2011) (concluding that appellant's claim that the verdict was against the weight of the evidence was waived because it was not presented to the trial court in a post-sentence motion)).  *See also* Pa. R.Crim.P. 607, Comment ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.")).

Assuming, *arguendo*, that Noviho's weight of the evidence argument has been preserved for appellate review, it lacks merit.  A claim that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict,

---

Pa.R.Crim.P. 400 provides that "[i]f one or more of the offenses charged is a misdemeanor, felony, or murder, the case is a court case (see Rule 103) and proceeds under Chapter 5 of the rules. Ordinarily, any summary offenses in such a case, if known at the time, must be charged in the same complaint as the higher offenses and must be disposed of as part of the court case." Pa. R.Crim.P. 400 Comment (citations omitted). Chapters 5, 6 and 7 of the Criminal Rules govern procedures in court cases and, therefore, govern this case.

[23] I note that Pa.R.Crim.P. 720(D), which prohibits post-sentence motion practice in summary convictions following a trial *de novo*, did not apply because the summary convictions were not from a trial *de novo* after losing before the local district magistrate judge, *see* **Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013), and because Rule 400 requires the summary offenses be addressed as court cases. Pa.R.Crim.P. 400, Comment.

24

but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." **Commonwealth v. Robinson**, 834 A.2d 1160, 1167 (Pa. Super. 2003). *See also* **Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006).

Our Superior Court has explained the proper standard of review applicable to a challenge to the weight of evidence:

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012) (*quoting* **Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 409 (2003)).

Considering the quality and quantity of the evidence in this case, as outlined above, there is no reason to reject the verdicts. This Court had the opportunity to see and hear the expert and lay witnesses and evaluated and determined the credibility and the weight of the evidence in favor of the Commonwealth and against Noviho. The verdicts in this case certainly do not shock this Court's sense of justice so as to make the award of a new trial imperative.

25

337

# EXHIBIT "B" PART 11

**C.    Motion *in Limine***

Noviho next claims the Court erred in granting the Commonwealth's motion *in limine*,

> including the decision to exclude the testimony of [Noviho's] expert witness prepared to testify to the reflective qualities of reflective tape placed on the rear of the truck, and an individual's ability to perceive and react to an obstacle, and allowing the Commonwealth's witnesses to opine as to whether the individual that ran into the back of the truck had time to perceive and react to the presence of the truck.

(Statement of Errors at ¶ 1.)  This adverse evidentiary ruling by the Court allegedly violated Noviho's constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.  **Commonwealth v. Begley**, 566 Pa. 239, 265, 780 A.2d 605, 620 (2001).  An abuse of discretion requires "not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."  **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super. 2006) (*quoting* **Commonwealth v. Widmer**, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)).

The admissibility of an expert opinion is governed by Pennsylvania Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

26

(a) the expert's scientific, technical or other specialized knowledge is beyond that possessed by the average layperson;
(b) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. It has long been the law of this Commonwealth that "[t]he purpose of expert testimony is to assist the factfinder in grasping complex issues not within the knowledge, intelligence, and experience of the ordinary layman." **Commonwealth v. Page,** 59 A.3d 1118, 1135 (Pa. Super. 2013) (*quoting* **Commonwealth v. Begley,** 566 Pa. 239, 263, 780 A.2d 605, 621 (2001)). On the other hand, "[p]henomena and situations which are matters of common knowledge, may not be the subject for expert testimony." **Collins v. Zediker,** 421 Pa. 52, 53, 218 A.2d 776, 777 (1966).

At the start of trial, the Commonwealth presented a motion *in limine* seeking to preclude, *inter alia,* the proffered testimony of defense "human factors" expert, Mark Lee Edwards, Ph.D., that a reasonably alert driver would have been able to detect and respond to the presence of Noviho's tractor based on the conspicuity markings on the rear of the tractor alone. (Commonwealth Motion *in Limine* at ¶ 20.) The Commonwealth argued in its motion that this proffered expert testimony failed to satisfy the test of Pa.R.E. 702 because (1) the jury did not require Dr. Edwards' expertise in understanding this subject matter, and (2) his opinions would invade the province of the jury. (Id. at ¶¶ 21-24.)

Noviho objected to the motion on two grounds. First, he argued that "[h]uman factors experts have long been accepted as appropriate expert witnesses." (Defendant's Response to Commonwealth's Motion *in Limine* at ¶ 21.) In fact, our

27

research uncovered no Pennsylvania cases allowing human factors testimony in a criminal case.[24]  Second, Noviho claimed "a lay person would have little or no knowledge regarding the properties of reflective tape and the ability to perceive."  (Id.)  To the contrary, as noted by our sister court in **Morningstar v. Hoban**, 55 Pa. D.&C.4th 225 (Allegh. Co. 2002), when excluding the proffered testimony of a human factors expert on the ability of a layperson to estimate speeds:

> There are few skills better known to an average person than those surrounding driving.  This includes estimating the speed of cars all around each of us every day.  Expert testimony attacking the estimates of speed provided by eyewitnesses such as these with ample experience and opportunity for observation is impermissible both because the subject is not beyond the knowledge and skill of a layperson and because to permit the testimony would intrude upon the jury's function of deciding credibility.  The proper methodology for attacking such testimony is the time tested art of cross-examination and not through expert testimony.

Id. at 251.

I would add that also included among the driving skills of a layperson is the ability to observe and react to reflective markings on other vehicles.  This is something within the common knowledge and experience of all drivers and does not require expert testimony to understand.  *See* **Collins v. Zediker**, *supra* (expert opinion offered as to speed of a pedestrian's pace was reversible error as matter was within common

---

[24]There are a handful of reported appellate *civil* cases where human factors experts were permitted to testify. See **Reinoso v. Heritage Warminster SPE LLC**, 108 A.3d 80 (Pa. Super. 2015); **Mitchell v. Gravely Int'l, Inc.**, 698 A.2d 618, 620 (Pa. Super. 1997); **Riley v. Warren Mfg., Inc.**, 455 Pa. Super. 384, 392, 688 A.2d 221, 225 (1997);  **Mackowick v. Westinghouse Electric Corp.**, 373 Pa. Super. 434, 442, 541 A.2d 749, 752 (1988), *aff'd*, 525 Pa. 52, 575 A.2d 100 (1990); **Smith v. Kelly**, 2009 WL 9101529 (Pa. Cmwlth. 2009). *See also* **Frey v. Harley Davidson Motor Company, Inc.**, 734 A.2d 1 (Pa. Super. 1999) (expert testimony on visibility conspicuity permitted).

# EXHIBIT "B" PART 12

knowledge and experience of jury); **Christiansen v. Silfies**, 446 Pa. Super. 464, 667 A.2d 396 (1995) (expert testimony concerning weather conditions at time and place of accident properly excluded because weather conditions involve matters of common knowledge that are easily described and understood by laymen, and there was eyewitness testimony regarding the density of fog and level of visibility at accident scene). *See also* **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) (determining what areas of the body are vital is not a complex issue that would require medical testimony; "an ordinary layman could conclude without expert testimony that [the victim's] head, stomach, and neck are vital areas").

Based upon the case law and the facts of this case, I ruled that Noviho's human factors or conspicuity expert would be permitted to testify only to the existence of the reflective material on the truck and to the placement of the material on the tractor in compliance with the federal laws regarding such. (N.T. at 899-90.) The expert was precluded, however, from testifying as to the distances at which the reflective material could have or should have been visible to the West vehicle. (Id. at 900.) After reviewing the expert report, it was clear that this expert could not offer testimony with regard to the location, condition and/or type of headlights on the West vehicle, or the angle at which they shone on the rear of Noviho's tractor. (Id. at 900-01.) Nor could the expert testify to the specific road and lighting conditions at the time of the collision.

More importantly, there were two lay witnesses in this case, Levisky and Schlinkman, who testified to their ability to perceive the reflective markings on Noviho's tractor, a matter of common knowledge easily described and understood by ordinary

29

citizens. (*See* N.T. at 245, 249, 250-51, 261, 385.) The availability of firsthand observations from these eyewitnesses who were at the scene made the testimony of a human factors expert unnecessary and, indeed, permitting such testimony would have infringed on the jury's right to determine credibility. *See* **Commonwealth v. Delbridge**, 771 A.2d 1, 5-6 (Pa. Super. 2001).

Accordingly, following extensive argument by counsel, I ruled, on the record, that the Commonwealth's motion *in limine* to preclude the expert testimony of Dr. Edwards as to a driver's ability to perceive reflective markings on a tractor was granted as this was something every layperson with a driver's license could easily detail and comprehend. (*See* N.T. at 893-903.) This evidentiary ruling was not an abuse of the Court's discretion and Noviho's challenge to the ruling is without merit.

D.    **Accident Scene Photographs**

Lastly, Noviho argues that the Court erred "by excluding from evidence photographs taken at the scene of the accident showing the positioning of the truck at the scene of the accident, emergency triangles placed at the scene of the accident and that the truck in question was visible from a significant distance." (Statement of Errors at ¶ 2.) Again, Noviho claims this adverse evidentiary ruling by the Court violated his constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Although Noviho does not specifically identify the challenged photographs for the Court, a review of the record indicates that Defense Exhibits 11, 12 and 13 were

30

objected to by the Commonwealth and not admitted into evidence.  (*See* N.T. at 493-500, 951-52.)  I will assume these photographs form the basis of Noviho's evidentiary challenge.

The admission of photographs is largely within the discretion of the trial court and will not be reversed except for an abuse of discretion.  **Commonwealth v. Lowry**, 55 A.3d 743, 753 (Pa. Super. 2012) (*citing* **Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767, 776 (2004)).  Here, there was no abuse of discretion in refusing to admit into evidence, for conspicuity purposes, Noviho's photographs of his tractor, where the photographs, although taken on the night of the crash, did not accurately depict the scene of the collision or the conditions at the time of impact.  Specifically, (1) the tractor was positioned on the berm as opposed to the right lane of travel, some distance from the point of impact, (2) the tractor was artificially illuminated, and (3) reflective triangles had been placed near the tractor following the crash.  (N.T. at 494-99.)  *See* **Commonwealth v. Iafrate**, 385 Pa. Super. 579, 586, 561 A.2d 1244, 1247 (1989), *rev'd on other grounds*, 527 Pa. 497, 594 A.2d 293 (1991) (no abuse of discretion in court's refusal to admit into evidence photographs purporting to show the placement of vehicles on the street at the time of the incident given the different lighting conditions, the different distances of the car from the curb, and the insufficient foundation laid for the photo depicting the defendant posed by a car); **Yachymiak**, 351 Pa. Super. at 364-65, 505 A.2d at 1025-26 (court did not abuse its discretion in excluding photographs due to its doubt that the lighting, brightness levels, relative heights, depths and distances sufficiently reproduced the observations of the police, thereby failing to establish the probative value of the photographs).

31

345

# EXHIBIT "B" PART 13

Noviho's Exhibits 11, 12 and 13 had limited probative value relative to the conditions at the time of the crash and were also potentially confusing and prejudicial to the jury.  Therefore, they were properly excluded in this case.

### III.   Conclusion

For the reasons set forth above, this Court respectfully requests that the appeal of Mawuyrayrassuna Emmanuel Yaogan Noviho be denied.

Accordingly, I enter the following:

32

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | No. 4200 - 2013 |
| | : | |
| MAWUYRAYRASSUNA EMMANUEL | : | |
| YAOGAN NOVIHO | : | |

O R D E R

AND NOW, this 7th day of April, 2015, the Court hereby submits this Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

ATTEST: /m

Copies to:    Susan E. Moyer, Assistant District Attorney
Robert Daniels, Esquire, 218 Pine Street, P.O. Box 886, Harrisburg, PA
17108-0886

348

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA      :
EMMANUEL NOVIHO,      :    Civil Action No. 15-cv-03151
         Plaintiff      :
     :    Jury Trial Demanded
     v.      :
     :    Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA:  
SCOTT F. MARTIN,      :
TODD E. BROWN, and      :
CHRISTOPHER DISSINGER,      :
         Defendants      :

### ORDER

AND NOW, this _____ day of _____, 2016, upon

consideration of the Motion of Defendant Christopher Dissinger for Leave to

Attach a Supplemental Exhibit to his Motion to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6) (Doc. 12), it is NOW AND HEREBY ORDERED that

Defendant's Motion is GRANTED and the Superior Court Order of February 17,

2016, with corresponding Opinion of the trial court, shall be attached as Exhibit

"B" to Defendant Dissinger's Motion to Dismiss for consideration by the Court.

### BY THE COURT

_____
                         J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA                        :
EMMANUEL NOVIHO,                       :      Civil Action No. 15-cv-03151
        Plaintiff         :
                        :      Jury Trial Demanded
    v.                                :
                        :      Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                       :
TODD E. BROWN, and                     :
CHRISTOPHER DISSINGER,                 :
        Defendants        :

**ORDER**

AND NOW, this _____ day of _____, 2016, upon

consideration of the Motion of Defendant Christopher Dissinger for Leave to

Attach a Supplemental Exhibit to his Motion to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6) (Doc. 12), it is NOW AND HEREBY ORDERED that

Defendant's Motion is GRANTED and the Superior Court Order of February 17,

2016, with corresponding Opinion of the trial court, shall be attached as Exhibit

"B" to Defendant Dissinger's Motion to Dismiss for consideration by the Court.

**BY THE COURT**

_____
                           J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA
EMMANUEL NOVIHO,                          :           Civil Action No. 15-cv-03151
               Plaintiff                 :
                                         :           Jury Trial Demanded
     v.                                  :
                                         :           Honorable Jeffrey Schmehl
LANCASTER COUNTY PENNSYLVANIA:
SCOTT F. MARTIN,                         :
TODD E. BROWN, and                       :        FILED
CHRISTOPHER DISSINGER,                   :
               Defendants                :        FEB 29 2016

                                         MICHAEL E. KUNZ, Clerk
                                         By_____ Dep Clerk

                            **ORDER**

     AND NOW, this _25TH_ day of _FEBRUARY_, 2016, upon

consideration of the Motion of Defendant Christopher Dissinger for Leave to

Attach a Supplemental Exhibit to his Motion to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6) (Doc. 12), it is NOW AND HEREBY ORDERED that

Defendant's Motion is GRANTED and the Superior Court Order of February 17,

2016, with corresponding Opinion of the trial court, shall be attached as Exhibit

"B" to Defendant Dissinger's Motion to Dismiss for consideration by the Court.

                    **BY THE COURT**


                    _____ J.

Case 5:15-cv-03151-JLS   Document 33   Filed 05/06/16   Page 1 of 1
Case 5:15-cv-03151-JLS   Document 32-2   Filed 05/02/16   Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAWUYRAYRASSUNA                     :
EMMANUEL NOVIHO,                     :
                                     :
                Plaintiff,           : CIVIL ACTION NO.: 15-CV-03151
                                     :
V.                                   :
                                     : JURY TRIAL DEMANDED
LANCASTER COUNTY, et al.,            :
                                     :
                Defendants.          :

---

## ORDER

**AND NOW**, this _5th_ day of _MAY_, 2016, it is hereby
ORDERED and DECREED that discovery shall be stayed pending rulings on
Defendants' outstanding motions to dismiss.

                               BY THE COURT:

                               _____
                               Schmehl, J.

352

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MAWUYRAYRASSUNA          :
EMMANUEL NOVIHO,          :
                         :
            Plaintiff,    : NO.: 16-3047
                         :
V.                       :
                         :
LANCASTER COUNTY, et al.,  :
                         :
            Defendants.    :

## CERTIFICATE OF SERVICE

I, George A. Reihner, hereby certify that I have caused to be served on this day a true and correct copy of the foregoing Volume II of the Appendix thereto upon the persons and in the manner indicated below which service satisfies the requirements of Fed. R. App. P. 25(c)(1), via ECF and first class mail addressed as follows:

Rolf E. Kroll, Esquire
Margolis Edelstein
3510 Trindle Road
Camp Hill, PA 17011

David J. MacMain, Esquire
The MacMain Law Group, LLC
101 Lindenwood Drive, Suite 160
Malvern, PA 19355

Megan Kampf, Esquire
The MacMain Law Group, LLC
101 Lindenwood Drive, Suite 160
Malvern, PA 19355

/s/ George A. Reihner
George A. Reihner

Dated: October 3, 2016